# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| AMERICAN AIRLINES, INC.; AMERICAN BEACON ADVISORS, INC.; FEDEX CORPORATION; FEDERAL EXPRESS CORPORATION; FEDEX CORPORATE SERVICES, INC.; FEDEX CUSTOMER INFORMATION SERVICES, INC.; HILTON HOTELS CORPORATION; HILTON RESERVATIONS WORLDWIDE, LLC; HILTON HHONORS WORLDWIDE, LLC; MARRIOT INTERNATIONAL, INC; MARRIOTT WORLDWIDE RESERVATION SERVICES, LLC; NATIONAL RAILROAD PASSENGER CORPORATION, DBA AMTRAK, | § § § § § § § § § § § § § § § § | Civil Action No. 2:06-cv-00334-DF<br><br>Jury Trial Demanded |
| Defendants. | § | |

---

## AMERICAN AIRLINES, INC.'S AND AMERICAN BEACON ADVISORS, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'s COMPLAINT FOR PATENT INFRINGEMENT

American Airlines, Inc. ("American Airlines") and American Beacon Advisors, Inc. ("American Beacon Advisors"), collectively ("AA"), hereby answer Plaintiff Ronald A. Katz Technology Licensing, L.P.'s ("RAKTL") Complaint For Patent Infringement ("Complaint") as follows:

## **THE PARTIES**

1.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and, therefore, denies the same.

2.      AA admits the allegations of paragraph 2 of the Complaint.

3.      AA admits the allegations of paragraph 3 of the Complaint.

4.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and, therefore, denies the same.

5.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and, therefore, denies the same.

6.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and, therefore, denies the same.

7.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and, therefore, denies the same.

8.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint and, therefore, denies the same.

9.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and, therefore, denies the same.

10.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and, therefore, denies the same.

11.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and, therefore, denies the same.

12.      AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and, therefore, denies the same.

2

13.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and, therefore, denies the same.

## JURISDICTION AND VENUE

14.     AA admits that this is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 *et seq.*

15.     AA admits that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

16.     AA admits that, for purposes of this case, they are subject to this Court's personal jurisdiction in this judicial district.  AA further admits that it has registered agents for service of process in the State of Texas.  AA denies the remaining allegations in paragraph 16 of the Complaint.

17.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and, therefore, denies the same.

18.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and, therefore, denies the same.

19.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and, therefore, denies the same.

20.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and, therefore, denies the same.

21.     AA admits that venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

3

## **BACKGROUND FACTS**

22.　　AA admits that on their face, U.S. Patent Nos. 4,792,968 ("the '968 patent"), 4,930,150 ("the '150 patent"), 5,128,984 ("the '984 patent"), 5,251,252 ("the '252 patent"), 5,351,285 ("the '285 patent"), 5,684,863 ("the '863 patent"), 5,787,156 ("the '156 patent"), 5,815,551 ("the '551 patent"), 5,828,734 ("the '734 patent"), 5,898,762 ("the '762 patent"), 5,917,893 ("the '893 patent"), 5,974,120 ("the '120 patent"), 6,044,135 ("the '135 patent"), 6,148,065 ("the '065 patent"), 6,335,965 ("the '965 patent"), 6,349,134 ("the '134 patent"), 6,424,703 ("the '703 patent"), 6,434,223 ("the '223 patent"), 6,512,415 ("the '415 patent"), 6,678,360 ("the '360 patent") list Ronald A. Katz as inventor.　AA denies the remaining allegations in paragraph 22 of the Complaint.

23.　　AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and, therefore, denies the same.

24.　　AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and, therefore, denies the same.

25.　　AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and, therefore, denies the same.

26.　　AA admits that on its face, the '968 patent lists December 20, 1988 as the issue date.　AA lacks knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 26 and, therefore, denies the same.

27.　　AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint and, therefore, denies the same.

28.　　AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and, therefore, denies the same.

4

29.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and, therefore, denies the same.

30.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint and, therefore, denies the same.

31.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint and, therefore, denies the same.

32.     AA admits that AT&T has licensed the patents-in-suit.  AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and, therefore, denies the same.

33.     AA denies that they employ the inventions of the '984, '150, '285, '863, '156, '551, '734, '762, '893, '120, '135, '065, '965, '223, and '360 patents (collectively "the Asserted Patents").  AA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 and, therefore, denies the same.

## THE PATENTS-IN-SUIT

34.     AA admits that the '968 patent is entitled "Statistical Analysis System For Use With Public Communication Facility," and on its face lists Ronald A. Katz as sole inventor and December 20, 1988 as the issue date.  AA further admits that the term of the '968 patent extended no later than December 20, 2005.  AA denies the remaining allegations in paragraph 34 of the Complaint.

35.     AA admits that the '150 patent is entitled "Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and May 29, 1990 as the issue date.  AA further admits that the term of the '150 patent extended no later than December 20, 2005.  AA denies the remaining allegations in paragraph 35 of the Complaint.

5

36.     AA admits that the '984 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and July 7, 1992 as the issue date.  AA denies the remaining allegations in paragraph 36 of the Complaint.

37.     AA admits that the '252 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date.  AA denies the remaining allegations in paragraph 37 of the Complaint.

38.     AA admits that the '285 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and September 27, 1994 as the issue date.  AA further admits that the '285 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 38 of the Complaint.

39.     AA admits that the '863 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and November 4, 1997 as the issue date.  AA further admits that the '863 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 39 of the Complaint.

