VERNON M. WINTERS (Bar No. 130128)
vern.winters@weil.com
CHRISTOPHER J. COX (Bar No. 151650)
chris.cox@weil.com
JILL J. HO (Bar No. 236349)
jill.ho@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

MIKE McKOOL, JR.
mmckool@mckoolsmith.com
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

PETER J. AYERS
payers@mckoolsmith.com
MCKOOL SMITH P.C.
300 W. Sixth Street, #1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Attorneys for Defendants
AMERICAN AIRLINES, INC. and
AMERICAN BEACON ADVISORS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE:<br>Katz Interactive Call Processing Patent Litigation<br><br>This document relates to:<br><br>Ronald A. Katz Technology Licensing L.P. v. American Airlines, Inc., et al<br>CV 07-2196 RGK (FFMx) | Case No. 07-ML-1816-B-RGK (FFMx)<br><br>**AMERICAN'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |

American Airlines, Inc. ("American Airlines") and American Beacon Advisors, Inc. ("American Beacon Advisors"), collectively ("American"), hereby answer Plaintiff Ronald A. Katz Technology Licensing, L.P.'s ("RAKTL") First Amended Complaint For Patent Infringement ("Amended Complaint") as follows:

## THE PARTIES

1.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 of the Amended Complaint and, on that basis, denies them.

2.     American admits the allegations of paragraph 2 of the Amended Complaint.

3.     American admits the allegations of paragraph 3 of the Amended Complaint.

4.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 4 of the Amended Complaint and, on that basis, denies them.

5.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 5 of the Amended Complaint and, on that basis, denies them.

6.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 6 of the Amended Complaint and, on that basis, denies them.

7.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7 of the Amended Complaint and, on that basis, denies them.

8.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 8 of the Amended Complaint and, on that basis, denies them.

## JURISDICTION AND VENUE

9.    American admits that this is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 *et seq.*

10.    American admits that the United States District Court for the Eastern District of Texas ("the Texas Court") has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.    American admits that, for purposes of this case, American Airlines and American Beacon Advisors are subject to the Texas Court's personal jurisdiction. American further admits that it has registered agents for service of process in the State of Texas.  American denies the remaining allegations in paragraph 11 of the Amended Complaint.

12.    American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Amended Complaint and, on that basis, denies them.

13.    American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Amended Complaint and, on that basis, denies them.

14.    American admits that venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391 and 1400.  American further admits that this case is before this Court pursuant to the Transfer Order of the Judicial Panel on Multidistrict Litigation dated March 20, 2007, *In re Katz Interactive Call Processing Patent Litig.*, Docket No. 1816.

## BACKGROUND FACTS

15.    American admits that on their face, U.S. Patent Nos. 4,792,968 ("the '968 patent"), 4,930,150 ("the '150 patent"), 5,128,984 ("the '984 patent"), 5,251,252 ("the '252 patent"), 5,255,309 ("the '309 patent"), 5,351,285 ("the '285 patent"), 5,561,707 ("the '707 patent"), 5,684,863 ("the '863 patent"), 5,787,156 ("the '156 patent"), 5,815,551 ("the '551 patent"), 5,828,734 ("the '734 patent"),

5,835,576 ("the '576 patent"), 5,898,762 ("the '762 patent"), 5,917,893 ("the '893 patent"), 5,974,120 ("the '120 patent"), 6,044,135 ("the '135 patent"), 6,148,065 ("the '065 patent"), 6,292,547 ("the '547 patent"), 6,335,965 ("the '965 patent"), 6,349,134 ("the '134 patent"), 6,424,703 ("the '703 patent"), 6,434,223 ("the '223 patent"), 6,512,415 ("the '415 patent"), and 6,678,360 ("the '360 patent") list Ronald A. Katz as the sole named inventor.   American denies the remaining allegations in paragraph 15 of the Amended Complaint.

16.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Amended Complaint and, on that basis, denies them.

17.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Amended Complaint and, on that basis, denies them.

18.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Amended Complaint and, on that basis, denies them.

19.     American admits that on its face, the '968 patent lists December 20, 1988 as the issue date.  American lacks knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 19 and, on that basis, denies them.

20.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the Amended Complaint and, on that basis, denies them.

21.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the Amended Complaint and, on that basis, denies them.

22.    American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22 of the Amended Complaint and, on that basis, denies them.

23.    American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23 of the Amended Complaint and, on that basis, denies them.

24.    American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the Amended Complaint and, on that basis, denies them.

25.    American admits that AT&T has licensed the patents-in-suit. American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25 of the Amended Complaint and, on that basis, denies them.

26.    American denies that they employ the inventions of the '968, '150, '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents (collectively "the Asserted Patents"). American lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 26 and, on that basis, denies them.

## THE PATENTS-IN-SUIT

27.    American admits that the '968 patent is entitled "Statistical Analysis System For Use With Public Communication Facility," and on its face lists Ronald A. Katz as the sole named inventor and December 20, 1988 as the issue date. American further admits that the term of the '968 patent extended no later than December 20, 2005. American denies the remaining allegations in paragraph 27 of the Amended Complaint.

28.    American admits that the '150 patent is entitled "Telephonic Interface Control System," and on its face lists Ronald A. Katz as the sole named inventor

and May 29, 1990 as the issue date.  American further admits that the term of the '150 patent extended no later than December 20, 2005.  American denies the remaining allegations in paragraph 28 of the Amended Complaint.

29.    American admits that the '984 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as the sole named inventor and July 7, 1992 as the issue date.  American denies the remaining allegations in paragraph 29 of the Amended Complaint.

30.    American admits that the '252 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as the sole named inventor and October 5, 1993 as the issue date.  American denies the remaining allegations in paragraph 30 of the Amended Complaint.

31.    American admits that the '285 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as the sole named inventor and September 27, 1994 as the issue date.  American further admits that the '285 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 31 of the Amended Complaint.

32.    American admits that the '863 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as the sole named inventor and November 4, 1997 as the issue date.  American further admits that the '863 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 32 of the Amended Complaint.

33.    American admits that the '156 patent is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as the sole named inventor and July 28, 1998 as the issue date.  American further admits that the '156 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 33 of the Amended Complaint.

34.    American admits that the '551 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as the sole named

inventor and September 29, 1998 as the issue date.  American further admits that the '551 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 34 of the Amended Complaint.

35.    American admits that the '734 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as the sole named inventor and October 27, 1998 as the issue date.  American denies the remaining allegations in paragraph 35 of the Amended Complaint.

36.    American admits that the '762 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as the sole named inventor and April 27, 1999 as the issue date.  American further admits that the '762 patent expired on December 20, 2005.   American denies the remaining allegations in paragraph 36 of the Amended Complaint.

37.    American admits that the '893 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as the sole named inventor and June 29, 1999 as the issue date.  American further admits that the '893 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 37 of the Amended Complaint.

38.    American admits that the '120 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as the sole named inventor and October 26, 1999 as the issue date.   American denies the remaining allegations in paragraph 38 of the Amended Complaint.

39.    American admits that the '135 patent is entitled "Telephone-Interface Lottery System," and on its face lists Ronald A. Katz as the sole named inventor and March 28, 2000 as the issue date.  American further admits that the '135 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 39 of the Amended Complaint.

40.    American admits that the '065 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as the sole named

inventor and November 14, 2000 as the issue date.  American further admits that the '065 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 40 of the Amended Complaint.

41.     American admits that the '965 patent is entitled "Voice-Data Telephonic Interface Control System," and on its face lists Ronald A. Katz as the sole named inventor and January 1, 2002 as the issue date.  American further admits that the '965 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 41 of the Amended Complaint.

42.     American admits that the '134 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as the sole named inventor and February 19, 2002 as the issue date.  American further admits that the '134 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 42 of the Amended Complaint.

43.     American admits that the '703 patent is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as the sole named inventor and July 23, 2002 as the issue date.  American further admits that the '703 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 43 of the Amended Complaint.

44.     American admits that the '223 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as the sole named inventor and August 13, 2002 as the issue date.  American further admits that the '223 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 44 of the Amended Complaint.

45.     American admits that the '415 patent is entitled "Telephonic-Interface Game Control System," and on its face lists Ronald A Katz as the sole named inventor and January 28, 2003 as the issue date.  American further admits that '415 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 45 of the Amended Complaint.

46.     American admits that the '360 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A Katz as the sole named inventor and January 13, 2004 as the issue date.  American further admits that the '360 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 46 of the Amended Complaint.

47.     American admits that the '309 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A Katz as the sole named inventor and October 19, 1993 as the issue date.  American further admits that the '360 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 47 of the Amended Complaint.

48.     American admits that the '707 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A Katz as the sole named inventor and October 1, 1996 as the issue date.  American further admits that the '707 patent expired on December 20, 2005.  American denies the remaining allegations in paragraph 48 of the Amended Complaint.

49.     American admits that the '547 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A Katz as the sole named inventor and September 18, 2001 as the issue date.  American further admits that the '547 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 49 of the Amended Complaint.

50.     American admits that the '576 patent is entitled "Telephonic-Interface Lottery Device," and on its face lists Ronald A Katz as the sole named inventor and November 10, 1998 as the issue date.  American further admits that the '576 patent expired on July 10, 2005.  American denies the remaining allegations in paragraph 50 of the Amended Complaint.

## COUNT I
## (PATENT INFRINGEMENT BY AMERICAN AIRLINES, INC. AND AMERICAN BEACON ADVISORS, INC.)

51.     American incorporates by reference its responses to paragraphs 1-50.

52.     American admits that on their face, the '968, '150, '984, '252, and '285 patents list Ronald A. Katz as the sole named inventor, and the '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents list RAKTL as the assignee.  American lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 52 and, on that basis, denies them.

53.     American admits that it operates automated telephone systems. American denies the remaining allegations in paragraph 53 of the Amended Complaint.

54.     American denies the allegations in paragraph 54 of the Amended Complaint.

55.     American denies the allegations in paragraph 55 of the Amended Complaint.

56.     American denies the allegations in paragraph 56 of the Amended Complaint.

57.     American denies the allegations in paragraph 57 of the Amended Complaint.

## COUNT II
### (PATENT INFRINGEMENT BY FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, FEDEX CORPORATE SERVICES, INC., AND FEDEX CUSTOMER INFORMATION SERVICES, INC.)

