COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (170085)
(NEALSC@COOLEY.COM)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:  (650) 843-5000
Facsimile:   (650) 857-0663

FRANK PIETRANTONIO (PRO HAC VICE)
(FPIETRANTONIO@COOLEY.COM)
JONATHAN G. GRAVES (PRO HAC VICE)
(JGRAVES@COOLEY.COM)
One Freedom Square, Reston Town Center
11951 Freedom Drive
Reston, VA  20190-5656
Telephone:  (703) 456-8000
Facsimile:   (703) 456-8100

Attorneys for Plaintiff
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.
in the Cases Transferred from the Eastern District of Texas
except *Katz v. GE*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In Re KATZ INTERACTIVE CALL PROCESSING LITIGATION<br><br>This document relates to:<br><br>ALL "B" TRACK ACTIONS<br>(except CV 07-02254 RGK (FFMx))<br><br>Ronald A. Katz Technology Licensing L.P. v. American Airlines, Inc., et al.<br>    CV 07-2196 RGK (FFMx)<br>Ronald A. Katz Technology Licensing L.P. v. Aetna, Inc., et al.<br>    CV-07-2213 RGK (FFMx)<br>Ronald A. Katz Technology Licensing L.P. v. Citibank, N.A., et al.<br>    CV 07-2220 RGK (FFMx)<br>Ronald A. Katz Technology Licensing L.P. v. T-Mobile USA, Inc.<br>    CV 07-2250 RGK (FFMx)<br>Ronald A. Katz Technology Licensing L.P. v. American Electric Power Co., Inc., et al. | Case No. 2:07-ML-1816-B-RGK (FFMx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112**<br><br>Courtroom:   850<br><br>Hon. R. Gary Klausner |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

1.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1       CV 07-2257 RGK (FFMx)

2  Ronald A. Katz Technology Licensing
L.P. v. Cox Communications, Inc., et
al.

3       CV 07-2299 RGK (FFMx)

4  Ronald A. Katz Technology Licensing
L.P. v. DirecTV Group, Inc., et al.

5       CV 07-2322 RGK (FFMx)
Ronald A. Katz Technology Licensing
L.P. v. Earthlink, Inc., et al.

6       CV 07-2325 RGK (FFMx)
Ronald A. Katz Technology Licensing

7  L.P. v. General Motors Corp., et al.
     CV 07-2339 RGK (FFMx)

8  Ronald A. Katz Technology Licensing
L.P. v. Humana, Inc., et al.

9       CV 07-2340 RGK (FFMx)
Ronald A. Katz Technology Licensing

10  L.P. v. U.S. Bancorp, et al.
     CV 07-2360 RGK (FFMx)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

2.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

# Table of Contents

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   WRITTEN DESCRIPTION VALIDITY .................................................. 2

    A.    Written Description Invalidity Is A Factual Issue That Must Be Proven By "Clear And Convincing" Evidence ................................... 2

    B.    All Evidence And Fact Disputes Must Be Viewed In Katz's Favor ...................................................................................................... 2

    C.    Written Description Must Be Assessed From The Viewpoint Of A Skilled Artisan, And Does Not Require Express Description .......... 2

    D.    Defendants' Motion Must Be Denied Where Defendants Present No Probative Evidence Of Invalidity ...................................................... 4

III.  THE WRITTEN DESCRIPTIONS FULLY SUPPORT THE ASSERTED CLAIMS .............................................................................. 5

    A.    The Call Selectivity Patents Fully Support Their Claims .................... 5

        1.    The patents disclose multiple formats (Open. Br. 3-4) .............. 5

        2.    The patents disclose that DNIS identifies formats (Open. Br. at 5-6) ................................................................................... 7

        3.    The patents disclose qualifying "at least" toll free calls (Open. Br. at 4-5) ..................................................................... 7

        4.    The patents disclose testing ANI for qualification (Open. Br. at 19) .................................................................................... 9

        5.    '223:5 is fully supported (Open. Br. at 22-24) ......................... 9

    B.    The Statistical Interface Patents Fully Support Their Claims ........... 10

        1.    The patents disclose that operators enter data (Open. Br. at 9-11) ..................................................................................... 10

        2.    The patents disclose visually displaying data as the claims recite (Open. Br. at 17-18) ..................................................... 12

        3.    The patents disclose cuing "specific ones" of callers (Open. Br. at 11-12) ............................................................... 13

        4.    The patents disclose DNIS controlling formats (Open. Br. at 12-13) ................................................................................. 14

        5.    The patents disclose the recited "file" limitations (Open. Br. at 16-17) ............................................................................ 14

        6.    The patents disclose approval signals (Open. Br. at 20-21) ..... 15

        7.    The patents disclose a central memory accessed by multiple interface switching structures (Open. Br. at 21-22) ......................................................................................... 16

        8.    The patents disclose key numbers in product packaging (Open. Br. at 24) ..................................................................... 17

        9.    The patents disclose using identification data to avoid prompting callers with previous cues (Open. Br. at 25-26) ..... 17

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

i.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1
2

**Table of Contents**
**(continued)**

Page

3  C. The Conditional Interface Patents Fully Support Their Claims ........ 18

4  1. The '285 and '893 patents disclose that operators enter data for processing (Open. Br. at 9-11) .................................. 18

5  2. The '150 patent discloses testing "in relation to" call data signals (Open. Br. at 14-15)........................................ 19

6  D. The Ticket System Patents Fully Support Their Claims .................. 19

7  1. The patents disclose controlling the processor to process a specific format, based on DNIS (Open. Br. at 12-13). ............. 19

8
9  2. The patents disclose "for providing an indication" of reaching a limit on use (Open. Br. at 14). ...................... 20

10  3. The patents fully support the recited ticket, card, format, and control system limitations (Open. Br. at 13-14) ............ 20

11  E. The '415 Patent Discloses Formats Generally (Open. Br. at 15-16). ................................................................ 21

12  F. The '965 Patent Fully Supports Its Claims ........................ 22

13  1. The patent discloses the recited "file" limitations (Open. Br. at 16-17)................................................ 22

14  2. The patent discloses computer-generated acknowledgement numbers (Open. Br. at 20) ...................... 23

15  G. The Patents Disclose Called-Number And Calling-Number Signals Automatically Provided (Open. Br. at 6-9).................... 23

16

17  IV. THE ASSERTED CLAIMS ARE NOT INDEFINITE ............................. 25

  A. Defendants Fail To Prove Any Claim "Insolubly Ambiguous." ........ 25

18  B. Defendants Conceded Definiteness In Their Section 103 Briefing ................................................ 27

19  C. The Katz Claims Are Not Indefinite .................................. 27

20  1. Voice signals actuate remote terminals (Open. Br. at 27-28) ............................................................ 27

21  2. The "system" in '965:31 is the system performing the claimed method (Open. Br. at 28) ................................ 28

22

23  3. "Remote terminals [that] may comprise a conventional telephone" is clear and unambiguous (Open. Br. at 29-30) ..... 29

24  4. The "callers" in '965:35, 43, and 53 are unambiguous ........... 30

25  5. '965:61 and 66 were amended in a Certificate of Correction ........................................................ 30

26  6. The "means to receive [DNIS]" elements are definite ............. 30

27  7. The "additional call data signals" ('285:23) result from the remote terminals ............................................ 31

28  8. System claims wherein "callers enter data" are definite ......... 32

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

ii.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

# Table of Contents
## (continued)

Page

9.  "Processing/computer means," "means for processing," and "analysis structure" are fully supported (Open. Br. at 33-35) ............................................................................. 33

V.  CONCLUSION ............................................................................. 35

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

iii.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

1

**TABLE OF AUTHORITIES**

2

**Page**

3

<u>CASES</u>

4

*Agere Systems, Inc. v. Atmel Corp.*
  No. CIV.A. 02-864, 2003 WL 21652264  (E.D. Pa. May 27, 2003) ............... 29

5

*All-Dental Prodx, LLC v. Advantage Dental Products, Inc.*
  309 F.3d 774 (Fed. Cir. 2002) ......................................................................... 3, 7

6

*AllVoice Computing PLC v. Nuance Communcations, Inc.*
  504 F.3d 1236 (Fed. Cir. 2007) ........................................................................ 26

7

*Aristocrat Techs. Australian Pty, Ltd. v. Int'l Game Tech.*
  No. 2007-1419, 2008 WL 819764 (Fed. Cir. Mar. 28, 2008) ........................... 33

8

*Atmel Corp. v. Information Storage Devices, Inc.*
  198 F.3d 1374 (Fed. Cir. 1999) ................................................................. 26, 27

9

*Bancorp Serv. LLC v. Hartford Life Ins. Co.*
  359 F.3d 1367 (Fed. Cir. 2004) ................................................................. 26, 32

10

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com., Inc.*
  289 F.3d 801 (Fed. Cir. 2002) ......................................................................... 29

11

*Chimie v. PPG Industries, Inc.*
  402 F.3d 1371 (Fed. Cir. 2005) ....................................... 13, 14, 15, 19, 20, 25

12

*Collaboration Props., Inc. v. Tandberg ASA*
  No. 05-01940, 2006 WL 1752140 (N.D. Cal. June 23, 2006) ......................... 33

13

*Creo Products, Inc. v. Presstek, Inc.*
  305 F.3d 1337 (Fed. Cir. 2002). ....................................................................... 26

14

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*
  424 F.3d 1168 (Fed. Cir. 2005) ......................................................................... 4

15

*Energizer Holdings, Inc. v. Int'l Trade Commission*
  435 F.3d 1366 (Fed. Cir. 2006) ....................................................................... 28

16

*Enzo Bio-Chem, Inc. v. Gen-Probe, Inc.*
  323 F. 3d 956 (Fed. Cir. 2002) .......................................................................... 2

17

*Falkner v. Inglis*
  448 F.3d 1357 (Fed. Cir. 2006) ......................................................... 2, 9, 21, 22

18

*Finisar Corp. v. The DirecTV Group, Inc.*
  Nos. 2007-1023, 2007-1024, 2008 WL 1757675 (Fed. Cir. April 18, 2008) .................................................................................................... 35

