Matthew J. Moore
  moorem@howrey.com
Pamela S. Kane
  kanep@howrey.com
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile:  (202) 383-6610

Liaison Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. CV 2:07-ml-01816-B-RGK (FFMx) |
| Katz Interactive Call Processing Patent Litigation | |
| This document relates to: | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112** |
| ALL "B" TRACK ACTIONS (except CV 07-02254 RGK (FFMx)) | |
| Case Nos. CV 07-2096 RGK (FFMx), CV 07-2099 RGK (FFMx), CV 07-2101 RGK (FFMx), CV 07-2134 RGK (FFMx), CV 07-2192 RGK (FFMx), CV 07-2196 RGK (FEMx), CV-07-2213 RGK (FFMx), CV 07-2220 RGK (FFMx), CV 07-2250 RGK (FFMx), CV 07-2257 RGK (FFMx), CV 07-2299 RGK (FFMx), CV 07-2322 RGK (FFMx), CV 07-2325 RGK (FFMx), CV 07-2336 RGK (FFMx), CV 07-2339 RGK (FFMx), CV 07-2340 RGK (FFMx), CV 07-2360 RGK (FFMx), CV 07-3002 RGK (FFMx) | Date: To Be Determined<br>Time: To Be Determined<br><br>Judge: Hon. R. Gary Klausner<br>Ctrm:  Courtroom 850 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. WRITTEN DESCRIPTION ................................................................................ 1

   A. Plurality Of Formats ................................................................................... 1

   B. Unqualified Or Unverified Toll Free Calls ................................................ 2

   C. DNIS To Identify A Format ....................................................................... 3

   D. "Automatically" Provided .......................................................................... 3

   E. Operators Entering Data ............................................................................. 5

   F. Voice Operating Instructions To "Specific Ones" Of The Individual Callers .................................................................................... 5

   G. DNIS To Control Processing Of Formats ................................................. 6

   H. Generic "Ticket," "Card," "Format," And "Control System" .................. 6

   I. Unique Identification Number Indicating A Predetermined Limit On Use. ................................................................................................ 7

   J. Testing "In Relation To Said Call Data Signals" ....................................... 7

   K. "Format" Generally In The '415 Patent. ................................................... 7

   L. "A" File On "Said Individual Callers" 22). .............................................. 8

   M. Visually Displaying .................................................................................. 8

   N. Testing ANI To Qualify Callers For Communication With The System ..................................................................................................... 9

   O. Computer Generated Acknowledgement Numbers. ................................. 9

   P. "Approval Signals" .................................................................................... 9

   Q. Central Memory Accessed By A Plurality Of Interface Switching Structures .................................................................................................. 10

   R. Synthesized Voice Signals ....................................................................... 10

   S. Key Numbers "In Packaging Of Products" ............................................. 11

   T. Using Identification Data For Cue Suppression ..................................... 11

III. INDEFINITENESS ........................................................................................... 12

A. Voice Signals To Actuate The Caller's Terminal Apparatus ........................ 12

B. Acknowledgement Numbers Identifying The Transaction For "The System". ................................................................................ 12

C. Remote Terminals "May Comprise" A Conventional Telephone. ........................................................................................ 12

D. "Certain Individual Callers," "Said Individual Callers," And "At Least Certain Of Said Individual Callers" In '965. ............................. 13

E. Customer Identification Number "Or" Other Data ........................................... 13

F. No Structure Linked To "Means To Receive" Function ................................. 13

G. "Said Additional Call Data Signals" ................................................... 14

H. System Claims Reciting A Method Step . ........................................................ 14

I./J. Failure To Link Structure Including Algorithm  ........................................ 14

IV. CONCLUSION .................................................................................... 15

HOWREY LLP

# TABLE OF AUTHORITIES

**CASES**

*AK Steel Corp. v. Sollac*,
 344 F.3d 1234 (Fed. Cir. 2003) ................................................................. 9

*Aristocrat Tech. Australia Pty Ltd. v. International Game Tech.*,
 521 F.3d 1328 (Fed. Cir. 2008) ............................................................... 15

*Arthur A. Collins, Inc. v. Northern Telecom Limited*,
 216 F.3d 1042 (Fed. Cir. 2000) ................................................................. 1

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................. 1

*Harris Corp. v. Ericsson Inc.*,
 417 F.3d 1241 (Fed. Cir. 2005) ............................................................... 15

*Hyatt v. Boone*,
 146 F.3d 1348 (Fed. Cir. 1998) ................................................... 1, 5, 8, 11

*In Re Lew*,
 2007 WL 4201279 (Fed. Cir. 2007) .......................................................... 7

