UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 07-ml-01816-B RGK (FFMx) |
| Katz Interactive Call Processing Patent Litigation | |
| This document relates to: | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 112 |
| ALL "B" TRACK ACTIONS (except CV 07-02254 RGK (FFMx)) | |
| Case Nos. CV 07-2096 RGK (FFMx), CV 07-2099 RGK (FFMx), CV 07-2101 RGK (FFMx), CV 07-2134 RGK (FFMx), CV 07-2192 RGK (FFMx), CV 07-2196 RGK (FEMx), CV-07-2213 RGK (FFMx), CV 07-2220 RGK (FFMx), CV 07-2250 RGK (FFMx), CV 07-2257 RGK (FFMx), CV 07-2299 RGK (FFMx), CV 07-2322 RGK (FFMx), CV 07-2325 RGK (FFMx), CV 07-2336 RGK (FFMx), CV 07-2339 RGK (FFMx), CV 07-2340 RGK (FFMx), CV 07-2360 RGK (FFMx), CV 07-3002 RGK (FFMx) | |

## I.    INTRODUCTION

In approximately fifty different lawsuits, plaintiff Ronald A. Katz Technology Licensing, L.P. ("RAKTL") has alleged that various defendants infringe claims from its family of related interactive call processing patents.  The Judicial Panel on Multidistrict Litigation consolidated

these cases for pretrial proceedings and transferred the consolidated case to this Court (07-MDL-1816).  This Court has grouped the different cases based on the date they were transferred and allowed the defendants in the Group B cases to file joint summary judgment motions.   Pursuant to that order, the defendants filed the current motion for summary judgment arguing that a number of claims at issue are invalid for lack of written description and/or indefiniteness under 35 U.S.C. § 112.

## II.    PLAINTIFF'S PATENTS

Plaintiff's interactive call processing patents generally describe technology that enables telephone callers to exchange information with computer systems through a telephone network. There are twenty two patents involved in the current motion.  They are:  1) U.S Patent No. 4,972,968 ("the '968 patent") entitled "Statistical Analysis System for Use with Public Communication Facility"; 2) U.S. Patent No. 4,930,150 ("the '150 patent"), entitled "Telephonic Interface Control System"; 3) U.S. Patent No. 5,255,309 ("the '309 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 4) U.S. Patent No. 5,351,285 ("the '285 patent"), entitled "Multiple Format Telephonic Interface Control System"; 5) U.S. Patent No. 5,561,707 ("the '707 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 6) U.S. Patent No. 5,684,863 ("the '863 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 7) U.S. Patent No. 5,787,156 ("the '156 patent"), entitled "Telephonic-Interface Lottery System"; 8) U.S. Patent No. 5,815,551 ("the '551 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 9) U.S. Patent No. 5,828,734 ("the '734 patent"), entitled "Telephone Interface Call Processing System With Call Selectivity"; 10) U.S. Patent No. 5,898,762 ("the '762 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 11) U.S. Patent No. 5,917,893 ("the '893 patent"), entitled "Multiple Format Telephonic Interface

Control System"; 12) U.S. Patent No. 5,974,120 ("the '120 patent"), entitled "Telephone Interface Call Processing System With Call Selectivity"; 13) U.S. Patent No. 6,035,021 ("the '021 patent"), entitled "Telephonic-Interface Statistical Analysis System"14) U.S. Patent No. 6,044,135 ("the '135 patent"), entitled "Telephone-Interface Lottery System"; 15) U.S. Patent No. 6,148,065 ("the '065 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 16) U.S. Patent No. 6,292,547 ("the '547 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 17) U.S. Patent No. 6,335,965 ("the '965 patent"), entitled "Voice-Data Telephonic Interface Control System"; 18) U.S. Patent No. 6,349,134 ("the '134 patent"), entitled "Telephonic-Interface Statistical Analysis System"; 19) U.S. Patent No. 6,424,703 ("the '703 patent"), entitled "Telephonic-Interface Lottery System"; 20) U.S. Patent No. 6,434,223 ("the '223 patent"), entitled "Telephone Interface Call Processing System With Call Selectivity"; 21)  U.S. Patent No. 6,512,415 ("the '415 patent"), entitled "Telephonic-Interface Game Control System"; and 22) U.S. Patent No. 6,678,360 ("the '360 patent"), entitled "Telephonic-Interface Statistical Analysis System."

Both plaintiff and defendants group these patents by one of eight common specifications using informal titles.  Although the informal titles carry no weight, the parties have used their own titles presumably because they convey meanings that favor their positions.  The following list groups the patents by common specification using both titles, [defendants/plaintiff].  If only one title appears, the parties use the same title to refer to the patent(s).

1.  The Statistical Analysis patent refers to the '968 patent.

2.  The Conditional Interface without Operators /Conditional Interface patent refers to the '150 patent.

3.  The Conditional Interface with Operators/Conditional Interface Plus patents refer to the '285 and '893 patents.

4.   The Format Qualification/Statistical Interface patents refer to the '863, '551, '762, '065, '360, '309, '547, '021, '134, and '707 patents.

5.   The Voice-Data patent refers to the '965 patent.

6.   Dual Call Mode/Call Selectivity patents refer to the '120, '223 and '734 patents.

7.   The Game Control/Account Control patent refers to the '415 patent.

8.   The Lottery/Ticket System patents refer to the '135, '703, and '156 patents.

For the purposes of this decision, the Court has adopted the organization of defendants' motion.  The decision addresses all the written description issues first, followed by the indefiniteness issues.  The parties should note that the Court has granted, in part, some of defendants' motion and denied, in part, other parts of the motion.   The denials have come in two forms.  In some cases, the Court has found the claims were valid with respect to the specific issues raised by defendants' motion.  In these cases, the defendants' arguments rely on issues of law (e.g. claim interpretation or indefiniteness) that the Court has rejected.  In other cases, the Court has issued a simple denial of defendants' motion.  In these cases, the plaintiff has raised a factual issue that the jury needs to resolve or the defendants have simply failed to meet their burden of proof.


### III.    JUDICIAL STANDARD - INVALIDITY, WRITTEN DESCRIPTION

A patent must contain a written description of the claimed invention.  That requirement is grounded in 35 U.S.C. §112 ¶ 1 which states:

> The specification shall contain a *written description* of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . .. (emphasis added).

The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter.  *See Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1561 (Fed.

-4-

Cir. 1991) ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.").  The written description requirement is satisfied if a person of ordinary skill in the art reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.  It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention.  *Union Oil Co. of Cal. v. Atl. Richfield Co.,* 208 F.3d 989, 997 (Fed. Cir. 2000).

A patent is presumed valid, and the defendants have the burden of proving invalidity by clear and convincing evidence.  *See* 35 U.S.C. § 282.  Whether a patent complies with the written description requirement is a question of fact.  *Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 424 F.3d 1161, 1164 (Fed. Cir. 2005).  Here, defendants have moved for summary judgment arguing that numerous claims are invalid because they fail to comply with the written description requirement.  Summary judgment is only appropriate if no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).  This Court must "view[] the evidence and any disputed factual issues in the light most favorable" to the plaintiff.  *Enzo Biochem Inc. v. Gen-Probe, Inc.,* 323 F.3d 956, 962 (Fed. Cir. 2002) (citation omitted).

## IV.    WRITTEN DESCRIPTION DEFENSES

### A.    Dual Call Mode Patents, Plurality of Formats

The '223 patent is one of plaintiff's Dual Call Mode patents.  Defendants argue that several claims of the '223 patent are invalid for lack of a written description because the claims require a system that allows callers to access more than one format while the Dual Call Mode

specification only describes a system that allows callers to access a single format.  The specific claims at issue are claims 7, 51, 58 and 86 of the '223 patent.

The term "format" has been involved in several disputes before this Court.  First, in the *Verizon* case ("*Verizon Claim Construction*"),[1] this Court construed "format" in its claim construction order.  Second, this Court also granted, in part, a summary judgment motion ruling that various claims from the '734 Dual Call Mode patent were invalid for failing to comply with the written description requirement ("*Verizon SJ*").[2]  Third, in this case, the Court also construed "format" in substantially the same manner as it did in the *Verizon Claim Construction* and *Verizon SJ*.

The February 22, 2008 Claim Construction Order in this case found that:

> Format refers to a call processing flow implemented by at least one computer program that sets forth the content and sequence of steps to gather information from and convey information to callers through pre-recorded prompts and messages. Selection of, or branching to, a module or subroutine within a computer program does not constitute selection of a separate format. Selection of (or branching to), a second computer program by a first computer program, that together implement a call process flow application also does not constitute selection of a separate format.[3]

With this definition in mind, both parties point to the same figure in support of their opposing positions.  Figure 2 depicts three different call modes, the 800 mode, the 900 mode and the area code mode. '223 patent at 4:4-7.

---

[1] *Verizon Cal. Inc. Ronald A. Katz Tech. Licensing, L.P.*, 326 F. Supp. 3d 1060, 1071 (C.D. Cal. 2003).

[2] *Verizon Cal. Inc. Ronald A. Katz Tech. Licensing, L.P.*, 2003 U.S. Dist. LEXIS 23553, at *155 (C.D. Cal. 2003).

[3] February 22, 2008 Claim Construction Order at 11-16.

Defendants point out that in several different locations, the specification uses the term format (in the singular) to refer to several call modes together.  For example, Figure 2 is described as "a flow diagram of an operating format of the system of FIG. 1." '223 patent, 3:38-39.  Figure 2 is also described as depicting "the" format, not a plurality of formats.  '223 patent, 7:53-54.  Relying, in part, on these statements, the defendants' expert concludes that the Dual Call Mode specification describes a single format. (Forys Decl. at ¶¶ 41-47.)



FIG. 2

In response, the plaintiff attempts to take advantage of the Court's definition of format by using a term from that definition, "call processing flow," and defining that term (the "meta-claim analysis").  Specifically, plaintiff's expert, Dr. Brody, defines a call processing flow to "refer to the caller's interface with an automated response involving the exchange of information." (Brody Decl. at ¶ 36.)  He also notes that the Dual Call Mode specification discloses three call modes, 800, 900 and ACN call modes.  Based on his definition of "call processing flow," Dr. Brody states that each call mode corresponds to a call processing flow.  As a result, he reasons that multiple call process flows are described.  Finally, since this Court's definition of "format"

refers to a call processing flow, Dr. Brody concludes that the Dual Call Mode specification describes multiple formats -- each format corresponding to a call mode.  (Brody Decl. at ¶¶ 33-74.)

This portion of Dr. Brody's analysis hinges on his meta-claim analysis that defines a term that is itself found in the Court's definition of  "format."  Specifically, he explains what a person of ordinary skill in the art would understand a call processing flow to mean.  However, that interpretation leads to a result that is directly contradicted by the plain words of the Dual Call Mode specification.  As described below, the specification indicates that several call modes correspond to a single format.  Since the specification necessarily informs the proper construction of claims, this Court rejects Dr. Brody's meta-claim analysis. *See Phillips v. AWH Corp. et al.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*).

The best evidence of whether the specification describes a system that allows a caller to access different formats is Figure 2 and its corresponding passages.  Nonetheless, the plaintiff also argues that three different parts of the specification necessarily require a system that permits callers to access multiple formats.

First, plaintiff's expert argues that the specification's description of using a single composite ARU (audio response units) instead of multiple ARUs would "facilitate multiple different call processing flows (format)."  (Brody Decl. at ¶¶  48-52.) However, simply because the disclosed structure would facilitate multiple formats does not show that the specification described a system that allows callers to access different formats.  Moreover, this analysis also depends on Dr. Brody's flawed meta-claim analysis.

Second, plaintiff's expert also argues that the specification's description of the interface processor confirms that multiple formats are accessed by callers to the same system. (Brody Decl. at ¶¶ 53-56.)  These conclusions are not supported by passages he quotes.  The passages

only show that the interface processor can be programmed to implement different formats. There is no dispute that the Dual Call Mode specification describes different format variations. However, to support the claims in dispute, the specification must also describe one system that allows callers to access different formats. The evidence Dr. Brody relies upon does not permit that conclusion.

Third, plaintiff's expert argues that a person of ordinary skill in the art would understand that the specification's description of multiple ARUs necessarily encompasses "different formats (call processing flows)." (Brody Decl. at ¶¶ 57-58.) Again, this analysis also depends on Dr. Brody's flawed meta-claim analysis that suggests that a format corresponds to a control mode.

In sum, plaintiff's expert employs numerous arguments to suggest that a person of ordinary skill in the art would understand the specification to require a system that simultaneously processes multiple call formats. However, these arguments are all fundamentally inconsistent with the plain words of the Dual Call Mode specification. The specification clearly states that "FIG. 2 is a flow diagram of *an* operating format of the system of FIG. 1." '223 patent at 3:38-30 (emphasis added). Other passages also refer to several call modes together as a single format. *Id*. at 3:21-25, 7:53-54. The Dual Call Mode specification refers to entire applications like a lottery as a format. *Id*. at 2:44-48, 3:66-4:3. It does not refer to individual call modes as corresponding to a format. Therefore, this Court finds that Figure 2 describes a single format.

