1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| In Re: | Case No. 07-ML-01816B-RGK (FFMx) |
| Katz Interactive Call Processing Patent Litigation | |
| This document relates to: | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT SUMMARY JUDGMENT OF INVALIDITY UNDER SECTION 102 AND 103 |
| ALL "B" TRACK ACTIONS (except CV 07-02254 RGK (FFMx)) | |
| Case Nos. CV 07-2096 RGK (FFMx), CV 07-2099 RGK (FFMx), CV 07-2101 RGK (FFMx), CV 07-2134 RGK (FFMx), CV 07-2192 RGK (FFMx), CV 07-2196 RGK (FEMx), CV-07-2213 RGK (FFMx), CV 07-2220 RGK (FFMx), CV 07-2250 RGK (FFMx), CV 07-2257 RGK (FFMx), CV 07-2299 RGK (FFMx), CV 07-2322 RGK (FFMx), CV 07-2325 RGK (FFMx), CV 07-2336 RGK (FFMx), CV 07-2339 RGK (FFMx), CV 07-2340 RGK (FFMx), CV 07-2360 RGK (FFMx), CV 07-3002 RGK (FFMx) | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

In approximately fifty different lawsuits, plaintiff Ronald A. Katz Technology Licensing, L.P. ("RAKTL") has alleged that various defendants infringe claims from its family of related interactive call processing patents.  The Judicial Panel on Multidistrict Litigation consolidated



these cases for pretrial proceedings and transferred the consolidated case to this Court (07-MDL-1816).  This Court has grouped the different cases based on the date they were transferred and allowed the defendants in the Group B cases to file joint summary judgment motions.   Pursuant to that order, the defendants filed the current motion for summary judgment arguing that a number of claims at issue are invalid as anticipated and/or obvious under 35 U.S.C §§ 102 and 103.

## II.   JUDICIAL STANDARD

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).  Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985) (en banc).  When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor.

A patent is presumed valid, and the defendants have the burden of proving invalidity by clear and convincing evidence. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004).   *Anderson,* 477 U.S. at 255.  The defendants' motion is brought pursuant to both 35 U.S.C. § 102 (anticipation) and 35 U.S.C. § 103 (obviousness).

**A.  Anticipation**

"Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Electronics Corp. v. PDI Comm. Systems, Inc*. 522 F.3d 1348, 1363 (Fed. Cir. 2008).  If an element is not expressly disclosed in a

prior art reference, the reference still anticipates a subsequent claim if a person of ordinary skill in the art[1] would recognize that the missing element is necessarily present in the reference. *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,* 491 F.3d 1342, 1371-1372 (Fed. Cir. 2007)(citations omitted).

Although anticipation under 35 U.S.C. § 102 is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact. *Golden Bridge Technology, Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir.  2008).

**B.  Obviousness**

If the claimed invention is not disclosed in a single prior art reference, a patent may still be invalid obvious under § 103. In *Graham v. John Deere*, 383 U.S. 1 (1966), the Supreme Court set forth the test for obviousness:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Id.,* at 17-18.

This test is a question of law based on underlying factual inquiries. *See, e.g., Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

---

[1] The parties have essentially the same view of the level of ordinary skill in the art of the patents.   In short, they both suggest that such a person would have a B.S. in Electrical Engineering or other technical field and several years of experience or the equivalent.  (Brody Decl. at ¶ 8, Prieve Decl. at ¶ 17.)  For the purposes of this decision, the Court adopts these conclusions.

### III.    PLAINTIFF'S PATENTS

Plaintiff's interactive call processing patents generally describe technology that enables telephone callers to exchange information with computer systems through a telephone network. There are six patents involved in the current motion.  They are: 1) U.S. Patent No. 5,561,707 ("the '707 patent") entitled "Telephonic-Interface Statistical Analysis System;" 2) U.S. Patent No. 5,684,863 ("the '863 patent") entitled "Telephonic-Interface Statistical Analysis System;" 3) U.S. Patent No. 5,974,120 ("the '120 patent") entitled "Telephone Interface Call Processing System With Call Selectivity;" 4) U.S. Patent No. 6,335,965 ("the '965 patent") entitled "Voice-Data Telephonic Interface Control System;" 5) U.S. Patent No. 6,434,223 ("the '223 patent") entitled "Telephone Interface Call Processing System With Call Selectivity; and 6) U.S. Patent No. 6,678,360 ("the '360 patent") entitled "Telephonic-Interface Statistical Analysis System."

The table below identifies which reference or combination of references the defendants' motion argues invalidates each of the disputed claims.  This opinion does not address the claims found in bold because this Court' earlier ruling on defendants' joint summary motion under § 112 already found these claims invalid for either lack of written description or indefiniteness.

| Patent Claim | Alleged Priority Date | Section 102/103 | Prior Art References |
|---|---|---|---|
| '120:57 | October 23, 1989 | § 103 | Student Registration & Moosemiller |
| '120:57 | October 23, 1989 | § 103 | Student Registration & Calabrese |
| '120:67 | October 23, 1989 | § 103 | Student Registration & Calabrese |
| '120:67 | October 23, 1989 | § 103 | Student Registration & Szlam |
| **'863:96** | May 16, 1988 | § 103 | Wendkos & Moosemiller |
| **'863:98** | May 16, 1988 | § 103 | Wendkos & Moosemiller |
| '965:31 | February 21, 1989 | § 103 | Szlam & Yoshizawa |
| '965:61 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| '965:66 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| '965:53 | February 24, 1987 | § 103 | Barger & Yoshizawa |

| '965:53 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
|---------|-------------------|-------|-------------------|
| '965:35 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| '965:43 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| **'360:14** | May 16, 1988 | § 103 | Yoshizawa & VCT 1987 |
| **'360:18** | May 16, 1988 | § 103 | Yoshizawa & VCT 1987 |
| **'360:36** | May 16, 1988 | § 103 | Yoshizawa & VCT 1987 |
| '223:5 | October 23, 1989 | § 103 | Friedes & Reese |
| '707:69 | July 10, 1985 | § 102; § 103 | McFiggins; McFiggins & Duwel |
| '707:85 | July 10, 1985 | § 102; § 103 | McFiggins; McFiggins & Duwel |
| '707:92 | July 10, 1985 | § 102; § 103 | McFiggins; McFiggins & Duwel |

For the purposes of this decision, the Court has adopted the organization of defendants' motion.


# IV.  CLAIM BY CLAIM ANALYSIS

## A.  Claims 57 and 67 of the '120 patent

Claim 57 recites a process for receiving DNIS signals and using identification signals entered by callers to avoid providing previously provided cues to callers. Specifically, claim 57 (including independent claim 56) recites:

> 56. A process for interfacing, through a telephone-communication facility, (1) callers who are at a multitude of remote terminals for voice-digital communication with (2) a system for prompting the callers with caller cues, said process comprising the steps of:
>
> establishing telephone communications between the callers and the system, the system having a receiving unit for receiving digital signals including dialed-number identification signals provided automatically from the telephone-communication facility;
>
> utilizing the dialed-number identification signals to identify one from a plurality of numbers dialed by the callers;

also receiving at the receiving unit identification signals relating to the callers;

testing said identification signals relating to the callers to determine whether to qualify the callers for access to at least a portion of operations of the system;

*utilizing, for qualified callers, the identification signals relating to the callers, to avoid prompting certain callers with a certain previously provided cue or cues*; and

providing to the qualified callers at least one other caller cue.

57. A process according to claim 56, wherein the identification signals relating to the callers comprise a number entered by each of the callers to determine if that caller is eligible to participate.
(emphasis added)

### 1.   Claim 57 in View of Student Registration and Moosemiller

Defendants argue that claim 57 of the '120 patent is obvious in view the combination of the "Automated Student Registration Using Touch-Tone Telephone/Voice Response, An Application Note" of Periphonics Corporation dated April 29, 1986 ("Student Registration") and AT&T's CONVERSANT™ I Voice System" by John P. Moosemiller dated March/April 1986 in Speech Technology ("Moosemiller") references.  The undisputed priority dates of the Student Registration and Moosemiller are April 29, 1986 (Booth Decl. ¶¶ 4-8) and March/April 1986. Plaintiff does not dispute that these references qualify as prior art to claim 57.

Student Registration discloses a call processing system using a voice response unit (VRU) to interact with callers to assist students in navigating through class registration and related applications.  A student may be required to pre-register and obtain a PIN prior to dialing into the system.  Alternatively, the student's birth date may be used as the PIN.  After a caller has gained access to the system, he or she may then select and register for courses or be added to a waitlist.  If the caller encounters difficulty during the call, the call can be transferred to an operator.  The caller can elect to have the call transferred to an operator, or the system may initiate the transfer.

Moosemiller discloses the Conversant I system, which is a platform for support of a wide range of applications using voice response technology.  The system allows applications to use the public telephone network for database access.  Using this system, customers can use rotary or touch-tone phones as terminals to access a host computer and eliminate the need for remote computer terminals.  The Conversant I system utilizes a voice response unit that is connected to incoming trunk channels to provide customers with voice prompts.  In response to these prompts, a user of the Conversant I application can log in to the system with touch tone signals.  In addition, the Conversant I system can utilize Dialed Number Identification Service, or DNIS, to classify incoming calls for different applications.  Each type of caller is then greeted with appropriate transaction prompts.