40.     AA admits that the '156 patent is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and July 28, 1998 as the issue date.  AA further admits that the '156 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 40 of the Complaint.

41.     AA admits that the '551 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and September 29, 1998 as the issue date.  AA further admits that the '551 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 41 of the Complaint.

6

42.     AA admits that the '734 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 27, 1998 as the issue date.  AA denies the remaining allegations in paragraph 42 of the Complaint.

43.     AA admits that the '762 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and April 27, 1999 as the issue date.  AA further admits that the '762 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 43 of the Complaint.

44.     AA admits that the '893 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and June 29, 1999 as the issue date.  AA further admits that the '893 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 44 of the Complaint.

45.     AA admits that the '120 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 26, 1999 as the issue date.  AA denies the remaining allegations in paragraph 45 of the Complaint.

46.     AA admits that the '135 patent is entitled "Telephone-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and March 28, 2000 as the issue date.  AA further admits that the '135 patent expired on July 10, 2005.  AA denies the remaining allegations in paragraph 46 of the Complaint.

47.     AA admits that the '065 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and November 14, 2000

7

as the issue date.  AA further admits that the '065 patent expired on July 10, 2005.  AA denies the remaining allegations in paragraph 47 of the Complaint.

48.      AA admits that the '965 patent is entitled "Voice-Data Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and January 1, 2002 as the issue date.  AA further admits that the '965 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 48 of the Complaint.

49.      AA admits that the '134 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and February 19, 2002 as the issue date.  AA further admits that the '134 patent expired on December 20, 2005.  AA denies the remaining allegations in paragraph 49 of the Complaint.

50.      AA admits that the '703 patent is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and July 23, 2002 as the issue date.  AA further admits that the '703 patent expired on July 10, 2005.  AA denies the remaining allegations in paragraph 50 of the Complaint.

51.      AA admits that the '223 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and August 13, 2002 as the issue date.  AA further admits that the '223 patent expired on July 10, 2005.  AA denies the remaining allegations in paragraph 51 of the Complaint.

52.      AA admits that the '415 patent is entitled "Telephonic-Interface Game Control System," and on its face lists Ronald A Katz as sole inventor and January 28, 2003 as the issue date.  AA further admits that '415 patent expired on July 10, 2005.  AA denies the remaining allegations in paragraph 52 of the Complaint.

53. AA admits that the '360 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A Katz as sole inventor and January 13, 2004 as the issue date. AA further admits that the '360 patent expired on July 10, 2005. AA denies the remaining allegations in paragraph 53 of the Complaint.

## COUNT I

### (PATENT INFRINGEMENT BY AMERICAN AIRLINES, INC. AND AMERICAN BEACON ADVISORS, INC.)

54. AA incorporates by reference its responses to paragraphs 1-53.

55. AA admits that on their face, the '150, '984, and '285 patents list Ronald A. Katz as inventor, and the '863, '156, '551, '734, '762, '893, '120, '135, '065, '965, '223, and '360 patents list RAKTL as the assignee. AA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 55 and, therefore, denies the same.

56. AA admits that it operates automated telephone systems. AA denies the remaining allegations in paragraph 56 of the Complaint.

57. AA denies the allegations in paragraph 57 of the Complaint.

58. AA denies the allegations in paragraph 58 of the Complaint.

59. AA denies the allegations in paragraph 59 of the Complaint.

60. AA denies the allegations in paragraph 60 of the Complaint.

## COUNT II

### (PATENT INFRINGEMENT BY FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, FEDEX CORPORATE SERVICES, INC., AND FEDEX CUSTOMER INFORMATION SERVICES, INC.)

61. AA incorporates by reference its responses to paragraphs 1-60.

62. AA admits that on their face, '968, '150, and '285 patents list Ronald A. Katz as inventor, and the '863, '551, '734, '762, '893, '120, '065, '965, '134, '703, '223, '415, and '360

9

patents list RAKTL as the assignee.  AA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62 and, therefore, denies the same.

63.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 and, therefore, denies the same.

64.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 and, therefore, denies the same.

65.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 and, therefore, denies the same.

66.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 and, therefore, denies the same.

67.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 and, therefore, denies the same.

## COUNT III

**(PATENT INFRINGEMENT BY HILTON HOTEL CORPORATION, HILTON RESERVATIONS WORLDWIDE LLC, AND HILTON HHONORS WORLDWIDE LLC)**

68.     AA incorporates by reference its responses to paragraphs 1-67.

69.     AA admits that on their face, the '968, '984, '252, '150, and '285 patents list Ronald A. Katz as inventor, and the '863, '156, '551, '734, '762, '893, '120, '065, '965, '134, '703, '223, and '360 patents list RAKTL as the assignee.  AA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 69 and, therefore, denies the same.

70.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 and, therefore, denies the same.

10

71.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 and, therefore, denies the same.

72.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 and, therefore, denies the same.

73.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 and, therefore, denies the same.

74.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 and, therefore, denies the same.

### COUNT IV

### (PATENT INFRINGEMENT BY MARRIOTT INTERNATIONAL, INC., AND MARRIOTT WORLDWIDE RESERVATION SERVICES, LLC)

75.     AA incorporates by reference its responses to paragraphs 1-74.

76.     AA admits that on their face, the '984 and '252 patents lists Ronald A. Katz as inventor, and the '863, '156, '551, '762, '965, and '360 patents list RAKTL as the assignee.  AA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 76 and, therefore, denies the same.