58.     American incorporates by reference its responses to paragraphs 1-57.

59.     American admits that on their face, '968, '150, '984, '252, '285, and '309 patents list Ronald A. Katz as the sole named inventor, and the '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents list RAKTL as the assignee.  American lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 59 of the Amended Complaint and, on that basis, denies them.

60.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 60 of the Amended Complaint and, on that basis, denies them.

61.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 61 of the Amended Complaint and, on that basis, denies them.

62.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 62 of the Amended Complaint and, on that basis, denies them.

63.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 63 of the Amended Complaint and, on that basis, denies them.

64.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 64 of the Amended Complaint and, on that basis, denies them.

## COUNT III
### (PATENT INFRINGEMENT BY NATIONAL RAILROAD PASSENGER CORPORATION DBA AMTRAK)

65.     American incorporates by reference its responses to paragraphs 1-64.

66.     American admits that on their face, the '968, '984, '150, '285, and '252 patents list Ronald A. Katz as the sole named inventor, and the '707, '863, '156, '551, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents list RAKTL as the assignee.  American lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 66 and, on that basis, denies them.

67.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 67 of the Amended Complaint and, on that basis, denies them.

68.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 68 of the Amended Complaint and, on that basis, denies them.

69.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 69 of the Amended Complaint and, on that basis, denies them.

70.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 70 of the Amended Complaint and, on that basis, denies them.

71.     American lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 71 of the Amended Complaint and, on that basis, denies them.

## AMERICAN'S RESPONSE TO RAKTL'S REQUEST FOR RELIEF

72.     American denies that RAKTL is entitled to any of the relief sought against American, its officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those acting in active concert or participation with American Airlines or American Beacon. American has not infringed, and is not infringing, either directly or indirectly under section 271, any claim of any patent asserted in RAKTL's First Amended Complaint, either literally or under the doctrine of equivalents.  Moreover, the Asserted Patents are invalid and/or unenforceable.  RAKTL is not entitled to a judgment in its favor, damages, injunctive relief, costs, fees, interest, or any other type of recovery from American.  RAKTL's request for relief should therefore be denied in its entirety and with prejudice, and RAKTL should take nothing.

\\

\\

\\

\\

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim/Non-Infringement)

73.    One or more of the claims set forth in RAKTL's First Amended Complaint fail to state a claim upon which relief can be granted because American does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any of the Asserted Patents.

## SECOND AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

74.    RAKTL's enforcement of the Asserted Patents against American is barred by the doctrine of prosecution history estoppel.

## THIRD AFFIRMATIVE DEFENSE

### (Invalidity)

75.    One or more claims of the Asserted Patents are invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

## FOURTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

76.    The Asserted Patents are unenforceable in whole or in part for inequitable conduct committed before the United States Patent and Trademark Office ("USPTO") during the prosecution of the applications that issued as the Asserted Patents and/or related applications.

77.    During the prosecution of the applications that ultimately led to the issuance of the asserted patents or the applications upon which priority is claimed, the sole named inventor, Ronald A. Katz, and/or his attorneys and appointed representatives (collectively "Katz") engaged in inequitable conduct, thereby rendering at least certain of the Asserted Patents unenforceable for failure to comply with the duty of candor.

78.     On information and belief, Katz exercised a pattern and practice of conduct during the prosecution of the applications that issued as the Asserted Patents and/or related applications in the USPTO that violated the duty of candor owed by patent applicants with the intent to deceive the USPTO and its agents into issuing patent claims of a scope beyond any to which Katz was entitled.  This pattern included intentionally withholding material prior art from the USPTO and making false statements, such as the priority date to which Katz's applications were entitled.

## I.     Withholding Material Prior Art

### A.     Periphonics

79.     By way of example, on information and belief, Katz intentionally withheld from the USPTO highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Katz was not entitled.  On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471-TJH in the United States District Court for the Central District of California ("the *First Data v. West* litigation"), materials bearing Bates numbers W72807-W73756 ("the *West* materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").  The Nilsson firm was involved in prosecuting many of Katz's patent applications, some of which would ultimately issued as the Asserted Patents.

80.     On information and belief, in U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During [the *First Data v. West* litigation], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant."  However, on information and belief, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents).  Paper no. 3, filed November 4, 1994.  On information and belief, Katz also stated: "The voluminous quantity of art identified during litigation,

excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

81. On information and belief, Katz made the same statements in the applications that issued as U.S. Patent No. 5,561,707 ("the '707 patent") (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994), and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751). On information and belief, other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997), and the '551 patent (IDS filed October 2, 1996).

82. On information and belief, in connection with making these statements and references during prosecution of the '707, '965, '285, '893, '863, '762, and '551 patents, Katz submitted to the USPTO certain materials containing Bates numbers within the range of *West* materials. In addition to those submitted, the original *West* materials further included a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095) and (2) Periphonics VoicePac System with Peritalk Announce Product Description and user Guide, Publication #327060 IC, 1987 ("the VoicePac reference") (W73219-W73302).

83. On information and belief, the Bank-From-Home reference and the VoicePac reference are highly relevant to many claims of the Asserted Patents. The Bank-From-Home reference describes such limitations of claims of the Asserted Patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of claims of

the Asserted Patents as interfacing callers to the system and transferring callers to a customer service representative.

84.     While other references containing Bates numbers within the range of the *West* materials were submitted to the USPTO during prosecution of the '707, '965, '285, '893, '863, '762, and '551 patents, on information and belief, the Bank-From-Home and VoicePac references were knowingly withheld during prosecution of at least these patents with knowledge of their materiality.  Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the USPTO, and constitutes inequitable conduct.  Thus, at least the '965, '285, '893, '863, '762, and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

85.     Other Asserted Patents are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability.  For example, the '065, '360, and '547 patents have specifications substantially identical to those of the '707, '863, '762, and '551 patents, and rely for priority on U.S. Patent No. 4,845,739 ("the '739 patent"), also having a substantially identical specification. The '065, '360, and '547 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '707, '863, '762, '551, and '739 patents.  In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

86.     Thus, Katz's inequitable conduct renders unenforceable at least the '965, '285, '893, '863, '762, '551, '065, '360, and '547 patents.

## B.     Barger

87.     In another example, Katz's pattern of misconduct included Katz's failure to disclose to the USPTO U.S. Patent No. 4,071,698 to Barger, Jr. et al.

("the Barger patent") during the prosecution of many of Katz's patents, including numerous that issued as the Asserted Patents and other applications from which priority is claimed.   On information and belief, Katz had knowledge of the relevance and materiality of the Barger patent to claims pending before the USPTO.

88.    The Barger patent teaches an interactive voice system for marketing merchandise.  The customer selects and listens to an audio demonstration and may arrange payment by credit card or other means.  The system maintains a complete record of all transactions, including requests for demonstrations played by each customer, in order to maintain current inventory records and to determine trends.  The system can use this transaction history to determine whether a customer is a "free loader," and accordingly limit his access to the system.

89.    The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains required information from the customer that is placed in a database.  When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer.  On completion of the demonstration, the customer is returned to a live operator, who will take the order.

90.    Many features disclosed in the Barger patent are relevant to Katz's claims.  For example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.  In addition, the Barger patent has been relied upon in third party requests for reexamination of the '707 and '547 patents, which have specifications substantially identical to that of the '739 patent.

91.    Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the USPTO deciding whether to allow Katz's pending claims.  The materiality of the Barger patent was confirmed by the USPTO's rejection of all of the claims of the '707 patent in 2006, based, in part, on the Barger patent.  Ex Parte Reexamination, Control Nos. 90/007,074 &

90/006,978, at 5.  The examiner rejected claims 9, 12, 22-24, 25, 137, 141, 144-46, 150, 151, 154, 156, and 167 under 35 U.S.C. §§ 102(b) or 102(e), in light of the Barger patent.  *Id.* at 2, 53-61.

92.    The Barger patent was filed in the USPTO on January 10, 1977, a full eight years before Katz's first application.

93.    On information and belief, Katz became aware of the Barger patent and its materiality to Katz's claims at least as early as January 1989.   On information and belief, on or about December 1988, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederick Coles.  On information and belief, Mr. Coles sent a copy of the search report to Byard Nilsson, an attorney handling prosecution of many of Katz's applications, in January 1989. This search report identified the Barger patent as being "particularly relevant" to Katz's application.

94.    Notwithstanding Katz's knowledge of the Barger patent and of its materiality as alleged herein, Katz failed to disclose this prior art to the USPTO during the prosecution of at least U.S. Patent No. 5,073,929 ("the '929 patent") and the '739, '984, '150, '285, and '965 patents.  Katz was under a duty to disclose to the USPTO information material to Katz's applications (including prior art cited in foreign patent prosecutions). Katz's failure to disclose the Barger patent, with knowledge of its materiality, constitutes inequitable conduct.

95.    On information and belief, Katz deliberately withheld the Barger patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '929, '984, '150, '285, and '965 patents.

96.    As Katz was aware of both the significance and relevance of the Barger patent as alleged herein, Katz's failure to disclose it to the USPTO during prosecution of at least the '739, '929, '984, '150, '285, and '965 patents constituted

1    inequitable conduct.  Other Asserted Patents are directly related to these patents,

2    and are thus rendered unenforceable through infectious unenforceability.

3       97.    At least the '984, '929, and '739 patents are rendered unenforceable

4    due to the inequitable conduct that occurred during prosecution of their respective

5    applications.

6       98.    All of the Asserted Patents except the '968 and '150 patents claim

7    priority to the '739 patent.  These Asserted Patents each contain claims with subject

8    matter that includes subject matter that was at issue during the '739 patent

9    prosecution and to which Barger would have been relevant.  Thus, the '984, '252,

10    '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965,

11    '134, '703, '223, '415, and '360 patents are rendered unenforceable due to the

12    inequitable conduct that occurred during prosecution of the '739 patent.

13       99.    The '252, '734, '120, and '223 patents claim priority to the '984, '929,

14    and '739 patents.