19

*Flo Healthcare Solutions, LLC v. Rioux Vision, Inc.*
  No. 1:06-CV-2600-TWT, 2007 WL 4200678 (N.D. Ga. Nov. 16, 2007) ............................................................................................................. 29

20

*Intellectual Property Development v. UA-Columbia Cablevision*
  336 F.3d 1308 (Fed. Cir. 2003). ......................................................... 26, 30, 35

21

*Intervet Am., Inc. v. Kee-vet Labs., Inc.*
  887 F.2d 1050 (Fed. Cir. 1989) ....................................................................... 10

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

iv.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Invitrogen Corp. v. Biocrest Mfg.*
424 F.3d 1374 (2005) ............................................................... 2, 27

4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*
430 F.3d 1377 (Fed. Cir. 2005). ............................................... 32, 33

5

*KAO Corp. v. Unilever U.S., Inc.*
441 F.3d 963 (Fed. Cir. 2006) ........................................... 11, 16, 17

6

*Katz v. AT&T*
63 F. Supp. 2d 583 (E.D. Pa.) .......................................... 22, 25, 29, 34

7

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*
381 F.3d 1142 (Fed. Cir. 2004) ..................................................... 3, 6, 7

8

*Liebel-Flarsheim Co. et al., v. Medrad, Inc.*
358 F.3d 898 (Fed. Cir. 2004) .................................................... 21, 22

9

*Marley Mouldings Ltd. v. Mikron Indus., Inc.*
417 F.3d 1356 (Fed. Cir. 2005) ......................................................... 25

10

*Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*
No. 2007-1249, 2008 WL 850332 (Fed. Cir. Apr. 1, 2008) ............... 33

11

*MOBA, B.V. v. Diamond Automation, Inc.*
325 F.3d 1306 (Fed. Cir. 2003) .................................... 3, 4, 9, 21, 22

12

*One World Technologies, Ltd. v. Rexon Industry Corp.*
No. 04-C-4337, 2005 WL 1377897 (N.D. Ill. Jun. 3, 2005) ............ 10

13

*Pandrol USA, LP v. Airboss Railway Products, Inc.*
424 F.3d 1161 (Fed. Cir. 2005) ........................................................ 3

14

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) ................................................. 5, 25

15

*Ricoh Co., Ltd. v. Katun Corp.*
486 F. Supp. 2d 395 (D.N.J. 2007) .................................................. 33

16

*Union Oil Co. of Cal. v. Atlantic Richfield Co.*
208 F.3d 989 (Fed. Cir. 2000) ........................................................... 3

17

*Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, LLP*
326 F. Supp. 2d 1060 (C.D. Cal. 2003) ...................... 10, 11, 12, 25, 31, 34

18

*WMS Gaming, Inc. v. Int'l Game Tech.*
184 F.3d 1339 (Fed. Cir. 1999) ....................................................... 34

19

*Xerox Corp. v. 3Com Corp.*
458 F.3d 1310 (Fed. Cir. 2006) ....................................................... 26

20

*Yodlee, Inc. v. CashEdge, Inc.*
No. 05-01550, 2006 WL 3456610 (N.D. Cal. Nov. 29, 2006) ......... 33

21

*Young v. Lumenis, Inc.*
492 F.3d 1336 (Fed. Cir. 2007) ....................................................... 26

22

23

24

25

26

27

28

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

v.

**PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112**

# I.     INTRODUCTION.

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz") opposes Defendants' motion for summary judgment of invalidity based on lack of written description and indefiniteness under 35 U.S.C. § 112.  *See* Defendants' Memorandum In Support Of Motion For Summary Judgment Under Section 112 ("Open. Br.") (Doc. No. 1867-2).

Defendants fall well short of establishing entitlement to summary judgment of invalidity based on lack of written description.  The asserted claims from Mr. Katz's presumptively valid patents are supported by multiple patent specifications that include numerous embodiments.  Viewed from the perspective of one of ordinary skill in the art, the specifications' extensive disclosures show that Mr. Katz was in possession of the claimed inventions at the time of the applications.

Faced with this abundant evidence of adequate written description, which must be viewed in Katz's favor at the summary judgment stage, Defendants premise their written description attacks on erroneous claim constructions that contravene the teachings in the specifications, and in some instances directly conflict with this Court's claim construction ruling.   Armed with claim constructions made out of whole cloth, Defendants argue that the patents fail to provide explicit written description for the claims as they have construed them.

That is pure sophistry.  This Court's written description analysis must begin with proper interpretation of the claims at issue.  Moreover, the law requires *disclosure* to one of ordinary skill in the art, not explicit mention of every word from the claims.   As set forth in this memorandum and the accompanying declaration of Katz's validity expert, there is more than sufficient disclosure in the specifications to show that under the correct constructions of the challenged claims, and viewed from the perspective of one of ordinary skill in the art, Mr. Katz possessed the claimed inventions at the time of the original disclosures.

Defendants' indefiniteness attacks on dozens of claims are also without

1.

merit.   During the mini-*Markman* process and in their Section 103 summary judgment motions, Defendants and their experts set forth their understanding of most of the challenged claims, thereby effectively conceding that those claims are not "insolubly ambiguous."   The evidence demonstrates how the scope of the challenged claims would be reasonably ascertainable to skilled artisans.

Defendants suggest that their motion "can dramatically reduce the number of patent claims at issue in this case."  (Open. Br. at 1).  The Court should reject this invitation to extinguish Katz's property rights in the name of case management. Defendants' moving papers fail to set forth clear and convincing evidence of invalidity under Section 112.  Accordingly,  the motion for summary judgment should be denied in its entirety.

## II.   WRITTEN DESCRIPTION VALIDITY.

### A.   Written Description Invalidity Is A Factual Issue That Must Be Proven By "Clear And Convincing" Evidence.

"Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date."  *Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006).  Because all patent claims are presumed valid under 35 U.S.C. § 282, "invalidating a claim requires a showing by clear and convincing evidence that the written description requirement has not been satisfied." *Invitrogen Corp. v. Clontech Labs., Inc*., 429 F.3d 1052, 1072 (Fed. Cir. 2005) , citing *Enzo Bio-Chem, Inc. v. Gen-Probe, Inc.*, 323 F. 3d 956, 962 (Fed. Cir. 2002). Defendants ignore their "clear and convincing" burden.  Open. Br. at 1-3.

### B.   All Evidence And Fact Disputes Must Be Viewed In Katz's Favor.

For purposes of Defendants' motion for summary judgment, the Court must "view[] the evidence and any disputed factual issues in the light most favorable" to Katz.  *Enzo*, 323 F.3d at 962 (Fed. Cir. 2002) (citation omitted).

### C.   Written Description Must Be Assessed From The Viewpoint Of A Skilled Artisan, And Does Not Require Express Description.

"In order to comply with the written description requirement, the

1   specification 'need not describe the claimed subject matter in exactly the same

2   terms as used in the claims; it must simply indicate to persons skilled in the art that

3   as of the [filing] date the applicant had invented what is now claimed.'" *All-Dental*

4   *Prodx, LLC v. Advantage Dental Prods., Inc*., 309 F.3d 774, 778 (Fed. Cir. 2002)

5   (citations omitted) (reversing summary judgment of invalidity).  Written description

6   validity "requires sufficient information in the specification to show that the

7   inventor possessed the invention at the time of that original disclosure." *Pandrol*

8   *USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005).

9       Defendants erroneously assert that a "specification that does not

10  unambiguously describe all limitations of a claim does not meet the written

11  description requirement."  Open. Br. at 2.  To the contrary, written description is a

12  matter of *disclosure* to one skilled in the art; express description is not required.

13  "The possession test requires assessment from the viewpoint of one of skill in the

14  art." *Id.*; *MOBA, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1320-21 (Fed.

15  Cir. 2003), citing *Union Oil Co. of Cal. v. Atlantic Richfield Co.,* 208 F.3d 989, 997

16  (Fed. Cir. 2000).  "[O]ur standard is that the patent's 'disclosure must allow one

17  skilled in the art 'to visualize or recognize the identity of' the subject matter

18  purportedly described.'" *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d

19  1142, 1154-55 (Fed. Cir. 2004) (citations omitted).  "The written description

20  requirement does not require the applicant to describe exactly the subject matter

21  claimed." *MOBA*, 325 F.3d at 1321 (citation omitted).  For example, "the written

22  description requirement can be satisfied by 'words, structures, figures, diagrams,

23  formulas, etc.'" *Koito Mfg.*, 381 F.3d at 1154 (citation omitted).

24      Defendants note that some claims were not included in the originally filed

25  patent applications.  But that is of no moment where, as in this case, "one skilled in

26  the art would recognize upon reading the specification that the new [claim]

27  language reflects what the specification shows has been invented." *All-Dental*, 309

28  F.3d at 779 (citation omitted).  All of the challenged claim limitations are expressly

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

3.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

or inherently disclosed in their supporting specifications.

### D. Defendants' Motion Must Be Denied Where Defendants Present No Probative Evidence Of Invalidity.

Defendants ignore that the inquiry "requires assessment from the viewpoint of one of skill in the art." *MOBA*, 325 F.3d at 1320-21. Defendants submit a purported expert declaration ("Forys Decl."), but it contains little probative evidence. Dr. Forys says his opinions are "in the context of how this person of ordinary skill in the art would interpret" the patents (Forys Decl. ¶ 21), but for most claims he does not *apply* any such perspective; he states only that out-of-context excerpts from the specifications "do not mention" or "do not describe" the claim language.[1] Such conclusory statements are not even substantial evidence, much less "clear and convincing evidence" at summary judgment where all inferences must be viewed in Katz's favor. *See CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1176 (Fed. Cir. 2005) ("general and conclusory" expert testimony, "consisting of little more than the statement 'I believe that the claim would be invalid, because I can't find any support…in the specification,'" insufficient to support invalidity finding). Thus, under Local Rule 56-3, most of Defendants' assertions are not "adequately supported" and cannot support summary judgment. L.R. 56-3.