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
 430 F.3d 1377 (Fed. Cir. 2005) ............................................................... 14

*Katz v. AT&T Corp.*,
 63 F. Supp. 2d 583 (E. D. Pa. 1999)........................................... 3, 6, 12, 15

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed Cir. 2007) ................................................................... 7

*Lucent Tech., Inc. v. Gateway, Inc.*,
 __ F.3d __, 2008 WL 1970225 (Fed. Cir. May 8, 2008). ......................... 6

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
 248 F.3d 1303 (Fed. Cir. 2001) ............................................................... 15

*Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*,
 520 F.3d 1367 (Fed. Cir. 2008) ............................................................... 14

*Novartis Corp. v. Ben Venue Laboratories, Inc.*,
 271 F.3d 1043 (Fed. Cir. 2001) ................................................................. 1

*Pause Tech. LLC v. TiVo Inc.*,
 419 F.3d 1326 (Fed. Cir. 2005) ..................................................... 4, 13, 14

*Personalized Media Communications, LLC v. International Trade Comm'n*,
 161 F.3d 696 (Fed. Cir. 1998) ................................................................. 12

HOWREY LLP

-iii-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US:21194075_1

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008). ............................................................................... 1

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
    __ F.3d __, 2008 WL 1946550 (Fed. Cir. May 6, 2008) ......................................... 5

*Purdue Pharma L.P. v. Faulding, Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000) ................................................................................ 1

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) ................................................................................ 5

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017 (Fed. Cir. 1987) ......................................................................... 4, 13

*Tehrani v. Hamilton Med., Inc.*,
    331 F.3d 1355 (Fed. Cir. 2003) .............................................................................. 15

*Touchcom, Inc. v. Dresser, Inc.*,
    427 F. Supp. 2d 730 (E.D. Tex. 2005) ................................................................... 15

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ................................................................. 3, 6, 7, 8

*Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.*,
    326 F. Supp.2d 1060 (C.D. Cal. 2003) .............................................................. 5, 13

*Wavestream Corp. v. CAP Wireless, Inc.*,
    2006 WL 5104656 (C.D. Cal. 2006) ........................................................................ 8

**STATUTES**

35 U.S.C. § 112 .................................................................................................... 1, 2, 15

-iv-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112

HOWREY LLP
DM_US:21194075_1

# I. INTRODUCTION

Defendants' opening brief, including Dr. Forys' declaration analyzing the patents as viewed by the person of ordinary skill in the art, pointed to clear and convincing evidence that the claims are invalid under § 112. RAKTL has not pointed to specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). RAKTL's disputes about claim construction and indefiniteness (both issues of law) do not do so, nor does Dr. Brody's declaration. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert conclusions unsupported by facts); *see also, Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("If all expert opinions … were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation."). Defendants are entitled to summary judgment as a matter of law.

# II. WRITTEN DESCRIPTION

RAKTL does not dispute that the claim limitations at issue were not included in the originally filed applications or point to explicit written descriptions in the relevant patent specifications for these limitations. Although the claims need not be described *in haec verba*, the specifications must include all limitations in the claims, or it must be shown that any absent text is ***necessarily*** comprehended in the description. *Hyatt v. Boone*, 146 F.3d 1348, 1354-55 (Fed. Cir. 1998). That a limitation may be obvious from the disclosure is not enough. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306-07 (Fed. Cir. 2008). In fact, Dr. Brody's citation to multiple, lengthy passages of the specifications to support his conclusory opinions demonstrates that one skilled in the art would ***not*** immediately discern the claim limitations at issue as required by *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323-24 (Fed. Cir. 2000). Summary judgment should be granted.

**A. Plurality Of Formats (RAKTL Br. 5-7).** RAKTL's argument that the Court's construction of "format" changes the invalidity result in *Verizon* erroneously assumes that the Court re-construed that term. In fact, the Court completely adopted its

construction of "format" from *Verizon*, including the "clarifying statements" made in deciding summary judgment motions. Order re: Claim Construction at 12, 16. As the PTO recently confirmed in a reexamination, the specification only describes a single format (no matter how construed), not a plurality of formats as claimed. SUF 1.2.14.

RAKTL's multiple call flow argument is contradicted by Mr. Katz's declaration submitted in opposition to defendants' prior art summary judgment motion. He stated that a "Singapore Fling" campaign embodied all the elements of '223:5, which claims a single format. He described the "Singapore Fling" campaign, however, as having the same kind of call mode paths into common processing as described in the Dual Call Mode patents. Miller Ex. 98 (Katz Decl.); Forys 2d Decl. ¶¶ 3-7. RAKTL cannot have it both ways, arguing that such a configuration is a single format for purposes of its prior art positions but is multiple formats for purposes of its § 112 positions.