Although compliance with the written description requirement is a question of fact, here plaintiff's expert, Dr. Brody, fails to raise a genuine issue for trial. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd*., 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert conclusions unsupported by facts are insufficient to raise a genuine issue of material fact). His conclusions are fundamentally contradicted by the plain words of the specification. Thus, this Court finds that no reasonable juror could believe Dr. Brody's testimony on this issue. Accordingly, this Court

partially grants defendants' motion for summary judgment.  Specifically, the Court finds that claims 7, 51, 58 and 86 of the '223 patent are invalid for lack of a written description. This Court notes that this result is consistent with the ruling from the Verizon SJ.[4]

**B.     The Dual Call Mode Patents, Unqualified Or Unverified Toll Free Calls**

The defendants argue that specific claims from the '120 and '223 Dual Call Mode patents require a system that qualify/verify some toll free calls and do not qualify/verify other toll free calls.  Since the system described in the Dual Call Mode specification only qualifies/verifies all toll free calls, the defendants argue that the claims at issue are invalid for lack of a written description.  The specific claims at issue are claims 32 and 34 of the '120 patent and claim 58 of the '223 patent.

In response, the plaintiff challenges defendants' claim interpretation and argues that the claims do not require that some toll free calls are unqualified or unverified.  Moreover, plaintiff also argues that even if defendants' claim interpretation is correct, the specification leaves open the possibility of unqualified and unverified calls.

In *Verizon,* the defendant argued that claims 81 and 94 of the '734 patent and claim 107 of the '223 patent were invalid for lack of a written description for the same reasons discussed in this section.  The parties agreed about the scope of the claims and this Court found that the "relevant patent specifications do not appear to unambiguously describe a call processing system in which some toll-free calls are qualified while others are not."[5]  As a result, this Court granted summary judgment on these issues in favor of the defendant and found the disputed claims invalid.  Again, the *Verizon* decision has no preclusive effect in this case, but its reasoning is informative.

---

[4] *Verizon,* 2003 U.S. Dist. LEXIS *139-*151.

[5] *Id.* at *153.

1

2      For the disputed claims to be invalid for lack of written description, this Court must find:

3   1) that Dual Call Mode specification does not describe any toll free calls that are

4   unqualified/unverified, and 2) that the claims require both qualifying/verifying some toll free

5   calls and not qualifying/verifying other toll free calls.[6]

6

7      As to the first issue, this Court agrees with its earlier finding in *Verizon*.  The Dual Call

8   Mode specification only describes a system where the toll free calls are qualified or verified.

9   Plaintiff's evidence merely shows that the specification does not expressly exclude the possibility

10  of  unqualified toll free calls. (Brody Decl. at ¶¶ 109-17.) There is no evidence that a person of

11  ordinary skill in the art would recognize the specification describes a system where some toll

12  free calls are unqualified/unverified.

13

14     However, this Court rejects the claim construction underlying defendants' defense.  An

15  examination of the relevant claim language reveals that the disputed claims do not require that

16  some toll free calls omit qualification or verification.  Specifically, disputed claims 32 and 34

17  depend on claim 28 of the '120 patent.  The relevant element in claim 28 states:

18      [Q]ualification means for *qualifying at least said calls* utilizing said one of said
19      plurality of distinct called numbers in said toll free call mode received by said
        first response unit to provide qualified calls based upon a test of caller entered
20      identification data including caller pinnumber data based upon limited use.
        (emphasis added).
21

22     By using the term "at least," the claim only requires that some calls be qualified.  It does

23  not exclude the possibility that all calls be qualified.  The term "at least" is also used with respect

24  to verifying calls in the context of claim 58 of the '223 patent.   Since the disputed claims do not

25  require both qualifying/verifying some toll free calls and not qualifying/verifying other toll free

26

27  ────────────────

28  [6] Since the parties appeared to agree on the scope of the disputed claims in *Verizon*, this issue was not addressed in that decision.

calls, this Court finds that claims 32 and 34 of the '120 patent and claim 58 of the '223 patent are not invalid by reason of any issue raised in section II(B) of defendants' memorandum.

**C.      The Dual Call Mode Patents, Using DNIS To Identify A Format**

The defendants also argue that specific Dual Call Mode patent claims are invalid because the specification does not provide a written description of using DNIS to identify or select a format.  Defendants go on to point out that claims 32 and 34 of the '120 patent and claims 1, 58 and 86 of the '223 patent all recite "using DNIS to identify or select a format." [7]  (Defs.' Mem. at 5.)

In section IV(A), *supra*, this Court has found that the Dual Call Mode specification does not describe a system that allows a caller to access different formats.  It follows that the specification also does not describe DNIS as selecting or identify one format from a plurality of formats.  This Court arrived at essentially the same conclusion in the *Verizon SJ*.[8]  Plaintiff's opposition attempts to argue that selecting a format corresponds to selecting a call mode. (Brody Decl. at ¶¶ 83-87.)  This Court has already rejected that analysis.

Based on the foregoing, this Court grants, in part, defendants' motion for summary judgment.  Specifically, this Court finds that claims 32 and 34 of the '120 patent and claims 1, 58 and 86 of the '223 patent are invalid for lack of a written description.

---

[7] The term "DNIS" is a commonly understood acronym in the art for Dialed Number Identification Service. *See* February 21, 2008 Claim Construction Order at 8.

[8] *Verizon*, 2003 U.S. Dist. LEXIS 23553, at * 151.

**D.     The Dual Call Mode, Format Qualification and Lottery Patents, Automatically**

Defendants assert that numerous claims containing the term "automatically" are invalid. Defendants' argument relies on the Court's adopting their definition of that term.[9]  Citing to various dictionaries[10] the defendants contend that "automatically" means "without external influence or control."[11]  The defendants go on to explain that the Dual Call Mode, Format Qualification and Lottery patent specifications describe "in-band" signaling systems. Apparently, in an in-band system, the communication system will not send a DNIS or ANI signal until it first receives an acknowledgment from the call center.  Thus, under defendants claim construction, the systems described in the specifications do not "automatically" provide DNIS or ANI signals because the systems await some external signal. Therefore, defendants conclude that the claims in dispute are not supported by a written description in the specification.

In response, the plaintiff challenges defendants' claim construction.  Plaintiff contends that the specification uses the plain meaning of "automatically" and that the term "simply clarifies that the calling-number or called-number signals are provided automatically, by the telephone network itself, by operation of automated equipment, rather than manually input by the caller such as by touch-tones."  (Pl.'s Opp. at 24, Brody Decl. at ¶¶ 509, 512.) It should be noted that plaintiff also cites to a dictionary to support its definition (Brody Decl. at ¶ 513).

Although the specifications at issue do not use the term "automatically," plaintiff defines the term by pointing to passages in the specifications that differentiate between signals that use caller-input signals and those that are generated "automatically" by the electrical components. For example, the '120 patent describes how a caller can send signals by "actuating push buttons." It also describes how ANI and DNIS signals can be provided "independently of the caller's

---

[9] "Automatically" was not interpreted in this Court's earlier claim construction ruling.

[10] Exhibits 22-25 to Miller Decl.

[11] Defendants' citation to plaintiff's definition of automatically in the *AT&T* case was unhelpful because plaintiff only offered a definition for "automatically refreshed." (Ex. 40 to Miller Decl.)

actions." (Dual Call Mode specification, '120 patent at 1:63-2:12; *see also* '120 patent at 4:48-4:60; 8:22-8:29; Format Qualification specification, '707 patent at 6:60-6:65; Lottery specification, '135 patent at 6:18-6:33.) The plaintiff argues that the term "automatically" is intended to convey this distinction.

The defendants argue that automatically cannot have the limited meaning plaintiff proposes because some claims recite "automatically provided" and others recite "provided" by the communication facility. If the Court was to adopt plaintiff's construction, defendants argue that "automatically" would be rendered superfluous. Although a claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so (*see, e.g., Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005),[12] a claim construction that does not read on the preferred embodiment is rarely correct. *See Chimie v. PPG Indus., Inc.,* 402 F.3d 1371, 1377 (Fed. Cir. 2005).[13] These two guidelines help in construing claims, but they are not dispositive. Here, they point to two conflicting results.

Both the defendants and plaintiff also cite to dictionaries and offer interpretations of "automatically" that would be reasonable if the Court knew nothing about the patents. However, only plaintiff's definition makes sense in context of the specifications. Since the Federal Circuit has indicated that the specification is the best guide to the meaning of a disputed term, this Court adopts a claim construction based on plaintiff's analysis. *Phillips,* 415 F.3d at 1320-21. This Court will not characterize that definition as *the* plain meaning of automatically because both parties' definitions are consistent with different plain meanings of the term. Instead, this Court

---

[12] Defendants overemphasize the problem of interpreting a claim to render a term superfluous. A patentee often uses phrases that have overlapping meanings. For example, some of the same claims at issue refer to both a telephones call processing system and DNIS signals. DNIS signals are typically only found in telephone systems. That fact does not require this Court to adopt a narrow interpretation of telephone systems to avoid making the term superfluous.

[13] In general, any defense based on a lack of written description tends to be at odds with *Chimie. Chimie* does not forbid a claim construction that excludes the preferred embodiment. We interpret it to suggest that interpretations that are consistent with the specification are favored. That is entirely consistent with the Federal Circuit's decision in *Phillips., supra.*

adopts the following definition.  The term automatically is used to clarify that the calling-number

or called-number signals are provided by the telephone network itself, by operation of automated

equipment, rather than manually input by the caller such as pushing buttons.

In view of this interpretation, the Dual Call Mode, Format Qualification and Lottery

patent specifications contain written support for the disputed claims.  As a result, this Court finds

that claims 32, 34, 57, 62, 63, and 67 of the '120 patent, claims 1, 3, and 58 of the '223 patent,

claim 11 of the '021 patent, claims 5, 27, 31, 32, 42, 43, 49, 96, 98, and 99 of the '863 patent,

claims 1, 19, 21, 33, and 34 of the '551 patent, claims 30, 32, and 67 of the '762 patent and

claims 11, 18, and 19 of the '547 patent, claims 13, 14, 18, 36, and 75 of the '360 patent, claim

201 of the '707 patent, claim 5 of the '134 patent, claims 13 of the '065 patent and claims 35 and

72 of the '703 patent are not invalid by reason of any issue raised in section II(D) of defendants'

memorandum.


**E.      The Format Qualification and Conditional Interface Patents with Operators
         Patents, Entering Caller Data**

Although the defendants admit that the Format Qualification and Conditional Interface

with Operators specifications describe operator attended terminals and that callers can be

transferred to those terminals, the defendants argue that various claims of these patents are

invalid because the specifications do not specifically describe operators that "enter caller data."

Claims 27, 31, 32, 42, 43, and 49 of the '863 patent, claims 1, 21, 33, and 34 of the '551 patent,

claim 13 of the '065 patent, claims 13, 14, 18, 36, 75, 86, 106, 110, 114, and 119 of the '360

patent, claim 61 of the '285 patent, and claims 1, 2, 4, and 83 of the '893 patent require operators

to enter caller data.  Therefore, the defendants argue that these claims do not have an adequate

written description.

In addition, defendants argue some of these claims contain additional limitations regarding the operator entered data that also are invalid for lack of written description. Specifically, these claims recite that the operator-entered data is: 1) stored in the record structure ('863 claims); 2) used to update data in memory ('551, '065, and '360 claims); 3) or processed and stored ('285 and '893 claims).

## 1.  Format Qualification Patents

With regard to the Format Qualification patents, the plaintiff argues that the specification does disclose an operator entering caller data.  Plaintiff points to the following passage: "Either during the data accumulation phase, or after the processing phase to isolate a subset, a distinct operation may involve actuating the interface terminal T1 for direct local communication *between the caller and an operator* at the terminal T1." '707 patent at 5:50-5:60 (emphasis added).  According to plaintiff's expert, a person of ordinary skill in the art would understand this passage to describe that an operator enters data and that the data is processed. (Brody Decl. at ¶¶ 155-56.)  Other passages also describe additional caller/operator interactions in the context of receiving, storing, updating and processing caller data ('707 patent at 6:65-7:21, 10:44-10:56, 11:8-11:14, Brody Decl. at ¶¶ 160-74.)

Plaintiff's argument is consistent with a claim construction order from the earlier *Verizon* case. *Verizon Cal. Inc. Ronald A. Katz Tech. Licensing, L.P.*, 326 F. Supp. 1060 (C.D. Cal. 2003).  In that order, this Court stated that the Format Qualification specification "informs us that an operator terminal . . . 1) is connected to the processing systems P1-Pn; 2) allows operators to directly communicate with callers; and 3) appears to allow operators to manually enter data during interactions with callers." *Id*. at 1094-95.  Although this decision carries no precedential weight, it confirms that plaintiff's position is reasonable.