In response to the Student Registration and Moosemiller combination, plaintiff makes three arguments.  First, the plaintiff argues that neither of these references discloses "cues" within the meaning of claim 57.   Second, plaintiff argues that Student Registration does not avoid "prompting certain callers with a certain previously provided cue or cues."  Third, plaintiff argues that it is improper to combine elements from the Student Registration and Moosemiller references.  The plaintiff does not argue that any other limitations from claim 57 are not satisfied by this combination.

### a.   Combining Student Registration and Moosemiller

Student Registration does not disclose using DNIS, however, Moosemiller disclose this feature.  Since defendants' obviousness defense requires both Student Registration and Moosemiller, we first examine whether it is appropriate to combine elements from these references.

Recently, the Supreme Court addressed the issue of combining prior art references.  In *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007), the Court rejected a rigid application of the

"teaching, suggestion, or motivation" test (TSM test), under which a patent claim is only proved obvious if "some motivation or suggestion to combine the prior art teachings" can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art.  Although the TSM test captures a "helpful insight," the Supreme Court held that it was error to apply the test as a rigid rule that limits the obviousness inquiry.  *Id.* at 1741.  Rather, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 1742.  Still, it is "important to identify a reason that would have prompted a person of ordinary legal skill in the art to combine the elements as the new invention does." *Id.* at 1742.

Here, Moosemiller explicitly suggests that applications for the Conversant I should include "college registration." (Moosemiller at p. 88.)  It also suggests that the "DNIS feature is useful for . . . multiple user applications."  *Id.*   Student Registration is both a college registration and multiple user application. Therefore, there is an express suggestion in Moosemiller to combine it with applications like Student Registration.  Moosemiller also states that using DNIS "allows advance classification of incoming calls for different applications which are greeted by appropriate transaction prompts." *Id.*   Student Registration notes that it can be easily expanded for many other applications [e.g. admission status, financial aid status . . ]."  Together these two passages also expressly suggest using DNIS to classify incoming calls in an expanded college registration system.

In response, plaintiff argues that it was not obvious to combine elements from Student Registration and Moosemiller because Student Registration contemplated local calls and calls within the college telephone system.  Plaintiff's expert, Dr. Brody, states that "[f]or this type of call, contracting with the telephone company for DNIS delivery would have been expensive and unnecessary."  (Brody Decl. at ¶ 81.)  In determining whether two references should be

combined, the Federal Circuit has focused the inquiry on technical issues.  "That a given combination would not be made by businessmen for economic reasons does not mean that persons skilled in the art would not make the combination because of some technological incompatibility. Only the latter fact would be relevant."  *In Re Farrenkopf,* 713 F.2d 714, 718 (Fed. Cir. 1983).  Thus, Dr. Brody's concern about potential expense does not overcome the express suggestions to combine found in the references themselves.

### b.  Cues

Next, the Court turns to the individual limitations.  The plaintiff argues that two limitations are missing from the Student Registration/Moosemiller combination: 1) cues, and 2) cue suppression.  To satisfy the "cue" limitation, the defendants identified several different messages that Student Registration would play.  These messages would inform a caller whether the caller could register or, if not, why the caller could not register.  (Dialogue #12, #13 at #15, Student Registration at p. A-1.)  This Court previously construed "cue" to mean "a question or prompt which is given to caller."  (February 21, 2008 Claim Construction Order at p. 57.)  Plaintiff argues that the messages defendants identified are only "informational messages," not cues, because they do not invite responses.  (Brody Decl. at ¶¶ 76-77.)  Assuming the identified messages are not literally "cues," the defendants cured that problem by also identifying Dialogue #23 which asks the caller to "Enter a W to place your name on the waiting list." (Student Registration at p. A-2.)  This message is clearly a "question or prompt" under both parties interpretation of that term.[2]  Therefore, Student Registration discloses cues and no reasonably juror could find otherwise.

### c.  Cue Suppression

---

[2] Plaintiff argues that a cue requires a response "within the system."  Defendants argue that a cue merely asks that a caller take any kind of action (e.g. seek assistance).  Since the Court does not need to construe "cue" further to resolve the issues presented, it does not do so.

Student Registration discloses providing a different information message based on whether the student is registered.  (Dialog #10, Student Registration at p. A-1.)  In response to defendnats' argument, plaintiff says that these features do not avoid providing previous cues.  First, plaintiff argues the identified passages merely show that different cues are provided depending on registration status, which is not the same as avoiding previously provided cues.  Second, the plaintiff argues that defendants have failed to show that Student Registration "does not identify any mechanism by which Student Registration tracks which messages (or cues) have previously been given."  (Brody. Decl. at ¶ 78.)

The defendants reply to the first argument by pointing to Dialogue #23 and #27.  (Student Registration at p. A-2.)  Dialog #23 prompts a user to place itself on the waiting list.  Dialog #27 indicates that the user is already on the waiting list.  Thus, a caller that places itself on the waiting list in response to Dialog #23 will not encounter that cue again.  Instead, the system will play Dialog #27.  In response to the second argument, defendants correctly point out that the limitation at issue does not require tracking of cues.  The limitation merely requires avoiding providing the caller with certain previously provided cues.  Therefore, there can be no reasonable dispute; the waiting list dialogs disclose cue suppression as required by claim 57.

### d.  Ruling

Based on the forgoing, this Court finds that there is no triable issue of fact for the jury.  A person of ordinary skill in the art would combine elements from Student Registration and Moosemiller given the multiple express suggestions to combine.  Together, these references disclose all the limitations of claim 57 including: using DNIS, cues and cue suppression.  As a

result, this Court grants, in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 57 of the '120 patent is invalid as obvious.[3]

In making this decision, the Court notes that the plaintiff has argued that secondary factors show all the claims in dispute are non-obvious.  Specifically, plaintiff says that the success of its patent licensing program shows both "long felt need" and "commercial acquiescence."  Plaintiff has shown that its patent licensing program has been unquestionably successful.   By itself, this evidence does not tend to show that a particular claim is non-obvious.  "Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."  *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311-1312 (Fed. Cir. 2006).  Here, plaintiff's evidence only demonstrates that the claims in dispute were some of the many claims that were identified in the license negotiations and eventually licensed.  (Pl. Opp. at 47.)  Although this evidence shows some link exists between the licensing program's success and the claims in dispute, the Court does not find a strong nexus.  Moreover, neither plaintiff's successful licensing program nor any other evidence it presented showed a long felt need for the claimed technology.

In sum, plaintiff's evidence of secondary factors of non-obviousness is of modest strength.  This evidence cannot overcome the strength of the two prior art references that: 1) indisputably disclose all the limitations; and 2) explicitly suggest that the references should be combined.  *See, Leapfrog Enterprises v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (affirming the trial court's judgment of invalidity despite substantial evidence of secondary factors of non-obviousness).

**2.   Claim 57 in View of Student Registration & Calabrese**

---

[3] This Court did receive defendants' Notice of Supplemental Authority informing the Court of the status of the current Reexamination proceedings.  This Court notes that its conclusion is consistent with the recent July 11, 2008 Office Action rejecting claim 57 in view of Student Registration and Moosemiller.

Defendants also argue that claim 57 is obvious in view of the combination of Student Registration and "Advanced Function VRU Applications" by Thomas E. Calabrese dated September 1989 ("Calabrese").  Calabrese discloses a call processing system using a composite VRU to interact with callers to assist customers in navigating through several insurance and related applications.  Calabrese describes the desire to use automatic screen transfer, dialed number identification service (DNIS), automatic number identification (ANI), and other call processing technologies with voice response unit (VRU) applications.  An incoming call can be connected to a VRU executing multiple applications (Annuities Inquiry, Health Claim Status, Flexible Benefits Enrollment, Pension Account Status) or to an operator.  VRU applications are selected based on the telephone number dialed by the caller to access the system using DNIS.  ANI is used to capture a caller's telephone number.  The telephone number can be cross-referenced with a customer information database to determine the caller's identity and related information.  This allows the system to avoid prompting the caller for account information.  If the calling number is not on file, the caller may be transferred to an operator for alternative processing.

In response to this combination, plaintiff raises three arguments.  First, plaintiff argues that Student Registration does not disclose cues and cues suppression.  Second, plaintiff argues that Calabrese does not qualify as prior art to claim 57.  Third, the plaintiff also argues it is improper to combine elements from Student Registration and Calabrese.

As discussed above, this Court finds that Student Registration discloses both cues and cue suppression.  Moving to plaintiff's second argument, this Court must determine if Calabrese is prior art to claim 57.  Calabrese is dated September, 1989.  Plaintiff argues that Calabrese cannot be considered prior art because the defendants have not laid a proper foundation for the document or shown that it was actually published on the date listed in the document.  Moreover,

although plaintiff stated that claim 57 of the '120 patent had a priority date of October 23, 1989 (Pl.'s Second Supplemental Resp. to First Set of Common Interrogs., dated March 31, 2008), plaintiff now argues that the proper effective filing date of claim 57 is May 16, 1988, the filing date of U.S. Patent No. 4,845,739 ("the '739 patent").  If this is the correct date, Calabrese does not qualify as prior art.

At this point, the defendants have not laid a proper foundation for Calabrese.  Although the documents itself strongly suggests that it is authentic and was published in September 1989, plaintiff has presented a factual issue.  If this were the only issue that prevented the Court from ruling on claim 57 and the Student Registration/Calabrese combination, the Court would allow defendants to cure this deficiency.[4]   However, as discussed below, the Court finds other factual issues for the jury to resolve.