77.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 and, therefore, denies the same.

78.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 and, therefore, denies the same.

79.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 and, therefore, denies the same.

80.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 and, therefore, denies the same.

11

81.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 and, therefore, denies the same.

### COUNT V

### (PATENT INFRINGEMENT BY NATIONAL RAILROAD PASSENGER CORPORATION DBA AMTRAK)

82.     AA incorporates by reference its responses to paragraphs 1-81.

83.     AA admits that on their face, the '968, '150, '285 patents list Ronald A. Katz as inventor, and the '863, '156, '551, '893, '120, '135, '065, '965, '703, and '360 patents list RAKTL as the assignee.  AA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 83 and, therefore, denies the same.

84.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 and, therefore, denies the same.

85.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 and, therefore, denies the same.

86.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 and, therefore, denies the same.

87.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 and, therefore, denies the same.

88.     AA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 and, therefore, denies the same.

### FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

89.     AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any of the '984, '150, '285, '863, '156, '551,

12

'734, '762, '893, '120, '135, '065, '965, '223, and '360 patents (collectively "the Asserted Patents").

## SECOND AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

90. RAKTL's enforcement of the Asserted Patents against AA is barred by the doctrine of prosecution history estoppel.

## THIRD AFFIRMATIVE DEFENSE

### (Invalidity)

91. One or more of the claim of the Asserted Patents are invalid for failure to satisfy one or more of the conditions of patentability set forth in U.S.C. §§ 101, 102, 103, and 112.

## FOURTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

92. Each of the Asserted Patents is unenforceable in whole or in part for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as the Asserted Patents and/or related applications.

93. During the prosecution of the applications that ultimately led to the issuance of the asserted patents or the applications upon which priority is claimed, the named inventor, Ronald A. Katz, and/or his attorneys and appointed representatives (collectively "Katz") engaged in inequitable conduct, thereby rendering the Asserted Patents unenforceable for failure to comply with the duty of candor in the United States Patent and Trademark Office.

94. On information and belief, Katz exercised a pattern and practice of conduct during the prosecution of the applications that issued as the Asserted Patents and/or related applications in the Patent and Trademark Office that violated the duty of candor owed by patent

13

applicants with the intent to deceive the Patent and Trademark Office and its agents into issuing patent claims of a scope beyond any to which Katz was entitled. This pattern included intentionally withholding material prior art from the Patent and Trademark Office and making false statements, such as with regard to the priority date to which Katz's applications were entitled.

## I.      Withholding Material Prior Art

### A.      Periphonics

95.      By way of example, on information and belief, Katz intentionally withheld from the Patent and Trademark Office highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Katz was not entitled. On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm"). The Nilsson firm was involved in prosecuting many of Katz's patent applications, some of which would ultimately issue as the Asserted Patents.

96.      On information and belief, in U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant." However, on information and belief, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents). Paper no. 3, filed November 4, 1994. On information and belief, Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set

14

I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

97.     On information and belief, Katz made the same statements in the applications that issued as U.S. Patent No. 5,561,707 ("the '707 patent") (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994), and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751).   On information and belief, other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent.  These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997), and the '551 patent (IDS filed October 2, 1996).

98.     On information and belief, in connection with making these statements and references during prosecution of the '707, '965, '285, '893, '863, '762, and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials.  In addition to those submitted, the original West materials further included a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095) and (2) Periphonics VoicePac System with Peritalk Announce Product Description and user Guide, Publication #327060 IC, 1987 ("the VoicePac reference") (W73219-W73302).

99.     On information and belief, the Bank-From-Home reference and the VoicePac reference are highly relevant to many claims of the Asserted Patents.  The Bank-From-Home reference describes such limitations of claims of the Asserted Patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and

designating, as related to callers to the disclosed system.  The VoicePac reference describes such limitations of claims of the Asserted Patents as interfacing callers to the system and transferring callers to a customer service representative.

100.    While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the '707, '965, '285, '893, '863, '762, and '551 patents, on information and belief, the Bank-From-Home and VoicePac references were knowingly withheld during prosecution of at least these patents with knowledge of their materiality.  Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.  Thus, at least the '965, '285, '893, '863, '762, and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

101.    Other Asserted Patents are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability.  For example, the '065 and '360 patents have specifications substantially identical to those of the '707, '863, '762, and '551 patents, and rely for priority on U.S. Patent No. 4,845,739 ("the '739 patent"), also having a substantially identical specification.  The '065 and '360 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '707, '863, '762, '551, and '739 patents.  In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

16

102.     Thus, Katz's inequitable conduct renders each of the '965, '285, '893, '863, '762, '551, '065, and '360 patents unenforceable in their entirety.

### B.     Barger

103.     In another example, Katz's pattern of misconduct included Katz's failure to disclose to the Patent and Trademark Office U.S. Patent No. 4,071,698 to Barger, Jr. et al. ("the Barger patent") during the prosecution of many of Katz's patents, including numerous that issued as the Asserted Patents and other applications from which priority is claimed.  On information and belief, Katz had knowledge of the relevance and materiality of the Barger patent to claims pending before the Patent and Trademark Office.

104.     The Barger patent teaches an interactive voice system for marketing merchandise. The customer selects and listens to an audio demonstration and may arrange payment by credit card or other means.  The system maintains a complete record of all transactions, including requests for demonstrations played by each customer, in order to maintain current inventory records and to determine trends. The system can use this transaction history to determine whether a customer is a "tree loader," and accordingly limit his access to the system.