15       100.    The '252, '734, '120, and '223 patents contain claims with subject

16    matter that includes subject matter that was at issue during prosecution of the '984

17    to which Barger would have been relevant.  On information and belief, the '252,

18    '734, '120, and '223 patents contain claims with subject matter that includes subject

19    matter that was at issue during prosecution of the '929 and '739 patents and to

20    which Barger would have been relevant.  Thus, the  '252, '734, '120, and '223

21    patents are rendered unenforceable due to the inequitable conduct that occurred

22    during prosecution of the '984, '929, and '739 patents.

23       101.    At least the '285, '150, and '739 patents are rendered unenforceable

24    for conduct concerning the Barger patent that occurred during the prosecution

25    thereof.

26       102.    The '893 patent claims priority to the '285, '150, and '739 patents.

27    The '893 patent contains claims with subject matter that was at issue during

28    prosecution of the '285 patent to which Barger would have been relevant.

Additionally, on information and belief, the '893 patent contains claims with subject matter that was at issue during prosecution of the '150 and '739 patents and to which Barger would have been relevant. Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '285, '150, and '739 patents.

103.   The inequitable conduct concerning the Barger patent renders unenforceable at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents.

**C.   De Bruyn**

104.   In another example, on information and belief, Katz withheld European Patent Specification No. 32,410 to De Bruyn (the "De Bruyn patent") from the USPTO during the prosecution of many of Katz's earlier patents. On information and belief, Katz was well aware of the materiality of the De Bruyn patent to Katz's pending claims.

105.   The De Bruyn patent was published on July 22, 1981 and disclosed an interactive voice system for implementing a lottery. On information and belief, it was cited in the same European search report that identified the Barger patent. Thus, on information and belief, Katz also became aware of the De Bruyn patent at least as early as January 1989.

106.   On information and belief, the European search report identified the De Bruyn patent as "particularly relevant."   The De Bruyn patent is also substantively identical to Canadian Patent 1,162,336 ("the De Bruyn Canadian patent"), which was relied upon by the USPTO examiner in the reexamination and rejection of several of Katz's patents related to the Asserted Patents, including the '707 patent and U.S. Patent Nos. 5,255,309 ("the '309 patent") and 5,259,023 ("the '023 patent").   Nearly all of the claims of the '707 patent were rejected based on the De Bruyn Canadian patent under 35 U.S.C. §§ 102(b) or 102(e) and 103(a).   Ex Parte Reexamination, Control Nos. 90/006,978 & 90/006,978, at pp. 9-25, 62-63,

68-71, 72, 101, 103-10, 170-71, 174-78, 181-83, 185-87, 190.   Similarly, with respect to the '309 patent, the examiner rejected a majority of the claims based on the De Bruyn Canadian patent under 35 U.S.C. §§ 102(b) and 103(a).   Ex Parte Reexamination, Control Nos. 90/007,092 & 90/006976, at pp. 9-20, 33-44, 47-70. With regard to the '023 patent, the examiner rejected claims 1, 2, 5, 6, 8, 10, 20-26 based on the De Bruyn Canadian patent under 35 U.S.C. §§ 102 and 103.   Ex parte Reexamination, Control Nos. 90/007,058 & 90/006,977, at pp. 3-10, 25-27, 29, 64, 70-72.

107.   Like all of the Asserted Patents, except for the '968 and '150 patents, each of the '707, '309, and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

108.   On information and belief, Katz deliberately withheld the De Bruyn patent with knowledge of its materiality with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '150,'929, '984, and '252 patents, as well as U.S. Patent 5,048,075 ("the '075 patent").

109.   As Katz was aware of both the significance and materiality of the De Bruyn patent as alleged herein, Katz's failure to disclose it to the USPTO during prosecution of at least the '739, '150, '075, '929, '984, and '252 patents constituted inequitable conduct.   Nearly all of the Asserted Patents are directly related to these patents and are, thus, rendered unenforceable through infectious unenforceability.

110.   The '893, '863, '547, '551, '065, '360, and '762 patents are closely related to at least the '739 patent.   In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '893, '863, '547, '551, '065, and '360 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double-patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

111.  All of the Asserted Patents except the '968 and '150 patents claim priority to the '739 patent.  These Asserted Patents all contain claims with subject matter that was at issue during the '739 patent prosecution and to which De Bruyn would have been relevant.  Thus, the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

112.  On information and belief, Katz deliberately withheld the De Bruyn patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '150 patent.

113.  As Katz was aware of both the significance and relevance of the De Bruyn patent as alleged herein, Katz's failure to disclose it to the USPTO during prosecution of at least the '150 patent constituted inequitable conduct.

114.  The '285 and '893 patents claim priority to the '150 patent.

115.  On information and belief, the '285 and '893 patents both contain claims with subject matter that was at issue during the '150 patent prosecution and to which De Bruyn would have been relevant. Thus, the '150, '285, and '893 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150 patent.

116.  On information and belief, Katz deliberately withheld the De Bruyn patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '929, '984, and '252 patents.

117.  As Katz was aware of both the significance and relevance of the De Bruyn patent as alleged herein, Katz's failure to disclose it to the USPTO during prosecution of at least the '929, '984, and '252 patents constituted inequitable conduct.

118.  The '734, '120, and '223 patents claim priority to the '929, '984, and '252 patents.

119.   The '734, '120, and '223 patents contain claims with subject matter that was at issue during prosecution of the '984 and '252 patents and to which De Bruyn would have been relevant.  On information and belief, the '734, '120, and '223 patents contain claims with subject matter that was at issue during prosecution of the '929 patent and to which De Bruyn would have been relevant.  Thus, the '734, '120, and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '929, '984, and '252 patents.

120.   The inequitable conduct concerning the De Bruyn patent renders unenforceable at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents.

### D.    Yoshizawa

121.   In another example, on information and belief, as part of the prosecution of at least the '575 patent, Katz failed to disclose a prior art article entitled "Voice Response System for Telephone Betting" by Yoshizawa et al. ("the Yoshizawa article") that appeared in the 1977 issue of *Hitachi Review* magazine.

122.   On information and belief, the Yoshizawa article discloses an automated off-track betting system including a voice response unit, a public telephone network and a central processing unit.  Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets; for example, a wager on a horse to show.  The entered data is then stored in the caller's account file.  Each wager is counted against a preset daily wagering limit.  The caller is provided with a registration number referencing the transaction.  Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account.  On information and belief, the article specifically mentions that the system could be used for "winning a lot number service"; in other words, a lottery.

123.   On information and belief, many features relevant to the '575 patent claims are disclosed in the Yoshizawa article.  For example, on information and

belief, Yoshizawa discloses limiting access and use to a telephone based gambling or lottery system and qualifying callers based on an account number.

124.   On information and belief, Katz was aware of the materiality of the Yoshizawa article at least as early as September 2, 1992 - over two years before the issuance of the '575 patent - when it was cited in response to interrogatories in the *First Data v. West* litigation.

125.   Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality, on information and belief, Katz failed to disclose this material prior art reference to the USPTO as part of the prosecution of the '575 patent in violation of his duty of candor.

126.   On information and belief, Katz intentionally withheld the material Yoshizawa article from the USPTO as part of the prosecution of the '575 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '575 patent.

127.   The '576, '135, '156, and '703 patents claim priority to and claims subject matter related to the '575 patent.  Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '576, '135, '156, and '703 patents.

### E.    Florafax

128.   On information and belief, during the prosecution of at least the '575 patent and the '576 patent, Katz had knowledge of and failed to disclose a brochure dated January 22, 1986 and circulated by Florafax at or about that time ("the Florafax brochure").

129.   On information and belief, the Florafax brochure is material to the '575 and '576 patents.  On information and belief, the Florafax brochure discloses a service for providing a recorded message in association with the delivery of a floral bouquet.  After purchasing the bouquet, the sender receives a card from the florist

that includes a telephone number and an ID number printed thereon.  Upon calling the number indicated, the sender is prompted to enter the ID number and record a personal message.  When the flowers are delivered, a corresponding card instructs the recipient to call a specified number to hear the sender's prerecorded message. The message may only be played twice before it is automatically erased.  The Florafax "Talking Bouquet" system was test marketed at least as early as December 1985, demonstrating public use of the concepts embodied in the brochure.

130.  On information and belief, the Florafax brochure and associated service operation disclose many of the features claimed in the '575 and the related '576 patent.  For example, providing cards or tickets with an identification number printed thereon for access to an automated interactive system.

131.  On information and belief, Katz was aware of the materiality of the Florafax brochure at least as early September 2, 1992 - over two years before the issuance of the '575 patent and over seven years before the issuance of the '576 patent - when it was cited in response to interrogatories in the *First Data v. West* litigation.

132.  On information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it as part of the prosecution of the '575 and '576 patents in violation of his duty of candor.

133.  On information and belief, Katz intentionally withheld the material Florafax brochure from the USPTO as part of the prosecution of the '575 and '576 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '575 and '576 patents.

134.  The '576, '135, '156, and '703 patents claim priority to and claim subject matter related to the '575 patent.  The '135 patent further claims priority to and claims subject matter related to the '576 patent.  Katz's inequitable conduct

1    therefore also renders unenforceable through infectious unenforceability at least the

2    '576, '135, '156, and '703 patents.

3                    **F.**     **Moosemiller**

4        135.   On information and belief, during the prosecution of at least the '965

5    and '734 patents, Katz had knowledge of and failed to disclose a prior art reference

6    entitled "AT&T's Conversant I Voice System" by John P. Moosemiller ("the

7    Moosemiller reference") that appeared in the March/April 1986 issue of *Speech*

8    *Technology*.

9        136.   On information and belief, the Moosemiller reference is material to the

10   patentability of '965 and '734 patents. The Moosemiller reference discloses many

11   of the features claimed in the '965 and '734 patents, including use of DNIS,

12   ACD/PBX, qualification based on user identification data, transfer to a live operator

13   and multiple formats.

14       137.   On information and belief, Katz was aware of the materiality of the

15   Moosemiller reference at least as early as July 21, 1998, when it was disclosed in

16   connection with *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.*, Civil

17   Action No. 97-4453, in the United States District Court for the Eastern District of

18   Pennsylvania ("the *RAKTL v. AT&T* litigation"), in which RAKTL asserted that

19   AT&T and other parties infringed certain patents now being asserted against

20   American.

21       138.   On information and belief, notwithstanding Katz's knowledge of the

22   Moosemiller reference and its materiality, Katz failed to disclose it as part of the

23   prosecution of the '965 and '734 patents in violation of his duty of candor.