By contrast, Katz provides highly probative evidence in the form of a declaration of expert Dr. Arthur Brody, Ph.D. ("Brody"). Dr. Brody explains the patents' *disclosures* from a skilled artisan's viewpoint.[2] Katz also submits a Statement of Genuine Issues ("SGI") identifying disputed facts and contentions. For the Court's convenience, Katz groups the issues by common specification.

---

[1] Defendants admit the irrelevance of that 135-page declaration, and their failure of proof, by suggesting "[t]he record that the Court will need to review" is "primarily the patent specifications" and file history excerpts. (Open. Br. at 1).

[2] "Skilled artisan" herein refers to a person of ordinary skill in the relevant field at the relevant time period, as Dr. Brody discusses. Brody ¶¶7-10.

III.   **THE WRITTEN DESCRIPTIONS FULLY SUPPORT THE ASSERTED CLAIMS.**

A.   **The Call Selectivity Patents Fully Support Their Claims.**

1.   **The patents disclose multiple formats (Open. Br. 3-4).**

The Call Selectivity specification[3] teaches a system in which callers may dial different telephone numbers to access different call processing flows in a single system.   In asserting that these patents do not teach multiple formats, the Defendants erroneously (1) ignore this Court's controlling construction of "format," and (2) rely on a "Brief Description of the Drawings" rather than considering what the full specification *discloses* to a skilled artisan.  Brody ¶¶ 32-74.

a.   **Different formats are different call processing flows.**

This Court correctly construed "format" to refer to "a call processing flow implemented by at least one computer program that sets forth the content and sequence of steps…."  MDL *Markman* Order at 13-16.  Defendants ignore this construction, under which the Call Selectivity patents clearly teach multiple different *call processing flows*.  Each different call flow has a different *content and sequence of steps* for caller-system exchanges, as explained below.

This Court in *Verizon* at one point found no support for multiple formats in this specification.  But that *Verizon* finding (1) relied on a fundamentally different construction of "format," and (2) was formally vacated. (Declaration of Lowell D. Mead ("Mead Decl.") Ex. M ("Vacated order").   That vacated order defined "format" as "at least one computer program, implementing a call process flow application…."  Vacated order at 46.  In the MDL proceedings, the Court correctly rejected Defendants' attempt to recapture that vacated "computer program" construction.   MDL *Markman* at 13-16.  This Court's construction of "format" supports the Call Selectivity claims reciting multiple formats, which further confirms the correctness of the construction.  *Phillips v. AWH Corp.*, 415 F.3d

---

[3] Katz follows the Court's *Markman* order patent labels.  *See* MDL *Markman* Order (Doc. No. 1448) at 5-6; Brody ¶12 (explaining patent categories).

1303, 1327 (Fed. Cir. 2005) (courts may resolve ambiguity to "preserve the patent's validity"); Brody ¶34.

### b. The specification teaches the skilled artisan multiple call processing flows in one system.

Figure 2 illustrates the different call processing flows for callers to an 800 number, 900 number, or area-code number.   *See Koito*, 381 F.3d at 1154 ("the written description requirement can be satisfied by 'words, structures, figures, diagrams, formulas, etc.'"); Brody ¶¶35-48.  As detailed in the related text, callers to an 800 number enter a consumable code and register a calling number (block 54), with the number then checked for validity (block 56) and previous use (block 58). Brody ¶41.  Callers to a 900 number access a different format—different call flow, different steps—including testing the calling number (block 64).   Defendants emphasize that the specification teaches three call modes, but ignore the express teaching that "the system implements three calling modes *to facilitate various formats*."  Brody ¶¶38-9.  The formats start at different points, and are not mere "branching" within one format.  Brody ¶72.

In an illustrative embodiment, the call flows are implemented by different physical structures, further illustrating their differences.   Depending on which number the caller dials, the call connects to a specifically-programmed audio response unit (ARU), with other structures involved depending on the ARU.[4] Brody ¶¶48-49.  Figure 1 shows, and the text describes, the three ARU's and associated structures (units 32 and 34).  Brody ¶¶48-49.  Figure 2 and the text describe three different call processing flows, each starting with a different ARU. Brody ¶¶47.  The specification fully discloses multiple formats. Brody ¶¶ 32-74.

### c. Defendants rely on the "Brief Description of the Drawings" instead of the full detailed descriptions.

Defendants rely heavily on the patent's "Brief Description" of Figure 2,

---

[4] In alternative embodiments, as discussed below, "a single composite unit" may be used instead of multiple ARU's.  Brody ¶48.

which refers to "an operating format."  Open. Br. at 3-4.  But that is only a small part of a detailed specification fully disclosing the multiple call processing flows (formats) that the claims recite.  Brody ¶¶68-69; *Koito*, 381 F.3d at 1154-55 (specification "need not describe the claimed subject matter in exactly the same terms as used in the claims"); *All-Dental*, 309 F.3d at 778 ("one skilled in the art would recognize upon reading the specification that the new [claim] language reflects what the specification shows has been invented").

### 2. The patents disclose that DNIS identifies formats (Open. Br. at 5-6).

Defendants assert that the specification does not describe "using DNIS to identify or select a format," relying on vacated *Verizon* comments that the specification "does not clearly describe how such DNIS signals are used within the Katz system."  Open. Br. at 5-6.  In fact, however, as properly understood from the skilled artisan's viewpoint, the specification fully discloses how DNIS signaling identifies formats in the illustrative embodiments.  Brody ¶¶ 75-98.

Claims '120:32 and 34, '223:58, and '223:86 each recite that DNIS signaling "identifies" the format.  Brody ¶¶76, 78, 79.  Claim '223:1 recites the "interface format selected by said digital signals indicative of DNIS."  Brody ¶¶77.  DNIS is taught to be "*useful in various embodiments of the present system*, as to distribute calls from a single equipment."  Brody ¶¶82.  In an illustrative embodiment, when a caller dials a specific phone number, the call is distributed with DNIS to a specifically-programmed ARU corresponding to a specific call processing flow (format).  Brody ¶¶84-87, 96.  In other disclosed embodiments, instead of separate ARUs for each called number, "a single composite unit" is used, or multiple ARU's are used within each call mode.  Brody ¶¶88-90.  In these embodiments likewise DNIS signals identify and select the format as the claims recite.  Brody ¶¶89.

### 3. The patents disclose qualifying "at least" toll free calls (Open. Br. at 4-5).

Defendants erroneously assert that claims covering qualification for "at least"

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

7.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

1    certain toll-free calls are not supported.  Open. Br. at 4-5.  The argument fails both

2    (1) as a matter of claim scope, and (2) in light of the specification's clear teachings.

3    Brody ¶¶ 99-117.

4           First, Defendants erroneously suggest that these claims *require* some "toll

5    free calls that are unqualified or unverified."   Open. Br. at 5; *id*. ("None of the

6    originally filed claims recited unqualified or unverified toll free calls").   But the

7    claims say nothing, and require nothing, about calls that are not qualified or

8    verified.  For example, '120:28 recites "qualification means for qualifying at least

9    said [toll-free] calls…" and '223:51 recites "verification means for verifying at least

10   the [toll-free] calls…."  These elements specify the means' functions: they qualify

11   or verify at least the previously-recited toll-free calls.  These same structures might

12   also qualify or verify *all* other toll-free calls.  Brody ¶105.  Alternatively, some

13   other structure might qualify or verify all other toll-free calls.  *Id*.  The same holds

14   for claim '223:5.  Method claim '223:86 recites "testing…to verify…at least"

15   certain calls.  This does *not* require that some calls are not verified.  Brody ¶106.

16          These claims are all open-ended: a system or method "comprising" certain

17   elements.  None of the structures or steps recites "non-qualified" calls.  Brody ¶107.

18   Just as this Court rejected Defendants' claim construction proposal for the term

19   "qualified," proposing that *non*-qualified calls must be aborted, it should likewise

20   reject this attempt to inject claim limitations about *non*-qualified calls.   MDL

21   *Markman* at 42-44.  Indeed, this Court was invited to the same error in *Verizon*,

22   mistakenly accepting that these claims "*recite* that *some* calls in the toll free calling

23   mode (i.e., '800' calls) are qualified or verified *while others are not*."  Vacated

24   order at 85 (emphasis added).

25          Even if the claims required some non-qualified toll-free calls (which they do

26   not), the specification amply discloses that.  Brody ¶¶108-11.  Defendants assert

27   that the specification "describes that all toll free calls are qualified or verified"

28   (Open. Br. at 5), but the specification nowhere discloses or suggests that all toll free

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

8.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

calls must be qualified or verified. Brody ¶114. To the contrary, for example, only "[i]n *most* applications, it is important to regulate the use of the '800' calling mode"—not *all* applications. Brody ¶115.

### 4. The patents disclose testing ANI for qualification (Open. Br. at 19).

Defendants admit that the '120 patent teaches the ANI qualification that '120:67 recites. Open. Br. 19. Defendants also admit that '120:67 itself does not require or exclude any particular call mode, unlike non-asserted '120:71 which explicitly recites two call modes. Defendants only argue that because '120:67 is not limited to one preferred embodiment (ANI testing in an area code mode), the claim is invalid for "encompassing" other embodiments as well (e.g., 800 mode or 900 mode). But "[a] claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *Falkner*, 448 F.3d at 1366 (citations omitted). *See also MOBA*, 325 F.3d at 1322-23 ("Each time a claim encompasses more than the preferred embodiment…a defendant can assert that the patent is invalid for failure to describe the entire invention....Fortunately, this court did not fall for [that] argument.") (Rader, J., concurring). The '120:67 invention is directed to its recited steps, which are fully supported and disclosed, with no limitations relating to call mode. Brody ¶¶118-131. The specification nowhere disclaims or disavows embodiments of the '120:67 invention in any particular call mode. Brody ¶118-131. Finally, even if '120:67 recited ANI testing in an 800 or 900 mode (which it does not), the specification discloses those limitations. Brody ¶¶118-131.