RAKTL points to multiple call modes and ARUs for written description, the same positions rejected in *Verizon* as being "based on the erroneous premise that the different preliminary operations associated with the various call modes define different formats" and as ignoring that those operations "are different aspects of a single format." *Verizon* SJO at 82. RAKTL does not explain why the specification's description of Figure 2 as depicting *an* operating format can be ignored. The passage cited by RAKTL stating that "the system implements three calling modes to facilitate various formats" does not describe a plurality of formats; it merely describes that the system is "suitable for use in connection with *one* of 'various formats.'" *Id.* at 83. RAKTL does not point to any explicit description of a plurality of formats and cannot ignore Dr. Lucantoni's admission that other interpretations of these passages are possible. SUF 1.2.16.

**B. Unqualified Or Unverified Toll Free Calls (RAKTL Br. 7-9).** Contrary to RAKTL's assertion, defendants do not construe the claims to *require* unqualified toll free calls, but instead to *encompass* systems and processes in which some toll free calls are not qualified, as well as systems and processes in which all toll free calls are qualified. To satisfy § 112, the specification must provide a written description of the

full scope of the claim. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998) (claims to generic "cup" not supported by description of cups with specific shapes). The specification repeatedly describes the need for regulating calls in the toll free call mode. SUF 1.2.29. RAKTL's reliance on an isolated statement that it is important to regulate the toll free call mode "in most applications" is improperly taken out of context, just as RAKTL did in *Verizon*. *Verizon* SJO at 86. Further, RAKTL cannot walk away from Dr. Lucantoni's prior admissions that the descriptions they rely on do not necessarily disclose unqualified toll free calls. *See* SUF 1.2.31-1.2.32. The result here should be the same as in *Verizon*—the claims are invalid.

**C. DNIS To Identify A Format (RAKTL Br. 7).** RAKTL's argument hinges on its incorrect position that the specification describes multiple formats, rather than multiple call modes. The specification's description of using DNIS to route (or distribute) calls in different call modes to different ARUs or locations is not a description of using DNIS to identity a format as held in *Verizon*, as admitted by Drs. Lucantoni and Brody, and as argued in the PTO to distinguish the Riskin reference. *Verizon* SJO at 85; Miller Ex. 33 (Lucantoni Responsive Rpt. ¶ 39); D.I. 2027-3 ¶ 69; Miller Ex. 97 (Appl. No. 07/555,111, Preliminary Amendment dated July 17, 1990 at 8); SUF 1.2.43. RAKTL's citations stating that DNIS is "useful" do not demonstrate description for the particular use recited in the claims, i.e., to identify a format.

**D. "Automatically" Provided (RAKTL Br. 23-25).** Contrary to RAKTL's assertion, defendants do not construe "automatically provided" to mean out-of-band signaling, but rather that DNIS and ANI are provided by the communication facility "without any external influence or control." Out-of-band signaling is just an example of "automatically provided." *See* SUF 1.2.72 ("those DNIS digits might come to you in many ways"). Thus, defendants' claim construction is not inconsistent with *AT&T*.[1]

---

[1] *AT&T* only considered the issue of whether the limitation "means to provide signals representative of data developed by said remote terminals …" is limited to in-band because it is a means-plus-function limitation. *Katz v. AT&T Corp.*, 63 F. Supp. 2d 583, 620-21 (E. D. Pa. 1999). *AT&T* never considered the construction of "automatically."

HOWREY LLP

-3-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

1        The fundamental flaw in RAKTL's claim construction—that the communication facility provides DNIS (or ANI) without human intervention—is that it interprets "provided" (recited in other claims) and "automatically provided" as meaning exactly the same thing, contrary to the established principle that "there is presumed to be a difference in meaning and scope" when different words are used. *Tandon Corp. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed. Cir. 1987); *see Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005) (rejecting a construction as it "attaches no significance to the word 'predetermine.'"). RAKTL and Dr. Brody agree that DNIS and ANI have *always* been provided by the communication facility without human intervention. If "automatically" meant without human intervention, there would be no reason to say "automatically" at all, i.e., it would be meaningless, a point RAKTL has not disputed. RAKTL could have simply recited "provided by the communication facility" as it did in other claims, but that is not what RAKTL did.