1   In ruling on defendants' summary judgment motion, this Court must view evidence in the

2   light most favorable to the plaintiff.   The evidence and expert testimony plaintiff presents could

3   reasonably allow a jury to find that the Format Qualification specification describes both an

4   operator entering caller data and updating that data.  Accordingly, this Court denies defendants'

5   request for summary judgment with respect to all issues raised in Section II(E) of its

6   memorandum that relate to claims from the '863, '551, '065 and '360 Format Qualification

7   patents.

8

9   **2.  Conditional Interface with Operators Patents**

10   With regard to the Conditional Interface Patents with Operators patents, the plaintiff

11   points to the following passage in the specification. "If a *live-operator terminal* is selected, or

12   indicated as a secondary format, prompt data is provided to a select station. *Data is recorded and*

13   *processing procedures also may be controlled by call data*." '285 patent at 2:35-2:38 (emphasis

14   added).  This passage rebuts defendants' allegations by disclosing that data is recorded and

15   processed when the caller is connected to a live operator.

16   Another passage describes how the system provides interface formats "either (or both) to

17   automate an interface or prompt a live operator . . .."  '285 patent at 3:16-3:26.  According to the

18   plaintiff's expert, a person of ordinary skill in the art would understand this passage to describe a

19   live operator implementing a format by inputting data. (Brody Decl. at ¶¶ 378-79.)

20   In ruling on defendants' summary judgment motion, this Court must view evidence in the

21   light most favorable to the plaintiff.  The evidence and expert testimony plaintiff presents could

22   reasonably allow a jury to find that the Conditional Interface with Operators specification

23   describes both an operator entering caller data and that data being recorded.  Accordingly, this

24   Court also denies defendants' request for summary judgment with respect to all issues raised in

25

26

27

28

Section II(E) of its memorandum that relate to claims from the '285 and '893 Conditional

Interface with Operators patents.

**F.     The Format Qualification Patents, Providing Voice Operating Instructions to "Specific Ones" of the Individual Callers**

The defendants interpret several claims from the Format Qualification patents to require that specific callers receive voice instructions while other callers do not receive any such instructions.  Relying on this claim interpretation, the defendants go on to argue that these claims are invalid for lack of a written description because the Format Qualification specification only describes a system where voice operating instructions are provided to *all* individual callers.

In response, plaintiff first challenges defendants' claim construction.  Plaintiff argues that the claims only require that some specific callers receive voice instructions.  However, even if this Court adopts defendants' claim construction, the plaintiff argues that the specification describes that some connected callers receive no vocal instructions.

By example, the Court examines claim 182 of the '863 patent.  The element in dispute is actually found in independent claim 181. It recites:

> [C]oupling remote terminals to said interface for providing voice signals to said individual callers and generating said voice signals for actuating said remote terminals as *to provide vocal operating instructions to specific ones of said individual callers . . .*. (emphasis added).

Defendants argue that the phrase "specific ones" means that only callers in a select group receive any voice operating instructions.  Other callers do not.  This Court rejects that interpretation.  Like the phrase "at least" interpreted above, "specific ones" merely requires that the specified callers receive vocal operating instructions. The claim language says nothing about any other callers.  This interpretation is consistent with the ordinary meaning of the words.  Moreover, if the specification describes a system that provides voice operating instructions to *all*

callers as defendants suggest, that fact also weighs in favor of adopting plaintiff's claim interpretation.[14]  Otherwise, the preferred embodiment would be excluded.  *See Chimie,* 402 F.3d at 1377 (a construction that excludes the preferred embodiment is rarely if ever correct).  This Court does not need to rely on *Chimie* because the claim language itself is sufficient.   This Court finds that the phrase "specific ones" does not provide any limitation on callers other than the "specific ones."  This finding is also applicable to the claims from the '863 and '707 patents because those claims also contain the "specific ones" language in essentially the same context.

In view of this claim interpretation, this Court finds that the Format Qualification specification contains written support for the "specific ones" language.  As a result, claim 182 of the '863 patent, claims 188-192 of the '863 patent and claims 69, 85, 86 and 92 of the '707 patent are not invalid by reason of any issue raised in section II(F) of defendants' memorandum.  Moreover, even if defendants' claim construction were correct this Court finds that there is a factual issue with respect to whether a person of ordinary skill in the art would understand the Format Qualification specification to describe all or just some callers receiving voice instructions.  The parties' experts have submitted reasonable and contrary views on this issue.

**G.     The Format Qualification and Lottery Patents, Using DNIS to Control Processing of Formats**

Defendants argue that claims 1 and 9 of the '135 patent and claim 19 of the '551 patent from the Format Qualification and Lottery Patent are invalid because they lack a written description for claims that contain the phrase "control processing formats" or "controlling said processor to process in accordance with said one specific format."  Defendants define control to mean "directing the operations of the format *after the format has been selected*" (emphasis

---

[14] Based on the competing expert declarations, the Court also finds that this is a factual issue for the jury to decide (Forys Decl. ¶¶ 153 -57, Brody Decl. at ¶¶ 236-42).

added).[15]  The defendants go on to argue that the Format Qualification and Lottery specification only describe using DNIS to "indicate" or identify the format.  As a result, the defendants conclude that the claims 1 and 9 of the '135 patent and claim 19 of the '551 patent are invalid for lack of written description.

In response, plaintiff challenges defendants' claim interpretation.  The plaintiff argues that there is nothing in the specification that suggests that controlling must take place after identifying.   Parsing the relevant claim language from this viewpoint allows plaintiff to conclude that the claim does not require using DNIS to control the operation of the format.  Instead, plaintiff argues that the claim only requires a processor be controlled to select a format. (Brody Decl at ¶ 416.)

The Court agrees with plaintiff's critique of the defendants' claim construction. There is nothing in either the specification or the claim itself that suggests that controlling a processor in accordance with a specific format must be distinct from or occur after identifying a format.  The only evidence defendants rely upon is a dictionary that defines "control" to mean "direct influence over"[16] and a pleading from an earlier litigation where plaintiff defined "controlling" to mean "regulate operations of an interface."[17]  Neither of these definitions suggests that controlling must occur after identifying, much less that controlling is distinct from identifying. Therefore, the Court rejects this definition of control.

The defendants do not offer a different definition of "control" and this Court declines to adopt one at this point.  It is sufficient to note that the defendants' defense is predicated on a faulty claim construction.   In other words, since the defendants' claim construction was not

---

[15] Defendants cite to the definition of "control" in Webster's Third International Dictionary (Ex. 22 to Miller Decl.) and the definition of "controlling operations of an interface" that plaintiff proposed in the earlier AT&T case (Ex. 40 to Miller Decl.).

[16] Ex. 22 to Miller Decl.

[17] Ex. 40 to Miller Decl.

adopted, the Format Qualification and Lottery specification do not need to describe DNIS signals

controlling a format after the format is selected.  As a result, this Court denies the defendants'

summary judgment motion with respect to the issues raised in section II(G) of defendants'

memorandum.

**H.     The Lottery Patents, A Generic "Ticket," "Card," "Format," And "Control
System"**

Claims 1, 9 and 11 of the '156 patent and claim 35 of the '703 patent recite either a

"ticket" or "card" or both.  All these claims also recite a "format."  Earlier this Court rejected the

defendants' attempt to interpret "ticket/ticket or card" to be limited to the lottery context.[18]  Now

the defendants argue that these claims and claim 72 of the '703 patent[19] are invalid for lack of

written description because the only embodiment described is a lottery system.  Essentially,

defendants argue that since the Court defined the relevant terms generally and the specification

only describes a specific embodiment, the claims must be invalid for lack of written description.

Defendants appear to be improperly rearguing their claim construction position as

opposed to raising a defense under 35 U.S.C. § 112 ¶ 1.  Defendants have presented no credible

evidence that a person of skill in the art would fail to recognize that the "ticket," "card,"

"format," and "control system" limitations are found in the specification.[20]  Accordingly, this

Court finds that claims 1, 9 and 11 of the '156 patent and claim 35 of the '703 patent are not

invalid with respect to any issues raised in section II(H) of defendants' memorandum.

---

[18] February 21, 2008 Claim Construction Order at 48-51.

[19] Claim 72 recites a generic "telephone-interface control system."

[20] Defendants' expert declaration only suggests that the specification does not describe the terms in their general
form.  (Forys Decl. at ¶ 180.)

1

2

**I.      The Lottery Patents, A Unique Identification Number Providing An Indication That It Has Reached A Predetermined Limit On Use**

3

4

Claims 1 and 9 of the '135 patent require a ticket that contains "identification indicating a unique identification number."  The particular element recites in full:

5

6

7

8

9

> [I]dentification indicia on said base substrate indicating a unique identification number, said *unique identification number* [1] containing information on said one specific format and [2] for entry by said touchtone telephone instrument to provide signals indicative of said unique identification number [a] for processing in accordance with said one specific format, and [*] further for providing an indication that said unique identification number has reached a predetermined limit on use. (emphasis and [] added).

10

The defendants parse this phrase so that the language after [*] refers to the "unique

11

identification number."[21]  Under this interpretation, the unique identification number itself must

12

provide an indication that a predetermined limit on use has been reached.  To perform this

13

function, the number must be able to change.  Since the specification does not disclose a unique

14

identification number that changes (e.g. can be incremented or decremented), the defendants

15

argue that these claims 1 and 9 are invalid for lack of a written description.

16

17

Defendants' argument relies on their particular parsing of the claim language.  However,

18

as both parties admit, defendants' interpretation would exclude the preferred embodiment.  The

19

Court declines to follow defendants' claim construction when the claim language is clearly

20

amenable to a different interpretation that is supported by the specification.  *See Chimie*, 402

21

F.3d at 1377.  Specifically, the language following [*] should be interpreted to modify [2].[22]  In

22

other words, the claim requires that the touchtone telephone provides the unique identification

23

number for both (a) processing and (b) for determining whether the unique identification number

24

has reached its limit on use.  This language is consistent with the specification's description of a

25

consumable key which is "entitled for example, to a single use for participation."   Accordingly,

26

27

[21] This Order has added organization headings to help parse the claim language. Under defendants' interpretation [*] should be replaced with a [3].

28

[22] Under the Court's interpretation, [*] should be replaced with a [b].

1  this Court finds that claims 1 and 9 of the '135 patent are not invalid for any reason raised in

2  section II(I) of defendants' memorandum.

3

4

5  **J.      The '150 Conditional Interface with Operators Patent, Testing the Selected Format "In Relation To Said Call Data Signals"**

6          Claims 10 and 11 of the '150 patent require "testing . . . call data signals." Since the

7  preamble introduces the term "call data signals" in terms of "called and calling numbers," the

8  defendants construe the claim to require testing both called and calling numbers.   However, the

9  specification only describes testing calling numbers, not called numbers thereby allowing the

10  defendants to conclude that the claims are invalid for lack of a written description.

11          As both parties admit, the defendants' construction would exclude the preferred

12  embodiment.  Again, we decline to follow defendants' claim construction when the claim

13  language is clearly amenable to a different interpretation that is supported by the specification.

14  *See Chimie*, 402 F.3d at 1377.  A simple reading of the claim reveals that the phrase "testing . . .

15  call data signals" does not specify the type of call data signals that must be tested, nor does it

16  suggest that all types of call data signals must be tested.  The language only requires testing call

17  data signals.  Since signals that relate to calling numbers fall into that category, this Court finds

18  that the phrase "testing . . . call data signals" can be satisfied by merely testing calling numbers.

19  Accordingly, this Court finds that claims 10 and 11 of the '150 patent are not invalid for any

20  reason raised in section II(J) of defendants' memorandum.

**K.      The '415 Game Account Patent, "Format" Generally**

Claim 2 of the '415 Game Account patent recites "formats."  This Court interpretation of "format" did not limit the term to the game context.[23]  Now the defendants argue that claim 2 of the '415 patent is invalid for lack of written description because the only embodiments described are game formats.  Once again, defendants argue that since the Court defined a term generally and the specification only describes specific embodiments, the claim must be invalid for lack of written description.

Defendants appear to be improperly arguing a claim construction position as opposed to raising a defense under 35 U.S.C. § 112 ¶ 1.  Defendants have presented no credible evidence that a person of skill in the art would fail to recognize that a "format" is described in the specification.[24]  Accordingly, this Court finds that claim 2 of the '415 patent is not invalid for any reason raised in section II(K) of defendants' memorandum.

**L.      The Format Qualification and Voice Data Patents, "A" File On "Said Individual Callers"**

Defendants construe various claims from the '707 Format Qualification patent and '965 Voice Data patent to require that all individual caller data be stored in a single file.  The defendants go on to argue that the Format Qualification and Voice Data specifications do not describe individual files storing data on all callers.  As a result, the defendants conclude that claims 46 and 51 of the '965 patent and claims 35, 46 and 53 of the '707 patent are invalid for lack of written description.