For claim 57 to be entitled to the priority date of the '739 patent, plaintiff must show that the '739 patent specification contains a written description of cue suppression.[5]  Since there is no evidence that the United States Patent and Trademark Office has made any determination with regard to the priority date of claim 57, the plaintiff has the burden to come forward with evidence to show that it is entitled to the earlier May 16, 1988 date.  *PowerOasis v. Inc. T-Mobile USA, Inc.,* 522 F.3d 1299, 1305-1306 (Fed. Cir. 2008).   Whether there is a sufficient written description is a question of fact.  *Falkner v. Inglis,* 448 F.3d 1357, 1363 (Fed. Cir. 2006).

Plaintiff argues that the descriptions of preregistration and prequalification in the '739 patent describe cue suppression. (Brody at ¶¶ 201-212.)  In both these embodiments, the specification shows that callers can use the system to enter data prior to qualification.

---

[4] The Court assumes that defendants will be able to lay the proper foundation.  If the defendants make an appropriate offer of proof and plaintiff does not have a good faith basis for challenging the reference, the parties should stipulate to the authenticity and publication date of Calabrese prior to any trial.

[5] Defendants' brief do not explain why they believe that claim 57 cannot claim priority from the '739 patent, but simply cite to declarations attached to their Joint § 112 Motion for Summary Judgment.  Therefore, the Court assumes that defendants are once again arguing that the specification fails to contain a written description of cue suppression.

1
2
3

> . . . persons wishing to participate in the auction sale would make preliminary arrangements involving utilization of the system to establish authorization data for qualified bidders in cells C1-Cn of the memory 98 (FIG. 4)." '739 patent at 14:46-49. (describing auction embodiment).

4
5
6
7
8

> . . . it may be desirable to preliminary qualify and designate callers as explained above.  Specifically, prior to participating in an actual game show, interested participants interface the system as depicted in FIG. 1, and in the course of an exchange as described above, the qualification unit 93 and the designation unit 96 cooperate with the processing unit 92 to accomplish preliminary data on potential participants in cells of the memory 96."

9

'739 patent at 16:43-50 (describing game embodiment).

10
11
12
13
14
15
16
17
18
19

Plaintiff's expert states that a person of ordinary skill in the art would understand that cues are provided to the callers to obtain this information.  (Brody at ¶ 208.)  He also says that these same cues are not provided in a subsequent call to actually participate in the auction or game.  In sum, Dr. Brody states that a person of ordinary skill in the art would understand the specification to necessarily teach: 1) supplying cues for preregistration/prequalification in a first call, and 2) qualifying callers and suppressing cues in a second later call.  Based on plaintiff's expert declaration, this Court finds that a reasonable jury could believe that the '739 patent contains a description of cue suppression and that claim 57 is entitled to the May 16, 1988 priority date.

20
21
22
23
24
25
26
27

Accordingly, this Court finds that there are factual issues for a jury to decide regarding the priority date of claim 57.   This Court denies, in part, defendants' motion for summary judgment as related to claim 57 and the Student Registration/Calabrese combination.  Finally, since this Court has already found claim 57 invalid in view of the Student Registration/Moosemiller combination, and found a factual issue with respect to the Student Registration/Calabrese combination, this Court does not need to determine whether it is proper to combine elements from Student Registration and Calabrese.

28

**3.  Claim 67 in View of Student Registration & Calabrese**

Claim 67 of the '120 patent is similar to claim 57.  Claim 67 relates to a method for interfacing callers with a call processing system that uses caller identification signals to avoid prompting callers with previously provided cues.  Specifically, claim 67 recites:

> 67. A process for interfacing, through a telephone-communication facility, (1) callers who are at a multitude of remote terminals for voice-digital communication with (2) a system for prompting the callers with caller cues, said process comprising the steps of:
>
> receiving identification signals at a receiving unit of the system, the identification signals indicating telephone numbers of the multitude of remote terminals, the identification signals being automatically provided by the telephone-communication facility;
>
> testing, to determine whether to qualify the callers for voice-digital communication with the system, the identification signals that indicate the telephone numbers;
>
> utilizing, for qualified callers, the identification signals that indicate the telephone numbers to avoid prompting certain callers with a certain previously provided cue or cues; and
>
>  providing to the qualified callers at least one other caller cue.

Again, relying on the Student Registration/Calabrese combination, defendants argue that claim 67 is also obvious.  In response plaintiff raises three arguments.  First, plaintiff again argues that Student Registration does not disclose cues and cue suppression.  Second, plaintiff argues that Calabrese is not prior art to claim 67.  Third, plaintiff argues that it is improper to combine elements from Student Registration and Calabrese.

Plaintiff raised these arguments in the preceding section with respect to claim 57.  For the reasons discussed above, this Court finds that there are at least factual issues with respect to the priority date of claim 67.  Therefore, this Court denies, in part, defendants' motion for summary judgment with respect to claim 67 and the Student Registration/Calabrese combination.

### 4.   Claim 67 in View of Student Registration & Szlam

Defendants also argue that claim 67 is obvious in view of the combination of Student Registration and U.S. Patent No. 4,797,911 entitled "Customer Account Online Servicing System," issued on January 10, 1989 ("Szlam"). Szlam discloses a system for both outbound and inbound calling to service a customer's account. The system answers incoming calls, obtains the calling party's telephone number (ANI), retrieves from the mainframe the current customer account information corresponding to the calling party's telephone number, routes the call to the next available operator, and provides, at the operator's terminal, the current customer account information retrieved from the mainframe.

In response to the Student Registration/Szlam combination, plaintiff makes two arguments. First, plaintiff again argues that Student Registration does not disclose cues and cue suppression. As discussed above, this Court rejects that argument and finds that Student Registration discloses both these limitations. Second, plaintiff argues that it is improper to combine elements from these two references. Since all the limitations of claim 67 are found in the Student Registration/Szlam combination, the issue of whether it is appropriate to combine these references is dispositive.

Defendants make two arguments in favor of combining Student Registration and Szlam. First, they argue that "Szlam expressly suggests combining the system with other call processing applications because of the advantage it has in relieving the operator from obtaining preliminary customer account information and providing for direct updating of customer account information online (i.e. over a telephone)." (Prieve Decl. at ¶ 121.) Second, defendants argue that the combination of Szlam and Student Registration would have yielded the "predictable result" of a student registration application that would relieve students of entering account information by automatically identifying a caller's number using ANI. (Prieve Decl. at ¶ 122.)

1    In response, plaintiff argues that Student Registration and Szlam relate to two "disparate

2    applications designed for very different situations" – automated handing of student calls for

3    course selection and call center technology for businesses, especially those with large customer

4    accounts.  As a result, the plaintiff concludes that there would be no motivation to combine these

5    references.  Moreover, plaintiff's expert argues that using ANI to identify the calling system

6    "makes no sense in the context of students calling to register for college" because student

7    telephone numbers change all the time and they often share telephones.

8

9    This Court rejects defendants' first argument and does not find an express suggestion to

10   combine.  Although Szlam discusses the advantage of automatically using the caller's telephone

11   number and obtaining preliminary account information for the operator, it does not suggest using

12   this technique in any application other than the present invention.[6]  However, this Court does

13   agree with defendants' second point, and finds that combining Szlam's caller number

14   identification technique with Student Registration yields a predictable result.  Although the

15   Supreme Court acknowledged that "a patent composed of several elements is not proved obvious

16   merely by demonstrating that each of its elements was, independently, known in the prior art"

17   (*KSR Int'l.*, 127 S.Ct. at 1741), it also stated that "[t]he combination of familiar elements

18   according to known methods is likely to be obvious when it yields no more than predictable

19   results."  *Id*. at 1739.  A person of ordinary skill in the art would understand that adding the

20   ability to detect the caller's telephone number to Student Registration, would allow the system to

21   automatically determine preliminary account information.  (Prieve Decl. at ¶ 122.)  Although

22   plaintiff argues that there is no motivation to combine these references, its expert never suggests

23   that the results are in anyway unpredictable.  (Brody Decl. at ¶¶ 93-95.)[7]

24

25

26

27   _____

     [6] Defendants cited to Szlam at 2:28-34 to show an express suggestion to combine.

28   [7] Brody confuses the issue by stating that he would not predict that combining the two references would result in the claim. (Brody Decl. at ¶ 93.)  However, *KSR* asks a different question.  If the specific features from different references that correspond to a claim were combined, would the results be predictable?  Here, the answer is yes.

-17-

Thus, according to *KSR*, defendants' showing of predictability demonstrates that the claimed combination is "likely" to be obvious. *See, Muniauction, Inc. v. Thomson Corp.*, 2008 WL 2717689 *5 (Fed. Cir. 2008) (reversing jury determination and finding claims invalid because the improvement was a predictable use of prior art elements according to their established functions). This Court must still examine the remaining facts to determine whether they confirm the "likely" outcome. Here, despite plaintiff's protestations to the contrary, the two references are very similar. They are both call processing systems that allow a caller to use a telephone to conduct transactions. Both systems include voice response units that prompt the callers by playing predefined messages over the telephone. In both systems, the caller responds by inputting information using a telephone. Both systems use that information to process transactions. The details of the prompts, requested information and transactions only differ because of the application. Szlam relates to placing orders and checking on order status over the telephone. Student Registration relates to allowing students to register over the telephone. The references themselves also confirm their similarity. Szlam states that its invention relates to "customer account servicing systems and particularly provides a method and apparatus for placing outgoing, routing incoming calls, and online servicing of customer accounts." (Szlam at 1:5-10.) Student Registration also concerns processing incoming and online (i.e. telephone) servicing of customer accounts.