105.     The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains required information from the customer that is placed in a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer.  On completion of the demonstration, the customer is returned to a live operator, who will take the order.

106.     Many features disclosed in the Barger patent are relevant to Katz's claims.  For example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.  In addition,

the Barger patent has been relied upon in third party requests for reexamination of the '707 patent and U.S. Patent No. 6,292,547 ("the '547 patent"), which have specifications substantially identical to that of the '739 patent.

107.    Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the Patent and Trademark Office in deciding whether to allow Katz's pending claims.  The materiality of the Barger patent was confirmed by the Patent and Trademark Office's rejection of all of the claims of the '707 patent in 2006, based, in part, on the Barger patent.  Ex Parte Reexamination, Control Nos. 90/007,074 & 90/006,978, at 5.  The examiner rejected claims 9, 12, 22-24, 25, 137, 141, 144-46, 150, 151, 154, 156, and 167 under 35 U.S.C. §§ 102(b) or 102(e), in light of the Barger patent.  *Id.* at 2, 53-61.

108.    The Barger patent was filed in the Patent and Trademark Office on January 10, 1977, a full eight years before Katz's first application.

109.    On information and belief, Katz became aware of the Barger patent and its materiality to Katz's claims at least as early as January 1989.  On information and belief, on or about December 1988, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederick Coles.  On information and belief, Mr. Coles sent a copy of the search report to Byard Nilsson, an attorney handling prosecution of many of Katz's applications, in January 1989. This search report identified the Barger patent as being "particularly relevant" to Katz's application.

110.    Notwithstanding Katz's knowledge of the Barger patent and of its materiality as alleged herein, Katz failed to disclose this prior art to the Patent and Trademark Office during the prosecution of at least the U.S. Patent No. 5,073,929 ("the '929 patent") and the '739, '984, '150, '285, and '965 patents.  Katz was under a duty to disclose to the Patent and Trademark Office

18

information material to Katz's applications (including prior art cited in foreign patent prosecutions). Katz's failure to disclose the Barger patent, with knowledge of its materiality, constitutes inequitable conduct.

111.    On information and belief, Katz deliberately withheld the Barger patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '929, '984, '150, '285, and '965 patents.

112.    As Katz was aware of both the significance and relevance of the Barger patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '739, '929, '984, '150, '285, and '965 patents constituted inequitable conduct.  Other Asserted Patents are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability.

113.    At least the '150, '285, and '965 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

114.    All of the Asserted Patents except the '150 patent claim priority from the '739 patent.  These Asserted Patents each contain claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which Barger would have been relevant.  Thus, the '893, '360, '223, '965, '065, '135, '120, '762, '734, '551, '156, '863, 984, and '285 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

115.    The '734, '120, and '223 patents claim priority from the '984, '929, and '739 patents.

116.    The '734, '120, and '223 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '984 to which Barger would have been

19

relevant.  On information and belief, the '734, '120, and '223 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '929 and '739 patents and to which Barger would have been relevant.  Thus, the '734, '120, and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '984, '929, and '739 patents.

117.   The '285, '150, and '739 patents are rendered unenforceable for conduct concerning the Barger patent that occurred during the prosecution thereof.

118.   The '893 patent claims priority to the '285, '150, and '739 patents.  The '893 patent contains claims with subject matter that was at issue during prosecution of the '285 patent to which Barger would have been relevant.  Additionally, on information and belief, the '893 patent contains claims with subject matter that was at issue during prosecution of the '150 and '739 patents and to which Barger would have been relevant. Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '285, '150, and '739 patents.

119.   The inequitable conduct concerning the Barger patent renders unenforceable at least the '150, '285, '893, '863, '551, '065, '360, '762, '734, '120, '223, and '965 patents.

### C.   De Bruyn

120.   In another example, on information and belief, Katz withheld European Patent Specification No. 32,410 to De Bruyn (the "De Bruyn patent") from the Patent and Trademark Office during the prosecution of many of Katz's earlier patents. On information and belief, Katz was well aware of the materiality of the De Bruyn patent to Katz's pending claims.

121.   The  De Bruyn patent was published on July 22, 1981 and disclosed an interactive voice system for implementing a lottery. On information and belief, it was cited in the same

20

European search report that identified the Barger patent. Thus, on information and belief, Katz also became aware of the De Bruyn patent at least as early as January 1989.

122.    On information and belief, the European search report identified the De Bruyn patent as "particularly relevant."  The De Bruyn patent is also substantively identical to Canadian Patent 1,162,336 ("the De Bruyn Canadian patent"), which was relied upon by the Patent and Trademark Office examiner in the reexamination and rejection of several of Katz's patents related to the Asserted Patents, including the '707 patent and U.S. Patent Nos. 5,255,309 ("the '309 patent") and 5,259,023 ("the '023 patent").  Nearly all of the claims of the '707 patent were rejected based on the De Bruyn Canadian patent under 35 U.S.C. §§ 102(b) or 102(e) and 103(a). Ex Parte Reexamination, Control Nos. 90/006,978 & 90/006,978, at pp. 9-25, 62-63, 68-71, 72, 101, 103-10, 170-71, 174-78, 181-83, 185-87, 190.  Similarly, with respect to the '309 patent, the examiner rejected a majority of the claims based on the De Bruyn Canadian patent under 35 U.S.C. §§ 102(b) and 103(a).  Ex Parte Reexamination, Control Nos. 90/007,092 & 90/006976, at pp. 9-20, 33-44, 47-70.  With regard to the '023 patent, the examiner rejected claims 1, 2, 5, 6, 8, 10, 20-26 based on the De Bruyn Canadian patent under 35 U.S.C. §§ 102 and 103.  Ex parte Reexamination, Control Nos. 90/007,058 & 90/006,977, at pp. 3-10, 25-27, 29, 64, 70-72.