24       139.   On information and belief, Katz intentionally withheld the material

25   Moosemiller reference from the USPTO as part of the prosecution of the '965 and

26   '734 patents with the intent to deceive the USPTO into issuing patent claims of a

27   scope beyond which Katz was entitled, thereby committing inequitable conduct and

28   rendering unenforceable at least the '965 and '734 patents.

140.   The '134 patent claims priority to and claims subject matter related to the '965 patent.  The '120 and '223 patents claim priority to and claim subject matter related to the '734 patent.  Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '134, '120, and '223 patents.

## G.   Hester

141.   On information and belief, during the prosecution of at least the '309 patent, Katz had knowledge of and failed to disclose a prior art reference entitled "The AT&T Multi-Mode Voice Systems – Full Spectrum Solutions for Speech Processing Applications" by Hester, e. al. ("the Hester reference") that was presented at the Proceedings of the 1985 AVIOS Conference.

142.   On information and belief, the Hester reference is material to the patentability of the '309 patent.  The Hester reference discloses in detail the architecture, operation, and applications of the "Conversant I" system which was made and used by AT&T.  The "Conversant I" system, a programmable interactive voice response system that was used for telephonic access and interaction, was also the subject of the Moosemiller reference.  The Moosemiller reference was cited by the USPTO during reexamination of the '309 patent to invalidate 14 claims on the basis of anticipation.  The Hester reference provides even greater detail regarding the "Conversant I" system and therefore would have been material to the examination of the '309 patent.

143.   On information and belief, Katz was aware of the materiality of the Hester article at least as early as May 28, 1991, when it was cited by the patent examiner in connection with the prosecution of U.S. Patent 5,109,404 ("the '404 patent").

144.   On information and belief, notwithstanding Katz's knowledge of the Hester reference and its materiality, Katz failed to disclose it as part of the prosecution of the '309 patent in violation of his duty of candor.

145.   On information and belief, Katz intentionally withheld the material Hester reference from the USPTO as part of the prosecution of the '309 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '309 patent.

146.   The '707 patent claims priority to and claims subject matter related to the '309 patent.  Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '707 patent.

### H.   Perdue

147.   On information and belief, during the prosecution of at least the '309 patent, Katz had knowledge of and failed to disclose a prior art reference entitled "Conversant I Voice System: Architecture and Applications" by Perdue et al. ("the Perdue reference") that appeared in the September/October 1986 issue of *AT&T Technical Journal*.

148.   On information and belief, the Perdue reference is material to the patentability of the '309 patent.  The Perdue reference discloses in detail the architecture, operation, and applications of the "Conversant I" system which was made and used by AT&T.  The "Conversant I" system, a programmable interactive voice response system that was used for telephonic access and interaction, was also the subject of the Moosemiller reference.  The Moosemiller reference was cited by the USPTO during reexamination of the '309 patent to invalidate 14 claims on the basis of anticipation.  The Perdue reference provides even greater detail regarding the "Conversant I" system and therefore would have been material to the examination of the '309 patent.

149.   On information and belief, Katz was aware of the materiality of the Perdue reference at least as early as May 28, 1991, when it was cited by the patent examiner in connection with the prosecution of '404 patent.  On June 8, 1991, the

1  Perdue reference was cited again by the patent examiner in connection with the
2  prosecution of U.S. Patent No. 5,218,631.

3      150.   On information and belief, notwithstanding Katz's knowledge of the
4  Perdue reference and its materiality, Katz failed to disclose it as part of the
5  prosecution of the '309 patent in violation of his duty of candor.

6      151.   On information and belief, Katz intentionally withheld the material
7  Perdue reference from the USPTO as part of the prosecution of the '309 patent with
8  the intent to deceive the USPTO into issuing patent claims of a scope beyond which
9  Katz was entitled, thereby committing inequitable conduct and rendering
10 unenforceable at least the '309 patent.

11     152.   The '707 patent claims priority to and claims subject matter related to
12 the '309 patent.   Katz's inequitable conduct therefore also renders unenforceable
13 through infectious unenforceability at least the '707 patent.

14                  **I.      Corbett**

15     153.   On information and belief, during the prosecution of at least the '965
16 patent, Katz had knowledge of and failed to disclose a prior art reference entitled
17 "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the
18 Corbett reference") a master's thesis submitted in December 1974.

19     154.   On information and belief, the Corbett reference is material to the
20 patentability of the '965 patent.   The Corbett reference discloses many of the
21 features claimed in the '965 patent, including an interactive voice response system,
22 multiple formats, user number and password, and consumable keys.

23     155.   On information and belief, Katz was aware of the materiality of the
24 Corbett reference at least as early as August 13, 1992 when it was disclosed in
25 connection with a motion for summary judgment of invalidity of the RAKTL
26 patents at issue in the *First Data v. West* litigation.

27

28

156.   On information and belief, notwithstanding Katz's knowledge of the Corbett reference and its materiality, Katz failed to disclose it as part of the prosecution of the '965 patents in violation of his duty of candor.

157.   On information and belief, Katz intentionally withheld the material Corbett reference from the USPTO as part of the prosecution of the '965 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '965 patent.

158.   The '134 patent claims priority to and claims subject matter related to the '965 patent. Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '134 patent.

## J.   Daudelin '995

159.   On information and belief, during the prosecution of at least the '120 patent, Katz had knowledge of and failed to disclose U.S. Patent No. 4,943,995 to Daudelin et al. ("the Daudelin '995 patent").

160.   On information and belief, the Daudelin '995 patent is material to the patentability of the '120 patent.  the Daudelin '995 patent discloses many of the features claimed in the '120, including a system for receiving calls in a toll-free mode and placing orders for products using automated voice response systems, human operators or combinations thereof.

161.   On information and belief, Katz was aware of the materiality of the Daudelin '995 patent, having cited it to the USPTO in previous IDS submissions during prosecution of other Asserted Patents, albeit misspelled as "Dandelin."

162.   On information and belief, notwithstanding Katz's knowledge of the the Daudelin '995 patent and its materiality, Katz failed to disclose it as part of the prosecution of the '120 patent in violation of his duty of candor.

163.   On information and belief, Katz intentionally withheld the material Daudelin '995 patent from the USPTO as part of the prosecution of the '120 patent

1    with the intent to deceive the USPTO into issuing patent claims of a scope beyond

2    which Katz was entitled, thereby committing inequitable conduct and rendering

3    unenforceable at least the '120 patent.

4        164.   The '223 patent claims priority to and claims subject matter related to

5    the '120 patent.  Katz's inequitable conduct therefore also renders unenforceable

6    through infectious unenforceability at least the '223 patent.

7                    **K.    Katz's own PCT application WO 87/00375**

8        165.   On information and belief, during the prosecution of the '863 patent

9    and the '551 patent, Katz had knowledge of and failed to disclose his own PCT

10   application, WO 87/00375 ("the WO '375 application").

11       166.   On information and belief, the WO '375 application was published on

12   January 15, 1987 and therefore would have been considered prior art under 35

13   U.S.C. § 102(b) for any claims with a priority date more than a year thereafter.  In

14   particular, the WO '375 application constituted prior art to any claims incorporating

15   new subject matter in continuation-in-part applications filed after January 15, 1988,

16   including claims of the '863 and '551 patents.

17       167.   On information and belief, the WO '375 application is material to the

18   patentability of the '863 and '551 patents.  The WO '375 application discloses

19   many of the same basic elements claimed in the Asserted Patents, including

20   prompting the caller with instructions, receiving data entered via touch-tone

21   telephone keypads, storing caller-entered data, processing caller-entered data, and

22   qualifying callers.

23       168.   On information and belief, Katz was aware of the materiality of the

24   WO '375 application.

25       169.   On information and belief, notwithstanding Katz's knowledge of the

26   WO '375 application and its materiality, Katz failed to disclose it as part of the

27   prosecution of the '863 and '551 patents in violation of his duty of candor.

28

170.   On information and belief, Katz intentionally withheld the material WO '375 application from the USPTO as part of the prosecution of the '863 and '551 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '863 and '551 patents.

171.   The '065 and '360 patents claim priority to and claim subject matter related to the '551 patent.   Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '065 and '360 patents.

## II.   False and Misleading Statements

172.   On information and belief, to obtain from the USPTO claims to which Katz was not entitled, Katz made false and misleading statements about the priority dates to which claims of pending applications were entitled, with the intent to thereby swear behind prior art references that were before the USPTO in Katz's pending applications.

173.   Katz's pattern and practice of inequitable conduct was repeated during the prosecution of other applications leading to the Asserted Patents, infecting either directly or indirectly all of the applications, and thereby rendering all of the Asserted Patents unenforceable in their entirety.

174.   On information and belief, during prosecution of the '984 patent, Katz falsely asserted that the WO '375 application, cited by the examiner, was "not properly a reference against the present case." Amendment, June 20, 1991, at p.11.

175.   On information and belief, the WO '375 application was published more than one year before Katz filed the continuation-in-part application resulting in the issuance of the '984 patent and therefore constituted prior art to any new subject matter introduced and claimed in the '984 patent.   Therefore, Katz intentionally misrepresented that the WO '375 application was not prior art during prosecution of the '984 patent, rendering unenforceable at least the '984 patent.

176.  The '252, '734, '120, and '223 patents claim priority to and claim subject matter related to the '984 patent.  Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '252, '734, '120, and '223 patents.

177.  In another example, during the prosecution of the '734 patent, Katz identified U.S. Patent No. 4,972,461, issued to Brown ("the Brown patent"), to the USPTO.  Katz, however, falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent.  Amendment, January 31, 1996 at pp. 11-12.

178.  On information and belief, the '734 patent does not properly claim priority to the '150 patent because there is no disclosure of multiple call modes in the '150 patent.  Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering unenforceable at least the '734 patent.