### 5. '223:5 is fully supported (Open. Br. at 22-24).

Defendants' assertion regarding "synthesized" voice signals is doubly erroneous. Open. Br. 22-24. First, Defendants propose that the preamble phrase "wherein callers are cued by synthesized voice signals" is antecedent basis for "callers" in the body of the claim. But Defendants mislead: those "callers" are the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

9.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

"select subset of callers" introduced in the *body* of the claim ("means for selectively receiving calls from said multitude of terminals to establish telephone communication with *a select subset of callers*"), *not* the preamble.  Brody ¶¶135-6.  Other portions of the preamble might be limiting, but "wherein...synthesized voice signals" is a non-limiting, functional statement of intended use.  *Intervet Am., Inc. v. Kee-vet Labs., Inc.,* 887 F.2d 1050, 1055 (Fed. Cir. 1989) ("part of what was in a claim preamble was held to be a limitation and another part of the preamble was not.  Each case must be judged on its own facts."); *One World Techs., Ltd. v. Rexon Indus. Corp.,* No. 04-C-4337, 2005 WL 1377897, at *16 (N.D. Ill. Jun. 3, 2005) ("support assembly" recites essential structure, while "for transporting a motor driven woodworking implement" is a non-limiting "statement of intended use"); Brody ¶134.

Furthermore, even if "synthesized" voice signals were a claim limitation, the specification teaches the use of a "voice generator" to generate a "*simulated* voice question."  Brody ¶¶137-144.  Defendants cite old references from 1973 and 1977, but the skilled artisan in the relevant 1989 timeframe would have recognized that "simulated voice" from a known voice "generator" included "synthesized" voice signals.  Brody ¶¶137-144.

**B.**     **The Statistical Interface Patents Fully Support Their Claims.**

   **1.**     **The patents disclose that operators enter data (Open. Br. at 9-11).**

Defendants ignore this Court's correct findings in *Verizon* that the Statistical Interface patents disclose operator data entry.  Open. Br. at 9-11.  As this Court found, "the specification…informs us that an operator terminal, according to the disclosed embodiment, 1) is connected to the processing systems P1-Pn;  2) allows operators to directly communicate with callers;  and 3) appears to allow operators to manually enter data during interactions with callers."  *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, LLP*, 326 F. Supp. 2d 1060, 1094-95 (C.D. Cal. 2003)

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

10.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

As disclosed to the skilled artisan, a call is transferred to an operator terminal so that the operator can exchange information with the system, through the interface terminal, on the caller's behalf.  Brody ¶¶145-176.  The operator terminals are connected to processing systems P1-Pn and processors PR1-PRn.  *Id*.  Instead of callers themselves entering data via touch-tone into the processing systems, a live operator may enter the data through the interface terminal into those same processing systems, where the data is processed, stored, and updated as the claims recite.  Brody ¶145-176.

The system's automated "data accumulation phase" may thus be replaced by operator-entered data operations:  "Either *during the data accumulation phase*, or after the processing phase to isolate a subset, a distinct operation may involve actuating the interface terminal…for direct local communication between the caller and an operator at the terminal."  Brody ¶155.  The operator then manually enters data through the operator's terminal: for example, "the caller may not be identified in the files of the mail-order house and in that event, the operation may be shifted to a manual operation to be continued through the interface terminal IT."  '863 col. 11:6-12.   This "*manual operation…through the interface terminal*"—which Defendants ignore—is operator data entry.  *See* Katz Br. at 32; *Verizon*, 326 F. Supp. 2d at 1094-95; Brody Decl. ¶¶168-9.

Defendants assert that the patents "do not show live operators inputting caller data."  Open. Br. at 10.  But express depiction of a human typing on a keyboard is not required to disclose the invention.  *See*, *e.g.*, *KAO Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006) (a non-described "wetting step, which appears necessary to aid in the adhesion of the claimed cosmetic article, is so straightforward that a detailed description in the specification is not necessary") (citation omitted).   The "*manual operation…through the interface terminal*" expressly describes that operators enter data.  Brody ¶¶168-9.

Defendants note that the '965 patent also teaches operator data entry, and cite

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

11.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

testimony of the inventor and Dr. Brody to the effect that transfer to an operator does not necessarily involve operator data entry. Open. Br. at 10-11. But that is all irrelevant to *this specification's* express disclosure, which this Court correctly addressed in *Verizon*. Brody ¶¶145-176.

### 2. The patents disclose visually displaying data as the claims recite (Open. Br. at 17-18).

Defendants argue that the Statistical Interface specification "does not describe" visually displaying "customer number data" and other data. Open. Br. at 18. But as Dr. Brody explains, the specification more than adequately discloses the visual display of such data. The specification describes (1) a system that visually displays the caller memory cell contents and caller data analysis, and (2) that the stored or processed data includes customer numbers, caller-entered identification data, telephone number data, and other data. Brody ¶¶177-219. These teachings necessarily *disclose* to the limitations of visually displaying these various data.

In fact, Defendants' own expert, Dr. Forys, *admits* that the operator's terminal "could very well display the data required for qualification," in a "mail-order" embodiment where the data required for qualification is customer number data. Forys Decl. ¶ 142; Brody ¶¶197-8. This Court likewise correctly found in *Verizon* that "the interface terminal IT [is] capable of visually displaying customer data on a selected customer" (*Verizon*, 324 F. Supp. 2d at 1102, citing '065 col. 19:63-65) and this "specification clearly links the 'visually displaying [customer number data]' function to the command CRT display terminal" (*id.* at 1098-99, citing '551 col. 22-24).

Defendants also erroneously assert that the specification does not disclose that the data bank is accessed by calling-number (ANI) signals. (Open. Br. at 17-18). To the contrary, the specification teaches multiple examples of using a caller's ANI to access caller data in a data bank. Brody ¶¶210-19. If the caller transfers to an operator, the stored caller data is necessarily displayed. Brody ¶¶192-97.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

12.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

### 3. The patents disclose cuing "specific ones" of callers (Open. Br. at 11-12).

Defendants' argument that the specification does not disclose cuing "specific ones" of individual callers (Open. Br. at 11-12) fails both (1) by its erroneous claim construction, and (2) under the specification's teachings.

First, nothing in the words "to provide vocal operating instructions to specific ones of said individual callers" requires that the "specific ones" are fewer than all callers, either in plain English or to a skilled artisan.  Brody ¶¶220-232.  In a misguided claim construction, Defendants argue that "specific ones" means that some callers "receive no voice instructions at all," based on (1) their distortion of the ordinary word "specific," and (2) a dictionary that does not even support their misconstruction—the "specific category" of callers may be *all* callers who connect to the system.  Open. Br. at 11-12.  Then, misconstruction in hand, Defendants turn to the specification and (wrongly) perceive that all callers receive prompts.

Defendants perform precisely the type of backwards claim construction analysis that *Philips* forbids.  If the specification shows that each specific caller individually receives prompts, then the "specific ones" only means "specified" or "particular" ones, not "only some."   The claim covers prompting callers individually, and not in a "broadcast" as a group.  Brody ¶¶224-6.  In other words, Defendants argue that the preferred embodiments do not disclose "only some" callers receiving instructions, but in fact their "only some" construction is erroneous precisely *because* it excludes those embodiments.  *See*, *e.g.*, *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005)  (a construction that excludes a preferred embodiment will "rarely if ever [be] correct and would require highly persuasive evidentiary support.") (citation omitted).

Moreover, even if "specific" meant "fewer than all," the claims still would not require that "other callers receive no instructions at all."  As with "at least certain" calls and "qualifying," *supra*, Defendants inject false negative limitations

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

into the claims. These claims "comprise" their recited steps and do not recite "providing *no* instructions to some callers." Brody ¶231. Finally, even under Defendants' misconstruction, the specification plainly describes some connected callers receiving no vocal instructions. Brody ¶¶236-242.

### 4.   The patents disclose DNIS controlling formats (Open. Br. at 12-13).

In attacking '551:19, Defendants advance another defective claim construction. Open. Br. at 12-13. The claim recites "means to control processing formats of the analysis structure in accordance with [DNIS signals]." '551:18. This involves a *means to control formats* (processing formats) based on DNIS. This does *not* require "directing the operations of the format after the format has been selected," or controlling "the operation of the format," as Defendants assert.

Again Defendants disobey *Philips*. Without reference to the specification or prosecution history they distort the ordinary word "control" and the claim's plain grammar and propose an erroneous construction. Only then do they turn to the specification to assert that the specification does not describe the element as they have misconstrued it. Defendants argue this does not support their "directing-after-selecting" reading. The upshot, however, is not that the claim is invalid, but that their construction is wrong and would exclude preferred embodiments. *Chimie*, 402 F.3d at 1377. Properly applying *Philips*, the specification's disclosures are precisely what '551:19 recites: to select the formats with which callers will interface (and *not* selecting the non-selected formats for each caller) is to "control" the formats. Brody ¶¶244-259. The ordinary word "regulate" also works: formats are regulated by being selected or not selected. Brody ¶252.

Even if the claim required the use of DNIS to control a single format after its selection, the specification discloses that as well. Brody ¶¶254-58.

### 5.   The patents disclose the recited "file" limitations (Open. Br. at 16-17).

Defendants once again turn *Phillips* on its head, this time regarding "a file."

Claims '309:46 and 51 and '707:24 do not require "data for all of the calls…in a single file" as Defendants assert. Instead, the claims recite only *structures capable of* updating or accessing at least one file. Brody ¶¶260-88

Here again Defendants start with a proposed claim construction intended to exclude the preferred embodiments, and then argue the specification does not support that very construction—which only confirms Defendants' error. *Chimie,* 402 F.3d at 1377; Brody ¶¶278-81. Claim '707:24 recites "record structure, including memory and control means…for accessing a file, and storing additional digital data provided by said callers." '707:24. This only requires a "record structure" (1) capable of accessing a file, and (2) capable of storing data as recited. Nothing requires the recited "file" to contain data on multiple callers. Brody ¶¶278-81. Similarly, '309:46/51 recites "record structure, including memory and control means,…for updating a file and storing digital caller data relating to said individual callers." These claims do not recite or require "storing multiple callers' data in a single file." Brody ¶¶278-81. Defendants concede that "[b]ecause the claim uses the word 'comprising' in the preamble, 'a' file can mean one or more files." (Open. Br. at 16). These claims allow accessing or updating "a file" for *each* of the recited "callers," or "at least one file" for multiple callers. Brody ¶¶278-81. Finally, even if the claims required a single file on multiple callers, the specification discloses a "memory 98" that is precisely that. Brody ¶¶267-273.