       Contrary to their position in *Citibank*, RAKTL and Dr. Brody posit that "provided" and "automatically provided" are distinguished because the former involves the caller keying in the number on his telephone, whereas the latter involves DNIS and ANI being provided by the communication facility without the caller keying in the number. Brody Decl. ¶¶ 510-11. This argument ignores that "provided" and "automatically provided" as used in the claims both define how the communication facility provides DNIS and ANI. It has nothing to do with any action by the caller. Dr. Brody's suggestion (*id*. ¶ 528) that DNIS does not involve the caller is incorrect, because the called number is *always* keyed in by the caller before DNIS is provided or automatically provided by the communication facility. Forys 2d Decl. ¶¶ 8, 9. With this supposed distinction between "provided" and "automatically provided" debunked, RAKTL's construction improperly renders "automatically" superfluous. Also, Dr. Brody's argument (Decl. ¶ 549) that "automatic number identification (ANI) automatically provided" is analogous to the way people use the phrase "ATM machine" has no place in claim construction, because claims must be carefully drafted to define

HOWREY LLP

-4-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112

DM_US21194075.v1

the legal scope of patent protection. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997). Defendants' construction is consistent with the claim language and amendment of the claims during prosecution to add "automatically" (how many claims were amended is irrelevant). The specifications simply do not provide any guidance as to the meaning of "automatically provided."

RAKTL contends that defendants' construction improperly excludes the disclosed embodiments. However, the patents include many claims that do not recite DNIS or ANI "automatically provided." Those claims cover how DNIS and ANI are provided in the disclosed embodiments (i.e., non-automatically), but RAKTL chose to assert the flawed "automatically provided" claims at issue here. *See PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, __ F.3d __, 2008 WL 1946550 at *5 (Fed. Cir. May 6, 2008) ("disclosed embodiments may be within the scope of other allowed but unasserted claims"). RAKTL points to no description of "automatically provided" as properly construed, and there is none. The patents only describe the communication facility providing DNIS and ANI, not "automatically" providing DNIS and ANI. SUF 1.2.81-1.2.92.

**E. Operators Entering Data (RAKTL Br. 10-12, 18-19).** Unlike the '965 patent, the Format Qualification and Conditional Interface patents do not include an explicit description of operators entering data. RAKTL only argues implicit description, but the passages RAKTL points to discussing data entry by the automated system, "data accumulation," "manual operation," "prompting the operator," and receiving caller data do not suggest, much less ***necessarily*** describe, operators entering data as required by *Hyatt*. Forys 2d Decl. ¶¶ 15-26. Mr. Katz and Dr. Brody have admitted (in discussing the Format Qualification patents) that caller data taken by an operator may simply be written down for later entry by another employee. SUF 1.2.119. Contrary to RAKTL's assertion, *Verizon* did not address whether the Format Qualification patents provide written description for operators entering data. *See Verizon*, 326 F. Supp. 2d 1094-95.

**F. Voice Operating Instructions To "Specific Ones" Of The Individual Callers (RAKTL Br. 13-14).** This boils down to a claim construction dispute, which

HOWREY LLP

-5-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

does not prevent summary judgment. Defendants do not construe "specific ones" to be *only* fewer than all individual callers. Rather, the claim *encompasses* a group of callers that is all or fewer than all. RAKTL's construction improperly reads the "specific ones" language out of the claim and is inconsistent with RAKTL's proposed construction of this term in *AT&T*, "individual callers chosen from a group."  COL  2.2.71.

The Format Qualification patents only describe all, not some, callers getting voice operating instructions and therefore do not describe the full scope of the claim as required by *Tronzo* (claims to generic "cup" not supported by description of cups with specific shapes). Dr. Brody's reliance (Decl. ¶¶ 237-42) on passages discussing the polling and mail order formats is misplaced, because they do not involve the key or participation numbers recited in the claims. Also, the cited mail order passage actually supports defendants' position, because it states that "the caller might be advised" (i.e., given an instruction) to press "*" to speak to an operator. Forys 2d Decl. ¶¶ 27-31.

### G. DNIS To Control Processing Of Formats (RAKTL Br. 14, 19-20).

RAKTL's proposal that "controlling" means identifying or selecting is wrong as a matter of law, because '135:1 and 9 separately recite identifying a format and controlling processing. COL 2.2.73. Dr. Brody's construction of "control" in his prior art declaration is also contrary. D.I. 2027-3 ¶ 189. RAKTL points to no written description in the Format Qualification or Lottery patents for this limitation as properly construed (directing the operations of the format after it has been selected). RAKTL argues for a claim construction that covers the preferred embodiment, but it is improper to redraft the claims to preserve their validity in that circumstance. *See Lucent Tech., Inc. v. Gateway, Inc.*, __ F.3d __, 2008 WL 1970225 at *13 (Fed. Cir. May 8, 2008).