The relevant passage from the claims of the '965 patent states: "updating a file and storing digital caller data relating to said individual callers."  Defendants argue that "said individual

---

[23] February 21, 2008 Claim Construction Order at pp. 16.

[24] Defendants' expert declaration only states that the specification does not describe format in its general form. Forys Decl. at  ¶ 202.

callers" somehow refers to all the callers to the system.  However, there is no indication in the specification, the preamble (that serves as the antecedent basis for "said callers") or the quoted language that would suggest this interpretation.  The language from the claims of the '707 patent also fails to suggest that "said individual callers" must somehow refer to all callers.  The relevant language states: "comparing said caller identification data received against a file on said individual callers to determine if said caller identification data received is already of record."  Thus, a straightforward reading of the claim language does not support defendants' claim interpretation.

Moreover, defendants' construction would once again exclude the preferred embodiment.  Again, we decline to follow that construction when the claim language is clearly amenable to a different interpretation that is supported by the specification.  *See Chimie*, 402 F.3d at 1377.  Specifically, we do not interpret "individual callers" to refer to all callers.  The plain language of the claim itself demonstrates that a file can store information on individual callers.  Accordingly, this Court finds that claims 46 and 51 of the '965 patent and claims 35, 46 and 53 of the '707 patent are not invalid with respect to any issues raised in section II(L) of defendants' memorandum.

**M.     The Format Qualification Patents, Visually Displaying Customer Number Data, Data From A Data Bank Or Memory Accessed By ANI, Or Identification Data Entered By Callers**

Claims from the Format Qualification patents require visually displaying four types of data.  Defendants argue that the Format Qualification specification does not describe any of these types of data.  Therefore, they conclude that the claims that contain these requirements are invalid for lack of written description.  This decision addresses each of these four requirements in turn.

### 1. Visually Displaying Customer Number Data

Claims 13, 14, 18, 36, 86, 106, 110, 114, and 119 of the '360 patent, claim 13 of the '065 patent and claims 21, 33, and 34 of the '551 patent each recite visually displaying "customer number data" or a portion thereof.   Both parties agree that the Format Qualification specification describes visually displaying some types of information.   However, they disagree on whether the specification describes displaying "customer number data."   The plaintiff relies on four different arguments to prove that there is a written description for displaying customer number data.

First, the plaintiff relies on a sentence from the dramatic content format portion of the specification.  That sentence describes televising the "status of the analysis" that is being displayed by a terminal.  The entire sentence recites:, "In any of the various formats, the status of the analysis can be televised by selecting a camera focused on the interface terminal IT." '360 patent at 19:51-19:53.  By focusing on the introductory clause "[i]n any of the various formats", the plaintiff argues that this sentence ("the Bootstrapping Sentence") shows that the status of the analysis of *any* format described in the specification is displayed at the operator terminal. (Brody Decl. at ¶¶ 189-90.)  Plaintiff goes on to point to the description of the mail order format and its use of customer number data.  *Id*. at 11:10-16, 23-28; 10:54-57.[25]  Plaintiff argues that together these passages show that the results of customer number data analysis are visually displayed.

However, to properly interpret the Bootstrapping Sentence, it is helpful to view it in context.  The dramatic program format describes a format where television viewers can call in and answer questions.  '360 patent at 18:34-19:53.  Winners are randomly selected from the callers who successfully answer the questions.  *Id*. at 19:39-43.  The specification describes two ways to calculate the results: 1) assessing whether callers' answers were correct and randomly

---

[25] Although the specifications were practically identical, the plaintiff and defendants cited to two different Format Qualification patents.  For the purposes of uniformity, this section of the decision only cites to the '360 patent.

selecting the winners *after* the data is accumulated, (*id*.); or 2) immediately assessing whether the callers correctly answered the questions and informing them of that result, but later randomly selecting the winners. *Id*. at 19:44-51. The Bootstrapping Sentence that plaintiff relies upon follows both options and appears within the same paragraph as the second option. This factor suggests that the sentence is only describing the dramatic content format.

If that were the only factor, plaintiff's position might be a reasonable one that a jury could accept. However, the content of the Bootstrapping Sentence conclusively disposes of the issue. First, the sentence discusses displaying information on television by focusing a camera. This description makes sense in the context of calling in answers to a television show (i.e., the dramatic content format), but does not make sense in the context of customers placing orders over the telephone (i.e., the mail order format). Second, the Bootstrapping Sentence describes displaying the "status of the analysis" (e.g., who won) not the calculations that form the analysis as plaintiff suggests. Finally, the Bootstrapping Sentence begins with the phrase "[i]n any of the various formats." Although plaintiff suggests that the term "various formats" refers to all the formats discussed in the specification, the context shows that it is only referring to the two dramatic content format options.[26] Thus, Bootstrapping Sentence is stating that regardless of which of these two formats/options is used, the status of the analysis can be televised. Accordingly, this Court concludes that no reasonable jury would find that the Bootstrapping Sentence describes visually displaying the analysis for all the formats.

Second, the plaintiff also argues that the mail order embodiment must necessarily visually display customer number data during the course of a "manual operation" because the customer number is displayed on operator's terminal when the operator enters the customer

---

[26] This usage is not consistent with the definition provided in the Feb. 21, 2008 Court's Claim Construction Order. However, plaintiff has used the term to convey various inconsistent meanings in the specification and prosecution history.

number.  (Brody Decl. at ¶¶ 195-98.)  However, this analysis does not take into account other portions of the claim language.  Each of the claims at issue also requires that the data be "entered" by the caller.  Thus, the system must visually display customer number data that is entered by the caller.  In the example identified by Dr. Brody, the operator enters the customer number.  Therefore, this example does not provide a written description of the claims at issue.

Third, the plaintiff also argues that a person of ordinary skill in the art would understand that the command terminal is capable of displaying memory cell contents including customer numbers. (Brody Decl. at ¶¶ 199-01.)  However, even if these statements are true, they do not show that the written description requirement has been satisfied.  "It is 'not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure.... Rather, it is a question whether the application necessarily discloses that particular device.' " *Hyatt v. Boone,* 146 F.3d 1348, 1353 (Fed. Cir. 1998) (quoting *Jepson v. Coleman,* 314 F.2d 533, 536 (CCPA 1963).  Plaintiff's expert declaration fails to meet this threshold. Therefore, this Court rejects this argument.

Fourth, the plaintiff argues that the auction embodiment necessarily discloses a command terminal that displays customer numbers.  Dr. Brody quotes a number of passages from the specification.  Some passages discuss assigning customer numbers ('707 patent at 14:8-14:15; 14:44-14:49) and the following passage discusses displaying information:

> The status of the bidding is presented to the auctioneer by the monitor of the command computer terminal CT (FIG. 1). Specifically, the auctioneer is provided an indication of the number of bidders at each level....Note that the display of the command terminal CT (FIG. 1) may also inform the auctioneer of fresh bidders.

'360 patent at 15:23-32.  However, none of the passages combine the concepts and show that customer numbers are visually displayed. Nonetheless, Dr. Brody opines that the customer terminal must "necessarily display customer numbers."  Dr. Brody's conclusion is simply not supported by the evidence.  Although a person of ordinary skill in the art may understand that

1  displaying customer numbers would be a sensible part of the described invention, there is no

2  such description.

3         Moreover, Dr. Brody ignores other parts of the claim language.  As stated above, the

4  claims at issue require data be entered by a caller, but Dr. Brody relies on a portion of

5  specification that automatically assigns a "limited-digit number."  '707 patent at 14:44-14:49.

6

7  That number cannot describe the claims at issue because it is assigned by the system and not

8  entered by a caller.

9         Based on the foregoing, this Court grants, in part, defendants' motion for summary

10 judgment and finds that claims 13, 14, 18, 36, 86, 106, 110, 114, and 119 of the '360 patent,

11 claim 13 of the '065 patent and claims 21, 33, and 34 of the '551 patent are invalid for lack of a

12 written description.

13 **2.  Claim 1 of the '551 patent**

14

15 Claim 1 of the '551 patent recites:

16 A system to be utilized with a telephone facility for on-line handling of [1]
   customer data contained in a memory in accordance with a select operating format

17 comprising: . . .

18 a plurality of call distributors for routing calls based upon availability wherein
   said plurality of call distributors are located at different geographic locations, said

19 plurality of call distributors *receiving* called terminal digital data (DNIS) signals

20 automatically provided by said telephone facility to identify said select operating
   format from a plurality of distinct operating formats and *automatically receiving*

21 *caller telephone number data from said telephone facility*;

22                                        * * *

23

24 *computer* means coupled to said interface switching means for connecting an
   incoming call by a caller to said operator terminal based on a condition, said

25 caller telephone number data being stored in said memory such that said computer
   means in accordance with said select operating format is capable of accessing [2]

26 *said customer data on a selected customer which has a telephone number*
   *corresponding to said caller telephone number data automatically provided from*

27 *said telephone facility*, said computer means *visually displaying*   [3] *said*
   *customer data on a selected customer* and said operator terminal capable of

28 providing data entries to said memory. ([#] and emphasis added).

The defendants interpret "visually displaying said customer data" to require displaying data accessed from a memory using ANI (caller number data). (Forys Decl. at ¶ 223.)  Relying on this claim interpretation, the defendants argue that the Format Qualification specification does not describe visually displaying data obtained from a data bank or memory accessed by ANI. (*Id.* at ¶ 232.)   As a result, the defendants conclude that claim 1 of the '551 patent is invalid for lack of a written description.

The plaintiff challenges defendants' claim construction and argue that the requirements of (a) using ANI to access customer data, and (b) visually displaying customer data are not linked. (Brody Decl. at ¶ 184.)  Plaintiff arrives at its claim construction by arguing that "said customer data" (following [3]) merely refers to the "customer data" found in the preamble (following [1]). The preamble does not require that the customer data be obtained using ANI (caller number data).

This Court rejects plaintiff's analysis because the term "said customer data" (following [3]) does not just contain limitations from the preamble.  It must also include the additional limitations placed on it from other parts of the claim.  The disputed phrase is actually "[3] said customer data *on a selected customer*."  This is the same phrase found earlier: "[2] said customer data on a selected customer."  In the earlier reference, "a selected customer" refers to a customer "which has a telephone number corresponding to said caller telephone number data automatically provided from said telephone facility."  Therefore, the customer data on a selected customer must also refer to data for a customer whose telephone number has been automatically provided by the telephone facility.  Based on the foregoing, the Court finds that "visually displaying said customer data" in claim 1 of the '551 patent requires displaying data accessed from a memory using ANI (caller number data).

The defendants filed a declaration from their expert stating that the Format Qualification specification does not describe displaying data accessed using ANI.  (Forys Decl. at ¶ 232.) Although plaintiff challenged defendants' claim construction, it did not attempt to rebut Mr. Fory's characterization of these underlying facts.  Therefore, plaintiff has presented no factual issue for the jury, and this Court finds that claim 1 of the '551 patent is invalid under 35 U.S.C § 112 for lack of a written description.

### 3.  Claim 201 of the '707 patent

Claim 201 of the '707 patent recites "an attended terminal which displays data obtained from a data bank accessed by said calling number identification data."  The parties advanced essentially the same claim interpretation here as they did for claim 1 of the '551 patent.

Again, plaintiff argues that the two requirements found in the language quoted above are not linked.  Specifically, plaintiff states that the language "does not recite or require that the same data that is displayed was accessed by calling number identification data . . ."  (Brody Decl. ¶ 182.)  However, the plain language of claim 201 contradicts plaintiff's position.  The disputed language specifies where the displayed data is "obtained from" and how it is "accessed."   The data is obtained from "a data bank" and the data bank is accessed by using "calling number identification."   Since the claim only refers once to displaying data, these two limitations both relate to the same displayed data.  Based on the forgoing, this Court rejects plaintiff's claim interpretation. The Court finds that the phrase "an attended terminal which displays data obtained from a data bank accessed by said calling number identification data" in claim 201 of the '707 patent requires that the data obtained from a data bank by using calling number identification is displayed.

Again, plaintiff only challenged defendants' claim construction.  It did not attempt to rebut Mr. Fory's characterization of the specific facts underlying this issue (Fory's Decl. at ¶

227.)  Therefore, plaintiff has presented no factual issue for the jury, and this Court finds that claim 201 of the '707 patent is invalid for lack of a written description.

### 4.  Claim 75 of the '360 patent

Claim 75 of the '360 patent recites "receiving caller identification data entered by the callers" and "said computer visually displaying said identification data on a selected caller." Again, defendants argue that the specification does not describe displaying caller entered identification data.  Thus, they conclude that the claim 75 of the '360 patent is invalid for lack of a written description.

Reasoning that "a customer number is necessarily 'identification data'" (Brody Decl. at ¶ 186), plaintiff relies on the same response it provided with respect to the claims that require visually displaying customer numbers.  For the same reasons discussed in that section, this Court grants in part defendants' motion for summary judgment, and finds that claim 75 of the '360 patent is invalid for lack of a written description.