With references that share these basic features, there can be no doubt that a person of ordinary skill in the art would understand to use features from one reference and combine them with the other. In this case, that feature is using a caller's telephone number to obtain basis account information and thereby avoid asking for that information from the caller again (i.e. cue suppression). Thus, this Court finds that evidence shows that a combination of features from Student Registration and Szlam does render claim 67 obvious.

1   Plaintiff's remaining response is unpersuasive.  Plaintiff points out that students

2   frequently move and share telephones.  Just because a combination may not enjoy success in the

3   market does not show that it is not obvious from a technical perspective.  *See, In re Farrenkopf*,

4   713 F.2d at 718.  Plaintiff has presented no substantial reason to believe that a person of ordinary

5   skill will be dissuaded from using ANI with Student Registration.

6

7   Accordingly, this Court grants, in part, defendants' motion for summary judgment.

8   Specifically, this Court finds that claim 67 is obvious in view of a combination of Student

9   Registration and Szlam.[8]  Again, this Court notes the existence of secondary factors, but finds

10  that they cannot overcome two prior art references that: 1) indisputably discloses all the

11  limitations; 2) are in similar fields; and 3) whose combination yields a predictable result.  This is

12  especially true here, where plaintiff has failed to provide a reasonable explanation why a person

13  of ordinary skill would not be motivated to combine Szlam's use of ANI (i.e. identification

14  signals) with Student Registration.

15

16

17  **B.  U.S. Patent No. 5,684,863 ("the '863 patent")**

18  Defendants also move for summary judgment on claims 96 and 98 of the '863 patent

19  arguing that these claims are obvious.  This Court's decision on defendants' Joint Motion for

20  Summary Judgment under § 112 found that these claims were invalid as indefinite under 35

21  U.S.C. § 112, ¶ 2.  As a result, this Court does not reach the issue of obviousness raised in this

22  motion.

23

24

25  **C.  U.S. Patent No. 6,335,965 ("the '965 patent")**

26

27  ---

[8] This Court notes that this conclusion is also consistent with the recent July 11, 2008 Office Action (from the Reexamination Proceedings) rejecting claim 67 in view of Student Registration and Szlam.

28

Defendants argue that claims 31, 35, 43, 53, 61 and 66 of the '965 patent are all invalid as obvious.  Although the parties agree that the priority date of claim 31 is February 21, 1989, the parties disagree over the correct priority date for the remaining claims. Plaintiff argues that claims 35, 43, 53, 61 and 66 are entitled to the earlier February 24, 1987 filing date of Application No. 07/018,244.  Defendants contend that the disputed claims are not entitled to that date because an intermediate application, now the U.S. Patent No. 4,845,739 ("the '739 patent"), omitted support for the disputed claims.  "In order for [a patent] to be entitled under 35 U.S.C. § 120 to the filing date of an earlier application in the chain of applications of which they are part, it must be shown that as to the inventions claimed there has been continuing disclosure through the chain of applications, without hiatus."  *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1266-67 (Fed. Cir. 1985).  If the intermediate '739 patent does not contain a written description that would support the disputed claims, like claim 31, claims 35, 43, 53, 61 and 66 would only be entitled to the February 21, 1989 priority date.

As discussed above, determining whether there is a sufficient written description is a question of fact, (*Falkner,* 448 F.3d at 1363) and the plaintiff has the burden to come forward with evidence to show that it is entitled to the earlier priority date.  *PowerOasis,* 522 F.3d at 1305-1306.

Defendants identify specific limitations related to visually displaying data that are supposedly omitted from the '739 patent specification.  Specifically, claims 35, 43 and 53 require:

> *displaying* at said attended terminal at least a portion of the other *data associated with the caller identification data* (emphasis added).

Claim 43 also recites:

> A method according to claim 34, wherein the data displayed includes caller telephone number data . . . wherein the *data displayed includes caller telephone number data* (emphasis added).

Claim 54 also recites:

> A method according to claim 34, wherein said other *data displayed includes caller name data* (emphasis added).

Claims 61 and 66 require:

> transferring a call from said individual caller to an attended terminal and *displaying* at *least a portion of data stored in said file* at said terminal under control of said responsive signals *indicative of said customer identification number* wherein said attended terminal has a capability for data to be entered to facilitate completion of the call from said individual caller (emphasis added).

To show that the '739 patent specification supports these claims, plaintiff makes three arguments.  First, the plaintiff relies on a sentence from the dramatic content format portion of the specification.  That sentence describes televising the "status of the analysis" that is being displayed by a terminal.  The entire sentence recites: "In any of the various formats, the status of the analysis can be televised by selecting a camera focused on the interface terminal IT." '739 patent at 20:40-44.  By focusing on the introductory clause "[i]n any of the various formats," the plaintiff argues that this sentence ("the Bootstrapping Sentence") shows that the status of the analysis of *any* format described in the specification is displayed at the operator terminal.  (Brody Decl. at ¶ 105.)  Plaintiff goes on to point to the description of the mail order format and its use of customer number data  (*id*. at 11:26-3) as well as various other formats.  (Brody Decl. at ¶ 106.)   Plaintiff argues that together these passages show that the results of customer number data analysis are visually displayed.

However, to properly interpret the Bootstrapping Sentence, it is helpful to view it in context.  The dramatic program format describes a format where television viewers can call in and answer questions. '739 patent at 19:17-20:44.  Winners are randomly selected from the callers who successfully answer the questions.  *Id*. at 20:25-33.  The specification describes two ways to calculate the results: 1) assessing whether callers' answers were correct and randomly

selecting the winners *after* the data is accumulated, (*id*.); or 2) immediately assessing whether the callers correctly answered the questions and informing them of that result, but later randomly selecting the winners. *Id*. at 20:34-41. The Bootstrapping Sentence that plaintiff relies upon follows both options and appears within the same paragraph as the second option. This factor suggests that the sentence is only describing the dramatic content format.

If that were the only factor, the Court might consider the issue a factual one for the jury. However, the content of the Bootstrapping Sentence conclusively disposes of the issue. First, the sentence discusses displaying information on television by focusing a camera. This description makes sense in the context of calling in answers to a television show (i.e. the dramatic content format), but does not make sense in the context of customers placing orders over the telephone (e.g., the mail order format). Second, the Bootstrapping Sentence describes displaying the "status of the analysis" (e.g., who won) not the details of the analysis as plaintiff suggests. Although the Bootstrapping Sentence begins with the phrase "[i]n any of the various formats," the context shows that it is only referring to the two dramatic content format options, not any format described in the specification.[9] The Bootstrapping Sentence is stating that regardless of which of these two formats/options is used, the status of the analysis can be televised. Accordingly, this Court concludes that no reasonable jury would find that that the Bootstrapping Sentence refers to other formats or that it somehow shows that the '739 patent specification visually displays data from these other formats.

In a second attempt to show that the '739 patent contains a written description of visually displaying customer number data, plaintiff points to the command terminal CT. Plaintiff argues that a person of ordinary skill in the art would understand that the command terminal CT is

---

[9] This usage is not consistent with the definition provided in the February 21, 2008 Court's Claim Construction Order. However, plaintiff has used the term to convey various inconsistent meanings in the specification and prosecution history.

involved in data-gathering and processing and that the data "may expressly" include caller data. (Brody Decl. at ¶ 108.)  However, "[i]t is 'not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure . . .. Rather, it is a question whether the application necessarily discloses that particular device.'" *Hyatt v. Boone,* 146 F.3d 1348, 1353 (Fed. Cir. 1998) (quoting *Jepson v. Coleman,* 314 F.2d 533, 536 (CCPA 1963).  By using the term "may expressly," plaintiff's expert declaration concedes that the specification does not necessarily disclose displaying customer data.  Therefore, this Court rejects this argument.

Finally, plaintiff argues that this Court's earlier decision in the *Verizon* case indicates that there is a written description for visually displaying a customer number.  *Verizon Cal., Inc. v. Ronald A Katz Technology Licensing L.P.*, 326 F.Supp.2d 1060, 1098-1099 (C.D. Cal. 2003).  However, that decision merely states that the CRT display clearly corresponds to visually displaying.  The question of whether there was written support for visually displaying a customer number was not addressed.

Even drawing inferences in favor of plaintiff, this Court concludes that the '739 patent does not provide a written description of the disputed claims.  Thus, this Court finds that there is no factual issue with respect to the priority dates of claims 35, 43, 53, 61 and 66 of the '965.  The date is February 21, 1989.  Given that date, there is also no dispute that the references that defendants identify qualify as prior art to the disputed claims of the '965 patent.  Next, we determine whether those references render the claims obvious.