123.    Like all of the Asserted Patents, except for the '150 patent, each of the '707, '309, and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

124.    On information and belief, Katz deliberately withheld the De Bruyn patent with knowledge of its materiality with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '150, '075, '929, '984, and '252 patents.

21

125.     As Katz was aware of both the significance and materiality of the De Bruyn patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '739, '150, '075, '929, '984, and '252 patents constituted inequitable conduct. Nearly all of the Asserted Patents are directly related to these patents and are, thus, rendered unenforceable through infectious unenforceability.

126.     The '893, '863, '551, '360, and '762 patents are closely related to at least the '739 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '893, '863, '551, and '360 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

127.     All of the Asserted Patents except the '150 patents claim priority from the '739 patent. These Asserted Patents all contain claims with subject matter that was at issue during the '739 patent prosecution and to which De Bruyn would have been relevant. Thus, the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, and '156 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

128.     On information and belief, Katz deliberately withheld the De Bruyn patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '150 patent.

129.     As Katz was aware of both the significance and relevance of the De Bruyn patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '150 patent constituted inequitable conduct.

130.     The '285 and '893 patents claim priority to the '150 patent.

22

131.     On information and belief, the '285 and '893 patents all contain claims with subject matter that was at issue during the '150 patent prosecution and to which De Bruyn would have been relevant. Thus, the '150, '285, and '893 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150 patent.

132.     On information and belief, Katz deliberately withheld the De Bruyn patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '929, '984, and '252 patents.

133.     As Katz was aware of both the significance and relevance of the De Bruyn patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '929, '984, and '252 patents constituted inequitable conduct.

134.     The '734, '120, and '223 patents claim priority to the '929, '984, and '252 patents.

135.     The '734, '120, and '223 patents contain claims with subject matter that was at issue during prosecution of the '984 and '252 patents and to which De Bruyn would have been relevant.  On information and belief, the the '734, '120, and '223 patents contain claims with subject matter that was at issue during prosecution of the '929 patent and to which De Bruyn would have been relevant.  Thus, the '734, '120, and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '929, '984, and '252 patents.

136.     The inequitable conduct concerning the De Bruyn patent renders unenforceable at least the '150, '285, '893, '863, '551, '065, '360, '762, '734, '120, '223, and '965 patents.

23

### D.    Yoshizawa

137.    In another example, on information and belief, as part of the prosecution of the
'575 patent, Katz failed to disclose a prior art article entitled "Voice Response System for
Telephone Betting" by Yoshizawa et al. ("the Yoshizawa article") that appeared in the 1977
issue of *Hitachi Review* magazine.

138.    On information and belief, the Yoshizawa article discloses an automated off-track
betting system including a voice response unit, a public telephone network and a central
processing unit.  Incoming calls are answered by the voice response unit prompting the caller to
enter an account number and password, and then select one or more pari-mutuel tickets; for
example, a wager on a horse to show.  The entered data is then stored in the caller's account file.
Each wager is counted against a preset daily wagering limit.  The caller is provided with a
registration number referencing the transaction.  Ticket payments are made automatically by
deducting the cost of the ticket from the caller's bank account.  On information and belief, the
article specifically mentions that the system could be used for "winning a lot number service"; in
other words, a lottery.

139.    On information and belief, many features relevant to the '575 patent claims are
disclosed in the Yoshizawa article.  For example, on information and belief, Yoshizawa discloses
limiting access and use to a telephone based gambling or lottery system and qualifying callers
based on an account number.

140.    On information and belief, Katz was aware of the materiality of the Yoshizawa
article at least as early as September 2, 1992 - over two years before the issuance of the '575
patent - when it was cited in response to interrogatories in the West case.

Dallas 226913

141.    Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality, on information and belief, Katz failed to disclose this material prior art reference to the Patent and Trademark Office as part of the prosecution of the '575 patent in violation of his duty of candor.

142.    On information and belief, Katz intentionally withheld the material Yoshizawa article from the Patent and Trademark Office as part of the prosecution of the '575 patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '575 patent unenforceable.

143.    The '135 and '156 patents claim priority from and claims subject matter related to the '575 patent.  Katz's inequitable conduct renders the '135 and '156 patents unenforceable.

### E.    Florafax

144.    On information and belief, during the prosecution of the '575 patent and the '576 patent, Katz had knowledge of and failed to disclose a brochure dated January 22, 1986 and circulated by Florafax at or about that time ("the Florafax brochure")

145.    On information and belief, the Florafax brochure is material to the '575 and '576 patents.  On information and belief, the Florafax brochure discloses a service for providing a recorded message in association with the delivery of a floral bouquet.  After purchasing the bouquet, the sender receives a card from the florist that includes a telephone number and an ID number printed thereon.  Upon calling the number indicated, the sender is prompted to enter the ID number and record a personal message.  When the flowers are delivered, a corresponding card instructs the recipient to call a specified number to hear the sender's prerecorded message. The message may only be played twice before it is automatically erased.  The Florafax "Talking

25

Bouquet" system was test marketed at least as early as December 1985, demonstrating public use of the concepts embodied in the brochure.