179.  In another example, during prosecution of the '734 patent, Katz asserted that the Hester reference "bears a date of 1985, apparently 'September.'  In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."  Suppl. Amendment, March 14, 1995, at p. 21.

180.  On information and belief, the '734 patent does not properly claim priority to the parent application referenced by Katz because there is no disclosure of toll free or 900 "pay-per-call" modes in the parent application. Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering unenforceable at least the '734 patent.

181.  In another example, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,797,913 issued to Kaplan et al. ("the Kaplan patent"), to the USPTO.  Katz, however, falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference."  Suppl. Amendment, March 14, 1995, at p. 20.

182.  On information and belief, Katz's statement was false at the time it was made since there were claims pending that claimed subject matter not supported in any parent applications filed prior to August 4, 1987, the filing date of the Kaplan patent.  For example, claim 17 that was pending at the time of Katz's statement recited multiple call modes.  There is no suggestion of multiple call modes in, for example, the '968 patent.  Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering unenforceable at least the '734 patent.

183.  The '120 and '223 patents claim priority to and claim subject matter related to the '734 patent. Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '120 and '223 patents.

### III.  Intentional Failure to Inform the USPTO of Inconsistent Positions

184.  On information and belief, Katz intentionally failed to inform the USPTO of inconsistent positions taken with respect to three patents issued to Daudelin et al.—the Daudelin '955 patent, U.S. Patent 4,797,910 ("the Daudelin '910 patent"), and U.S. Patent 4,922,519 ("the Daudelin '519 patent"), (collectively "the Daudelin patents")—as well as U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").  The specifications of the Daudelin patents are substantially similar and all three disclose the use of Dialed Number Identification Service ("DNIS") functionality.  The Riskin patent discloses the use of both DNIS and Automatic Number Identification ("ANI") functionality.

185.  Upon information and belief, Katz took inconsistent positions regarding the scope of the Daudelin patents during prosecution of certain of the Asserted Patents and intentionally failed to disclose his prior inconsistent positions to different patent examiners.

186.  For example, during prosecution of the '734 patent, Katz labeled various prior art references as either "D," "A," or "D/A" to indicate whether the

reference was "pertinent to DNIS capabilities," "pertinent to ANI capabilities," or both.  Katz did not label the Daudelin '910 patent as "D," "A," or "D/A," thereby characterizing the Daudelin '910 patent as not pertinent to either DNIS or ANI capabilities.  Contrary to this position, during prosecution of the '551 patent, Katz labeled the Daudelin '910 patent with a "D," thereby characterizing the Daudelin '910 patent as "pertinent to DNIS capabilities."  Likewise, during prosecution of the '893 patent, Katz characterized the Daudelin '910 patent as having "some disclosure of DNIS."  Yet, subsequently, during prosecution of the '360 patent, Katz took the position that "Daudelin does not teach DNIS."

187.  Upon information and belief, Katz deliberately took inconsistent positions with respect to the Daudelin patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '734, '551, '893 and '360 patents.

188.  The '120 and '223 patents claim priority to and claim subject matter related to the '734 patent.  Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '120, and '223 patents.

189.  As another example, during prosecution of the '075 patent, Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing . . . ."  Contrary to this position, during prosecution of the '120 patent, Katz labeled the Riskin patent with an "A" instead of "D/A," thereby characterizing the Riskin patent as only pertinent to ANI capabilities, not DNIS.

190.  Upon information and belief, Katz deliberately took inconsistent positions with respect to the Riskin patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '075 and '120 patents.

191.   The '576, '135, '156, and '703 patents claim priority to and claim subject matter related to the '075 patent.  The '223 patent claims priority to and claim subject matter related to the '120 patent.  Katz's inequitable conduct therefore also renders unenforceable through infectious unenforceability at least the '576, '135, '156, '703, and '223 patents.

## IV.   Intentional Failure to Inform the USPTO of Related Litigation

192.   Pursuant to the Manual of Patent Examining Procedure, including §§ 2001.01 and 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application has a duty to bring to the attention of the USPTO "the existence of such litigation and any other material information arising therefrom."

193.   On information and belief, as set forth below, during prosecution of several of the Asserted Patents, Katz failed to identify or disclose to the patent examiners material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the Asserted Patents, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

### A.   First Data Resources, Inc. v. 900 Million, Inc.

194.   On information and belief, on October 9, 1990, First Data Resources, Inc. ("First Data") filed suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California ("the *First Data v. 900 Million* litigation").   First Data alleged infringement of the '739 patent, '150 patent, and U.S. Patent No. 4,939,773 ("the '773 patent").

195.   The defendants in the *First Data v. 900 Million* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150, and '773 patents.

196.   The defendants' counterclaims in that suit are material to at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents, all of which claim priority to and claim subject matter related to the '739 patent and/or the '150 patent.

197.   On information and belief, during prosecution of the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents, Katz was aware of the *First Data v. 900 Million* litigation and of material information regarding the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents, as set forth in the pleadings and other papers filed therein.

198.   Nonetheless, on information and belief, Katz did not disclose the existence of the *First Data v. 900 Million* litigation or the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents to the examiners of the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents during prosecution of those patents.

199.   On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents.

**B.     West Interactive Corp. v. First Data Resources, Inc.**

200.   On information and belief, on October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska ("the *West v. First Data* litigation").  West alleged, inter alia, that the '739, '150 and '773 patents are invalid and unenforceable.

201.   West's allegations in that suit are material to at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents, all of which claim priority to and claim subject matter related to the '739 patent and/or the '150 patent.

202.   On information and belief, during prosecution of the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents, Katz was aware of the *West v. First Data* litigation and of material information regarding West's allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents, as set forth in the pleadings and other papers filed therein.

203.   Nonetheless, on information and belief, Katz did not disclose the existence of the *West v. First Data* litigation or the nature of West's allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents to the examiners of the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents during prosecution of those patents.

204.   On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents.

**C.     First Data Resources, Inc. v. West Interactive Corp.**

205.   On information and belief, on August 20, 1991, First Data filed suit, Civil Action No. 91-4471-TJH, against West and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California ("the *First Data v. West* litigation"). First Data alleged infringement of the '739 patent, '150 patent, and U.S. Patent No. 5,014,298 ("the '298 patent").

206.   The defendants in the *First Data v. West* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150, and '298 patents.

207.   The defendants' counterclaims in that suit are material to at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '134, '703, and '360 patents, all of which claim priority to and claim subject matter related to one or more of the '739, '150, and '298 patents.

208.   On information and belief, during prosecution of the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '134, '703, and '360 patents, Katz was aware of the *First Data v. West* litigation and of material information regarding the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '298 patents, as set forth in the pleadings and other papers filed therein.

209.   Nonetheless, on information and belief, Katz did not disclose the existence of the *First Data v. West* litigation or the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '298 patents to the examiners of the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '134, '703, and '360 patents during prosecution of those patents (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after payment of the issue fee).

210.   On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '984, '252, '285, '707, '863, '156, '551, '734, '576, '762, '893, '120, '135, '065, '547, '134, '703, and '360 patents.

**D.     Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.**

211.   On information and belief, on July 8, 1997, RAKTL filed suit, Civil Action No. 97-CV-4453, against AT&T Corp. ("AT&T") and others in the United States District Court for the Eastern District of Pennsylvania ("the *RAKTL v. AT&T*

litigation"). RAKTL alleged infringement of the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863, and '633 patents.

212.   In reply, AT&T asserted, inter alia, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863, and '633 patents are invalid.

213.   AT&T's allegations in that suit are material to at least the '863, '156, '551, '734, '576, '762, '893, '120, '135, '547, '703, and '360 patents, all of which claim priority to and claim subject matter related to the '739 patent.

214.   On information and belief, during prosecution of the '863, '156, '551, '734, '576, '762, '893, '120, '135, '547, '703, and '360 patents, Katz was aware of the *RAKTL v. AT&T* litigation and of material information regarding the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents, as set forth in the pleadings and other papers filed therein.

215.   Nonetheless, on information and belief, Katz did not disclose the existence of the *RAKTL v. AT&T* litigation or the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents to the examiners of the '863, '156, '551, '734, '576, '762, '893, '120, '135, '547, '703, and '360 patents during prosecution of those patents.

216.   On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '863, '156, '551, '734, '576, '762, '893, '120, '135, '547, '703, and '360 patents.

**E.    Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.**

217.   On information and belief, on February 9, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California ("*RAKTL v.*

1  *Micro Voice* litigation"). RAKTL alleged infringement of the '739, '153, '252,
2  '309, '285, '707, '862, and '734 patents.

3       218.  In response to RAKTL's complaint, the defendants in the *RAKTL v.*
4  *Micro Voice* litigation alleged, inter alia, that the '739, '153, '252, '309, '285, '707,
5  '862, and '734 patents are invalid and unenforceable.

6       219.  The defendants' counterclaims in that suit are material to at least the
7  '762, '893, '120, '135, '065, '547, '134, '703, and '360 patents, which claim
8  priority to and claim subject matter related to one or more of the patents asserted in
9  the *RAKTL v. Micro Voice* litigation.

10      220.  On information and belief, during prosecution of the '762, '893, '120,
11 '135, '065, '547, '134, '703, and '360 patents, Katz was aware of the *RAKTL v.*
12 *Micro Voice* litigation and of material information regarding the defendants'
13 allegations relating to the invalidity and unenforceability of the patents asserted in
14 that suit, as set forth in the pleadings and other papers filed therein.

15      221.  Nonetheless, on information and belief, Katz did not disclose the
16 existence of the *RAKTL v. Micro Voice* litigation or the nature of the defendants'
17 allegations relating to the invalidity and unenforceability of the patents asserted
18 therein to the examiners of the '762, '893, '120, '135, '065, '547, '134, '703, and
19 '360 patents during prosecution of those patents.

20      222.  On information and belief, this failure to disclose was committed with
21 the intent to deceive the USPTO into issuing patent claims of a scope beyond which
22 Katz was entitled, thereby committing inequitable conduct and rendering
23 unenforceable at least the '762, '893, '120, '135, '065, '547, '134, '703, and '360
24 patents.