### 6.    The patents disclose approval signals (Open. Br. at 20-21).

Defendants erroneously contend that because the specification does not "mention" the words "approval signals," all claims reciting "approval signals" are invalid. (Open. Br. at 20-21). But Defendants and their expert fail to address a skilled artisan's understanding of the specification. *Id.*; Brody ¶¶289-302. The recited "approval signals" are merely signals inherent to the system to signal that a caller has been qualified (approved) and therefore allowed to proceed to further operations involving "answer data." Brody ¶¶289-302. Defendants make much of

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

15.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1   the fact that the '968 patent contains the words "approval signals," but the later

2   specification *discloses* them as well.  Brody ¶¶289-302.

3        The patents teach various internal structures for qualification testing and

4   post-qualification exchanges.  Brody ¶¶296-98; MDL *Markman* 30-33 (§112(6)

5   structures for "qualification structure").  For example, a test showing that a number

6   is "entitled…prompts production of a valid or 'good' signal"—an approval signal.

7   Brody ¶299.  Similarly, "clearances may be perfected through the look-up table 99

8   (FIG. 4) in association with the qualification unit 93 or *approvals* through a

9   consumable key step."  Brody ¶297.  These "approvals" must involve "valid or

10  'good' signals"—approval signals—so that the system knows to proceed to the next

11  phase of operation.    Brody ¶¶289-302; *KAO Corp.*, 441 F.3d at 968 ("so

12  straightforward that a detailed description in the specification is not necessary").

### 7.   The patents disclose a central memory accessed by multiple interface switching structures (Open. Br. at 21-22).

13
14
15        Defendants contend that the specification does not disclose "a central

16  memory accessed by a plurality of interface switching structures" that are at

17  different geographic locations.  (Open. Br. at 21-22).  But the Figure 9 embodiment

18  teaches precisely that.  Brody ¶¶303-21.

19        In the "distributed-component" system of Figure 9, the Call Distribution and

20  Interface units (comprising "interface switching structures") are "at different

21  geographic locations."  Brody ¶¶305-16.  Just as those Interface units replace the

22  interface 20 of Figure 1, the one CPU 251 in Figure 9 replaces the multiple

23  processors PR1-PRn of Figures 1 and 4.  Brody ¶309.  This memory in CPU 251 is

24  one "central" memory, replacing the "memory 98" components within each of the

25  multiple processors PR1-PRn.    *Id.*    The interface units "provide interface

26  communication between the central processing unit 251 and a multitude of remote

27  terminals," and "*With data accumulated in the cells, it may be variously down

28  loaded as to a central processing station*."  Brody ¶¶309-12.  A skilled artisan

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*                16.                PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

recognizes the CPU 251 necessarily has a central memory accessed by the interface units in Figure 9.  Brody ¶¶303-21.

### 8. The patents disclose key numbers in product packaging (Open. Br. at 24).

Defendants assert that the specification "does not *describe*" a key number "included in packaging" of products.  Open. Br. at 24.  But the patents clearly *disclose* to the skilled artisan that the inventor contemplated key numbers included in product packaging.  The patents teach that "a person desiring to participate may purchase a product which carries a concealed key number."  Brody ¶325.  The "product" is not limited to any specific type, and would of course include packaged products; the specification teaches a variety of products understood to be packaged. Brody ¶¶325-7.  A packaged product "carrying a concealed key number" plainly contemplates including the key number in the packaging.  *Id.*; *KAO Corp.*, 441 F.3d at 968 ("so straightforward that a detailed description…is not necessary").  The key number could also be carried on a product with no packaging, as reflected between '863:191 and '863:188 (*cf.* Open. Br. at 24); the inventor possessed each of these invention variations.  Brody ¶¶322-330.

### 9. The patents disclose using identification data to avoid prompting callers with previous cues (Open. Br. at 25-26).

Defendants erroneously assert that the specification does not disclose the cue suppression of '134:5.  To the contrary, the specification discloses that in a first call, a caller makes "preliminary arrangements involving utilization of the system to establish authorization data" based on "prequalification" cues.  Brody ¶¶331-344. In a second call, the caller's identification is verified and the previously-provided "prequalification" cues are suppressed.  Brody ¶¶331-344.  Separately, the specification also discloses the use of calling number identification to give the same caller different questions in a second call to the system, suppressing the first-given questions.  Brody ¶¶345-360.

Cooley Godward
Kronish LLP
Attorneys At Law
Palo Alto

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

17.

Plaintiff's Memo of P&A in Opp. to
Defendant's Motion for Summary
Judgment of Invalidity Under Section 112

C.   **The Conditional Interface Patents Fully Support Their Claims.**

1.   **The '285 and '893 patents disclose that operators enter data for processing (Open. Br. at 9-11).**

Defendants assert that the Conditional Interface specification, which clearly teaches "operator stations," contains "no description…of those operators entering caller data." (Open. Br. at 10). Again, Defendants' assertion is irrelevant: the specification *discloses*, to the skilled artisan, inventions including operator data entry, with no need to depict actual human beings typing. Brody ¶¶362-95.

As with the Statistical Interface specification, the skilled artisan recognizes that the entire purpose of having live operators in the Conditional Interface specification is to facilitate callers' exchange of information with the system, as an alternative to automated formats. Brody ¶¶367-73. First, based on call data, the system will "select initially a live-operator or machine format of the processor." Brody ¶¶367-73. "If a live-operator terminal is selected, or indicated as a secondary format, *prompt data is provided to a select station. Data is recorded* and *processing* procedures also may be controlled by call data." Brody ¶¶374-5. "Data is recorded" through the operator stations, for processing. Brody ¶¶362-95.

The specification teaches how format (call flow) information is stored in the system's "processor P," which is used either to (1) prompt the caller to enter data in an automated format, or (2) provide a live operator's terminal with the "prompt pattern" so that the operator may receive the caller's data and record it into the system. Brody ¶¶368-373. The processor P is connected to the operator stations, with "processor P providing interface formats either (or both) to automate an interface or prompt a live operator at a station OS1-OSn." Brody ¶¶378-9.

Defendants assert that Figure 2 of the specification "do[es] not show live operators inputting caller data" (Open. Br. at 10), but Figure 2 shows precisely at "block 29…the operations of coupling a caller to an operator station and transferring the appropriate format data to the station for prompting the operator."

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

18.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

Brody ¶388.  Defendants also cite the '965 patent and testimony about operators in other contexts, including one reference's bare mention of a "partially automated transaction," but that is all irrelevant since *this specification* necessarily discloses that operators enter data for processing.  Brody ¶¶362-95.

### 2.   The '150 patent discloses testing "in relation to" call data signals (Open. Br. at 14-15).

Defendants argue the '150 patent does not teach testing "in relation to" call data signals indicating called and calling numbers.  Open. Br. at 14-15.  But Defendants again have it backwards: they distort the plain claim language, and then explain how their incorrect proposed construction would impermissibly exclude the preferred embodiments.  *Chimie*, 402 F.3d at 1377.  Nothing requires testing "in relation to" call data signals to mean testing *both* called and calling number signals.  In light of the specification and file history, "in relation to" plainly indicates that testing is performed "taking into account" or "in view of" the two signals, with no requirement that *both* signals are tested.  Brody ¶¶396-408.  During the '150 patent prosecution, Katz confirmed this meaning: "The substance of the case involves the use of *'call data signals' (e.g. ANI and/or DNIS signals)*…."  Oct. 17, 1989 Amendment and Remarks at 3-7 (Mead Decl. Ex. I) (emphasis added).  Just as '150:10 recites selecting a format "*under control of*" the call data signals (selecting based on ANI and/or DNIS), testing "in relation to" the call data signals may test ANI signals, DNIS signals, or both.  Brody ¶¶396-408.

### D.   The Ticket System Patents Fully Support Their Claims.

### 1.   The patents disclose controlling the processor to process a specific format, based on DNIS (Open. Br. at 12-13).

As with "controlling…formats" in Statistical Interface claims, *supra*, Defendants misconstrue the DNIS format control in the Ticket System claims ('135:9).  (Open. Br. at 12-13).  The claims recite "an interface unit to receive said signals indicative of called terminal digital data (DNIS) for controlling said processor to process in accordance with said one specific format."  Brody ¶¶409-

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

19.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

424.   This plainly means what it says: the unit receives DNIS for controlling the processor so that it processes in accordance with a specific format.  *Id*.  Contrary to Defendants' assertion, this does *not* require "using DNIS to…control the operation of the format" as Defendants suggest.  *Id*.  Construing the term properly in light of the specification, there is no question the specification teaches "controlling" as the claim recites.  For example, "[m]ultiple formats may run simultaneously and the DNIS for example may indicate the lottery format and processing for each game."  Brody ¶¶414-17; *Chimie*, 402 F.3d at 1377.

### 2.   The patents disclose "for providing an indication" of reaching a limit on use (Open. Br. at 14).

Defendants again turn *Phillips* on its head, distorting the "for providing an indication" language of '135:9 and then arguing the specification does not support their misconstruction.  Defendants contend that the recited "indication" of reaching a limit must be *on the ticket itself*, a plainly erroneous reading that would exclude the preferred embodiments.  *Chimie*, 402 F.3d at 1377.  The specification teaches limited-use numbers on tickets, subject, *e.g.*, to a "limited number of times or to the extent of a limited dollar value during a predetermined interval."  Brody ¶¶425-438.  Once the limit is reached, a caller entering the limited-use number will receive an *indication* that the limit is reached.  For example, if the caller enters an invalid number, "the call may be terminated."  Brody ¶431.  Claim '135:9 contemplates this type of scenario: the *use* of the identification number provides an "indication" that the number has reached a limit.     Brody ¶¶425-438.   Under a proper construction, there is no question that the claim is fully supported.