### H. Generic "Ticket," "Card," "Format," And "Control System" (RAKTL Br. 20-21).

RAKTL argued for and obtained a broad construction of "ticket." The Court determined that there were no words in the claim limiting it to a lottery ticket (Order re:  Claim Construction at 49-51), but did not reach the written description issue. Having obtained a broad construction, RAKTL now has the problem that the

HOWREY LLP

-6-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

specification does not provide a description for the claims as broadly construed.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911-12 (Fed Cir. 2007).

The entire specification, including the ***summary of the invention***, describes the invention in its most general sense as relating to lotteries:  "In general, the present invention comprises a telephonic-interface lottery system" that uses a "scratch-off lottery ticket."  SUF 1.2.159.  *In Re Lew*, 2007 WL 4201279 at *3 (Fed. Cir. 2007) (description of "the invention" is strong evidence limiting the invention).  The patents lack written description beyond lotteries.  Forys 2d Decl. ¶ 32.

**I. Unique Identification Number Indicating A Predetermined Limit On Use (RAKTL Br. 20).**  RAKTL only disputes defendants' claim construction, which does not prevent entry of summary judgment.  RAKTL's construction improperly inserts "***use of***" in front of the actual claim language "said unique identification number … providing an indication that said unique identification number has reached a predetermined limit on use" to get the result it wants.  Without those improper extra words, RAKTL points to no evidence of written description for this claim limitation.

**J. Testing "In Relation To Said Call Data Signals" (RAKTL Br. 19).**  RAKTL argues that the call data signals can be "ANI ***and/or*** DNIS signals," but that is not what '150:10 and 11 recite.  The preamble, which provides the antecedent basis, defines the call data signals that are tested "as to indicate called ***and*** calling numbers."  *Compare* '150:1, which is not so limited.  RAKTL does not point to written description for testing both called and calling numbers.  This is dispositive even under RAKTL's construction (testing ANI, DNIS, or both), because there is no written description of testing both. *Tronzo*, 156 F.3d 1154 (generic "cup" must be supported).

**K. "Format" Generally In The '415 Patent (RAKTL Br. 21-22).**  The entire specification, including the title, abstract, preferred embodiments, and, most importantly, the invention summary, describes ***game*** formats.  SUF 1.2.186-1.2.190.  *See In Re Lew*, 2007 WL 4201279 at *3 (description of "the invention" is strong evidence limiting the invention).  This consistent disclosure of game formats is not

HOWREY LLP

-7-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

trumped by typical boilerplate language in the final paragraph before the claims. *Wavestream Corp. v. CAP Wireless, Inc.*, 2006 WL 5104656 at *7 (C.D. Cal. 2006) (boilerplate does not overcome what the inventors expressly say their invention is).

### L. "A" File On "Said Individual Callers" (RAKTL Br. 14-15, 22).

Defendants' construction does not require that "a file" stores data on all callers, but rather that it *encompasses* "a file" that stores data on all callers, which must be supported in the specification. *Tronzo*, 156 F.3d 1154 (generic "cup" claim not supported by description of cups with specific shapes). RAKTL's reliance on memory 98 in the Format Qualification patents to support storing data on all callers in "a file" is improper, because the claims recite a memory that accesses or updates a file. Files are contained in memory 98; the memory is not a file. Forys 2d Decl. ¶¶ 33-39.

RAKTL's assertion that '965:35, 43, and 53 only require that each caller's data is compared against a file ignores the explicit claim language, "a file on said individual callers," which encompasses a single file for all callers. RAKTL also ignores that, by contrast, '965:31 recites "a file for said individual caller," demonstrating that RAKTL intended to claim "a file" differently in these claims. Dr. Brody's cited passages all describe a file for each caller, not a file for all callers. *Id.* ¶¶ 40, 41.

### M. Visually Displaying (RAKTL Br. 12).

Dr. Brody misconstrues the claims (Decl. ¶¶ 179-82). The displayed "said identification data" in the '360:75 connecting step refers to caller identification data, not stored identification data, because the claim recites testing "the *caller identification data* against a file of *stored identification data*." Also, the plain language of '707:201 ("displays data obtained from a data bank accessed by said calling number identification data") requires that the displayed data be accessed as recited, not just that data from the data bank is displayed. Forys 2d Decl. ¶¶ 42, 43.