### N.     The Dual Call Mode Patents, Testing ANI for Qualification

Claim 67 of the Dual Call Mode '120 patent requires testing identification signals (e.g., ANI signals) to determine whether callers qualify.  The defendants argue that the Dual Call Mode specification does not describe this limitation and that claim 67 is invalid for lack of a written description.

Defendants' argument is contradicted by their own admission. The defendants admit that the Dual Call Mode specification describes using ANI signals to qualify callers in area code (ACN) call mode. (Defs.' Mem. at 25.)  Nevertheless, defendants argue that this written description is insufficient because the claim is not limited to a particular call mode.  Essentially, defendants are arguing that § 112 requires a written description of every possible permutation

covered by a claim.  But "[a] claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *Falkner v. Inglis,* 448 F.3d 1357 (Fed. Cir. 2006)(citations omitted).

Based on the facts presented by the defendants themselves, the defendants do not appear to have raised a viable claim of invalidity under 35 U.S.C. §112 here.[27]  Accordingly, this Court finds that claim 67 of the '120 patent is not invalid with respect to the issues raised in section II(N) of defendants' memorandum.

**O.    The '965 Patent, Computer Generated Acknowledgement Numbers**

Claims 31, 43 and 53 of the '965 Voice-Data patent recite computer generated acknowledgement numbers.  Although the specification describes acknowledgment numbers, it does not expressly state that a computer generates them.  As a result, the defendants argue that the claims are invalid for lack of a written description.

In response, the plaintiff has submitted an expert declaration explaining how the disclosed system was designed to handle thousands of calls.  Dr. Brody explains that manual generation of the acknowledgment numbers would not be possible.  (Brody Decl. at ¶ 479.)  He specifically concludes that a person of ordinary skill in the art would understand "that these acknowledgement numbers must *necessarily* be generated by the system."  (Brody Decl. at ¶ 479, emphasis added.)  For the purposes of ruling on this summary judgment motion, the Court must view the evidence in the light most favorable to the plaintiff.   This Court finds that a reasonable juror could believe Dr. Brody's declaration on this issue. Accordingly, this Court

---

[27] The parties are submitting voluminous briefing on literally hundreds of issues.  The Court cautions the parties to be more judicious in their selection of arguments or face serious consequences.

denies defendants' request for summary judgment with respect to the issues raised in section

II(O) of defendants' memorandum.


**P.     The Format Qualification Patents, "Approval Signals"**

Various claims from the Format Qualification patents recite "providing approval signals

for qualified individual callers" in the qualifying step and "processing at least certain of said

answer data responsive to said approval signals."  Although the Format Qualification

specification mentions caller approval (e.g., '707 patent at 16:13-17), defendants point out that

the specification does not mention "approval signals."  As a result, the defendants conclude that

the claims at issue are invalid for lack of a written description.

In response, plaintiff's has submitted an expert declaration describing how the Format

Qualification specification explicitly discusses "approvals" and how "approval signals" are

necessary to implement the disclosed system.  (Brody Decl. at ¶¶ 295-02.)  Dr. Brody concludes

that "[a person of ordinary skill in the art] would understand that the specification discloses

approval signals, as these signals are inherent and necessary in the disclosed embodiments."  (*Id.*

at ¶ 295.)  Again, the Court must view the evidence in the light most favorable to the plaintiff.

A reasonable juror could believe Dr. Brody's declaration on this issue.

Accordingly, this Court denies defendants' request for summary judgment with respect to

claims 69, 85, 86 and 92 of '707 patent, claims 1, 2, 5 and 182 of the '863 patent and claims 188-

192 of the '863 patent and any issue raised in section II(P) of defendants' memorandum.


**Q.     The Format Qualification Patents, Central Memory Accessed By A Plurality Of
Interface Switching Structures**

Claims 21, 33 and 34 of the '551 Format Qualification patent require a "central memory"

accessed by a "plurality of interface switching structures located at different geographic

locations."  The defendants argue that the Format Qualification specification does not describe interface switching structures located in different geographic locations.  As a result, defendants conclude that claims 21, 33 and 34 are invalid for lack of written description.

In response, the plaintiff points to Figure 9 of the '551 patent and argues that interface structures disclosed there are located in different locations.



FIG. 9

The Format Qualification specification refers to Figure 9 as "a block diagram . . . showing a distributed-component arrangement of geographically spaced call distributors" '551 patent 2:54-56.  Plaintiff's expert explains that Figure 9 uses the same components used in earlier embodiments. (Brody Decl. at ¶ 306.)  His conclusion is supported by the specification:  "The systems as described above embody the components bulked together in one location. However, components of the system could be spaced apart geographically, using dedicated lines or polling techniques. An illustrative embodiment is shown in FIG. 9." '551 patent at 21:12-15.

The defendants argue that Figure 9 does not satisfy the written description requirement for the claims at issue because there is no description of a central memory in connection with Figure 9.  (Defs.' Mem. at 28.)  Plaintiff challenges that position by arguing that a person of

ordinary skill in the art would understand central processing unit 251 of Figure 9 to include memory. (Brody Decl. at ¶¶ 309-12.)  Dr. Brody's declaration explains at length the purpose of central processing unit 251 and why it must have memory. Again, the Court must view the evidence in the light most favorable to the plaintiff.  Since a reasonable juror may find Dr. Brody's declaration credible, this Court denies defendants' request for summary judgment with respect to claims 21, 33 and 34 of the '551 patent related to any issue raised in section II(Q) of defendants' memorandum.


**R.      The Dual Call Mode Patents, Cueing Callers By Synthesized Voice Signals**

Claim 5 of the '223 patent recites:

A telephone call processing system  . . .*wherein callers are cued by synthesized voice signals* supplied to said multitude of terminals and respond with digital signals . . .

means for selectively receiving calls from said multitude of terminals to establish telephone communication with *a select subset of callers* . . .

means for providing identification signals entered by *said callers* of said select subset;

means for *individually cueing said callers of said select subset* to prompt digital signals . . ..(emphasis added).


Although the Dual Call Mode specification describes audio response units, the defendants argue that this claim is invalid for lack of a written description because the specification does not describe the audio response units as using "synthesized" voice signals as opposed to prerecorded voices.

Plaintiff has two responses. First, the plaintiff argues that claim 5 does not require "synthesized" voice signals because the relevant language is found in the preamble and the

preamble is not limiting in this case.  Second, the plaintiff argues that even if the claim required "synthesized" voice signals, there is support in the specification.

This Court must first construe the claim and determine whether the preamble is a limitation.  In general, a preamble is considered a limitation if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. *Symantec Corp. v. Computer Assocs. Intern., Inc.,* 522 F.3 1279, 1288 (Fed. Cir. 2008) (citations omitted).  Although there is no litmus test for determining whether the preamble is limiting, "guideposts" have emerged in the case law.  *Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2003).  One such guide post is relevant to the analysis here -- "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.,* 323 F.3d 1332, 1339 (Fed. Cir. 2003); *see also Catalina Mktg.,* 289 F.3d at 808.

In the body of the claim, the third limitation recites "individually cueing said callers of said select subset" to prompt them to provide digital signals.  The defendants argue that "said callers" in this limitation relies upon and derives antecedent basis from "callers" found in the preamble.  In other words, defendants argue that the callers in this limitation "are cued by *synthesized* voice signals."  The plaintiff emphasizes the "select subset" language and argues that the limitation is only referring to the first limitation which first introduces "a select subset of callers."  As a result, the plaintiff concludes that the preamble is not limiting and that synthesized voice signals are not required.

In patents, the use of "said" in a claim refers back to earlier instances of the same phrase or term.  Here, "said" is actually used twice in the disputed phrase, "individually cueing *said* callers of *said* select subset."  Thus, the disputed phrase is referring back to both the preamble

("said callers") and the selecting means limitation ("said select subset").  Since the disputed phrase does rely on the preamble, one guidepost suggests that the preamble is limiting.

Moreover, the preamble in claim 5 is not simply stating a purpose or intended use of the invention.  It actually recites important additional limitations regarding the cuing method (by synthesized voice signals).  *See Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1361-62 (Fed. Cir. 1999) (limiting claim scope to a "raster scanned display device" rather than all display systems in view of specification's focus on the prior art problem of displaying binary data on a raster scan display device).  Together these factors show that the preamble does give life and meaning to the claim.  As a result, this Court find that the preamble in claim 5 of the '223 patent is limiting and the claim requires "synthesized voice signals."

Next, this Court must still determine if there is written support in the specification for "synthesized voice signals."  The plaintiff argues that two passages in the specification provide such support.

First, plaintiff points out that the specification describes the audio response units as "incorporate[ing] a *voice generator* along with some basic programmable logic capability." '120 patent at 5:6-11 (emphasis added).  Plaintiff's expert appears to assert a person of ordinary skill in the art would understand that such a voice generator would have the capability of synthesized speech. [28] (Brody Decl. at ¶ 140.) However, even if Dr. Brody's statements are true, they do not show that the written description requirement has been satisfied.  "It is 'not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure . . . .  Rather, it is a question whether the application necessarily discloses that particular device.' " *Hyatt v. Boone,* 146 F.3d 1348, 1353 (Fed. Cir. 1998) (quoting *Jepson v. Coleman,* 314 F.2d 533, 536 (CCPA 1963).

---

[28] The declaration states that the audio response units "necessarily disclosed to the POSITA the capability of synthesized speech."

Second, the plaintiff also points out that the specification describes a voice generator that generates a "simulated voice question." '120 patent at 5:38-5:45. Plaintiff's expert states that a person of ordinary skill in the art "would understand that a 'voice generator' that posed a 'simulated' voice question necessarily disclosed synthesized voice signals, rather than actual recorded human voice." (Brody Decl. at ¶ 141.)  Again, the Court must view the evidence in the light most favorable to the plaintiff.   A reasonable juror could believe Dr. Brody's declaration on this issue.

Accordingly, this Court denies defendants' request for summary judgment with respect to claim 5 of the '223 patent and any issue raised in section II(R) of defendants' memorandum.

**S.      The Format Qualification Patents, Including Key Numbers "In Packaging of Products"**

Claim 182 of the '863 Format Qualification patent recites key numbers that "are included in packaging of products."  Although the Format Qualification specification describes a key number being carried on the product ('863 patent at 17:19-23), there is no description of key numbers being included in the packaging of products, much less any discussion of packaging at all.  As a result, defendants argue that claim 182 of the '863 patent is invalid for lack of written description.

In response, plaintiff only points to a single passage in the specification that states "a person desiring to participate may purchase a product which carries a concealed number." '863 patent at 17:20-22.  The plaintiff argues that this passage proves that the packaging limitation was contemplated by the original specification because the term "products" refers to "any suitable" product including both packaged and non-packaged products.  (Brody Decl. at ¶ 325.)  However, to satisfy the written description requirement the disclosure of the prior application must convey with reasonable clarity to those skilled in the art that the inventor was in possession

of the invention at the time the patent was filed.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008).  "It is 'not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure . . ..  Rather, it is a question whether the application necessarily discloses that particular device.' " *Hyatt v. Boone,* 146 F.3d 1348, 1353 (Fed. Cir. 1998) (quoting *Jepson v. Coleman,* 314 F.2d 533, 536 (CCPA 1963).  Here, plaintiff has only shown that a person of ordinary skill in the art could reasonably understand that a passage discussing products is referring to both packaged and non-packaged products.  However, by acknowledging the existence of non-packaged products, plaintiff's expert demonstrates that the passage does not necessarily describe packaged products.  Thus, even accepting plaintiff's characterization of the facts, the '863 patent does not provide an adequate written description to support the packaging limitation found in claim 182.

Accordingly, this Court grants in part defendants' summary judgment and finds that claim 182 of the '863 patent is invalid for lack of written description.

**T.     The Format Qualification Patents, Using Identification Data To Avoid Prompting Certain Callers With Previous Cues**

In relevant part, claim 5 of the '134 Format Qualification patent requires:

> *[R]eceiving* at least certain identification data relating to said individual callers and testing the at least certain identification data to control access to at least certain operations of said selected format and utilizing the certain identification data to avoid prompting certain callers with a certain previously provided cue or cues and providing at least one other cue . . .

The parties do not appear to disagree about the meaning of this limitation.  It requires using identification data to both 1) control access to certain operations, and 2) to suppress cues that the callers previously received.  However, the defendants argue that the Format Qualification specification does not describe the second function, cue suppression.  Therefore, they conclude that claim 5 of the '134 patent is invalid for lack of a written description.

In response, the plaintiff argues that the descriptions of preregistration in the auction embodiment and prequalification in the game embodiment describe cue suppression.  In both these embodiments, the specification shows that callers can use the system to enter data prior to qualification:

> [P]ersons wishing to participate in the auction sale would make preliminary arrangements involving utilization of the system to establish authorization data for qualified bidders in cells C1-Cn of the memory 98 (FIG. 4).

'134 patent at 14:29-33 (describing auction embodiment).