### 1.  Claim 31 in view of Szlam and Yoshizawa

Claim 31 recites a method that controls communications between callers and a communication facility.  Claim 31 recites:

31. A method for controlling voice or data or both types of communications for use with a communication facility including remote terminals for individual

callers, wherein said remote terminals include a digital input device for providing digital responsive signals, said method comprising the steps of:

*receiving caller number identification signals indicative of at least a portion of a caller's number from said communication facility*;

cuing select ones of said remote terminals to prompt selective actuation by an individual caller of said digital input device to provide responsive signals;

*selectively identifying said responsive signals* from said select ones of said remote terminals as digital data signals or digital control signals, wherein certain of said responsive signals can serve as digital data signals, digital control signals, or both, *said responsive signals including signals indicative of a customer identification number for the individual caller that may be utilized to access a file for said individual caller*; testing at least a portion of said customer identification number for approval;

recording said caller number identification signals from said communication facility as additional data for said individual caller;

transferring a call from said individual caller to an attended terminal and displaying at least a portion of data stored in said file to an operator at said attended terminal under control of said responsive signals indicative of said customer identification number and displaying at least a portion of the customer identification number wherein the operator at said attended terminal is capable of entering data to facilitate completion of the call from said individual caller; and

*generating computer acknowledgement numbers to identify the transaction for the system and individual callers and providing said computer acknowledgement numbers to the individual callers* (emphasis added).

The steps that are in dispute are italicized.  Defendants argue that Szlam (described earlier) discloses each of claim 31's limitations except providing acknowledgment numbers to individual callers.  They say that this limitation is found in "Voice Response System for Telephone Betting" by Yoshizawa dated June 1977 in Hitachi Review ("Yoshizawa").  Thus, defendants conclude that claim 31 is obvious in view of a combination of Szlam and Yoshizawa.

Yoshizawa discloses a telephone betting system using voice response. The system is designed to enable horse race fans to purchase parimutuel tickets by using a push-button telephone.  A subscriber calls the telephone betting center and inputs his account number, password number and the desired tickets.  The voice response unit transmits these inputs to the

central processing unit through data communication lines.  The system provides the customer with an acknowledgment number which Yoshizawa calls a registration number.  (Yoshizawa at p. 217.)

In response to defendants' argument, plaintiff raises three arguments.  First, plaintiff argues that there is no motivation to combine Szlam and Yoshizawa.  Second, plaintiff argues that neither reference discloses "caller number identification signals [ANI signals] *from said communication facility*."  Third, plaintiff argues that Szlam and Yoshizawa teach away from a system where ANI is used and the caller inputs account information.

### a.   Combining Szlam and Yoshizawa

Defendants argue that a person of ordinary skill in the art would be motivated to combine Szlam and Yoshizawa because Yoshizawa contains an express suggestion to combine.  Specifically, Yoshizawa states that "the voice response unit can be applied to other fields using its special feature of outputting computer processing results in human voice."  (Yoshizawa at p. 220.)  Yoshizawa goes on to list eleven possible applications including "order entry."  In addition to relying on an express suggestion, defendants argue that Szlam and Yoshizawa are substantially similar references and that it would have been obvious to use advantageous features from each system together.  Finally, defendants argue that a Szlam/Yoshizawa combination would yield predictable results, performing the same functions in combination that they did alone.

In response, plaintiff makes numerous attempts to show that there is no motivation to combine Szlam and Yoshizawa.  First, plaintiff points out that Szlam and Yoshizawa are very different systems and suggest that no one would be motivated to combine those references.  Plaintiff overstates the differences between Szlam and Yoshizawa.  Even if that were not the

case, Yoshizawa explicitly states that its technology can be used with "order entry" applications like Szlam.  This express suggestion clearly overcomes any differences that plaintiff identifies.

Second, plaintiff argues that Yoshizawa teaches away from using an operator (a requirement of claim 31) because it describes a system that sells paramutuel tickets "automatically by means of a voice response unit."  However, plaintiff improperly equates this term with the absence of operators.  There is no basis for that concluding that automatic voice response units teach away from using operators.  Indeed, Szlam's voice response units perform some functions automatically while operators perform others.

Third, plaintiff argues that Yoshizawa's suggestion to combine is limited to its voice response units.  Although the literal wording of Yoshizawa could be interpreted that narrowly, "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton."  *KSR Int'l,* 127 S.Ct. at 1742.  Clearly, such a person would understand Yoshizawa's suggestion to extend to voice response unit technology and not just the voice response unit itself.  There is simply no rational reason why Yoshizawa's suggestion does not extend to providing acknowledgment numbers when its voice response unit provides that number.

Fourth, plaintiff argues that there would have been no motivation to combine the acknowledgement (or, as plaintiff refers to them, "registration") numbers from Yoshizawa with the operator services of Szlam, in part, because of the time pressures involved in Yoshizawa's betting system.  Plaintiff's expert also identifies other problems associated with combining the specific implementations of Yoshizawa's betting system with Szlam's order entry system.  These arguments are not helpful because they focus on the wrong issue.  The question is not whether the specific implementations described in Szlam and Yoshizawa can be seamlessly integrated.  When dealing with different applications like betting and order entry, problems would undoubtedly result from combining those implementations.  Such facts do not tend to show that

the references should not be combined for the purposes of determining whether a disputed claim is obvious.

The correct question is whether a person of ordinary skill in the art would be motivated to combine the specific elements from the references that would result in the claimed invention. Implementation details that are not related to the claimed elements are not relevant.  For example, a reference that teaches an improved turbine in a car engine may still apply to an airplane engine even though the body of the car would be unsuitable for flying.  Similarly, the "time pressure" that plaintiff identifies in Yoshizawa is a characteristic of the betting system described.  That characteristic does not impact the analysis here because no element in claim 31 relates to betting.  Thus, a person of ordinary skill in the art would not be dissuaded from combining a feature from Yoshizawa (namely, the use of acknowledgment numbers) and Szlam to form the combination of elements found in claim 31.  Plaintiff also identifies other problems associated with combining the specific implementations disclosed in the prior art but fails to link the problems to elements found in claim 31.  In sum, Yoshizawa provides an express suggestion to combine Yoshizawa's technology with order entry applications like Szlam, and any problems associated with combining specific implementations do not teach away from the claimed combination.

### b.  Receiving Caller Numbers Identification Signals

Plaintiff also contends neither Szlam nor Yoshizawa disclose "receiving caller numbers identification signals . . . from said communication facility" and "recording said caller number identification number signals" as required by claim 31.  In response, defendants point out that claim 45 of Szlam discloses a control means that "receives said calling party telephone number from said ANI decoder means for said one of said trunks, [and] provides said calling party telephone number to said data terminal of an available said operator terminal and to said

information storage system." This clearly discloses the limitations that plaintiff argues are missing from the Szlam/Yoshizawa combination.

### c.   ANI and Customer Keyed in Customer Number Together

Together the "receiving" and "selectively identifying" steps in claim 31 require a system 1) in which there is ANI, and 2) the caller digitally keys in a customer number which is used to access a file. Szlam discloses both these elements as alternatives – obtaining account information by ANI or allowing the caller to input the information. (Szlam at 12:29-42; 13:1-25.) Plaintiff argues that by describing these features in the alternative, Szlam teaches away from using these elements together.

In response, defendants argue that claim 54 of Szlam demonstrates that callers input their account information when ANI is received. (Preive 2nd Decl. at ¶ 136.) However, defendants' expert fails to mention that ANI is not received in claim 54 and the caller is prompted to provide the calling party telephone number. Therefore, claim 54 does not show Szlam discloses ANI and caller keying in customer information in the same system

Nonetheless, Szlam clearly discloses both receiving ANI signals and allowing callers to input their account numbers, albeit in separate embodiments. Simply because these techniques appear in different embodiments does not mean that Szlam teaches away from using them together in the same system and this Court rejects plaintiff's argument. Rather, Szlam demonstrates that both techniques are useful for obtaining information over the telephone. Whether a person of ordinary skill in the art would use both techniques in one system simply depends on the nature of the problem.

### d.  Finding

Accordingly, this Court grants in part, defendants' motion for summary judgment. Specifically, this Court finds that claim 31 is obvious in view of a combination of Szlam and

Yoshizawa.  Again, this Court notes the existence of secondary factors, but finds that they cannot overcome two prior art references that 1) indisputably discloses all the limitations; and 2) contain an express suggestion to combine.

### 2.  Claim 35 in view of Szlam and Yoshizawa

Claim 35 is dependent on independent claim 34.  Together claims 34 and 35 recite:

34. A method for controlling voice-data communications with a system operating a format for use with a communication facility including remote terminals for use by certain individual callers, wherein said remote terminals include a digital input device for providing digital responsive signals, said method comprising the steps of:

interfacing said certain individual callers with an interface unit of said system operating the format;

prompting said individual callers via a voice generator to provide responsive signals representative of identification data via said digital input device of said remote terminals;

receiving from said individual callers responsive signals representative of caller identification data;

comparing said caller identification data received against a file on said individual callers to determine if said caller identification data received is already of record;

utilizing said caller identification data received to access the file to locate other data associated with said caller identification data;

transferring at least certain of said individual callers to an attended terminal;

displaying at said attended terminal at least a portion of the other data associated with the caller identification data; and

*providing computer generated  acknowledgement numbers to said individual callers to*
*identify transactions to the individual callers and the system.*

35. A method according to claim 34, wherein said caller identification data provided by said individual caller includes customer number data.
(emphasis added)

Defendants argue that Szlam discloses all the limitations except providing an acknowledgment number.  Again, they say that this limitation is found in Yoshizawa.  Thus, defendants conclude that claim 35 is also obvious in view Szlam and Yoshizawa.