146.    On information and belief, the Florafax brochure and associated service operation disclose many of the features claimed in the '575 and the related '576 patent.  For example, providing cards or tickets with an identification number printed thereon for access to an automated interactive system.

147.    On information and belief, Katz was aware of the materiality of the Florafax reference at least as early September 2, 1992 - over two years before the issuance of the '575 patent and over seven years before the issuance of the '576 patent - when it was cited in response to interrogatories in the West case.

148.    On information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it as part of the prosecution of the '575 and '576 patents in violation of his duty of candor.

149.    On information and belief, Katz intentionally withheld the material Florafax brochure from the Patent and Trademark Office as part of the prosecution of the '575 and '576 patents with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '575 and '576 patents unenforceable.

150.    The '135 and '156 patents claim priority from and claim subject matter related to the '575 patent.  The '135 patent further claims priority from and claims subject matter related to the '576 patent.  Katz's inequitable conduct renders the '135 and '156 patents unenforceable.

## II.      False and Misleading Statements

151.    On information and belief, to obtain from the Patent and Trademark Office claims to which Katz was not entitled, Katz made false and misleading statements about the priority dates to which claims of pending applications were entitled, with the intent to thereby remove as prior art references that were before the Patent and Trademark Office in Katz's pending applications.

152.    Katz's pattern and practice of inequitable conduct was repeated during the prosecution of other applications leading to the Asserted Patents, infecting either directly or indirectly all of the applications, and thereby rendering all of the Asserted Patents unenforceable in their entirety.

153.    In another example, during the prosecution of the '734 patent, Katz identified U.S. Patent No. 4,972,461, issued to Brown ("the Brown patent"), to the Patent and Trademark Office. Katz, however, falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent.  Amendment, January 31, 1996 at page 11-12.  On information and belief, the '734 patent does not properly claim priority to the '150 patent.  Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

154.    The '120 and '223 patents are closely related to the '734 patent and are, thus, rendered unenforceable through infectious unenforceability.  The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent, and claim subject matter encompassing similar scope to the claims of the '734 patent.  In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120 and '223 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly

27

identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

155.    In another example, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,797,913 issued to Kaplan et al. ("the Kaplan patent"), to the Patent and Trademark Office.  Katz, however, falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference."  Supplemental Amendment filed March 14, 1995, at p. 20.  On information and belief, Katz's statement was false at the time it was made since there were claims pending that claimed subject matter not supported in any parent applications filed prior to August 4, 1987, the filing date of the Kaplan patent.  For example, claim 17 that was pending at the time of Katz's statement recited multiple call modes.  There is no suggestion of multiple call modes in, for example, the '968 patent.   Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

156.    The '120 and '223 patents are closely related to the '734 patent and are, thus, rendered unenforceable through infectious unenforceability.  The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent, and claim subject matter encompassing similar scope to the claims of the '734 patent.  In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120 and '223 patents any patent term subsequent to the patent term of the '984 patent in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were

not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

## FIFTH AFFIRMATIVE DEFENSE

### (Unclean Hands/Patent Misuse)

157.    RAKTL is barred from any relief in this action and at least the '734, '120, '134, and '223 patents are unenforceable under the doctrines of unclean hands and/or patent misuse because RAKTL has asserted the '734, '120, '134, and '223 patents with knowledge that at least one claim in each of these patents is invalid.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver/Estoppel/Laches)

158.    RAKTL's claims are barred by the equitable doctrines of waiver, estoppel, and/or laches.

159.    The Asserted Patents are unenforceable due to laches in light of RAKTL's unreasonable delay in asserting the claimed inventions.

## SEVENTH AFFIRMATIVE DEFENSE

### (License)

160.    RAKTL's claims are barred by express or implied license based upon, among other things, a patent license agreement relating to the Asserted Patents between RAKTL and AT&T.

## EIGHTH AFFIRMATIVE DEFENSE

### (Patent Exhaustion)

161.    RAKTL's claims are barred by the doctrine of patent exhaustion.

Dallas 226913

## NINTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

162.    To the extent that RAKTL seeks damages for alleged infringement more than six years prior to the filing of this action, the claims are barred by the statute of limitations pursuant to 35 U.S.C. §286.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Provide Notice)

163.    To the extent that RAKTL seeks damages for any alleged infringement prior to its giving actual notice of the patents to AA, its claims are barred pursuant to 35 U.S.C. §287(a).

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unenforceability Due to Prosecution Laches)

164.    RAKTL's claims are barred in whole or in part because of unreasonable and unexplained delays in the prosecution of those patents.

## COUNTERCLAIMS

Counterclaim-plaintiffs American Airlines, Inc. and American Beacon Advisors, Inc. (collectively "AA") allege the following counterclaims against Counterclaim-defendant Ronald A. Katz Technology Licensing, L.P. ("RAKTL"):

## THE COUNTERCLAIM PARTIES

165.    Counterclaim-plaintiff American Airlines, Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 4333 Amon Carter Blvd., Fort Worth, Texas 76155.

Dallas 226913

166.    Counterclaim-plaintiff American Beacon Advisors, Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 4151 Amon Carter Blvd., MD 2450, Fort Worth, Texas 76155.

167.    On information and belief, Counterclaim-defendant RAKTL is a limited partnership organized under the laws of the State of California, having a principal place of business at 9220 Sunset Blvd. #315, Los Angeles, California 90069.