25      **V.    Intentional Failure to Disclose Adverse Findings**

26      223.  Pursuant to § 2001.06(b) of the Manual for Patent Examining
27 Procedure, each individual associated with the filing and prosecution of a patent
28 application before the USPTO has "a duty to bring to the attention of the examiner,

or other [USPTO] official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question." Furthermore, such individuals "cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner."

224.  On information and belief, during prosecution of certain of the Asserted Patents, Katz failed to disclose findings of the Board of Patent Appeals and Interferences ("the Board") or of other examiners with respect to related patents, which were, in some instances, adverse or contrary to positions Katz took during prosecution.

### A.    Patent Interference No. 103,697

225.  On information and belief, Patent Interference No. 103,697 was declared on February 13, 1996 and was finalized by November 20, 1996.  One of the Board's conclusions during that proceeding was that the '968 patent specification did not provide written support for certain limitations of count 1, including transferring calls to an operator in certain circumstances, such that count 1 was "not entitled to the benefit of [the '968 patent's] filing date.

226.  The Board's conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patentability of any claims reciting a "transfer to operator" limitation in at least the '863, '762, '893, '547, '965, '134, '703, '415, and '360 patents.  For example, the Board's conclusion may have affected the examiner's determination of the effective date for purposes of analyzing prior art relevant to a particular claim.

227.  Nonetheless, on information and belief, Katz did not bring to the examiner's attention during prosecution of at least the '863, '762, '893, '547, '965, '134, '703, '415, and '360 patents the existence of Patent Interference No. 103,697

1    or the Board's conclusion that the '968 patent lacked written support for certain

2    alleged limitations.

3         228.   On information and belief, this failure to disclose was committed with

4    the intent to deceive the USPTO into issuing patent claims of a scope beyond which

5    Katz was entitled, thereby committing inequitable conduct and rendering

6    unenforceable at least the '863, '762, '893, '547, '965, '134, '703, '415, and '360

7    patents.

8              **B.    Appeal No. 94-0834 (Application No. 07/640,337)**

9         229.   On information and belief, during Appeal No. 94-0834 (Application

10   No. 07/640,337), the Board found that the Barger patent, which is prior art to the

11   Asserted Patents, disclosed a multiple format system for interacting with callers

12   based on the callers dialing distinct telephone numbers.

13        230.   The Board's finding regarding the scope of disclosure of the Barger

14   Patent would have been material to the patentability of any claims reciting a

15   "multiple format" limitation in at least the '156, '551, '734, '576, '762, '893, '120,

16   '135, '065, '547, '965, '134, '703, '223, '415, and '360 patents.

17        231.   Nonetheless, on information and belief, Katz did not bring the Board's

18   finding to the examiner's attention during prosecution of at least the '156, '551,

19   '734, '576, '762, '893, '120, '135, '065, '547, '965, '134, '703, '223, '415, and

20   '360 patents.

21        232.   On information and belief, this failure to disclose was committed with

22   the intent to deceive the USPTO into issuing patent claims of a scope beyond which

23   Katz was entitled, thereby committing inequitable conduct and rendering

24   unenforceable at least the '863, '156, '551, '734, '576, '762, '120, '135, '065, '547,

25   '965, '134, '703, '223, '415, and '360 patents.

26              **C.    Other Adverse Findings**

27        233.   On information and belief, during the prosecution of the '344 patent,

28   Katz made the false assertion that the '968 patent specification provided adequate

written support for the limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party telephone number."  Further, on information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

234.   The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968 ...." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent. Further, Examiner Brown rejected Katz's assertion that the '968 patent provided adequate written support for the automatic number identification (ANI) decoder means limitation.  Specifically, Examiner Brown stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means'"

235.   Despite Examiner Brown's refutation of Katz's assertions, in the subsequent Patent Interference No. 103,697, Katz claimed priority to the '968 patent for a count including the limitation "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility."

236.   Further, on information and belief, during the Patent Interference No. 103,697, Katz did not inform the Board of Examiner Brown's prior repudiation of Katz's assertion that the '968 patent provided adequate written support for the automatic number identification (ANI) decoder means limitation.

237.   Examiner Brown's prior repudiation of Katz's assertion would have also been material to the Board's determination as to whether Katz was entitled to

swear behind U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent"), particularly as the Board ultimately concluded that the '968 patent specification lacked written support for count 1, which recited, in part, "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" and "computer means... responsive to said caller telephone number...."

238.  Even though the Board concluded that the '968 patent specification lacked written support for count 1, during prosecution of the '156 Patent, Katz again alleged, this time to Examiner Woo, that the '968 patent provided adequate support for the limitation "interface means for receiving automatic number identification data...."  Indeed, Katz alleged that the claim limitation was supported by essentially the same text Katz previously cited during prosecution of the '344 patent and during the interference proceeding.

239.  On information and belief, Katz did not inform Examiner Woo of Examiner Brown's conclusion that the '968 patent lacked written support for the limitation "automatic number identification (ANI) decoder means" or the Board's finding that the '968 patent lacked written support for the limitation "computer means ... responsive to said caller telephone number...."

240.  On information and belief, Katz intentionally failed to disclose the prior adverse findings in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '156 patent.

241.  Likewise, on information and belief, during prosecution of the '965 patent, Katz attempted to traverse a claim rejection of Katz's then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent Patent No. 4,792,968, filed on February 24, 1987, before …Szlam...."

242.   On information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the limitation "automatic number identification (ANI) decoder means."

243.   Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means," would have been material to the patentability of '965 patent, particularly with respect to the examiner's determination of whether certain references constituted prior art.

244.   On information and belief, Katz intentionally failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering unenforceable at least the '965 patent.

245.   Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written description.  Specifically, Examiner Brown stated that "[the text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for "person-to-person" interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

246.   Nonetheless, Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, before Examiner Weaver, which resulted in the issuance of the '065 patent.

247.   On information and belief, Katz failed to inform Examiner Weaver that Examiner Brown had found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification.

248.   On information and belief, Katz intentionally failed to inform Examiner Weaver of Examiner's Brown's prior conclusion in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a

1   scope beyond which Katz was entitled, thereby committing inequitable conduct and

2   rendering unenforceable at least the '551 and '065 patents.

3                          **FIFTH AFFIRMATIVE DEFENSE**

4                            **(Unclean Hands/Patent Misuse)**

5          249.   RAKTL is barred from any relief in this action and at least the '734,

6   '120, '134, and '223 patents are unenforceable under the doctrines of unclean hands

7   and/or patent misuse because RAKTL has asserted the '734, '120, '134, and '223

8   patents with knowledge that at least one claim in each of these patents is invalid.

9                          **SIXTH AFFIRMATIVE DEFENSE**

10                           **(Waiver/Estoppel/Laches)**

11         250.   RAKTL's claims are barred by the equitable doctrines of waiver,

12   estoppel, and/or laches.

13         251.   The Asserted Patents are unenforceable due to laches in light of

14   RAKTL's unreasonable delay in asserting the claimed inventions.

15                        **SEVENTH AFFIRMATIVE DEFENSE**

16                                  **(License)**

17         252.   RAKTL's claims are barred by express or implied license based upon,

18   patent license agreements relating to the Asserted Patents between RAKTL and

19   various third parties, including AT&T and Microsoft.

20                         **EIGHTH AFFIRMATIVE DEFENSE**

21                            **(Patent Exhaustion)**

22         253.   RAKTL's claims are barred by the doctrine of patent exhaustion.

23                          **NINTH AFFIRMATIVE DEFENSE**

24                           **(Limitation on Damages)**

25         254.   To the extent that RAKTL seeks damages for alleged infringement

26   more than six years prior to the filing of this action, it is barred from recovery by 35

27   U.S.C. §286.

28

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Provide Notice)

255.   To the extent that RAKTL seeks damages for any alleged infringement prior to its giving actual notice of the patents to American, its claims are barred pursuant to 35 U.S.C. §287(a).

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unenforceability Due to Prosecution Laches)

256.   RAKTL's claims are barred in whole or in part because of unreasonable and unexplained delays in the prosecution of the Asserted Patents.

## COUNTERCLAIMS

Counterclaim-plaintiffs American Airlines, Inc. and American Beacon Advisors, Inc. (collectively "American") allege the following counterclaims against Counterclaim-defendant Ronald A. Katz Technology Licensing, L.P. ("RAKTL"):

## THE COUNTERCLAIM PARTIES

257.   Counterclaim-plaintiff American Airlines, Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 4333 Amon Carter Blvd., Fort Worth, Texas 76155.

258.   Counterclaim-plaintiff American Beacon Advisors, Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 4151 Amon Carter Blvd., MD 2450, Fort Worth, Texas 76155.

259.   On information and belief, Counterclaim-defendant RAKTL is a limited partnership organized under the laws of the State of California, having a principal place of business at 9220 Sunset Blvd. #315, Los Angeles, California 90069.

260.   This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. § 1, *et seq*.

261.   This Court has personal jurisdiction over RAKTL because RAKTL has commenced the underlying patent infringement action in this court.

262.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because RAKTL filed this action in this district.

## COUNTERCLAIM I

### (Declaratory Judgment Regarding the '551 Patent)

263.   American repeats and realleges paragraphs 1-262 above as if fully set forth herein.

264.   RAKTL purports to be the sole holder of the entire right, title and interest in the '551 patent.

265.   RAKTL has sued American in the present action, alleging infringement of the '551 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '551 patent.

266.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '551 patent, either literally or under the doctrine of equivalents.

267.   One or more claims of the '551 patent is invalid for failure to meet the conditions for patentability of specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

268.   The '551 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

269.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '551 patent against American, thereby causing American irreparable injury and damage.

270.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM II

### (Declaratory Judgment Regarding the '065 Patent)

271.   American repeats and realleges paragraphs 1-270 above as if fully set forth herein.

272.   RAKTL purports to be the sole holder of the entire right, title and interest in the '065 patent.

273.   RAKTL has sued American in the present action, alleging infringement of the '065 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '065 patent.

274.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '065 patent, either literally or under the doctrine of equivalents.

275.   One or more claims of the '065 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

276.   The '065 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

277.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '065 patent against American, thereby causing American irreparable injury and damage.