### 3.   The patents fully support the recited ticket, card, format, and control system limitations (Open. Br. at 13-14).

Having lost an attempt to improperly narrow the Ticket System claims at *Markman*, Defendants now contend that the specification does not support the generic construction because the Ticket System specification describes "lotteries" in the preferred embodiments.  (Open. Br. at 13-14).  But the Court correctly

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

20.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

interpreted the claims in light of the intrinsic evidence, and thoroughly addressed, and rejected, this very argument at *Markman*.    MDL *Markman* at 49-51. Defendants ignore the Court's reasoning, and show no error justifying reconsideration. "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"    MDL *Markman* at 50, quoting *Liebel-Flarsheim Co. et al., v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citation omitted).  The Court correctly found no such disclaimer, as a lottery embodiment is "merely 'illustrative' or 'representative' of the invention" which may take "a wide variety of forms." *Id.* at 50; Brody ¶¶439-447.

Now, Defendants contend that the "ticket," "format," etc., are claimed "generally" and thus not supported by the exemplary disclosed "lottery" embodiments. But "[a] claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *Falkner*, 448 F.3d at 1366 (citations omitted).  Defendants "merely revive[] [their] non-infringement argument in the cloak of a validity challenge." *MOBA*, 325 F.3d at 1321; *id.* at 1323 ("Fortunately, this court did not fall for [that] argument.") (Rader, J., concurring).  Nowhere does the specification criticize or disclaim non-lottery embodiments or limit the inventions to lotteries.  Brody ¶¶439-447.  To the contrary, the patents emphasize the lottery embodiment is "exemplary." *Id.*; MDL *Markman* at 49-51.

**E.    The '415 Patent Discloses Formats Generally (Open. Br. at 15-16).**

In an analogous argument as with the Ticket System claims, Defendants seek to limit the '415 patent to "game" formats based on a preferred embodiment. (Open. Br. at 15-16).  But the '415 patent clearly teaches that "game" formats are only exemplary: "Although the disclosed embodiment is directed to a game operation, it will be apparent that the system may be variously embodied to

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

21.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

accommodate a wide variety of telephonic interface operations."  Brody ¶¶448-460; *id*. (system accommodates a "wide variety of operating formats *and* game applications," not just games).  The patent does not state "'the present invention' *is* a system" for games (Open. Br. at 15, emphasis added), but only that the invention "[i]n general…comprises" game formats ('415 col. 1:64-65) and comprises non-game embodiments as well.  Brody ¶¶448-460.  No "words or expressions of manifest exclusion or restriction" limit the claims to a disclosed embodiment. *Liebel-Flarsheim*, 358 F.3d at 906; Brody ¶¶448-460.

Again, the Court should not fall for Defendants' "non-infringement argument in the cloak of a validity challenge."  *MOBA*, 325 F.3d at 1321; *Falkner,* 448 F.3d at 1366.  The '415 patent, like the other patents, describes exemplary formats and never limits the term "format" to the described examples, as *AT&T* confirmed. *Katz v. AT&T*, 63 F. Supp. 2d 583, 611-13 (E.D. Pa.) (rejecting argument that "format" "should be limited to include only the seven formats disclosed").  Nowhere does the '415 patent disclaim or criticize non-game embodiments or otherwise limit the disclosed inventions to games.  Brody ¶¶448-460.  Therefore the '415 specification fully discloses and supports "formats" generally.

### F.  The '965 Patent Fully Supports Its Claims.

#### 1.  The patent discloses the recited "file" limitations (Open. Br. at 16-17).

For the '965 patent, Defendants again distort the meaning of "a file" and then argue the specification does not support their misconstruction.  Open. Br. at 16-17. In the context of '965:34 and the specification, "comparing said caller identification data received against a file on said individual callers" only requires that each caller's identification data is compared against a file.  Brody ¶¶461-475; Open. Br. at 16 (conceding that "[b]ecause the claim uses the word 'comprising' in the preamble, 'a' file can mean one or more files").  In any event, the specification also teaches a file containing multiple callers' information.  Brody ¶¶465-469.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

22.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

### 2. The patent discloses computer-generated acknowledgement numbers (Open. Br. at 20).

Defendants assert that because the '965 patent does not expressly state that a computer "generates" an acknowledgement number, all '965 claims with "computer generated" acknowledgment numbers are invalid. Open. Br. at 20. To the contrary, a skilled artisan would understand these acknowledgement numbers to be generated only by computer. The patent teaches how "controller 46," a processor with "computing capability," acts to "provid[e] an acknowledgement number" to complete a record. Brody ¶¶476-82. The skilled artisan understands this number has been computer generated. *Id.* All of the patent's teachings of "the *system*…indicating an acknowledgement number" and "revealing" the number confirm this understanding. *Id.*

Defendants suggest that the acknowledgement numbers "could be prepared manually, not by a computer." (Open. Br. at 20). To the contrary, the skilled artisan would appreciate that "[a]t any instant of time, the collective interface…may involve *several thousand calls*." Brody ¶¶477-9. The patent nowhere allows that numbers are "prepared manually," much less for thousands of callers. *Id.* Moreover, callers "in a winning or other special set or subset may be identified by *coded* acknowledgement numbers." Brody ¶¶480. A skilled artisan would understand such special "coding" as consistent only with computer generation of the numbers. *Id.* The claim is fully supported. Brody ¶¶476-82.

### G. The Patents Disclose Called-Number And Calling-Number Signals Automatically Provided (Open. Br. at 6-9).

In a misguided effort to invalidate dozens of Katz claims, Defendants load the ordinary word "automatically" with erroneous limitations, again under the erroneous "outside-in" approach that *Phillips* prohibits (Open. Br. at 6-8). Brody ¶¶483-586. Defendants' argument boils down to this:

(1) Because some asserted claims recite telephone number signals "provided" while some recite them "automatically provided," and the word "automatically"

1   was added to a few claims during prosecution, the word "automatically" must have

2   some narrow technical meaning.  (*Id*. at 6:11-7:15).

3       ((2) There happen to be different types of DNIS and ANI signaling.  One

4   type, "in band" signaling, involves "wink" messages before the DNIS or ANI signal

5   is sent; another type ("out of band" signaling) does not.  While they present no

6   contemporaneous evidence saying that "out of band" is "automatic" while "in

7   band" is not automatic, Defendants nonetheless arbitrarily adopt that convention for

8   automatic signaling.  (*Id*. at 7:16-8:22).

9       (3) With this narrow reading of the word "automatically" in hand, finally the

10  specifications are consulted.    (*Id*. at 8:28-9:18).   No Katz specification says

11  anything at all about "band" signaling or "winking."   *Id*.   But some exemplary

12  embodiments can be interpreted to involve "in band" signaling.  *Id*.  Thus, since the

13  claim term "automatically" must mean "out of band" (determined *before* addressing

14  the specifications), the claims are not supported by the specification.

15      Defendants have it all wrong.  The ordinary word "automatically" need not

16  be construed at all, much less in the narrow sense Defendants propose.   The

17  ordinary word "automatically" appears in claim phrases "calling number [or called

18  number] identification signals *automatically* provided by said communication

19  facility" and the like.  The word is used according to its plain meaning.  It simply

20  clarifies   that   the   calling-number   or   called-number   signals   are   provided

21  automatically,  by  the  telephone  network  itself,  by  operation  of  automated

22  equipment, rather than manually input by the caller such as by touch-tones.  Brody

23  ¶¶509-43.

24      All of the Katz specifications teach ANI and DNIS according to their known

25  ordinary meanings, regardless of "in-band" or "out-of-band" varieties, as examples

26  of automatically-provided signals.  Brody ¶¶509-43.  All the Katz patents teach

27  how the DNIS and ANI signals are provided "independently of the caller's actions,"

28  "automatically" as opposed to "manually," and "by standard…equipment of the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*                    24.                    PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1   communication facility" as opposed to caller push-button.  Brody ¶¶509-43.  These

2   teachings fully support the claims' recitations of  "automatically provided" signals,

3   including any and all known varieties of DNIS and ANI.  Brody ¶¶509-43.

4          Defendants cite *Phillips*' comment that "steel baffles" implies that "baffles"

5   are not inherently steel (Open. Br. at 7), but ignore *Phillips*' fundamental mandate:

6   the claim language must be read in light of the specification.  *Phillips*, 415 F.3d at

7   1315 ("the specification 'is always highly relevant to the claim construction

8   analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a

9   disputed term") (citations omitted).   As the *AT&T* court correctly found, "[t]he

10  patents are *silent* as to whether the call data signals must be transmitted 'in-band' or

11  'out-of-band.'"   *AT&T*, 63 F. Supp. 2d at 620-21 (emphasis added); *see also*

12  *Verizon,* 326 F. Supp. 2d at 1080 (construing "automatically" within a phrase as

13  just "automatically").  Defendants contend that exemplary embodiments show "in

14  band" signaling, but demonstrate no error in *AT&T*'s thorough rejection of the same

15  arguments.  *AT&T*, 63 F. Supp. 2d at 620-21; Brody ¶¶556-8.   Moreover, if

16  embodiments suggest "in band" signaling, that would only confirm that

17  Defendants' narrow construction (purportedly *excluding* "in band") is erroneous

18  because it excludes those embodiments.  *Chimie*, 402 F.3d at 1377.

19         Defendants find a few examples from among the 3,000+ Katz claims where

20  the word "automatically" was added during prosecution.  Open. Br. at 6-7.  But any

21  suggestion that the word "automatically" connotes some narrow technical meaning

22  is quickly dispelled by the specifications, *see Phillips*, 415 F.3d at 1315, which

23  teach ANI and DNIS without excluding any technical varieties of those

24  automatically-provided signals.  Brody ¶¶483-586.