RAKTL does not point to any explicit description for displaying the specific types of data recited. And the passages RAKTL relies on do not *necessarily* describe these limitations as required by *Hyatt*, because the recited data could be displayed or not. *Id.* ¶¶ 44-46. This is consistent with *Verizon* (which did not address the description issue),

1  which only held that the terminal IT is "capable" of visually displaying the customer
2  number.  Finally, the CRT display at terminal CT (which is not an operator terminal)
3  cited by RAKTL does not describe '360:13, 14, 18, 36, 86, 106, 114, and 119, because
4  those claims all require display at the operator terminal.  *Id*. ¶¶ 47-49.

**N. Testing ANI To Qualify Callers For Communication With The System (RAKTL Br. 9).**  '120:71 explicitly recites 800 and 900 called numbers, which means that its independent claim 67 must encompass 800 and 900 called numbers.  *See AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1242 (Fed. Cir. 2003) (dependent claim presumed to have narrower scope than independent claim).  The specification, however, only describes testing ANI signals for qualification in the area code (ACN) call mode. SUF 1.2.232-1.2.234.  A passage cited by Dr. Brody (Decl. ¶ 126) concerning limiting access to callers with a phone number ending in certain digits does not describe ANI, because, for example, those digits could be entered manually by the caller.  Forys 2d Decl. ¶ 51.  RAKTL's *Falkner* and *MOBA* cases are inapplicable; defendants argue that the specification (not just the preferred embodiments) does not describe this limitation. Also, RAKTL's "no disavowal" test is not a proper written description standard.

**O. Computer Generated Acknowledgement Numbers (RAKTL Br. 23).** RAKTL agrees with defendants' claim construction and admits that the '965 patent (unlike the Format Qualification patents, *see* SUF 1.2.242-1.2.243) does not explicitly describe acknowledgement numbers that are computer generated.  RAKTL points to passages in the '965 patent describing acknowledgement numbers being "provided," "indicated," and "revealed," none of which describes those numbers being *generated* by a computer.  *Id*.; Forys 2d Decl. ¶ 52.  Also, a passage cited by RAKTL discussing "coded" acknowledgement numbers does not *necessarily* describe that the numbers are computer generated; they could be prepared manually.  Forys 2d Decl. ¶ 53.

**P. "Approval Signals" (RAKTL Br. 15-16).**  RAKTL construes "approval signals" to mean signals that are provided from one part of the system to another, but that construction is contradicted by the claim language.  The last element of many of the

HOWREY LLP

-9-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112

DM_US:21194075.v1

claims ('707: 69, 85, 86, and 92 and '863:1, 2, 5, and 182) recites "processing at least certain of said answer data responsive to said approval signals." This means that the signals must be provided to the caller; otherwise, the caller could not provide answer data responsive to the approval signals. Forys 2d Decl. ¶ 54. RAKTL admits that there is no explicit description of approval *signals* in the specification. The only passages RAKTL cites do not describe approval signals provided to callers, nor (applying RAKTL's construction) do they *necessarily* disclose approval signals provided between components of the system. *Id*. ¶¶ 56-58. Also, the claims require that approval signals are provided when the caller's *participation number* is approved. *Id*. ¶ 55. Yet, Dr. Brody relies on descriptions of approval based on other kinds of numbers, which cannot provide support for this limitation. *Id*. ¶¶ 58, 59.

**Q. Central Memory Accessed By A Plurality Of Interface Switching Structures (RAKTL Br. 16-17).** RAKTL admits that there is no explicit description of a central memory accessed by the geographically spaced apart interface switching structures. Figure 9 and the related text in the Format Qualification patents RAKTL cites for implicit support do not *necessarily* describe a central memory. Specifically, RAKTL cites "[w]ith data accumulated in the cells, it may be variously down loaded to a central processing station." However, this describes downloading from cells to a central processing station, which means that the cells (if interpreted as memory) are not located in the CPU 251. SUF 1.2.262; Forys 2d Decl. ¶ 60.

**R. Synthesized Voice Signals (RAKTL Br. 9-10).** The '223:5 preamble recites that callers are "cued by synthesized voice signals … and respond with digital signals;" the body recites "individually cueing said callers of said select subset to prompt digital signals." SUF 1.2.266. RAKTL's argument that the preamble is not antecedent basis focuses on "callers" while improperly ignoring the "cueing" and "respond with digital signals" language found only in the preamble. Considering the full phrase at issue, the preamble provides antecedent basis, and the cues must be by synthesized voice.

RAKTL admits that the specification does not explicitly describe synthesized

HOWREY LLP

-10-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

voice but argues that a "simulated voice question" produced by a voice generator implies synthesized voice. It does not. Simulated voice from a voice generator implies a concatenation of pre-recorded words. Forys 2d Decl. ¶ 61. Even Dr. Brody only opines that a voice generator is *capable of producing*, not that it *necessarily* produces, synthesized voice, which is the standard that must be met. *Hyatt*, 146 F.3d at 1354-55.