> [I]t may be desirable to preliminary qualify and designate callers as explained above.  Specifically, prior to participating in an actual game show, interested participants interface the system as depicted in FIG. 1, and in the course of an exchange as described above, the qualification unit 93 and the designation unit 96 cooperate with the processing unit 92 to accomplish preliminary data on potential participants in cells of the memory 96."

'134 patent at 16:19-26 (describing game embodiment).

Plaintiff's expert states that a person of ordinary skill in the art would understand that cues are provided to the callers to obtain this information.  (Brody Decl. at ¶¶ 340-41.)  He also indicates that a person of ordinary skill in the art would also understand that these same cues are not provided in a subsequent call to actually participate in the auction or game. (Brody Decl. at ¶ 342.)  In sum, Dr. Brody states that a person of ordinary skill in the art would understand the specification to necessarily teach: 1) supplying cues for preregistration/prequalification in a first call, and 2) qualifying callers and suppressing cues in a second later call.

Defendants have two primary responses.  First, they argue that if the quoted passages describe suppressing cues, there would be no support for qualifying callers. (Forys Decl. at ¶ 285.)  This argument makes little sense in view of the sequence of events described above.

Second, the defendants argue that there is no suggestion that preregistration/prequalification involves cues or that the same cues would be avoided later.  They suggest that the preregistration/prequalification information could be obtained by an operator for

-41-

later input into the system (i.e., not requiring cues). (Forys Decl. at ¶ 285.)  However, the specification does discuss how the qualification unit is used in preregistration/prequalification and how the data is stored in the system. '707 patent at 16:13-16:28, 15:66-16:5.

Finally, although the defendants correctly point out that the specification does not expressly discuss using cues during preregistration/prequalification and suppressing the same cues in later calls, the specification does describe how callers save time in later calls by taking advantage of these options.  Based on this information, Dr. Brody's declaration states that providing cues and suppressing cues are a necessary part of the system.  (Brody Decl. at ¶¶ 340-41, 344-47.) This Court must draw all reasonable inferences in favor of the plaintiff.  Since a reasonable juror might believe providing/suppressing cues are necessary for the described automated preregistration/prequalification system, this Court cannot find that there is no written description.

Accordingly, this Court denies defendants' request for summary judgment with respect to claim 5 of the '134 patent and any issue raised in section II(T) of defendants' memorandum.

## V.    JUDICIAL STANDARD - INVALIDITY, INDEFINTENESS

### A.  35 U.S.C. § 112 ¶2, Generally

An indefiniteness defense is based on 35 U.S.C. § 112 ¶ 2 which states:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

The statute is satisfied if a person skilled in the art would reasonably understand the claim when read in the context of the specification. *Marley Mouldings Ltd. v. Mikron Industries, Inc.*, 417 F.3d 1356, 1359 (Fed. Cir. 2005).  A claim is presumed valid.  Therefore, it is only indefinite if it is "insolubly ambiguous, and no narrowing construction can be adopted."

1   *Microprocessor Enhancement Corp. v. Tex. Instruments, Inc.*, 520 F.3d 1367, 1374 (Fed. Cir.

2   2008)(citations omitted).  The issue of indefiniteness is a matter law for the court to decide.

3   *Personalized Media Commc'ns, LLC v. Int'l Trade  Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998).

4

5   **B.   35 U.S.C. § 112 ¶6**

6

7         Defendants' motion explains several different ways in which various claims are

8   supposedly indefinite.  Several of those subsections argue that specific means plus function

9   limitations are indefinite.  35 U.S.C. § 112 ¶ 6 allows a limitation to be expressed in means plus

10  function language.  A means plus function limitation is interpreted to encompass: 1) the recited

11  function, and 2) the structures disclosed in the specification that correspond to that function and

12  their equivalents.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1332 (Fed.

13  Cir. 2006).  This Court must hold the patent holder to a higher standard when evaluating means

14  plus function limitations. If the specification fails to clearly link any structure to the function

15  recited in the means plus function limitation, the claim is invalid as indefinite.  *Atmel Corp. v.*

16  *Info. Storage Devices, Inc.,* 198 F.3d 1374, 1380 (Fed. Cir. 1999).

17

18        Some of the means plus function limitations at issue disclose a computer or

19  microprocessor programmed to carry out an algorithm as the corresponding structure.  In these

20  cases, "the disclosed structure is not the general purpose computer, but rather the special purpose

21  computer programmed to perform the disclosed algorithm." *WMS Gaming Inc. v. Int'l Game*

22  *Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999).  Only disclosing a general purpose computer as the

23  structure for performing a claimed function amounts to pure functional claiming and does not

24  satisfy 35 U.S.C. § 112 ¶ 6, thereby rendering the claim indefinite under 35 U.S.C. § 112 ¶ 2.

25  *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521F.3d 1328, 1333 (Fed. Cir. 2008).

26

27

28

Thus, the proper inquiry for a § 112 ¶ 6 limitation that discloses a general purpose computer is to "look at the disclosure of the patent and determine if one of skill in the art would have understood that *disclosure* to encompass software [to perform the function] and been able to implement such a program, not simply whether one of skill in the art would have been able to write such a software program." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003). It is "not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent." *Id.*

## VI.   INDEFINTENESS DEFENSES

### A.   Voice Signals to Actuate the Callers' Terminal Apparatus

Defendants argue that numerous Format Qualification patent claims that recite voice signals or a voice generator structure actuating the caller's telephone terminals are indefinite. Specifically, defendants contend that the voice signals do not themselves actuate the caller's telephone, the caller does.

Although they do not provide an explicit definition, the defendants' argument relies on a particular meaning of the term actuate – to start.  Thus, the defendants argue that only a caller can actuate (or start) a telephone.  The defendants' interpretation would be entirely reasonable if the specification were not examined.  However, this Court must consult the specification when interpreting claim language.  Here, the specification uses "actuate" in a more general sense.  For example, the following passages use "actuate" to indicate that the interface is causing the terminal to perform some action, playing a particular announcement:

> After the preliminary information is supplied to a caller, the qualification phase is initiated. For example, the interface 20 might *actuate* the terminal T1 to announce: "Please indicate the type of credit card you will use for your purchase . . ."

'707 patent at 10:57-10:61 (emphasis added).  Thus, the claims that require voice signals or a voice generator structure "actuating" the caller's telephone terminals are not insolubly ambiguous.  These claims simply require that voice signals or a voice generator structure cause the telephone terminal to perform some action (e.g., generating sounds based on the voice signals).

Accordingly, this Court finds that claim 7 of the '968 patent, claims 24, 69, 85, 86, 92, 115, 116, 129, 130, and 201 of the '707 patent, claims 96, 98, 99, 182, and 188-192 of the '863 patent, and claims 46 and 51 of the '309 patent are not invalid by reason of any issue raised in section III(A) of defendants' memorandum.

**B.      Generating Computer Acknowledgement Numbers To Identify The Transaction For "The System"**

The defendants point out the term "the system" in claim 31 of the '965 Voice Data patent lacks antecedent basis rendering the claim indefinite.   Claim 31 recites a method for controlling voice or data or both communications.  The last step in the claim recites:

> [G]enerating computer acknowledgement numbers to identify the transaction for *the system* and individual callers and providing said computer acknowledgement numbers to the individual callers. (emphasis added).

The plaintiff concedes that "the system" lacks antecedent basis, but argues that it is clear that "the system" refers to the system performing the claimed method.  (Brody at ¶¶ 587-99.) Simply because a term in a claim lacks antecedent basis does not mean that the claim is indefinite. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) ("despite the absence of explicit antecedent basis, if the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite.").

Here, the specification teaches how the system would generate and provide acknowledgment numbers. '965 patent at 12:49-12:53.  Therefore, a person of reasonable skill

1   in the art would understand that "the system" in claim 3 to refer to the system performing the

2   claimed method.

3      Accordingly, this Court finds that claim 31 of the '965 patent is not invalid by reason of

4

5   any issue raised in section III(B) of defendants' memorandum.

6

7   **C.    Claims Reciting That Remote Terminals "May Comprise" A Conventional Telephone Instrument**

8

9      The defendants argue that various claims from the '968, '309, '863 and '285 patents are

10  indefinite because they state that remote terminals "*may comprise* a conventional telephone

11  instrument." The defendants argue that the phrase does not define whether the remote terminals

12  are or are not a conventional telephone instrument.  Moreover, the defendants point out that the

13  United States Patent and Trademark Office repeatedly rejected other claims containing the same

14  phrase as indefinite in several different office actions.  (Miller Ex. 55, 59 and 77.)

15     When interpreting the same language in dispute here, another district court found that

16  "[t]he use of the words 'may comprise' indicates that remote terminals includes [sic], but is [sic]

17

18  not limited to, traditional telephones." *Katz v. AT&T Corp.,* 63 F. Supp. 2d 583, 614 (E.D. Pa.

19  1999).  This interpretation is consistent with the ordinary meaning of the words in the claims. As

20  a result, this Court agrees with the AT&T court's interpretation.  Since both courts can construe

21  the disputed language, the claims are not indefinite.

22     Accordingly, this Court finds that claim 7 of the '968 patent, claims 42, 44, 46, and 51 of

23  the '309 patent, claims 24, 115, 116, 129, 130, and 201 of the '707 patent, claims 27, 31, 32, 42,

24  43, 49, 96, 98, and 99 of the '863 patent and claims 1, 49, and 61 '285 patent are not invalid by

25  reason of any issue raised in section III(C) of defendants' memorandum.

26

27

28

**D.** **"Certain Individual Callers," "Said Individual Callers," And "At Least Certain Of Said Individual Callers"**

Claim 34 of the '965 Voice Data patent includes the phrases: (1) "remote terminals for use by certain individual callers" in the preamble and "said certain individual callers" in the interfacing step, (2) "said individual callers" in the receiving, comparing, and providing steps, and (3) "at least certain of said individual callers" in the transferring step.   The defendants argue that the use of these different phrases suggests that different groups of callers were meant to be encompassed by each term.   However, the defendants say that they cannot determine what group of callers each of these terms is intended to cover.   Therefore, they conclude that dependent claims 34, 43 and 53 are all invalid as indefinite.[29]

Claim 34 recites:

A method for controlling voice-data communications with a system operating a format for use with a communication facility including remote terminals for use by *certain individual callers*, wherein said remote terminals include a digital input device for providing digital responsive signals, said method comprising the steps of:

interfacing *said certain individual callers* with an interface unit of said system operating the format;

prompting *said individual callers* via a voice generator to provide responsive signals representative of identification data via said digital input device of said remote terminals;

receiving from *said individual callers* responsive signals representative of caller identification data;

comparing said caller identification data received against a file on *said individual callers* to determine if said caller identification data received is already of record;

utilizing said caller identification data received to access the file to locate other data associated with said caller identification data;

transferring *at least certain of said individual callers* to an attended terminal;

---

[29] The defendants do not seek a ruling on claim 34.   Presumably that claim is not at issue.

displaying at said attended terminal at least a portion of the other data associated with the caller identification data; and

providing computer generated acknowledgement numbers to said individual callers to identify transactions to *the individual callers* and the system. (emphasis added).

The issue of indefiniteness arises because the claim uses both "said certain individual callers" and "said individual callers."  The former phrase is clearly a reference to "certain individual callers" introduced in the preamble.  The defendants point out that "said individual callers" omits "certain."  Because of the different wording, the defendants conclude that the phrase must be referring to a different group of callers. As plaintiff points out, there is no separate antecedent basis for "said individual callers." Therefore, that term must reference the "same certain individual callers" introduced in the preamble.  (Brody Decl. at ¶ 619.)  Although the claim could have been worded more precisely, this Court agrees with the plaintiff's interpretation.

Accordingly, this Court finds that claims 34, 43 and 53 of the '965 patent are not invalid by reason of any issue raised in section III(D) of defendants' memorandum.

**E.     Receiving Signals Indicating A Customer Identification Number "Or" Receiving Responsive Signals Indicative Of Other Data.**

Defendants argue that claims 61 and 66 of the '965 Voice Data patent are invalid. However, their arguments rely on the improper use of the word "or" in the claims.  The plaintiff points out that it had previously filed a certificate of correction replacing the word "or" with "and." (Mead Decl., Ex. F.)  In response, defendants withdrew this portion of their motion.

**F.** **"Means To Receive/Means for Receiving" Limitations**

Several claims from both the '863 and '065 Format Qualification patents contain some form of "receiving means" limitation that is governed by § 112 ¶ 6. The defendants argue that these claims are indefinite because the specification fails to disclose a structure that corresponds to the recited function of this means plus function limitation.

**1. '863 Format Qualification Patent Claims**

Claim 27 of the '863 Format Qualification patent recites in relevant part:

> [M]eans to receive called number identification signals (DNIS) automatically provided by said communication facility to identify a select one of a plurality of different called numbers associated with a select format of a plurality of different formats . . ..