In response, the plaintiff advances the same arguments against combining these references that it did with respect to claim 31.  This Court has already rejected that analysis.  As a result, this Court grants in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 35 is obvious in view of a combination of Szlam and Yoshizawa.

### 3.  Claim 43 in view of Szlam and Yoshizawa

Like claim 35, claim 43 is dependent on independent claim 34.  Claim 43 recites:

43. A method according to claim 34, wherein the data displayed includes caller telephone number data.

Defendants argue that claim 43 of the '965 patent is also obvious in view Szlam and Yoshizawa.  In response, the plaintiff advances the same arguments against combining these references that it did with respect to claim 31.  This Court has already rejected that analysis.  As a result, this Court grants in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 43 is obvious in view of a combination of Szlam and Yoshizawa.

### 4.  Claim 53

Claim 53 is dependent on claim 51 which is dependent on independent claim 34.  The text of claim 34 is found in subsection (2).  Claims 51 and 53 recite:

51. A method according to claim 34, wherein said other data displayed includes caller name data.

53. A method according to claim 51 wherein additional data relating to the call is order data.

### a.  In view of Szlam and Yoshizawa

Defendants argue that claim 53 of the '965 patent is also obvious in view Szlam and Yoshizawa.  In response, the plaintiff advances the same arguments against combining these

references that it did with respect to claim 31.  This Court has already rejected that analysis.  As a result, this Court grants in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 53 is obvious in view of a combination of Szlam and Yoshizawa.

### b.  In view of Barger and Yoshizawa

Defendants also argue that claim 53 of the '965 patent is obvious in view U.S. Patent No. 4,071,698  entitled "Telephone System for Audio Demonstration and Marketing of Goods and Services"issued on January 31, 1978 ("Barger") and Yoshizawa.  Barger discloses a system for marketing merchandise or services capable of being demonstrated by telephone.  For example, a customer might want to hear a portion of a recording before purchasing the same.  The Barger system enables the customer to request that a demonstration of the desired recording be played over the telephone.  Afterwards, if the customer decides to purchase the recording, the customer can do so during the same telephone call.

In one embodiment, the customer is automatically connected to an operator, who elicits the customer's name, address, and account number, along with any desired demonstrations.  If the customer desires a demonstration, the operator enters a demonstration call number into the data processing system, and causes the demonstration to be played.  Once the demonstration has been played, the data processor returns the customer to an operator.  The operator's display shows the data associated with the call, including historical data and credit verification data.  The operator can enter an order desired by the customer into the data processor.  The order entry, which includes the customer's name, address and account data or credit card data, is made through the operator's terminal to the data processor, which in turn, causes the order to be transferred to a magnetic storage means for processing.  Before the order is accepted, the operator may request credit verification through the data processor or other device using the customer's credit card or account number.

In another embodiment of the system, the customer and data processor interact directly, with the customer entering all required information through his touch-tone telephone, and the data processor communicating with the customer through prerecorded messages.  To enter this mode of communication, the customer can either request that the operator connect him directly to the data processor, or can call a distinct telephone number that connects the caller to the data processor.

Plaintiff does not dispute that the combination of Barger and Yoshizawa discloses all claim 53's limitations.[10]  Instead, plaintiff argues that there is no motivation to combine these references.  Both parties repeat essentially the same arguments they advanced for and against combining the Szlam and Yoshizawa.

Defendants rely on the fact that Yoshizawa expressly suggests using its voice response unit technology in other applications including order entry (Yoshizawa at p. 220) and that Barger is such an application.  Moreover, defendants argue that the combination of features yields predictable results.

In response, plaintiff makes numerous attempts to show that there is no motivation to combine Barger and Yoshizawa.  First, plaintiff argues that Barger and Yoshizawa are very different applications.  Specifically, plaintiff focuses on the different time pressure involved in a betting system and a system that allows callers listen and purchase music.  Second, plaintiff again points out that Yoshizawa does not use operators while Barger does not.  Third, plaintiff again argues that the express suggestion found in Yoshizawa is limited to the voice response unit itself.   Fourth, plaintiff argues that there is no reason to use the acknowledgment numbers from

---

[10] Although the title of Section III.C.4  of plaintiff's opposition appears to argue that acknowledgment numbers are not disclosed, the body of that section shows that plaintiff is simply arguing that Yoshizawa, which discloses acknowledgment numbers, should not be combined with Barger.

1    Yoshizawa because Barger does not disclose cancelling orders and even if it allowed for

2    cancelling that could be done through operators.

3            Again, in view of Yoshizawa's express suggestion to combine, this Court rejects each of

4    plaintiff's arguments.  First, plaintiff overstates the differences in the applications.  Even if that

5    were not the case, the express suggestion to combine Yoshizawa's technology with order entry

6    applications would clearly motivate a person of ordinary skill in the art to combine an order entry

7    system like Barger with Yoshizawa.  Second, as discussed earlier, the absence of operators in

8    Yoshizawa does not imply that operators should not be used with automated voice response

9    units.  Third, this Court has previously found that Yoshizawa's suggestion is not limited to just

10   its voice response units, but extends to its voice response unit technology generally.  Fourth,

11   plaintiff once again improperly focuses on problems with combining the specific

12   implementations disclosed in the references.  Since cancelling orders is not a problem linked to

13   claim 53, this argument does not teach away from the Barger/Yoshizawa combination.

14           In sum, Yoshizawa provides an express suggestion to combine Yoshizawa's voice

15   response unit technology with order entry applications like Barger.  The problems that plaintiff

16   identify fail to overcome that suggestion.  Again, the existence of modest secondary factors of

17   non-obviousness cannot overcome the strength of the Barger/Yoshizawa combination.  Thus, this

18   Court grants, in part, defendants' motion for summary judgment and finds that claim 53 is

19   obvious in view of the combination of Barger and Yoshizawa.

20       **5.  Claim 61 in view of Szlam and Yoshizawa**

21           Claim 61 of the '965 patent relates to a method for controlling communications between

22   remote terminals and a communication facility.  Many of the steps recited in claim 61 correspond

23   to steps also found in claim 35.  Claim 61 also contains "processing" and "confirming" steps that

24   were not addressed earlier.   Specifically, claim 61 recites:

61. A method for controlling voice-data communications for use with a communication facility including remote terminals for individual callers, wherein said remote terminals include a digital input device for providing digital responsive signals, said method comprising the steps of:

cuing select ones of said remote terminals via a voice generator to prompt selective actuation by callers of said digital input device to provide responsive signals;

receiving said responsive signals including signals indicative of a customer identification number for an individual caller that may be utilized to access a file for said individual caller or receiving said responsive signals including signals indicative of other data;

testing at least a portion of said customer identification number for approval;

*processing the other data for the individual caller utilizing multiple comparative operations*;

*confirming with said individual caller, via the voice generator, certain of said data stored in said file for said individual caller*; and

transferring a call from said individual caller to an attended terminal and displaying at least a portion of data stored in said file at said attended terminal under control of said responsive signals indicative of said customer identification number wherein said attended terminal has a capability for data to be entered to facilitate completion of the call from said individual caller (emphasis added).

Defendants argue claim 61 is also obvious in view of a combination of Szlam and Yoshizawa. In response, the plaintiff does not identify any limitations from claim 61 that Szlam and Yoshizawa fail to disclose. Instead, plaintiff argues that there is no motivation to combine those specific elements in Yoshizawa that correspond to the "processing" and "confirming" steps with Szlam's order entry system.

In Yoshizawa, betting data for a particular race is entered using a specific sequence of numbers. (Yoshizawa at p. 217.) For example, when prompted to enter a bet, Yoshizawa requires the caller to enter a nine digit number that contains four fields representing the race number, the type of bet (e.g. win, place etc.), horse number and number of tickets. To process the data, Yoshizawa must utilize multiple comparative operations thereby satisfying claim 61's

"comparing" step.  Plaintiff argues that there is no motivation to use the sequence of numbers in a customer service system like Szlam because such a system would be "baffling."[11]

Yoshizawa also discloses that bets are confirmed by providing a registration number to the caller.  (Yoshizawa at p. 217.)  According to defendants, this limitation satisfies claim 61's "confirming" step.  Plaintiff argues that there is no motivation to combine this feature with Szlam because of the special context of Yoshizawa that includes time constraints, seasoned bettors and a coding system to enter bets.  Thus, Yoshizawa was "designed to carefully read back the stored information about the bet identified by the number keyed in, before the bettor cancels it.  (Brody Decl. at ¶ 120.)  Since Szlam has operators, plaintiff argues the Yoshizawa's playback system was not needed.

Once again, plaintiff incorrectly focuses on the difficulties of combining the specific implementations disclosed in the references.  Plaintiff focuses on the problems and needs of a betting system.  However, plaintiff fails to link these problems with combining the steps of: 1) "processing" data using "multiple comparative steps;" or 2) or "confirming" that data is stored for a caller, with other limitations found in claim 61.  Thus, even if the plaintiff has accurately described these technical difficulties, they are not relevant to the present issue.  Moreover, the specific problems plaintiff identified make little sense.  There is no rational basis for concluding that entering codes is incompatible with an order entry system.  Indeed, Yoshizawa is simply a specialized order entry system.  Similarly, there is no rational basis for suggesting that providing transaction confirmations is incompatible with systems that have operators like Szlam.