168.    This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. § 1, *et seq.*

169.    This Court has personal jurisdiction over RAKTL because RAKTL has commenced the underlying patent infringement action in this court.

170.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because RAKTL filed this action in this district.

## COUNTERCLAIM I

### (Declaratory Judgment Regarding the '551 Patent)

171.    AA repeats and realleges paragraphs 1-170 above as if fully set forth herein.

172.    RAKTL purports to be the sole holder of the entire right, title and interest in the '551 patent.

173.    RAKTL has sued AA in the present action, alleging infringement of the '551 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '551 patent.

174.    AA did not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '551 patent

31

under any theory, including literal infringement or infringement under the doctrine of equivalents.

175.    Each and every claim of the '551 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

176.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '551 patent or that the claims of the '551 patent are invalid or unenforceable.

## COUNTERCLAIM II

### (Declaratory Judgment Regarding the '065 Patent)

177.    AA repeats and realleges paragraphs 1-176 above as if fully set forth herein.

178.    RAKTL purports to be the sole holder of the entire right, title and interest in the '065 patent.

179.    RAKTL has sued AA in the present action, alleging infringement of the '065 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '065 patent.

180.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '065 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

181.    Each and every claim of the '065 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

182.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '065 patent or that the claims of the '065 patent are invalid or unenforceable.

## COUNTERCLAIM III

### (Declaratory Judgment Regarding the '360 Patent)

183.    AA repeats and realleges paragraphs 1-182 above as if fully set forth herein.

184.    RAKTL purports to be the sole holder of the entire right, title and interest in the '360 patent.

185.    RAKTL has sued AA in the present action, alleging infringement of the '360 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '360 patent.

186.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '360 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

187.    Each and every claim of the '360 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

188.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '360 patent or that the claims of the '360 patent are invalid or unenforceable.

## COUNTERCLAIM IV

### (Declaratory Judgment Regarding the '762 Patent)

189.   AA repeats and realleges paragraphs 1-188 above as if fully set forth herein.

190.   RAKTL purports to be the sole holder of the entire right, title and interest in the '762 patent.

191.   RAKTL has sued AA in the present action, alleging infringement of the '762 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '762 patent.

192.   AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '762 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

193.   Each and every claim of the '762 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

194.   AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '762 patent or that the claims of the '762 patent are invalid or unenforceable.

## COUNTERCLAIM V

### (Declaratory Judgment Regarding the '863 Patent)

195.   AA repeats and realleges paragraphs 1-194 above as if fully set forth herein.

196.   RAKTL purports to be the sole holder of the entire right, title and interest in the '863 patent.

34

197.    RAKTL has sued AA in the present action, alleging infringement of the '863 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '863 patent.

198.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '863 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

199.    Each and every claim of the '863 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

200.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '863 patent or that the claims of the '863 patent are invalid or unenforceable.

## COUNTERCLAIM VI

### (Declaratory Judgment Regarding the '150 Patent)

201.    AA repeats and realleges paragraphs 1-201 above as if fully set forth herein.

202.    RAKTL purports to be the sole holder of the entire right, title and interest in the '150 patent.

203.    RAKTL has sued AA in the present action, alleging infringement of the '150 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '150 patent.

204.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '150 patent

under any theory, including literal infringement or infringement under the doctrine of equivalents.

205.    Each and every claim of the '150 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

206.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '150 patent or that the claims of the '150 patent are invalid or unenforceable.

## COUNTERCLAIM VII

### (Declaratory Judgment Regarding the '285 Patent)

207.    AA repeats and realleges paragraphs 1-207 above as if fully set forth herein.

208.    RAKTL purports to be the sole holder of the entire right, title and interest in the '285 patent.

209.    RAKTL has sued AA in the present action, alleging infringement of the '285 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '285 patent.

210.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '285 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

211.    Each and every claim of the '285 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

Dallas 226913

212.     AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '285 patent or that the claims of the '285 patent are invalid or unenforceable.

## COUNTERCLAIM VIII

### (Declaratory Judgment Regarding the '893 Patent)

213.     AA repeats and realleges paragraphs 1-212 above as if fully set forth herein.

214.     RAKTL purports to be the sole holder of the entire right, title and interest in the '893 patent.

215.     RAKTL has sued AA in the present action, alleging infringement of the '893 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '893 patent.

216.     AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '893 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

217.     Each and every claim of the '893 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

218.     AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '893 patent or that the claims of the '893 patent are invalid or unenforceable.

Dallas 226913

## COUNTERCLAIM IX

### (Declaratory Judgment Regarding the '984 Patent)

219.    AA repeats and realleges paragraphs 1-219 above as if fully set forth herein.

220.    RAKTL purports to be the sole holder of the entire right, title and interest in the '984 patent.

221.    RAKTL has sued AA in the present action, alleging infringement of the '984 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '984 patent.

222.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '984 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

223.    Each and every claim of the '984 patent is invalid for failure to meet the conditions for patentability specified in, among others 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

224.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '984 patent or that the claims of the '984 patent are invalid or unenforceable.

## COUNTERCLAIM X

### (Declaratory Judgment Regarding the '734 Patent)

225.    AA repeats and realleges paragraphs 1-224 above as if fully set forth herein.

226.    RAKTL purports to be the sole holder of the entire right, title and interest in the '734 patent.

227.    RAKTL has sued AA in the present action, alleging infringement of the '734 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '734 patent.