278.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM III

### (Declaratory Judgment Regarding the '360 Patent)

279.   American repeats and realleges paragraphs 1-278 above as if fully set forth herein.

280.   RAKTL purports to be the sole holder of the entire right, title and interest in the '360 patent.

281.   RAKTL has sued American in the present action, alleging infringement of the '360 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '360 patent.

282.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '360 patent, either literally or under the doctrine of equivalents.

283.   One or more claims of the '360 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

284.   The '360 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

285.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '360 patent against American, thereby causing American irreparable injury and damage.

286.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM IV

### (Declaratory Judgment Regarding the '762 Patent)

287.   American repeats and realleges paragraphs 1-286 above as if fully set forth herein.

288.   RAKTL purports to be the sole holder of the entire right, title and interest in the '762 patent.

289.   RAKTL has sued American in the present action, alleging infringement of the '762 patent.   Thus, an immediate, real, and justiciable

controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '762 patent.

290.  American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '762 patent, either literally or under the doctrine of equivalents.

291.  One or more claims of the '762 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

292.  The '762 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

293.  Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '762 patent against American, thereby causing American irreparable injury and damage.

294.  This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM V

### (Declaratory Judgment Regarding the '863 Patent)

295.  American repeats and realleges paragraphs 1-294 above as if fully set forth herein.

296.  RAKTL purports to be the sole holder of the entire right, title and interest in the '863 patent.

297.  RAKTL has sued American in the present action, alleging infringement of the '863 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '863 patent.

298.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '863 patent, either literally or under the doctrine of equivalents.

299.   One or more claims of the '863 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

300.   The '863 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

301.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '863 patent against American, thereby causing American irreparable injury and damage.

302.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM VI

### (Declaratory Judgment Regarding the '150 Patent)

303.   American repeats and realleges paragraphs 1-302 above as if fully set forth herein.

304.   RAKTL purports to be the sole holder of the entire right, title and interest in the '150 patent.

305.   RAKTL has sued American in the present action, alleging infringement of the '150 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '150 patent.

306.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '150 patent, either literally or under the doctrine of equivalents.

307.   One or more claims of the '150 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

308.   The '150 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

309.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '150 patent against American, thereby causing American irreparable injury and damage.

310.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM VII

### (Declaratory Judgment Regarding the '285 Patent)

311.   American repeats and realleges paragraphs 1-310 above as if fully set forth herein.

312.   RAKTL purports to be the sole holder of the entire right, title and interest in the '285 patent.

313.  RAKTL has sued American in the present action, alleging infringement of the '285 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '285 patent.

314.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '285 patent, either literally or under the doctrine of equivalents.

315.   One or more claims of the '285 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

316.   The '285 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

317.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '285 patent against American, thereby causing American irreparable injury and damage.

318.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM VIII

### (Declaratory Judgment Regarding the '893 Patent)

319.   American repeats and realleges paragraphs 1-318 above as if fully set forth herein.

320.   RAKTL purports to be the sole holder of the entire right, title and interest in the '893 patent.

321.   RAKTL has sued American in the present action, alleging infringement of the '893 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '893 patent.

322.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '893 patent, either literally or under the doctrine of equivalents.

323.   One or more claims of the '893 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

324.   The '893 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

325.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will

1  continue to wrongfully assert the '893 patent against American, thereby causing

2  American irreparable injury and damage.

3     326.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is

4  entitled to an award of attorneys' fees.

5                            **COUNTERCLAIM IX**

6               **(Declaratory Judgment Regarding the '984 Patent)**

7     327.   American repeats and realleges paragraphs 1-326 above as if fully set

8  forth herein.

9     328.   RAKTL purports to be the sole holder of the entire right, title and

10  interest in the '984 patent.

11     329.  RAKTL has sued American in the present action, alleging

12  infringement of the '984 patent.   Thus, an immediate, real, and justiciable

13  controversy exists between RAKTL and American with respect to the alleged

14  infringement, validity, and enforceability of the '984 patent.

15     330.   American has not infringed, and is not infringing, either directly or

16  indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '984

17  patent, either literally or under the doctrine of equivalents.

18     331.   One or more claims of the '984 patent is invalid for failure to meet the

19  conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without

20  limitation, §§ 102, 103, and/or 112.

21     332.   The '984 patent is unenforceable for at least the reasons alleged in

22  American's affirmative defenses, which are incorporated herein by reference.

23     333.   Declaratory relief is both necessary and appropriate.   Absent a

24  declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will

25  continue to wrongfully assert the '984 patent against American, thereby causing

26  American irreparable injury and damage.

27     334.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is

28  entitled to an award of attorneys' fees.

1

2

## COUNTERCLAIM X

## (Declaratory Judgment Regarding the '734 Patent)

3   335.   American repeats and realleges paragraphs 1-334 above as if fully set

4   forth herein.

5   336.   RAKTL purports to be the sole holder of the entire right, title and

6   interest in the '734 patent.

7   337.   RAKTL has sued American in the present action, alleging

8   infringement of the '734 patent.   Thus, an immediate, real, and justiciable

9   controversy exists between RAKTL and American with respect to the alleged

10   infringement, validity, and enforceability of the '734 patent.

11   338.   American has not infringed, and is not infringing, either directly or

12   indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '734

13   patent, either literally or under the doctrine of equivalents.

14   339.   One or more claims of the '734 patent is invalid for failure to meet the

15   conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without

16   limitation, §§ 102, 103, and/or 112.

17   340.   The '734 patent is unenforceable for at least the reasons alleged in

18   American's affirmative defenses, which are incorporated herein by reference.

19   341.   Declaratory relief is both necessary and appropriate.   Absent a

20   declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will

21   continue to wrongfully assert the '734 patent against American, thereby causing

22   American irreparable injury and damage.

23   342.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is

24   entitled to an award of attorneys' fees.

25

26

## COUNTERCLAIM XI

## (Declaratory Judgment Regarding the '120 Patent)

27   343.   American repeats and realleges paragraphs 1-342 above as if fully set

28   forth herein.

344. RAKTL purports to be the sole holder of the entire right, title and interest in the '120 patent.

345. RAKTL has sued American in the present action, alleging infringement of the '120 patent.  Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '120 patent.

346. American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '120 patent, either literally or under the doctrine of equivalents.

347. One or more claims of the '120 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

348. The '120 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

349. Declaratory relief is both necessary and appropriate.  Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '120 patent against American, thereby causing American irreparable injury and damage.

350. This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XII

### (Declaratory Judgment Regarding the '223 Patent)

351. American repeats and realleges paragraphs 1-350 above as if fully set forth herein.

352. RAKTL purports to be the sole holder of the entire right, title and interest in the '223 patent.

353. RAKTL has sued American in the present action, alleging infringement of the '223 patent.  Thus, an immediate, real, and justiciable

1   controversy exists between RAKTL and American with respect to the alleged

2   infringement, validity, and enforceability of the '223 patent.

3   354. American has not infringed, and is not infringing, either directly or

4   indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '223

5   patent, either literally or under the doctrine of equivalents.

6   355. One or more claims of the '223 patent is invalid for failure to meet the

7   conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without

8   limitation, §§ 102, 103, and/or 112.

9   356. The '223 patent is unenforceable for at least the reasons alleged in

10  American's affirmative defenses, which are incorporated herein by reference.

11  357. Declaratory relief is both necessary and appropriate.   Absent a

12  declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will

13  continue to wrongfully assert the '223 patent against American, thereby causing

14  American irreparable injury and damage.

15  358. This case is exceptional and, pursuant to 35 U.S.C. § 285, American is

16  entitled to an award of attorneys' fees.

17  ## COUNTERCLAIM XIII

18  **(Declaratory Judgment Regarding the '965 Patent)**

19  359. American repeats and realleges paragraphs 1-358 above as if fully set

20  forth herein.

21  360. RAKTL purports to be the sole holder of the entire right, title and

22  interest in the '965 patent.

23  361. RAKTL has sued American in the present action, alleging

24  infringement of the '965 patent.   Thus, an immediate, real, and justiciable

25  controversy exists between RAKTL and American with respect to the alleged

26  infringement, validity, and enforceability of the '965 patent.

27

28

362.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '965 patent, either literally or under the doctrine of equivalents..

363.   One or more claims of the '965 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

364.   The '965 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

365.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '965 patent against American, thereby causing American irreparable injury and damage.

366.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XIV

### (Declaratory Judgment Regarding the '135 Patent)

367.   American repeats and realleges paragraphs 1-366 above as if fully set forth herein.

368.   RAKTL purports to be the sole holder of the entire right, title and interest in the '135 patent.

369.   RAKTL has sued American in the present action, alleging infringement of the '135 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '135 patent.

370.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '135 patent, either literally or under the doctrine of equivalents.

371.   One or more claims of the '135 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

372.   The '135 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

373.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '135 patent against American, thereby causing American irreparable injury and damage.

374.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XV

### (Declaratory Judgment Regarding the '156 Patent)

375.   American repeats and realleges paragraphs 1-374 above as if fully set forth herein.

376.   RAKTL purports to be the sole holder of the entire right, title and interest in the '156 patent.

377.   RAKTL has sued American in the present action, alleging infringement of the '156 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '156 patent.

378.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '156 patent, either literally or under the doctrine of equivalents.

379.   One or more claims of the '156 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

380.   The '156 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

381.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '156 patent against American, thereby causing American irreparable injury and damage.

382.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XVI

### (Declaratory Judgment Regarding the '968 Patent)

383.   American repeats and realleges paragraphs 1-382 above as if fully set forth herein.

384.   RAKTL purports to be the sole holder of the entire right, title and interest in the '968 patent.

385.   RAKTL has sued American in the present action, alleging infringement of the '968 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '968 patent.

386.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '968 patent, either literally or under the doctrine of equivalents.

387.   One or more claims of the '968 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

388.   The '968 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

389.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will

continue to wrongfully assert the '968 patent against American, thereby causing American irreparable injury and damage.

390.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XVII

### (Declaratory Judgment Regarding the '576 Patent)

391.   American repeats and realleges paragraphs 1-390 above as if fully set forth herein.

392.   RAKTL purports to be the sole holder of the entire right, title and interest in the '576 patent.

393.   RAKTL has sued American in the present action, alleging infringement of the '576 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '576 patent.