## IV.   THE ASSERTED CLAIMS ARE NOT INDEFINITE.

### A.   Defendants Fail To Prove Any Claim "Insolubly Ambiguous."

27         "When a claim 'is not insolubly ambiguous, it is not invalid for

28  indefiniteness.'"  *Marley Mouldings Ltd. v. Mikron Indus., Inc.*, 417 F.3d 1356,

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

25.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1361 (Fed. Cir. 2005) (citation omitted) (reversing indefiniteness judgment). A "claim will not be held invalid if the 'meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree.'" *Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1323 (Fed. Cir. 2006) (citation omitted) (reversing indefiniteness judgment). "When intrinsic evidence resolves the claim construction, a term is not 'insolubly ambiguous.'" *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1347 (Fed. Cir. 2007) (citation omitted) (reversing indefiniteness judgment). "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Bancorp Serv. LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) (reversing indefiniteness judgment).

Defendants' contentions that means-plus-function limitations lack structural support "require[] a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." *Intellectual Prop. Dev. v. UA-Columbia Cablevision*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). Moreover, "knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness." *Creo Prods., Inc. v. Presstek, Inc.,* 305 F.3d 1337, 1347 (Fed. Cir. 2002). Defendants misstate the standard, which is not whether the specification "clearly" links a certain structure (Open. Br. at 26, citing *Atmel*), but whether it merely "links **or associates**" some structure "in such a manner that one skilled in the art will know and understand what structure corresponds to the means limitation." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1380, 1382 (Fed. Cir. 1999) (emphasis added) (reversing indefiniteness judgment for "failing to consider the knowledge of one skilled in the art"); *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-1241 (Fed. Cir. 2007) (§112(6) element indefinite if skilled artisan "unable to

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

26.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1    recognize the structure in the specification and associate it with the corresponding

2    function in the claim") (citing *Atmel,* 198 F.3d at 1381-82) (reversing indefiniteness

3    judgment).  Dr. Brody explains how the claims are definite.  Brody ¶¶567-767.

4    **B.    Defendants Conceded Definiteness In Their Section 103 Briefing.**

5    In their section 103 summary judgment motions on most of these same

6    claims, Defendants and their experts contend that the prior art discloses every claim

7    limitation.   Given that "[a] claim is definite if 'one skilled in the art would

8    understand the bounds of the claim'" (*Invitrogen Corp. v. Biocrest Mfg.*, 424 F.3d

9    1374, 1383 (Fed. Cir. 2005) (citation omitted)), Defendants have conceded that

10   these claims are definite.  Defendants cannot unring the bell now.

11   **C.    The Katz Claims Are Not Indefinite.**

12   **1.    Voice signals actuate remote terminals (Open. Br. at 27-28).**

13   Dozens of Katz claims recite voice signals or a voice generator "actuating" a

14   caller's telephone.  The specifications clearly teach how the system's interface 20,

15   which "operate[s] as a voice generator," *actuates* a caller's telephone T1.  "For

16   example, the interface 20 might *actuate* the terminal T1 to announce: 'Please

17   indicate the type of credit card you will use.'"  Brody ¶¶568-573.  Similarly, "a

18   voice generator in the interface 20 (FIG. 1) provides signals which *activate* the

19   remote telephone unit to speak the instruction."  Brody ¶¶568-573.  The ordinary

20   word "actuate" means only "activate," "put into action," or the like.  Brody ¶¶570-

21   1.  The voice generator and its voice signals plainly cause the caller's telephone to

22   receive and play those signals.  Brody ¶¶568-73.

23   Defendants rely on a PTO examiner's mistaken suggestion that only a caller

24   "actuates" his or her phone (Open. Br. at 27), in an early claim rejection during

25   prosecution of the '631 patent (not asserted in the MDL cases).  But later in the

26   same examination, that examiner changed course and issued the '631 patent with 14

27   claims with the same "actuate" language.  Mead Decl. Exh. O ('631 claims 22-27

28   ("supplying said voice signals to actuate said terminal apparatus"), 40-47 (same)).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*          27.          PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

Not only that "prosecution record," but also that of dozens of other patented claims, confirm the specification's teaching that this language is definite. And Defendants and their experts conceded definiteness in their section 103 motions. Mead Decl. Ex. J, ¶11.1; Ex. K, ¶12.1.

### 2. The "system" in '965:31 is the system performing the claimed method (Open. Br. at 28).

Like other Katz patents, the '965 patent teaches an "interface system" that interfaces with a telephone network to communicate with callers through that network. *See*, *e.g.*, '965 Abstract ("audio-digital telephone interface system"), col. 1:64-2:41, 3:35-45, *passim* (discussing "the system" of the invention); Brody ¶¶587-599. Claim 31, like most Katz claims, focuses on that system's activities, and recites a step of "generating computer acknowledgement numbers to identify the transaction for the system." The recited "system" refers to the system performing the claimed method. Brody ¶¶587-599.

Defendants contend that "the system" is indefinite, but already conceded the claim's clear scope. Their own proposed construction of "acknowledgement numbers" in '965:31—"a number used by a caller to verify or acknowledge a transaction to *the system*…"—conceded definiteness. Defendants' Responsive *Markman* Brief at 5 (Doc. No. 733). The Court agreed. *Markman* Order (Doc. 1448) at 8 ("a number used by a caller to verify or acknowledge a transaction *to the system*"). Defendants also conceded this issue in their section 103 briefing. Mead Decl. Ex. J; ¶11.2.

Although their concessions resolve any dispute, Defendants contend that because "the system" does not have antecedent basis, the entire claim should be invalidated. (Open. Br. at 28). To the contrary, "despite the absence of explicit antecedent basis, if the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite." *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) (reversing finding of

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

28.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

indefiniteness for "said zinc anode").  *See also*, *e.g.*, *Flo Healthcare Solutions, LLC v. Rioux Vision, Inc.*, No. 1:06-CV-2600-TWT, 2007 WL 4200678, at *5-6  (N.D. Ga. Nov. 16, 2007) ("the device" not indefinite where "[t]hroughout the patent, it is clear that the device refers to a computer"); *Agere Sys. Inc. v. Atmel Corp.*, No. CIV.A. 02-864, 2003 WL 21652264, at *13  (E.D. Pa. May 27, 2003) ("said silicon surface" is not indefinite "when read in light of the specification").  Here, skilled artisans clearly understand the claim scope in light of the specification.  Brody ¶¶587-599.  Defendants note the PTO declined to amend the claim to "a system *operating a format*," but the issued claim's scope remains clear to the skilled artisan (and to Defendants' experts).  *Id.*

### 3. "Remote terminals [that] may comprise a conventional telephone" is clear and unambiguous (Open. Br. at 29-30).

Defendants ask this Court to invalidate 23 claims reciting remote terminals that "may comprise" conventional telephones.  (Open. Br. at 29)  But the *AT&T* court conclusively rejected Defendants' argument: "The use of the words '*may comprise*' indicates that remote terminals includes, but is not limited to, traditional telephones."  *AT&T*, 63 F. Supp. 2d at 614.  *AT&T*'s correct construction of "remote terminal" resolves any ambiguity: "a device or instrument for connecting callers to the telephone network for voice and digital communication, *including, but not limited to, conventional telephones*."  *Id.* at 615 (emphasis added).  Defendants fail to address *AT&T*'s analysis, much less demonstrate any error.  Brody ¶¶600-13.

The specifications confirm the clarity of this language: "remote terminals for individual callers, *e.g.* conventional telephone instruments;" "[i]n the *illustrative form* of the system...the individual terminals T1-TN take *various forms* of existing telephone instruments." Brody ¶¶603-9.  "Remote terminals" encompass a variety of embodiments; "may comprise" merely indicates one embodiment.  *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 811 (Fed. Cir. 2002) ("the term 'such as' means of a kind or character about to be indicated, suggested, or

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

29.

PLAINTIFF'S MEMO OF P&A IN OPP. TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112

exemplified" and merely "introduces an example of a broader genus rather than limiting the genus to the exemplary species"); Brody ¶¶603-13.  Defendants cite a few PTO examiner complaints, but the PTO's *allowance* of many dozens of claims with this language only confirms its definiteness.   And Defendants conceded definiteness in their section 103 motions.  Mead Decl. Ex. J, ¶11.3; Ex. K, ¶12.2.

### 4.      The "callers" in '965:35, 43, and 53 are unambiguous.

Defendants distort the clear language of '965:34 to assert indefiniteness of its dependent claims. (Open. Br. at 29-30).  But the scope of '965:34 is perfectly clear, both in plain English and to a skilled artisan.  Brody ¶¶614-23.  The claim plainly recites two overlapping groups of individual callers: (1) the "certain individual callers" recited in the preamble and tracked through the rest of the claim, and (2) "at least certain of" those same callers ("transferring" element), which may be some or all of those callers.  Brody ¶¶614-23.  Defendants fail to prove this language "insolubly ambiguous."   Moreover, Defendants and their expert conceded the claim's clear scope in their section 103 motion.  Mead Decl. Ex. J, ¶11.4.

### 5.      '965:61 and 66 were amended in a Certificate of Correction.

Defendants attack the use of the word "or" (Open. Br. at 30), but "or" was amended to "and" in a valid Certificate of Correction, negating Defendants' argument.  Mead Decl. Ex. F, ¶7; Brody ¶¶624-26.

### 6.      The "means to receive [DNIS]" elements are definite.

To prove that the "means to receive [DNIS]" means-plus-function elements in the '863 and '065 patents are indefinite (Open. Br. at 31-32), Defendants must prove, "by clear and convincing evidence, that the specification *lacks disclosure of structure sufficient* to be understood by one skilled in the art *as being adequate* to perform the recited function."  *Intellectual Prop.*, 336 F.3d at 1319 (emphasis added).   Defendants cannot dispute that the specification discloses structures adequate to perform the functions; they only quibble over *which* structures perform the functions. (Open. Br. at 31-32).  Brody ¶¶627-668.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

30.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

Defendants seize on comments from *Verizon* (Open. Br. at 31), but the Court only commented about "*which* component selects formats," with no question that there was plenty of adequate structure. *Verizon*, 326 F. Supp. 2d at 1101 (emphasis added). The Court then correctly identified structures clearly linked to the recited functions. *Id.* at 1100, 1103; Brody ¶644.