**S. Key Numbers "In Packaging Of Products" (RAKTL Br. 17).** The specification describes a key number being carried on the product: "For example, a person desiring to participate may purchase *a product which carries a concealed key number*." SUF 1.2.278. The specification does not describe that the concealed key number is included *in packaging* of the product. *Id*. RAKTL only points to the above statement and essentially argues that putting the key number in packaging, rather than on the product as described, would be obvious. Obviousness is not the proper standard. Rather, "it is a question of whether the application necessarily discloses that particular device," *Hyatt*, 146 F.3d at 1353, a standard that is not met here.

**T. Using Identification Data For Cue Suppression (RAKTL Br. 17).** RAKTL only purports to point out implicit description for this limitation, but the passages cited by RAKTL regarding pre-registration do not *necessarily* describe cue suppression, because the same cues can be given in pre-registration and real time registration. For example, a caller entering the system could hear the following initial cue: "If you wish to pre-register, please input your credit card number now; if you have pre-registered, input your caller identification number." After inputting his credit card number to pre-register, the caller would be qualified and given an identification number that could be used for later participation in the game. If the caller has already pre-registered and inputs an identification number in response to the same initial cue, the system proceeds directly to the game. Thus, the caller always receives the same cue whether pre-registered or not. No cue is suppressed based on identification data. Forys 2d Decl. ¶ 64; *see generally, id*. ¶¶ 62-66.

HOWREY LLP

-11-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US:21194075.v1

## III. INDEFINITENESS

Because "[a] determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims," *Personalized Media Communications, LLC v. International Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998), invalidity for indefiniteness is ripe for summary judgment.

**A. Voice Signals To Actuate The Caller's Terminal Apparatus (RAKTL Br. 27-28).** RAKTL's argument that "voice signals" activate the speaker in the caller's telephone is inconsistent with other limitations in the claims. For example, '707:69 and '863:182 and 188 recite "providing voice signals *to said individual callers*" in the coupling step and "receiving digital identification data from said individual callers responsive to said voice signals," both of which require that callers receive the voice signals. Such voice signals cannot merely be signals from the system to activate the caller's telephone speaker as RAKTL asserts. Forys 2d Decl. ¶¶ 67, 68. RAKTL does not allege how voice signals given to and responded to by callers can actuate the caller's telephone. Therefore, the actuating language is indefinite.

**B. Acknowledgement Numbers Identifying The Transaction For "The System" (RAKTL Br. 28-29).** Contrary to RAKTL's assertion, neither defendants nor the Court have defined what "the system" means in the "acknowledgement number" limitation of '965:31. The words "the system" were included in the construction of "acknowledgement number" without defining what "the system" means. Order re: Claim Construction at 6-8. RAKTL tried to correct the fatal flaw in this claim through a certificate of correction, but the PTO refused, holding that adding the needed antecedent basis for "the system" in the preamble would change the scope of the claim. SUF 1.3.14. RAKTL cannot change the scope of the claim now by reading that missing antecedent basis into the claim.

**C. Remote Terminals "May Comprise" A Conventional Telephone (RAKTL Br. 29-30).** The *AT&T* court's construction cited by RAKTL confirms the indefiniteness of "may comprise" because as construed, this term means that the remote terminals

HOWREY LLP

-12-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

could be something that is not described in the claims or specification.  COL 2.3.14.

**D. "Certain Individual Callers," "Said Individual Callers," And "At Least Certain Of Said Individual Callers" In '965 (RAKTL Br. 30).**  RAKTL ignores the difference in claim language among the various recited caller groups in direct violation of the principle that "there is presumed to be a difference in meaning and scope" when different words are used.  *Tandon Corp.,* 831 F.2d at 1023; *see Pause Tech. LLC*, 419 F.3d at 1334 (rejecting a construction as it "attaches no significance to the word 'predetermine.'").  When this principle is correctly applied, there is no way to determine what group of callers each of these terms is intended to cover.  COL 2.3.17.  Further, RAKTL does not explain how "said individual callers" are prompted to provide responsive signals, while only "said certain individual callers" ("certain" connoting a smaller group within the group of "said individual callers") have remote terminals and are interfaced with the system.  COL 2.3.18.

**E. Customer Identification Number "Or" Other Data (RAKTL Br. 30).**  In view of the correction certificate cited by RAKTL, defendants withdraw this argument.