Although both parties agree that the "means to receive . . ." is a means plus function limitation governed by § 112 ¶ 6, they appear to disagree about its recited function. Defendants argue that the recited function is both 1) receiving DNIS signals and 2) selecting a format based on those signals. Relying on that claim interpretation, defendants argue that the specification does not disclose a structure that uses DNIS signals to select a format, thereby rendering the claim indefinite.

In response, plaintiff first challenges defendants' claim construction. The plaintiff argues that the recited function is simply receiving DNIS signals. However, the plaintiff argues that the remaining portion of the phrase merely indicates that the DNIS signals are associated with a select format. (Brody Decl. at ¶¶ 630-31.) Under that interpretation, the function does not include selecting a format based on the DNIS signals and the specification would not need to disclose a corresponding structure that performs the selecting. This Court agrees with plaintiff's claim construction. The claim language does not recite using DNIS signals to identify a select format. It merely states that DNIS signals are associated with a select format. Thus, § 112 ¶ 6

does not require that the specification describes a structure that performs using DNIS signals to identify a select format.

Accordingly, this Court finds that claim 27 of the '863 patent and its dependent claims 31, 32, 42, 43 and 49 are not invalid by reason of any issue raised in section III(F) of defendants' memorandum.

## 2.   '065 Format Qualification Patent Claim 13

Claim 13 of the '065 Format Qualification patent recites in relevant part:

[M]eans for receiving called terminal digital data (DNIS) signals automatically provided by the telephone facility to identify the select operating format from a plurality of distinct operating formats . . ..

Again, the parties agree that "means for receiving" in claim 13 of the '065 patent is a means plus function limitation governed by § 112 ¶ 6.  Unlike claim 27 of the '863 patent, claim 13's "mean for receiving" does recite receiving DNIS signals "to identify the select operating format."  Thus, this Court must determine whether the Format Qualification specification describes a structure that corresponds to this function.

In *Verizon*, this Court's claim construction order interpreted essentially the same "means for receiving" limitation from claim 1 of the '065 patent.[30]  This Court noted that the specification describes the interface 20 and the call data analyzer 20a as including DNIS and ANI capabilities.[31]  However, we also stated that it was "unclear . . . which component selects formats based on called-number identification signals."[32]  As a result, this Court only identified interface 20 and data analyzer 20a as the structures that correspond to the "means for receiving" limitation.

---

[30] 326 F. Supp. 2d at 1100.

[31] *Id.* (citing to '065 patent at 4:50-56).

[32] *Id.*

Although *Verizon* did not address indefiniteness, the defendants rely on that decision to argue that the specification fails to clearly link any structure to the function of identifying formats based on DNIS signals.  As a result, the defendants conclude that claim 13 is indefinite. In response, the plaintiff argues that the specification clearly links three alternative structures to the recited function: (1) interface 20 and call data analyzer 20a; (2) Centrum 9000; or (3) one or more interface units IA1-Ian, IB1-IBn.  (Brody Decl. at ¶ 633.)

Although the specification never describes any structures that use DNIS signals to select a format, the plaintiff identifies several structures by repeatedly having its expert, Dr. Brody, explain what a person of ordinary skill in the art would understand different passages in the specification to describe.

Dr. Brody makes several intermediate conclusions before he can arrive at his final conclusion.  Specifically, Dr. Brody states that a person of ordinary skill in the art would understand that the interface 20 and call data analyzer 20a: control the connection of the call to a specific processor (Brody at ¶ 644); and each processor is programmed with a specific format (Brody at ¶¶ 645-49).  To be clear, these intermediate conclusions are not expressly found in the specification.  Building on these intermediate conclusions and the fact that the specification does indicate that interface 20 and call data analyzer 20a receive DNIS signals, Dr. Brody explains that a person of ordinary skill in the art would understand that the interface 20 and call data analyzer 20a receive DNIS signals to select a format based on those signals.

To satisfy § 112 ¶ 6, the patentee must clearly link a structure in the specification to the recited function.  *Atmel,* 198 F.3d at 1380.  In order to arrive at his final conclusion, Dr. Brody had to repeatedly draw conclusions that were not expressly found in the specification and layer them on top of each other.  At best, Dr. Brody's analysis reflects what a person of ordinary skill in the art would understand interface 20 and call data analyzer 20a could do.  Defendants' expert

was able to provide different interpretations of the same passages that were unrelated to selecting formats.  (Fory's 2nd Decl. at ¶¶ 70-75.)  These interpretations were equally plausible.  Since there were different reasonable interpretations of the same passages, this Court cannot find that specification clearly links the structures to the recited function.  Moreover, even if Dr. Brody was correct and defendants' expert was wrong, the number of intermediate conclusions that Dr. Brody had to draw weighs against finding clear linkage.  As a result, this Court finds that the specification does not clearly link the interface 20 and call data analyzer 20a to the recited function of receiving DNIS signals to identify the select operating format.

The plaintiff only identified the Centrum 9000 because the specification describes it as an "exemplary form" of the interface 20.  For the same reasons discussed above with respect to interface 20, the Court finds that the specification does not clearly link the Centrum 9000 to the recited function of receiving DNIS signals to identify the select operating format.

Plaintiff also identified the interface units IA1-Ian, IB1-IBn as an alternative structure corresponding to the "means for receiving" limitation.  The specification teaches an alternative "distributed component" embodiment in Figure 9.  Dr. Brody states that the interface units IA1-Ian, IB1-IBn replace the interface unit 20 in this embodiment and his reasoning relies on his earlier conclusions with respect to the interface unit 20.  Thus, for the same reasons discussed above, this Court find that the specification does not clearly link interface units IA1-Ian, IB1-IBn to the recited function of receiving DNIS signals to identify the select operating format.

Since the Format Qualification specification does not clearly link any of the identified structures to the recited function of receiving DNIS signals to identify the select operating format, claim 13 fails to meet the requirements of § 112 ¶ 6.  Based on the foregoing, this Court grants, in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 13 of the '065 patent is invalid as indefinite.

**G.**     **"Said Additional Call Data Signals …"**

Claim 23 of the '285 patent is dependent on claim 22, which recites "providing said additional call data signals automatically from said telephone communication system (e.g. ANI)."  The "said additional call signal data signals" refers back to a limitation in claim 22 that states that the additional call signal data signals are provided by the remote terminals.  The defendants point out that ANI call signals are only provided by the communication facility, not by the remote terminal.  Based on this inconsistency, defendants argue that claim 23 of the '285 patent is invalid as indefinite.

In response, plaintiff points out that the specification teaches that ANI is provided by the communication facility "upon occurrence of the call" from a remote terminal.  '285 patent at 4:52-4:63; 12:37-12:42.  Thus, the plaintiffs argue that provided "from" the remote terminals means only that the remote terminal is a "cause, agent or instrument" of the ANI signal.

Although the choice of language is poor, this Court cannot find that this claim is insolubly ambiguous.  The plaintiff has offered a reasonable interpretation of the claim language that is consistent with the specification.  Accordingly, this Court finds that claim 23 of the '285 patent is not invalid by reason of any issue raised in section III(G) of defendants' memorandum.

**H.**     **System Claims Reciting a Method Step**

Relying on *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005), defendants argue that various claims from the '893 and '707 patents improperly include a step in a system claim.  In *IPXL Holdings*, the claim at issue recited:

> The system *of claim 2* [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input*

*means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

Reasoning that it was "unclear whether infringement…occurs when one creates a system that allows the user to [use the system], or whether infringement occurs when the user actually uses" the system, the court concluded that the claim was invalid as indefinite. The defendants argue that claims 1, 2, 4 and 83 of the '893 patent and claim 116 of the '707 patent are indefinite for the same reason.

In response, the plaintiff argues that the claims at issue merely recite structures with functional capabilities. We turn to each claim to evaluate the merits of plaintiff's response.

**1. '893 Patent Claims**

Claim 1 of the '893 patent states in relevant part:

An interface control system . . . comprising: . . .

interface *means* for providing automated voice messages relating to said specific format to certain of said individual callers, *wherein said certain of said individual callers digitally enter data*, including at least caller information data, through said digital input means. (emphasis added).

With respect to claim 1 and its dependent claims 2 and 4, plaintiff argues that rather than "claiming a *use* of the control system, these claims recite structure ('interface means') including the *capability* of accepting caller-entered digital data." (Pl.'s Opp'n at 32.) That well could be what the patentee intended to claim, but the claim language does not describe entering data as a capability of the interface means. It merely states that callers enter data. This Court can see no meaningful distinction between adding "the user uses the input means" language in the system claim of *IPXL Holdings* and adding the "wherein said certain of said individual callers digitally enter data" language into an element of the system of claim 1 of the '893 patent. Therefore, this Court finds that claims 1, 2 and 4 of the '893 are invalid as indefinite. The Court also finds that

1   claim 83 of the '893 patent is likewise invalid because it contains substantially the same

2   language.

3          **2.  Claim 116 of the '707 Patent**

4          Claim 116 states, "A system according to claim 115, wherein said individual callers

5   provide caller credit card number data as said other data."  Claim 116 eventually depends upon

6   independent claim 96.  Claim 96 recites a system that includes "an interface structure."  Plaintiff

7   argues that claim 116 merely limits the interface structure so that it must be capable of receiving

8   caller-entered credit card data.  That may well have been what the patentee intended to claim, but

9   that is not what the claim recites.  The claim language does not even refer to the interface

10  structure.  Instead, the claims state that "individual callers provide credit number data."  In view

11  of *IPXL Holdings*, this Court finds that claim 116 of the '707 patent is also invalid as indefinite.

12

13

14  **I.      "Processing/Computer Means" and "Means for Processing"**

15         Several claims from the Format Qualification '065 and '551 patents contain "processing

16  means" limitations.  Although these limitations recite various different functions, the parties

17  agree that all the limitations are governed by § 112 ¶ 6.  Defendants argue that for each recited

18  function, the specification only discloses processors as the corresponding structures.  As a result,

19  the defendants argue that these limitations are governed by *WMS Gaming, Inc. v. Int'l Game

20  Tech.*, 184 F.3d 1339 (Fed. Cir. 1999).  In *WMS Gaming,* the Federal Circuit held that:

21

22         In a means-plus-function claim in which the disclosed structure is a computer, or
23         microprocessor, programmed to carry out an algorithm, the disclosed structure is
           not the general purpose computer, but rather the special purpose computer
24         programmed to perform the disclosed algorithm.

25  *Id.* at 1349.

26         More recently, the Federal Circuit found that if the specification does not disclose an

27  algorithm for a computer implemented invention, it does not satisfy § 112 ¶ 6, and the claim is

28

-55-

indefinite.  *Aristocrat Techs.,* 521 F.3d at 1338.  The defendants state that the Format Qualification specification does not disclose algorithms for the claimed "processing means" limitations in dispute.  Thus, relying on *Aristocrat Techs.,* defendants conclude that the claims do not satisfy § 112 ¶ 6 and are invalid as indefinite.

In response, plaintiff argues that § 112 ¶ 6 means plus function limitations only include an algorithm if the corresponding structure at issue is *only* a processor.  As a result, the plaintiff concludes that the limitations at issue do not fall "under *WMS Gaming* and no 'algorithms' are required."  (Pl.'s Opp. at 34.)  Defendants disagree and argue that an algorithm must be disclosed regardless of whether the specification discloses additional structures that correspond to the recited function (besides simply a processor).  The various cases cited by the parties do not reach this specific issue and this appears to be a case of first impression.

To determine whether we should extend the rule in *WMS Gaming* to means plus function limitations with corresponding structures that are not just processors or computers, it is helpful to examine the purpose of the rule.  In explaining why algorithms must be disclosed, the Federal Circuit stated:

> The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming. . . . "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid the price but is attempting to claim in functional terms unbounded by any reference to structure in the specification."

*Aristocrat Techs.,* 521 F.3d at 1333 (quoting *Med. Instrumentation & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1211 (Fed. Cir. 2003)).

Thus, any rule crafted here should be directed at preventing inventors from obtaining "purely functional" means plus function limitations.  In this case, the means plus function limitations at issue often recite several different functions.  Thus, this Court must fashion a rule that applies to these multifunction limitations.  This Court finds that when structures besides a

processor play a substantial role in performing some or all the recited functions, the rule from *WMS Gaming* does not apply to the entire limitation.  In particular, the specification does not need to disclose an algorithm for those specific functions for which other structures besides a processor can be identified.  However, *WMS Gaming* does apply to any recited function that is only performed or predominantly performed by a general purpose computer.  In those cases, the specification must disclose an algorithm for the recited function.  This rule prevents "purely functional" claiming without extending *WMS Gaming* to those means plus function limitations that have substantial corresponding structures in addition to processors.