Accordingly, this Court grants in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 61 is obvious in view of a combination of Szlam and Yoshizawa.  In making this decision, the Court again notes that the plaintiff has argued that

---

[11] Plaintiff refers to this sequence as the "coded betting information."

secondary factors show all its claims were non-obvious.  Again, the existence of modest secondary factors of non-obviousness cannot overcome the strength of the Szlam/Yoshizawa combination that 1) discloses all the limitations; and 2) includes an express suggestion to combine the references.

### 6.   Claim 66 in view of Szlam and Yoshizawa

Claim 66 is dependent on independent claim 61.  Claim 66 recites:

66. A method according to claim 61 wherein at least part of the data stored in the file is caller address data.

Defendants argue that claim 66 is obvious in view of a combination of Szlam and Yoshizawa.  Szlam discloses the additional limitation found in claim 66 -- requiring that caller address data is stored.  Plaintiff's relies on the same validity arguments with respect to claim 66 as it did for claim 61.  This Court has already rejected that analysis.  As a result, this Court grants, in part, defendants' motion for summary judgment.  Specifically, this Court finds that claim 66 is obvious in view of a combination of Szlam and Yoshizawa.

### D.  U.S. Patent No. 6,678,360 ("the '360 patent")

Defendants also move for summary judgment on claims 14, 18 and 36 of the '360 patent arguing that these claims are obvious.  This Court's decision on defendants' Joint Motion for Summary Judgment Under § 112 found that these claims were invalid under 35 U.S.C. § 112 ¶ 1 for failing to provide a written description.  As a result, this Court does not reach the issue of obviousness raised in this motion.

### E.  U.S. Patent No. 6,434,223 ("the '223 patent")

Claim 5 relates to call processing system.  Some of the key features include a means for receiving calls from different calling modes (e.g. toll free, caller charge or area code mode).  The system can cue callers and receive signals from the callers.  Specifically, Claim 5 recites:

> 5. A telephone call processing system for receiving calls through a telephone communication facility from a multitude of terminals for processing in a select interface format wherein callers are cued by synthesized voice signals supplied to said multitude of terminals and respond with digital signals, as by actuating push buttons at said multitude of terminals, said telephone call processing system comprising:
>
> means for selectively receiving calls from said multitude of terminals to establish telephone communication with a select subset of callers, said means for selectively receiving calls comprising means for receiving calls in a plurality of call modes including a toll free calling mode and a caller charge calling mode or an area code mode;
>
> means for providing identification signals entered by said callers of said select subset;
>
> means for individually cueing said callers of said select subset to prompt digital signals, wherein at least certain of the cues and their responsive digital signals are a part of common processing operations for the plurality of call modes to isolate a sub-subset of said callers; and
>
> means for storing identification signals for said callers of said sub-subset.

Defendants argue that claim 5 of the '223 patent is obvious in view of "ISDN Opportunities for Large Business - 800 Service Customers" by A. Friedes published in June, 1986 in IEEE - International Conference on Communications '86 ("Friedes") and U.S. Patent No. 4,969,183 entitled "Telephone Lotto Number System and Service" issued on November 6, 1990 and filed on August 28, 1989 ("Reese").  Plaintiff does not dispute that Friedes is prior art, but argues that Reese does not qualify as prior art because Mr. Katz conceived of the invention found in claim 5 prior to March, 1989 and actually reduced it to practice by March, 1989, several months prior to Reese's August 28, 1989 filing date.

In order to establish an actual reduction to practice, plaintiff must establish three things: (1) construction of an embodiment that meet all the limitations of claim 5; (2) that the invention

would work for its intended purpose, and (3) the existence of sufficient evidence to corroborate inventor testimony regarding these events.  *See*, *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169 (Fed. Cir. 2006).  Plaintiff offers 1) the declaration of the inventor, Ronald Katz, 2) a March 17, 1989 letter proposing that radio station KABC in Los Angeles hold a "Singapore Fling" contest on March 27, 1989, and 3) an undated slide show that supposedly showed how the campaign actually operated.[12]  The letter describes the Singapore Fling promotion as a telephone based contest that allowed callers to dial a 900 number (toll based).  Alternatively, listeners could send a stamped self-addressed envelope to the contest sponsors, who would then mail the listener a free 800 number and PIN that could be used for a single free entry.  Mr. Katz's declaration provides a claim chart showing how the system implementing the Singapore Fling contest satisfied claim 5 of the '223 patent.

Defendants argue that plaintiff's evidence fails to corroborate the March, 1989 date as a matter of law because it does not disclose every limitation found in claim 5.  Specifically, defendants argue that plaintiff's evidence fails to show that the structural components of claim 5's means plus function limitations were present.  Although the documentary evidence does not show any structure, Mr. Katz's declaration discusses various structures, including audio response units that Mr. Katz recalls were used to operate the Singapore Fling campaign.  "Sufficiency of corroboration is determined by using a "rule of reason" analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony."  *Medichem*, 437 F.3d at 1170 citing to *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993).  "Whether or not corroboration exists is a question of fact."  *Medichem*, 437 F.3d at 1171.  In view of plaintiff's documentary evidence, this Court cannot find insufficient corroboration as a matter of

---

[12] Plaintiff also offered a number of other documents in attempt to further corroborate the March, 1989 reduction to practice.  (Katz Decl., Exhibits 3-7.)  However, those documents are dated substantially later and do not provide any reliable corroboration.

law.  Therefore, this Court denies, in part, defendants' motion for summary judgment with respect to the validity of claim 5 of the '223 patent because, at a minimum, the jury needs to determine the priority date.  This Court does not reach the issue of whether claim 5 would be invalid if Reese were prior art.

## F.  U.S. Patent No. 5,561,707 ("the '707 patent")

Claim 69 of the '707 patent relates to method of controlling a telephone communication system by using products that carry participation numbers.  The participation numbers specify limits on use to entitle individual callers to access operations of the communications system. Specifically, claim 69 recites:

> 69. A process for controlling operations of an interface with a telephone communication system, said process including the steps of:
>
> providing *products carrying participation numbers specifying limits on use to entitle individual callers to access said operations of the interface with said telephone communication system*;
>
> coupling remote terminals to said interface for providing voice signals to said individual callers and generating said voice signals for actuating said remote terminals as to provide vocal operating instructions to specific ones of said individual callers;
>
> receiving digital identification data from said individual callers responsive to said voice signals including said participation numbers for said individual callers and answer data provided from said remote terminals under control of said individual callers;
>
> *qualifying said individual callers by testing to determine if said individual callers are entitled to access said operations of the interface based on said limits on use specified by said participation numbers for said individual callers* and accordingly providing approval signals for qualified individual callers;
>
> accessing a memory with said participation numbers for said individual callers and storing data relating to calls from said individual callers; and
>
> processing at least certain of said answer data responsive to said approval signals (emphasis added).

1   Defendants argue that claim 69 of the '707 patent is anticipated by U.S. Patent No.

2   3,792,446 entitled "Remote Postage Meter Resetting Method," issued on February 12, 1974

3   ("McFiggins") and/or obvious in view of the combination of McFiggins and U.S. Patent No.

4   4,447,890 entitled "Remote Postage Meter Systems Having Variable User Authorization Code"

5   issued on May 8, 1984 ("Duwel").  The plaintiff does not dispute that these references qualify as

6   

7   prior art.

8   **1.   Claim 69 in view of McFiggins**

9   Defendants argue that claim 69 is invalid because it is anticipated by McFiggins.

10  McFiggins discloses a method for recharging a remote postage meter.  A caller who wishes to

11  recharge his postage meter calls a data center by telephone. The data center utilizes a computer

12  and a voice response unit to provide instructions to the caller.  In response to these instructions,

13  the caller inputs numeric information such as an account number and a meter number.  After

14  validating the caller's information, the data center computer asks the caller to provide additional

15  information from the meter to perform various other checks.  If all the checks pass, the system

16  provides the caller with a combination.  The caller can recharge his postage meter by entering the

17  combination into the postage meter.  Each postage meter contains a fixed number of reset

18  combinations, for example, 500.  Once the reset combinations in the postage meter have been

19  exhausted (e.g., after 500 calls), the caller must seek human assistance to secure more

20  combinations for his meter.

21  

22  

23  **a.   "products carrying participation numbers"**

24  Plaintiff argues that McFiggins fails to disclose several limitations.  First, plaintiff argues

25  that McFiggins does not disclose "products carrying participation numbers" because there is no

26  indication in McFiggin's that the meter number is actually found on the postage meter.

27  Plaintiff's expert suggests that it may be in the packaging or the documentation.  (Brody Decl. at

28

1   ¶ 169.)  Defendants respond by attaching a Pitney Bose postage meter manual that supposedly

2   corresponds to the McFiggins patent.  The manual shows that the meter number is engraved on

3   the meter.   Thus, the defendants conclude that "the postage meter of McFiggins would

4   necessarily 'carry' its meter number."  (Prieve 2d. Decl. at ¶ 168.)  The defendants are relying on

5   the McFiggins patent, not the Pitney Bose product manual as prior art.  At most, defendants'

6   evidence shows that the meter number was carried on the meter in the commercial embodiment,

7   not that it was necessary.