228.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '734 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

229.    Each and every claim of the '734 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

230.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '734 patent or that the claims of the '734 patent are invalid or unenforceable.

## COUNTERCLAIM XI

### (Declaratory Judgment Regarding the '120 Patent)

231.    AA repeats and realleges paragraphs 1-230 above as if fully set forth herein.

232.    RAKTL purports to be the sole holder of the entire right, title and interest in the '120 patent.

233.    RAKTL has sued AA in the present action, alleging infringement of the '120 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '120 patent.

234.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '120 patent

under any theory, including literal infringement or infringement under the doctrine of equivalents.

235.   Each and every claim of the '120 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

236.   AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '120 patent or that the claims of the '120 patent are invalid or unenforceable.

## COUNTERCLAIM XII

### (Declaratory Judgment Regarding the '223 Patent)

237.   AA repeats and realleges paragraphs 1-236 above as if fully set forth herein.

238.   RAKTL purports to be the sole holder of the entire right, title and interest in the '223 patent.

239.   RAKTL has sued AA in the present action, alleging infringement of the '223 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '223 patent.

240.   AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '223 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

241.   Each and every claim of the '223 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

40

242.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '223 patent or that the claims of the '223 patent are invalid or unenforceable.

## COUNTERCLAIM XIII

### (Declaratory Judgment Regarding the '965 Patent)

243.    AA repeats and realleges paragraphs 1-242 above as if fully set forth herein.

244.    RAKTL purports to be the sole holder of the entire right, title and interest in the '965 patent.

245.    RAKTL has sued AA in the present action, alleging infringement of the '965 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '965 patent.

246.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '965 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

247.    Each and every claim of the '965 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

248.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '965 patent or that the claims of the '965 patent are invalid or unenforceable.

41

## COUNTERCLAIM XIV

### (Declaratory Judgment Regarding the '135 Patent)

249.     AA repeats and realleges paragraphs 1-248 above as if fully set forth herein.

250.     RAKTL purports to be the sole holder of the entire right, title and interest in the '135 patent.

251.     RAKTL has sued AA in the present action, alleging infringement of the '135 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '135 patent.

252.     AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '135 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

253.     Each and every claim of the '135 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

254.     AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any claim of the '135 patent or that the claims of the '135 patent are invalid or unenforceable.

## COUNTERCLAIM XV

### (Declaratory Judgment Regarding the '156 Patent)

255.     AA repeats and realleges paragraphs 1-254 above as if fully set forth herein.

256.     RAKTL purports to be the sole holder of the entire right, title and interest in the '156 patent.

42

Dallas 226913

257.    RAKTL has sued AA in the present action, alleging infringement of the '156 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and AA with respect to the alleged infringement, validity, and enforceability of the '156 patent.

258.    AA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any valid and enforceable claim of the '156 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

259.    Each and every claim of the '156 patent is invalid for failure to meet the conditions for patentability specified in, among others, 35 U.S.C. §§ 101, 102, 103 or 112 or unenforceable.

260.    AA requests a declaratory judgment that it has not and does not infringe, directly or indirectly, any of the '156 patent or that the claims of the '156 patent are invalid or unenforceable.

## PRAYER FOR RELIEF

THEREFORE, AA prays that the Court grant it the following relief:

1.      A denial of any and all relief requested by RAKTL, as set forth in the Request For Relief of the Complaint, and a dismissal of the Complaint with prejudice;

2.      A declaration that AA does not and has not infringed the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, and '165 patents;

3.      A declaration that the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, and '165 patents are invalid;

4.      A declaration that the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, and '165 patents are unenforceable;

43

5.       A declaration that this case is exceptional and an award to AA of its reasonable attorneys' fees and costs pursuant to 35 U.S.C. §205; and

6.       A grant to AA of such other relief as this Court deems appropriate.

DATED:  October 16, 2006.                         Respectfully submitted,

                                                  **McKOOL SMITH, P.C.**

                                                  /s/ Mike McKool
                                                  MIKE MCKOOL
                                                  Lead Attorney
                                                  Texas State Bar No. 13732100
                                                  mmckool@mckoolsmith.com
                                                  ROSEMARY SNIDER
                                                  Texas State Bar No. 18796500
                                                  rsnider@mckoolsmith.com
                                                  GARRETT CHAMBERS
                                                  Texas State Bar No. 00792160
                                                  gchambers@mckoolsmith.com
                                                  300 Crescent Court, Suite 1500
                                                  Dallas, Texas 75201
                                                  Telephone: (512) 978-4000
                                                  Telecopier: (512) 978-4044

                                                  SAM BAXTER
                                                  Texas State Bar No. 01938000
                                                  sbaxter@mckoolsmith.com
                                                  505 E. Travis, Suite 105
                                                  P.O. Box O
                                                  Marshall, Texas 75670
                                                  Telephone: (903) 927-2111
                                                  Telecopier: (903) 927-2622

                                                  PETER AYERS
                                                  Texas State Bar No. 24009882
                                                  payers@mckoolsmith.com
                                                  300 West Sixth Street, Suite 1700
                                                  Austin, Texas 78701
                                                  Telephone: (512) 692-8700
                                                  Telecopier: (512) 692-8744

                                                  **ATTORNEYS FOR DEFENDANTS**
                                                  **AMERICAN AIRLINES, INC. AND**
                                                  **AMERICAN BEACON ADVISORS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served via the Court's ECF system on all counsel of record on the 16th day of October, 2006.


/s/ Mike McKool
Mike McKool