394.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '576 patent, either literally or under the doctrine of equivalents.

395.   One or more claims of the '576 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

396.   The '576 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

397.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '576 patent against American, thereby causing American irreparable injury and damage.

398.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XVIII

### (Declaratory Judgment Regarding the '415 Patent)

399.   American repeats and realleges paragraphs 1-398 above as if fully set forth herein.

400.   RAKTL purports to be the sole holder of the entire right, title and interest in the '415 patent.

401.   RAKTL has sued American in the present action, alleging infringement of the '415 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '415 patent.

402.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '415 patent, either literally or under the doctrine of equivalents.

403.   One or more claims of the '415 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

404.   The '415 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

405.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '415 patent against American, thereby causing American irreparable injury and damage.

406.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XIX

### (Declaratory Judgment Regarding the '252 Patent)

407.   American repeats and realleges paragraphs 1-406 above as if fully set forth herein.

408.   RAKTL purports to be the sole holder of the entire right, title and interest in the '252 patent.

409.   RAKTL has sued American in the present action, alleging infringement of the '252 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '252 patent.

410.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '252 patent, either literally or under the doctrine of equivalents.

411.   One or more claims of the '252 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

412.   The '252 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

413.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '252 patent against American, thereby causing American irreparable injury and damage.

414.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XX

### (Declaratory Judgment Regarding the '134 Patent)

415.   American repeats and realleges paragraphs 1-414 above as if fully set forth herein.

416.   RAKTL purports to be the sole holder of the entire right, title and interest in the '134 patent.

417.   RAKTL has sued American in the present action, alleging infringement of the '134 patent.   Thus, an immediate, real, and justiciable

1   controversy exists between RAKTL and American with respect to the alleged

2   infringement, validity, and enforceability of the '134 patent.

3       418.   American has not infringed, and is not infringing, either directly or

4   indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '134

5   patent, either literally or under the doctrine of equivalents.

6       419.   One or more claims of the '134 patent is invalid for failure to meet the

7   conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without

8   limitation, §§ 102, 103, and/or 112.

9       420.   The '134 patent is unenforceable for at least the reasons alleged in

10  American's affirmative defenses, which are incorporated herein by reference.

11      421.   Declaratory relief is both necessary and appropriate.   Absent a

12  declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will

13  continue to wrongfully assert the '134 patent against American, thereby causing

14  American irreparable injury and damage.

15      422.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is

16  entitled to an award of attorneys' fees.

17  ## COUNTERCLAIM XXI

18  **(Declaratory Judgment Regarding the '703 Patent)**

19      423.   American repeats and realleges paragraphs 1-422 above as if fully set

20  forth herein.

21      424.   RAKTL purports to be the sole holder of the entire right, title and

22  interest in the '703 patent.

23      425.   RAKTL has sued American in the present action, alleging

24  infringement of the '703 patent.   Thus, an immediate, real, and justiciable

25  controversy exists between RAKTL and American with respect to the alleged

26  infringement, validity, and enforceability of the '703 patent.

27

28

426.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '703 patent, either literally or under the doctrine of equivalents.

427.   One or more claims of the '703 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

428.   The '703 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

429.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '703 patent against American, thereby causing American irreparable injury and damage.

430.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XXII

### (Declaratory Judgment Regarding the '707 Patent)

431.   American repeats and realleges paragraphs 1-430 above as if fully set forth herein.

432.   RAKTL purports to be the sole holder of the entire right, title and interest in the '707 patent.

433.   RAKTL has sued American in the present action, alleging infringement of the '707 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '707 patent.

434.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '707 patent, either literally or under the doctrine of equivalents.

435.   One or more claims of the '707 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

436.   The '707 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

437.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '707 patent against American, thereby causing American irreparable injury and damage.

438.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## COUNTERCLAIM XXIII

### (Declaratory Judgment Regarding the '547 Patent)

439.   American repeats and realleges paragraphs 1-438 above as if fully set forth herein.

440.   RAKTL purports to be the sole holder of the entire right, title and interest in the '547 patent.

441.   RAKTL has sued American in the present action, alleging infringement of the '547 patent.   Thus, an immediate, real, and justiciable controversy exists between RAKTL and American with respect to the alleged infringement, validity, and enforceability of the '547 patent.

442.   American has not infringed, and is not infringing, either directly or indirectly under 35 U.S.C. § 271, any valid claim and enforceable claim of the '547 patent, either literally or under the doctrine of equivalents.

443.   One or more claims of the '547 patent is invalid for failure to meet the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation, §§ 102, 103, and/or 112.

444.   The '547 patent is unenforceable for at least the reasons alleged in American's affirmative defenses, which are incorporated herein by reference.

445.   Declaratory relief is both necessary and appropriate.   Absent a declaration of non-infringement, invalidity, and/or unenforceability, RAKTL will continue to wrongfully assert the '547 patent against American, thereby causing American irreparable injury and damage.

446.   This case is exceptional and, pursuant to 35 U.S.C. § 285, American is entitled to an award of attorneys' fees.

## PRAYER FOR RELIEF

THEREFORE, American prays that the Court grant it the following relief:

1.   A denial of any and all relief requested by RAKTL, as set forth in the Request For Relief of its First Amended Complaint, and a dismissal of the Amended Complaint with prejudice;

2.   A declaration that American has not infringed and is not infringing, directly or indirectly, any claims of the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, '156, '968, '576, '415, '252, '134, '703, '707, and '547 patents;

3.   A declaration that one or more claims of the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, '156, '968, '576, '415, '252, '134, '703, '707, and '547 patents are invalid;

4.   A declaration that the '551, '065, '360, '762, '863, '150, '285, '893, '984, '734, '120, '223, '965, '135, '156, '968, '576, '415, '252, '134, '703, '707, and '547 patents are unenforceable;

5.   A declaration that this case is exceptional and an award to American of its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

6.   A grant to American of such other relief as this Court deems appropriate.

1

## **DEMAND FOR JURY TRIAL**

2          American respectfully requests a trial by jury, pursuant to Fed. R. Civ.

3   P. 38(b), on all issues so triable.

4

5   DATED:  January 11, 2008              Respectfully submitted,

6

7                                        Vernon M. Winters
                                         Christopher J. Cox
                                         Jill J. Ho
8                                        WEIL, GOTSHAL & MANGES LLP

9                                        Mike McKool, Jr.
                                         Peter J. Ayers
10                                       McKOOL SMITH P.C.

11

12                                       By:   /s/ Vernon M. Winters

13                                       Vernon M. Winters
                                         Attorneys for Defendants

14
                                         AMERICAN AIRLINES, INC. and
15                                       AMERICAN BEACON ADVISORS, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2          I declare that I am employed with the law firm of Weil, Gotshal &
Manges LLP, whose address is 201 Redwood Shores Parkway, Redwood Shores,
3     California 94065-1175 (hereinafter "WGM"). I am not a party to the within cause,
and I am over the age of eighteen years. I further declare that on January 11, 2008, I
4     served a copy of:

5            **AMERICAN'S ANSWER AND COUNTERCLAIMS TO**
       **PLAINTIFF RONALD A. KATZ TECHNOLOGY**
6            **LICENSING, L.P.'S FIRST AMENDED COMPLAINT**
       **FOR PATENT INFRINGEMENT**

7

8         ☒  **BY U.S. MAIL** by placing a true copy thereof enclosed in a
sealed envelope with postage thereon fully prepaid, addressed as follows, for
9     collection and mailing at WGM in accordance with WGM's ordinary business
practices. I am readily familiar with WGM's practice for collection and processing
10    of mail, and know that in the ordinary course of WGM's business practice that the
document(s) described above will be deposited with the U.S. Postal Service on the
11    same date as sworn to below.

12    Samuel Franklin Baxter          Jeffrey A Berkowitz
    McKool Smith              Finnegan, Henderson, Farabow, Garrett
13    P O Box O                 & Dunner LLP
    Marshall, TX 75671         11955 Freedom Drive
14                                   Reston, VA 20190-5675

15    Sidney Calvin Capshaw , III     Jeffrey Joseph Cox
    Brown McCarroll            Hartline Dacus Barger Dreyer and Kern
16    1127 Judson Road, Suite 220   6688 North Central Expressway, Suite
    P O Box 3999               1000
17    Longview, TX 75606-3999    Dallas, TX 75206-2980

18    Elizabeth L DeRieux         Scott W Doyle
    Brown McCarroll            Steptoe and Johnson
19    1127 Judson Road, Suite 220   1330 Connecticut Avenue, Northwest
    Longview, TX 75606-3999    Washington, DC 20036

20    York M Faulkner           Paul Gennari
    Finnegan Henderson Farabow Garrett Steptoe & Johnson
21    and Dunner               1330 Connecticut Avenue, NW
    Two Freedom Square       Washington, DC 20036
22    11955 Freedom Drive, Suite 800
    Reston, VA 20190
23

24    Jonathan G Graves         Susan Koegel
    Cooley Godward Kronish     Steptoe and Johnson
25    11951 Freedom Drive        1330 Connecticut Avenue, Northwest
    Reston, VA 20190         Washington, DC 20036

26    Karen M Lockwood        Nicholas H Patton
    Howrey                  Patton Tidwell and Schroeder
27    1299 Pennsylvania Avenue Northwest 4605 Texas Boulevard
    Washington, DC 20004-2402   P O Box 5398
28                                   Texarcana, TX 75505-5398

1

2
John Michael Pickett
Young Pickett and Lee
3
4122 Texas Boulevad
P O Box 1897
Texarcana, TX 75504-1897

Andrew Wesley Spangler
Brown McCarroll
1127 Judson Road, Suite 220
P O Box 3999
Longview, TX 75606-3999

4

5
Michael W Vella
Morrison & Foerster
6
13531 High Bluff Drive, Suite 100
San Diego, CA 92130-2332

Claude Edward Welch
Claude Edward Welch Law Offices
P O Box 1574
Lufkin, TX 75902

7

8
          Executed on January 11, 2008 at Redwood Shores, California.   I
declare under penalty of perjury under the laws of the United States of America that
9
the foregoing is true and correct.

10
                              _____
                                   */s/ Nettie Asiasi*
11
                                   Nettie Asiasi

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28