Defendants distort the recited functions. Neither '863:27 (and dependents) nor '065:13 recite "*using* DNIS to select a format" or "*using* DNIS to identify a select format" as Defendants suggest (Open. Br. at 31). These claims recite means "to *receive*" DNIS signals for certain purposes. In '863:27, the function involves "receiv[ing] [DNIS] to identify a select one of a plurality of different called numbers," with each of those numbers "associated with a select format." Brody ¶¶628-31. Similarly, in '065:13, the means is for "*receiving*" DNIS, in order to identify a select format. Brody ¶¶632-3. These elements are fully supported by interface 20, including its call data analyzer 20a, which receives DNIS and expressly "*provides control*" based on the DNIS. Brody ¶¶634-52. Because each DNIS is associated with a specific format in disclosed embodiments, these structures' receipt and analysis of DNIS identifies or selects the format for caller interface. Brody ¶¶634-52. The specification also clearly links alternative structures (Centrum 9000 and interface units) to these functions. Brody ¶¶634-52.

### 7. The "additional call data signals" ('285:23) result from the remote terminals.

Defendants contend that because '285:23 recites ANI provided "from said remote terminals," it is indefinite. (Open. Br. at 32). Defendants once again seize on alleged ambiguity in the claim language before consulting the specification. *Id.*

The specification teaches, consistent with a skilled artisan's understanding, that ANI is provided by the communication facility "*[u]pon occurrence of the call*" from a remote terminal. Brody ¶¶672-4. In this context, the skilled artisan would understand that in '285:23, ANI provided "from" the remote terminals means only

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

31.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1    that the remote terminal is a "cause, agent, or instrument" of the ANI signal. Brody

2    ¶¶669-677.  Just as a mail-ordered gift may be "from" a gift-giver who never

3    physically possesses the gift, a skilled artisan would recognize that in '285:23 as

4    informed by the specification, ANI is "from" the remote terminals in that ANI is

5    provided as a result of the remote terminal's call. Brody ¶675. The claim's scope

6    is clear to a skilled artisan. Brody ¶¶669-677. *See also Bancorp Services*, 359 F.3d

7    at 1371 ("protect the inventive contribution of patentees, even when the drafting of

8    their patents has been less than ideal").

9            **8.      System claims wherein "callers enter data" are definite.**

10          Defendants mischaracterize claims '707:116 and '893:1, 2, 4, and 83 as

11   system claims that "recite a method step," relying on *IPXL*'s finding that a claim

12   was indefinite for reciting "both a system and the method for using that system."

13   *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir.

14   2005). In *IPXL*, the claim recited both (1) a system including an input means, and

15   (2) a further limitation that a "user uses the input means" of the system. *Id.* at 1384.

16   The court found it "unclear whether infringement…occurs when one creates a

17   system that allows the user to [use the system], or whether infringement occurs

18   when the user actually uses" the system. *Id.* Brody ¶¶678-698.

19          By contrast, the Katz claims at issue recite structures with functional

20   capabilities, with no "method step" performed by "users using" the system. Claims

21   '893:1, 2, 4, and 83 recite: "*interface means* for providing automated voice

22   messages…to certain of said individual callers, wherein said certain of said

23   individual callers digitally enter data…." Rather than claiming a *use* of the control

24   system, these claims recite a structure ("interface means") including the *capability*

25   of accepting caller-entered digital data. Brody ¶¶679-86. Similarly, base claim

26   '707:96 recites an "interface structure" capable of receiving caller-entered digital

27   data. Brody ¶¶687-97. Dependent claims 115 and 116 specify the structure's

28   further capabilities that the caller-entered data may include credit card number data

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

32.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

as other data. *Id*. To infringe these claims requires the recited structures and capabilities, and not any method step. Brody ¶¶685-6.

Courts routinely reject attempts to characterize claims as reciting "both a system and the method for using that system" under *IPXL*. *See*, *e.g.*, *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, No. 2007-1249, 2008 WL 850332, at *7 (Fed. Cir. Apr. 1, 2008) (reversing summary judgment of invalidity where claims do not fall under *IPXL*); *Collaboration Props., Inc. v. Tandberg ASA*, No. 05-01940, 2006 WL 1752140, at *6 (N.D. Cal. June 23, 2006) ("The problematic claim language in *IPXL Holdings* required that 'the user uses the input means'"); *Yodlee, Inc. v. CashEdge, Inc.*, No. 05-01550, 2006 WL 3456610, at *5-6 (N.D. Cal. Nov. 29, 2006) (Internet system claims reciting "invocation of a hyperlink by the user" merely "describe how the software and portals react to certain input by users, as functional limitations" not falling under *IPXL*); *Ricoh Co., Ltd. v. Katun Corp.*, 486 F. Supp. 2d 395, 402 (D.N.J. 2007) ("The claim language in *IPXL* clearly covered both the system and the user's active 'use' of the system"). Here, likewise, the Katz claims recite no "users using" the system. The "callers" in the claims are not recited as "using" the system at all, much less "using" the system in a "method step." Brody ¶¶678-698; *Yodlee*, 2006 WL 3456610, at *5-6. The claims recite systems *capable of* receiving certain caller-entered data. *Id*.

### 9.   "Processing/computer means," "means for processing," and "analysis structure" are fully supported (Open. Br. at 33-35).

Defendants erroneously assume that any §112(6) element whose structure *includes* a processor must have associated "algorithms." (Open. Br. at 33-34). That is incorrect: the law only requires that, for computer-implemented inventions, "the structure disclosed in the specification be *more than* simply a general purpose computer or microprocessor." *Aristocrat Techs. Australian Pty, Ltd. v. Int'l Game Tech.*, No. 2007-1419, 2008 WL 819764, *4 (Fed. Cir. Mar. 28, 2008) (emphasis added); *id*. (not enough "to disclose *only* a general purpose computer as the

structure designed to perform" a computer-implemented invention, nor is "*simply disclosing a computer* as the structure"). Algorithms are required only where "the disclosed structure **is** a computer, or microprocessor, programmed to carry out an algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1349 (Fed. Cir. 1999) (emphasis added). Brody ¶¶699-767.

As this Court held in *Verizon*, the § 112(6) elements at issue in '065:13 and '551:21, 33, and 34 correspond to system-wide structures including an operator terminal, display components, and connecting lines—not "only a general purpose computer"—for the functions including receiving caller-entered data, connecting calls to operators, and displaying data. *Verizon*, 326 F. Supp. 2d at 1102, 1099; Brody ¶¶701-11. These claims do not fall under *WMS Gaming* and no "algorithms" are required. *Id.*

The "means for processing" ('707:115, 116, 129, 130; '863:96, 98, 99) and "analysis structure" ('021:11, '309:42, '551:19, '547:11, 18, 19) elements also require no algorithms. First, their functions are simply "processing… answer data," "processing…caller data signals," and the like. Brody ¶¶712-21. To perform a basic function of "processing," only a processor is required. Brody ¶¶735-40. As the *AT&T* court correctly held, such elements do not invoke *WMS Gaming*.[5] *AT&T*, 63 F. Supp. 2d at 603 n.15. Moreover, the specification clearly links *specialized components* (interface 20 and the Centrum 9000) as alternative structures for performing these functions. Brody ¶¶722-34. The "interface 20, an exemplary

---

[5] By contrast, the Federal Circuit applies *WMS Gaming* to software-function inventions like "control means for defining a set of predetermined arrangements for a current game comprising each possible combination of the symbol positions selected by the player which have one and only one symbol position in each column of the display means" (*Aristocrat*, 2008 WL 819764 at *1) or "means for assigning a plurality of numbers representing said angular positions of said reel, said plurality of numbers exceeding said predetermined number of radial positions such that some rotational positions are represented by a plurality of numbers" (*WMS Gaming*, 184 F.3d at 1347).

Cooley Godward
Kronish LLP
Attorneys At Law
Palo Alto

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

34.

Plaintiff's Memo of P&A in Opp. to Defendant's Motion for Summary Judgment of Invalidity Under Section 112

form of which may be a commercially available Centrum 9000 unit," is a specialized unit that "incorporates modems, tone decoders, switching mechanisms, DNIS and ANI capability (call data analyzer 20a) along with voice interface capability." *Id.* The specification teaches that "the interface [20] may actually perform analysis on data" instead of processor 92, with "the processor (or the interface 20)" interchangeably processing data, and expressly shows such operation in one embodiment. *Id.* These claims are thus supported by a specialized unit, not "only a general purpose computer." *Id.*

Even if these "processing" elements required algorithms, they would only require algorithms for performing their recited functions. To a skilled artisan, the specification is replete with the description of steps and operations constituting "algorithms" for processing. Brody ¶¶741-767. *See Finisar Corp. v. The DirecTV Group, Inc.*, Nos. 2007-1023, 2007-1024, 2008 WL 1757675, *15 (Fed. Cir. April 18, 2008) (algorithm may be "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure"). In contrast, Defendants rely only on the testimony of Katz's patent agent (Open. Br. at 34), who is not a judicial authority on "algorithms." They present no expert testimony on this factual issue, and thus cannot obtain summary judgment. *Intellectual Prop.*, 336 F.3d at 1319; Brody ¶¶699-701, 713-14.

## V.   CONCLUSION.

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent Litigation, 2:07-ML-01816-B-RGK-FFMx*

35.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112

1   Dated: April 29, 2008                    COOLEY GODWARD KRONISH LLP

2                                            */s/ Frank V. Pietrantonio*

3                                            Frank V. Pietrantonio

4                                            Attorney for Plaintiff
                                             RONALD A. KATZ TECHNOLOGY
5                                            LICENSING, L.P.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

*In re Katz Interactive Call Processing Patent
Litigation, 2:07-ML-01816-B-RGK-FFMx*

36.

PLAINTIFF'S MEMO OF P&A IN OPP. TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY UNDER SECTION 112