**F. No Structure Linked To "Means To Receive" Function (RAKTL Br. 30-31).**  RAKTL's argument that the recited functions do not mean using DNIS to select a format is directly contradicted by Dr. Brody's prior art declaration (D.I. 2027-3 ¶ 149, '360:18) and Dr. Lucantoni, who in *Verizon* agreed that '065:1 (which, like '065:13 at issue, recites receiving DNIS "to identify said select operating format from a plurality of distinct operating formats") and '863:27 at issue require DNIS format selection.  Miller Ex. 99 (Lucantoni Dep. 111-112 (Apr. 2003)).

In construing the "means for receiving" limitation in '065:1 (in the context of dependent claim 4), *Verizon* found that "the '065 patent is unclear as to which component selects formats based on called-number identification signals…." 326 F. Supp. 2d at 1100.  While ultimately identifying corresponding structure in the context of claim construction, *Verizon* did not consider indefiniteness.  Even Mr. Katz could not point to disclosure linking structure to the function of using DNIS to select a

HOWREY LLP

-13-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US21194075.v1

format. COL 2.3.27. Because the claims at issue here also require DNIS format selection, there is no structure clearly linked to the recited function. None of the passages RAKTL cites links structure to the function of DNIS format selection. Forys 2d Decl. ¶¶ 70-75; COL 2.3.29-2.3.32.

**G. "Said Additional Call Data Signals" (RAKTL Br. 31-31).** RAKTL admits that the specification describes ANI being provided from the communication facility, consistent with the understanding in the art. But as RAKTL also admits, '285:23 requires that ANI is provided from the remote terminals, not the communication facility (antecedent basis for additional call data signals is in claim 22). RAKTL fails to explain this contradiction, and instead effectively ignores the language of claim 22, which is improper as a matter of law. *See Pause Tech. LLC*, 419 F.3d at 1334 (rejecting a construction that "attaches no significance to the word 'predetermine.'"). This irreconcilable conflict between claims 22 and 23 renders claim 23 indefinite.

**H. System Claims Reciting A Method Step (RAKTL Br. 32-33).** The claim held invalid in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005) recited "a system … wherein … the user uses the input means…." Similarly, '707:116 and '893:1, 2, 4, and 83 recite "a system" "wherein said individual callers [users] provide caller credit card number data" and "wherein said certain of said individual callers [users] digitally enter data." Like the claim in *IPXL*, these claims are indefinite because they recite a system *and* a method of callers (i.e., users) using the system, not just a capability of the system as RAKTL asserts. The cases RAKTL cites do not involve claims reciting users using the system as do the claims at issue here. For example, in *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3d 1367 (Fed. Cir. 2008), the claims recited a processor for performing certain functions, not use of the processor.

**I./J. Failure To Link Structure Including Algorithm (RAKTL Br. 33-35).** RAKTL admits that a computer performs at least part of the '551 and '065 function and that no algorithm is disclosed. Although pointing to processors PR1-PRn and

HOWREY LLP

-14-
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTION 112
DM_US:21194075.v1

processing units 92 and 251 as corresponding structure in claim construction (D.I. 735-2 at 1 and 7), RAKTL now argues that "specialized components" (interface 20 and the Centrum 9000) are alternative structures programmed to perform the "means for processing" and "analysis structure" functions but does not identify the programming. Corresponding structure must include an algorithm with the processors RAKTL points to for the processing means and analysis structure. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005); *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1361-62 (Fed. Cir. 2003) (an algorithm required for "means for processing" term). Contrary to RAKTL's assertion, *AT&T* n. 15 did not hold *WMS Gaming* inapplicable to the "means for processing" and "analysis structure," but only that certain § 112, 6 limitations were not limited to software for carrying out the seven disclosed formats.

The Federal Circuit has rejected RAKTL's argument that no algorithm need be disclosed for a claimed processor that is merely processing. *See Aristocrat Tech. Australia Pty Ltd. v. International Game Tech.*, 521 F.3d 1328, 1333-366 (Fed. Cir. 2008) ("[A]ristocrat is in essence arguing for pure functional claiming as long as the function is performed by a general purpose computer. This court's cases flatly reject that position."). And although RAKTL argues that the specification describes certain processing steps, RAKTL has not demonstrated that those steps are "clearly linked" in the specification to the recited function or that those steps constitute the entire algorithm necessary to perform the recited function. *See Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001) (must clearly link); *Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736 (E.D. Tex. 2005) (the specification must clearly link an algorithm that performs the entire recited function).

## IV. CONCLUSION

Defendants request summary judgment that the claims are invalid under § 112.

| Date: May 16, 2008 | By:    /s/ Matthew J. Moore |
|---|---|
| | Matthew J. Moore |
| | Liaison Counsel for Defendants |

HOWREY LLP