### 1.  Claim 13 of the '065 Patent and Claims 21, 33 and 34 of the '551 Patent.

Claim 13 of the '065 patent and Claims 33 and 34 of the '551 patent recite a "processing means that perform fours functions: (1) receiving customer number data entered by a caller; (2) storing the customer number data in a memory or central memory; (3) coupling an incoming call to the operator terminal; and (4) visually displaying the customer number data."  The defendants argue that the specifications only disclose processors PR1-PRn.  In response, the plaintiff points out that the specification discloses display terminals and connecting lines that perform the fourth recited function "visually displaying the customer data." (Brody Decl. at ¶¶ 702-11.)  This Court agrees with plaintiff's characterization.  Structures involving more than simply a general purpose computer play a substantial role in performing the fourth recited function.  However, the display terminal plays no role in performing the first three recited functions.   Plaintiff does not argue that other structures, in addition to a processor, perform those functions.

Based on the rule announced above, the specification must disclose algorithms that perform these three functions.  Although plaintiff's expert attempts to generally identify a number of processor algorithms, he fails to identify algorithms that are clearly linked to the recited functions.  In fact, most of the "algorithms" he does identify are not algorithms at all but

simply a statement indicating that a function is performed. Accordingly, this Court grants, in part, defendants' motion for summary judgment. Specifically, this Court finds that claim 13 of the '065 patent and claims 21, 33 and 34 of the '551 patent are invalid as indefinite.

### 2. Claim 1 of the '551 Patent

Claim 1 of the '551 patent recites a "computer means" that performs three functions: (1) connecting an incoming call to the operator terminal; (2) accessing customer data corresponding to caller telephone number data stored in memory; and (3) visually displaying customer data. Again, the plaintiff merely points out that the specification discloses that both a display terminal and connecting lines perform the third recited function, "visually displaying customer data." (Brody Decl. at ¶¶ 702-11.) However, there is no discussion of any structures in addition to processors that perform the first two recited functions. Although Dr. Brody attempts to identify numerous processor algorithms, he does not identify algorithms that are clearly linked to the recited functions. Thus, this Court grants, in part, defendants' motion for summary judgment. Specifically, this Court finds that claim 1 of the '551 patent is invalid as indefinite.

### 3. Claims 115, 116, 129 and 130 of the '707 Patent

Claims 115, 116, 129 and 130 of the '707 patent recite "means for processing at least certain of said data developed by said terminals and said calling number identification data . . .." Both parties agree that this limitation is governed by § 112 ¶ 6.

The defendants argue that the only structure disclosed by the specification to perform the recited function is unit 92, a mini computer, as shown in Figure 4. In response, the plaintiff argues that the following passage demonstrates that there are also two alternative structures, interface 20 and Centrum 9000 that perform the recited functions:

> Considering the processing system P1, fifty lines from the automatic call distributor AC1 are connected to the interface 20, an exemplary form of which may be a commercially available Centrum 9000 unit. The interface 20 incorporates modems, tone decoders, switching mechanisms, DNIS and ANI

-58-

capability (call data analyzer 20a) along with voice interface capability. Note that the *interface may actually perform analysis on data*.

'707 patent at 4:52-61 (emphasis added).

The plaintiff's expert states that these structures are not general purpose computers, but specialized units with specific sub-components and capabilities described.[33]  (Brody Decl. at ¶¶ 724-27.)  The defendants' reply brief only repeats their argument that a "means for processing" must include an algorithm.  However, the reply brief does not challenge plaintiff's argument that interface 20 and Centrum 9000, perform the recited functions nor do the defendants suggest that these components are general purpose computers.  Based on this record, this Court denies defendants' motion for summary judgment with respect to claims 115, 116, 129 and 130 of the '707 patent on issues raised in section III(I) of defendants' memorandum.

### 4.  Claims 96, 98 and 99 from the '863 Patent

Claims 96, 98 and 99 from the '863 patent recite a "means for processing at least certain of said answer data signals . . . ."  Again, the defendants argue that the only structure disclosed by the specification to perform the recited function is unit 92, a mini computer and that the specification fails to identify any corresponding algorithm.  In response, plaintiff makes three arguments.

First, plaintiff states that "the basic 'processing' functions recited in the claims would not be understood by a [person of ordinary skill in the art] to require any algorithm to be performed." (Brody Decl. at ¶ 735.)  As a result, plaintiff concludes that algorithms are not required.  This Court rejects that analysis.  Although processing answering data signals may require very basic algorithms, Dr. Brody's statement that no algorithms are required is conclusory and simply not credible.  *See Arthur A. Collins,* 216 F.3d at 1046 (court can disregard expert conclusions

---

[33] By making this argument, plaintiff appears to be conceding that an interface should be narrowly construed to the sub-components and capabilities described.  Since that issue has not been briefed, this Court will not rule on this specific issue here.

unsupported by facts).  Section 112 ¶ 6 requires that the specification disclose those algorithms.  The requirement cannot be avoided simply by stating that a person of ordinary skill would understand how to implement the recited algorithm.  *Aristocrat Techs.*, 521 F.3d at 1336.

Second, plaintiff argues that the specification discloses the interface 20 or the Centrum 9000 as performing the recited functions.  Although the specification shows that these structures receive signals and states that they "may actually perform analysis on data," there is no indication that these structures operate on answer data signals.  Thus, the specification has failed to "clearly link" these structure to the recited functions.

Third, plaintiff argues that the specification discloses algorithms. (Brody Decl. at ¶¶ 741-67.)  Although Dr. Brody attempts to identify numerous processor algorithms, he does not specifically identify algorithms that are clearly linked to the recited functions.

Accordingly, this Court grants, in part, defendants' motion for summary judgment.  Specifically, this Court finds that claims 96, 98 and 99 from the '863 patent are invalid as indefinite.


**J.    "Analysis Structure"**

Claim 11 of the '021 patent, claim 41 of the '309 patent, claim 19 of the '551 patent, and claims 11, 18 and 19 of the '547 patent recite an "analysis structure."  Although not expressed in means plus function language, the parties agree that the limitation is governed by 35 U.S.C. § 112 ¶ 6.  During the claim construction briefing, the parties also agreed upon the recited functions.  The various claimed functions generally relate to processing the calls in some manner.  The Court previously determined that the processing unit 92 was the only disclosure structure that performed the recited function.  (February 21 Claim Construction Order at 33.)  This Court also found that the specification failed to disclose algorithms that performed the

recited function.  Dr. Brody's declaration does not change the Court's view on that issue. Although he identifies numerous so-called "algorithms," those algorithms do not perform the recited functions.

For the reasons discussed in subsection I, supra, this Court also finds that algorithms need to be disclosed.  Accordingly, this Court grants, in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 11 of the '021 patent, claim 41 of the '309 patent, claim 19 of the '551 patent, and claims 11, 18 and 19 of the '547 patent are invalid as indefinite.

## VI.    SUMMARY

In summary, this Court grants, in part, and denies, in part, defendants' motion for summary judgment.  With respect to defendants' requests to find certain claims invalid for lack of a written description under 35 U.S.C. § 112 ¶ 1, the Court rules as follows:

A.  Claims 7, 51, 58 and 86 of the '223 patent are invalid for lack of a written description.

B.  Claims 32 and 34 of the '120 patent and claim 58 of the '223 patent are not invalid by reason of any issue raised in section II(B) of defendants' memorandum.

C.  Claims 32 and 34 of the '120 patent and claims 1, 58 and 86 of the '223 patent are invalid for lack of a written description.

D.  Claims 32, 34, 57, 62, 63, and 67 of the '120 patent, claims 1, 3, and 58 of the '223 patent, claim 11 of the '021 patent, claims 5, 27, 31, 32, 42, 43, 49, 96, 98, and 99 of the '863 patent,  claims 1, 19, 21, 33, and 34 of the '551 patent, claims 30, 32, and 67 of the '762 patent and claims 11, 18, and 19 of the '547 patent, claims 13, 14, 18, 36, and 75 of the '360 patent, claim 201 of the '707 patent, claim 5 of the '134 patent,

claim 13 of the '065 patent and claims 35 and 72 of the '703 patent are not invalid by reason of any issue raised in section II(D) of defendants' memorandum.

E.  Defendants' request for summary judgment with respect to all issues raised in section II(E) of its memorandum that relate to claims from the '863, '551, '065, '360, '285 and '893 patents is denied because the Court finds factual issues for the jury to resolve.

F.  Claim 182 of the '863, claims 188-192 of the '863 patent and claims 69, 85, 86 and 92 of the '707 patent are not invalid by reason of any issue raised in section II(F) of defendants' memorandum.

G.  Claims 1 and 9 of the '135 patent and claim 19 of the '551 patent are not invalid by reason of any issue raised in section II(G) of defendants' memorandum.

H.  Claims 1, 9 and 11 of the '156 patent and claim 35 of the '703 patent are not invalid with respect to any issues raised in section II(H) of defendants' memorandum.

I.  Claims 1 and 9 of the '135 patent are not invalid for any reason raised in section II(I) of defendants' memorandum.

J.  Claims 10 and 11 of the '150 patent are not invalid for any reason raised in section II(J) of defendants' memorandum.

K.  Claim 2 of the '415 patent is not invalid for any reason raised in section II(K) of defendants' memorandum.

L.  Defendants' request for summary judgment with respect to all issues raised in Claims 46 and 51 of the '965 patent and claims 35, 46 and 53 of the '707 patent are not invalid with respect to any issues raised in section II(L) of defendants' memorandum.

M.  Claims 13, 14, 18, 36, 75, 86, 106, 110, 114, and 119 of the '360 patent, claim 13 of the '065 patent, claims 1, 21, 33, and 34 of the '551 patent, and claim 201 of the '707 are invalid for lack of a written description.

N.  Claim 67 of the '120 is not invalid with respect to the issues raised in section II(N) of defendants' memorandum.

O.  Defendants' request for summary judgment with respect to all issues raised in section II(O) of defendants' memorandum that relate to claims 31, 43 and 53 of the '965 patent is denied because the Court finds factual issues for the jury to resolve.

P.  Defendants' request for summary judgment with respect to all issues raised in section II(P) of defendants' memorandum that relate to claims 69, 85, 86 and 92 of '707 patent, claims 1, 2, 5 and 182 of the '863 patent and claims 188-192 of the '863 patent is denied because the Court finds factual issues for the jury to resolve.

Q.  Defendants' request for summary judgment with respect to all issues raised in II(Q) of defendants' memorandum that relate to claims 21, 33 and 34 of the '551 patent is denied because the Court finds factual issues for the jury to resolve.

R.  Defendants' request for summary judgment with respect to all issues raised in II(R) of defendants' memorandum that relate to claim 5 of the '223 patent is denied because the Court finds factual issues for the jury to resolve.

S.  Claim 182 of the '863 patent is invalid for lack of written description.

T.  Defendants' request for summary judgment with respect to all issues raised in II(T) of defendants' memorandum that relate to claim 5 of the '134 patent is denied because the Court finds factual issues for the jury to resolve.

With respect to defendants' requests to find certain claims invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2, the Court rules as follows:

A.  Claim 7 of the '968 patent, claims 24, 69, 85, 86, 92, 115, 116, 129, 130, and 201 of the '707 patent, claims 96, 98, 99, 182, and 188-192 of the '863 patent, and claims 46

and 51 of the '309 patent are not invalid by reason of any issue raised in section III(A) of defendants' memorandum.

B.  Claim 31 of the '965 patent is not invalid by reason of any issue raised in section III(B) of defendants' memorandum.

C.  Claim 7 of the '968 patent, claims 42, 44, 46, and 51 of the '309 patent, claims 24, 115, 116, 129, 130, and 201 of the '707 patent, claims 27, 31, 32, 42, 43, 49, 96, 98, and 99 of the '863 patent and claims 1, 49, and 61 '285 patent are not invalid by reason of any issue raised in section III(C) of defendants' memorandum.

D.  Claims 34, 43 and 53 of the '965 patent are not invalid by reason of any issue raised in section III(D) of defendants' memorandum.

E.  Defendants withdrew this portion of their motion.

F.  Claim 27 of the '863 patent and its dependent claims 31, 32, 42, 43 and 49 are not invalid by reason of any issue raised in section III(F) of defendants' memorandum; however, claim 13 of the '065 patent is invalid as indefinite.

G.  Claim 23 of the '285 patent is not invalid by reason of any issue raised in section III(G) of defendants' memorandum.

H.  Claims 1, 2, 4 and 83 of the '893 and 116 of the '707 are invalid as indefinite.

I.  Claim 13 of the '065 patent, claims 1, 21, 33 and 34 of the '551 patent and claims 96, 98 and 99 of the '863 patent are invalid as indefinite.  Defendants' request for summary judgment with respect to issues raised in section III(I) of defendants' memorandum that relate to claims 115, 116, 129 and 130 of the '707 patent is denied.

1      J.   Claim 11 of the '021 patent, claim 41 of the '309 patent, claim 19 of the '551 patent,

2           and claims 11, 18 and 19 of the '547 patent are invalid as indefinite.

3

4    IT IS SO ORDERED.

5

6

7    DATED: June  19, 2008

8                                                   _____
                                                    Honorable R. Gary Klausner
9                                                   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28