8

9           b.   "specifying limits on use to entitle individual callers to access said
10               operations of the interface"

11          Plaintiff also argues that McFiggins fails to disclose numbers "specifying limits on use to

12  entitle individual callers to access said operations of the interface" and "qualifying said

13  individual callers . . . based on said limits . . .."  Plaintiff does not dispute the fact that McFiggins

14  uses meter numbers to limit a caller's ability to obtain combinations to recharge the meter.

15  Instead, plaintiff points out that the recharging limit was an "unintended artifact of limited

16  memory and computing power in the meter, not an intent to limit access to the telephonic

17  system."  (Pl. Opp. at 40.)   Plaintiff goes on to argue that McFiggins actually taught away from

18  using limits as technology improved.  Even if true, plaintiff's arguments do not change the fact

19  that McFiggins discloses the disputed limitation.  Specifically, McFiggins discloses a

20  participation number (the meter number) that specifies a limit (500) on a caller's ability to access

21  an operation (obtaining recharging combinations) from a data center.

22

23          c.   "individual callers"

24          Plaintiff also focuses on the term, "individual callers," in claim 69. Plaintiff argues that

25  McFiggins does not disclose limitations that relate to individual callers because McFiggins

26  protects the integrity of the "postage meter itself; [it] has nothing to do with limiting the use of

27  the *telephonic system* by an *individual caller*."  (Pl. Opp. at 41.)  This argument is incorrect

28

1    because in McFiggins, an individual caller, not a postage meter, calls the data center.  As a result,

2    the system tests the meter number to determine whether or not to provide the individual caller

3    with a combination to recharge the caller's meter.

4
5              d.   **"processing at least certain of said answer data responsive to said approval signals"**

6              Finally, plaintiff argues that McFiggins does not disclose "processing at least certain of

7    said answer data responsive to said approval signals."  Defendants argue that the "processing"

8    step is satisfied when the caller enters ascending and descending register values from the postage

9    meter (highlighted in the 3rd column in Figure 2 below).  The data center compares these values

10   to totals stored in memory as part of a check.  (McFiggins at 6:32-36.)  However, plaintiff notes

11   that claim 69 requires that processing step most occur *in response* to the approval signals and

12   that defendants have identified the combination provided to the caller to recharge the postage

13   meter as the required approval signals.  (Prieve Decl. at ¶ 917 (highlighted in furthest right

14   column in Figure 2 below).)  As shown in Figure 2, the data center provides the combination

15   (approval signals) after it processes the ascending and descending register values entered by the

16   caller (processing step).  The steps defendants have identified occur in the wrong order because

17   the comparison step must occur after (i.e. in response) to the approval signals.  Therefore,

18   defendants have failed to show that McFiggins discloses the last step of claim 69.

19
20
21
22
23
24
25
26
27
28



FIG. 2

### e.   Ruling

To show anticipation, every limitation must either be expressly or inherently described in a single reference. *Verdegaal Bros.* 814 F.2d at 631.  Since McFiggins does not disclose "products carrying participation numbers" and "processing at least certain of said answer data responsive to said approval signals," this Court denies defendants' motion summary judgment, in part, and does not find that McFiggins anticipates claim 69.

### 2.   Claim 69 in view of McFiggins and Duwel

Defendants also argue that claim 69 is obvious in view of a combination of McFiggins and Duwel.  Like McFiggins, Duwel discloses a method for a user of a postage meter to call a remote data center and receive a code for recharging the postage meter.  When a user seeks to recharge the postage meter, the user enters a reset amount into the meter.  The postage meter generates a unique authorization code based upon both the number of times the meter has been reset and the amount of postage requested (the reset amount).  The user uses the authorization

1   code to access the data center over the telephone.  The data center generates a combination and

2   provides it to the user.  The user then inputs that combination into the postage meter to recharge

3   it.

4         Since defendants rely on the combination of McFiggins and Duwel, rather than Duwel

5   alone, this Court only needs to determine if the limitations missing from McFiggins are found in

6   Duwel and whether there is a motivation to combine the two references.

7   

8         **a.  "products carrying participation numbers"**

9         Plaintiff argues that Duwel does not disclose "products *carrying* participation numbers."

10  The postage meter in Duwel generates a unique authorization code every time the user seeks to

11  recharge it.  The user uses that code to access the remote data center.  Defendants argue that this

12  authorization code corresponds to the claimed "participation number."  (Prieve Decl. ¶ 892.)

13  Plaintiff points out that the authorization codes do not exist until the user inputs information

14  requesting the code.  Moreover, the code is not a fixed number.  Rather, the value of the code

15  depends, in part, on the reset amount that the user requests.  Therefore, plaintiff argues that the

16  postage meter does not "carry" the code within the meaning of claim 69.  A reasonable jury may

17  conclude that products that generate a series of unique codes do not satisfy a limitation that

18  requires products that carry participation numbers.  Therefore, this Court cannot rule that Duwel

19  discloses "products *carrying* participation numbers."[13]  As a result, this Court does not find that

20  either McFiggins or Duwel discloses products *carrying* participation numbers.  That does not

21  mean that this Court finds this limitation non-obvious.  Indeed, this feature may be obvious even

22  though the identified prior art does not disclose this limitation.  However, the current motion

23  only argues that this limitation is present as a matter of law in the two references.  This Court

24  rejects that position.

25  

26  

27  _____

28  [13] Moreover, the Court has not yet construed the term "carry" and the current briefs do not request a construction, let alone offer a construction that would allow the Court to dispose of this issue on summary judgment.

### b.   "processing at least certain of said answer data responsive to said approval signals"

Defendants do not argue that Duwel discloses "processing at least certain of said answer data responsive to said approval signals."[14]  Since this Court has previously found that defendants have failed to show that McFiggins discloses this step, the defendants have also failed to show that the combination of McFiggins and Duwel disclose this step.

### c.   Ruling

Since defendants have failed to show that either McFiggins or Duwel disclose "products carrying participation numbers" and "processing at least certain of said answer data responsive to said approval signals," this Court does not need to reach the question of whether there is motivation to combine these two references.  The Court denies defendants' motion summary judgment, in part, and does not find that claim 69 is obvious in view of the combination of McFiggins or Duwel.

### 3.   Claims 85 an 92 of the '707 Patent

Claims 85 and 92 of the '707 patent are both dependent on claim 69.  Defendants argue that these claims are also invalid in view of McFiggins alone, or the McFiggins/Duwel combination.  Since this Court has found that defendants have failed to show that the McFiggins/Duwel combination discloses all the limitations of claim 69, this Court also denies defendants' motion for summary judgment with respect to claims 85 and 92.

## V.   SUMMARY

In summary, this Court makes the following rulings:

**A.  Claim 57 and 67 of the '120 patent**

---

[14] In reviewing defendants' expert declaration, defendants only discuss how McFiggins supposedly discloses the last step of claim 69.  (Prieve Decl. ¶¶ 935-938.)

1.   This Court grants, in part, defendants' motion for summary judgment with respect to claim 57 and the Student Registration/Moosemiller combination.  Specifically, this Court finds claim 57 of the '120 patent is invalid as obvious in view of the combination of Student Registration and Moosemiller.

2.   This Court denies, in part, defendants' motion for summary judgment as related to claim 57 and the Student Registration/Calabrese combination because there are factual issues related to the priority date.

3.   This Court denies, in part, defendants' motion for summary judgment as related to claim 67 and the Student Registration/Calabrese combination because there are factual issues related to the priority date.

4.   This Court grants, in part, defendants' motion for summary judgment with respect to claim 67 and the Student Registration/Szlam combination.  Specifically, this Court finds claim 67 of the '120 patent is invalid as obvious in view of the combination of Student Registration/Szlam.

**B.  Claims 96 and 98 of the '863 patent**

This Court denies, in part, defendants' motion for summary judgment as related to claims 96 and 98 of the '863 patent because the request is moot in view of this Court's previous ruling invalidating these claims under 35 U.S.C. § 112.

**C.  Claims 31, 35, 43, 53, 61 and 66 of the '965 patent**

1-4.   This Court grants, in part, defendants' motion for summary judgment with respect to claims 31, 35, 43 and 53, and the Szlam/Yoshizawa combination.  Specifically, this Court finds claims 31, 35, 43 and 53 of the '965 patent are invalid as obvious in view of the combination of Szlam and Yoshizawa.  This Court also finds claim 53 is obvious in view of the combination of Barger and Yoshizawa.

5-6.    This Court grants, in part, defendants' motion for summary judgment and finds that claims 61 and 66 are obvious in view of a combination of Szlam and Yoshizawa.

**D.   Claims 14, 18 and 36 of the '360 patent**

This Court denies, in part, defendants' motion for summary judgment as related to claims 14, 18 and 36 of the '360 patent because the request is moot in view of this Court's previous ruling invalidating these claims under 35 U.S.C. § 112.

**E.   Claim 5 of the '223 Patent**

This Court denies, in part, defendants' motion for summary judgment as related to claim 5 and the Friedes/Reese combination because there are factual issues related to the priority date.

**F.  Claims 69, 85 and 92 of the '707 Patent**

This Court denies, in part, defendants' motion for summary judgment as related to claims 69, 85 an 92 of the '707 patent and McFiggins alone and the McFiggins/Duwel combination because defendants have failed to prove that various limitations are disclosed by these references.


**IT IS SO ORDERED**.


DATED: August 04, 2008

_____
Honorable R. Gary Klausner
United Stated District Judge