**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re:<br><br>Katz Interactive Call Processing Patent Litigation<br><br>This document relates to:<br><br>Case Nos. CV 07-2096 RGK (FFMx), CV 07-2099 RGK (FFMx), CV 07-2101 RGK (FFMx), CV 07-2134 RGK (FFMx), CV 07-2192 RGK (FFMx), CV 07-2196 RGK (FEMx), CV-07-2213 RGK (FFMxCV 07-2257 RGK (FFMx), CV 07-2299 RGK (FFMx), CV 07-2322 RGK (FFMx), CV 07-2325 RGK (FFMx), CV 07-2336 RGK (FFMx), CV 07-2339 RGK (FFMx), CV 07-2340 RGK (FFMx), CV 07-2360 RGK (FFMx), CV 07-3002 RGK (FFMx) | Case No. 07-ml-01816-B RGK (FFMx)<br><br><br>ORDER DENYING COLLECTIVE MOTION FOR JUDGMENT OF PATENT INVALIDITY |

## I.    INTRODUCTION

In approximately fifty different lawsuits, plaintiff Ronald A. Katz Technology Licensing, L.P. ("RAKTL") has alleged that various defendants infringe claims from its family of related interactive call processing patents.  The Judicial Panel on Multidistrict Litigation consolidated these cases for pretrial proceedings and transferred the consolidated case to this Court (07-MDL-1816).  This Court has grouped the different cases based on the date they were transferred and

allowed the defendants in the Group B cases to file joint summary judgment motions. Pursuant to that order, the defendants filed a joint motion for summary judgment of invalidity under sections 102 and 103 ("Joint Motion") arguing that eighteen of the ninety plus claims at issue were invalid.

Apparently, the different defendants were unable to agree on all the claims that they wished to include in the Joint Motion. As a result, some of the defendants successfully sought permission to file a second motion of invalidity to include additional claims. This Court set a thirty five page limit. The selected defendants subsequently filed a motion ("Collective Motion for Summary Judgment") whose memorandum complied with the page limit, but included a two page table that provided an index to numerous combinations of prior art. The index references a 293 page, 1864 paragraph Statement of Uncontroverted Facts and Conclusions of Law. That document in turn references three separate declarations of 454, 276 and 24 pages respectively. These declarations in turn reference voluminous exhibits primarily consisting of various prior art references and plaintiff's patents.

In response, plaintiff filed a motion to strike defendants' motion as impermissibly exceeding the 35 page limit. Although the motion appeared suspiciously like an attempt to overwhelm plaintiff with arguments that had little chance of actually prevailing, the Court issued an order allowing defendants to select a sample of its ten strongest claims for the Court to rule upon. The order stated that if plaintiff prevailed on all, or substantially all of those claims, the Court would rule on the remaining claims. On the other hand, if the defendants prevailed, the Court would strike the remainder of plaintiff's brief. Finally, the Court also indicated it might select some middle ground if it determined that some claims were invalid and others were valid, The defendants selected the following ten claims:

- claim 13 of U.S. Patent No. 6,148,065;

- claim 7 of U.S. Patent No. 6,434,223;

- claims 86 and 106 of U.S. Patent No. 6,678,360;

- **claim 2 of U.S. Patent No. 6,512,415***;*

- claim 19 of U.S. Patent No. 5,815,551*;*

- **claim 72 of U.S. Patent No. 6,424,703**;

- claims 116 and 201 of U.S. Patent No. 5,561,707*; and*

- **claim 67 of U.S. Patent No. 5,898,762.**

Subsequent to that selection, this Court ruled on the defendants' joint motion for summary judgment under section 112 and found that seven of the claims defendants selected were invalid.  This decision addresses the remaining claims (**found in bold above**): claim 2 of U.S. Patent No. 6,512,415 ("the '415 patent"), claim 72 of U.S. Patent No. 6,424,703; ("the '703 patent") and claim 67 of U.S. Patent No. 5,898,762 ("the '762 patent").

## II.    JUDICIAL STANDARD

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).  Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985) (en banc).  When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor.

A patent is presumed valid, and the defendants have the burden of proving invalidity by clear and convincing evidence. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*,

392 F.3d 1317, 1320 (Fed. Cir. 2004).   *Anderson,* 477 U.S. at 255.  Defendants' motion is brought pursuant to both 35 U.S.C. § 102 (anticipation) and 35 U.S.C. § 103 (obviousness).

**A.  Anticipation**

"Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Electronics Corp. v. PDI Comm. Systems, Inc.* 522 F.3d 1348, 1363 (Fed. Cir. 2008).  If an element is not expressly disclosed in a prior art reference, the reference still anticipates a subsequent claim if a person of ordinary skill in the art[1] would recognize that the missing element is necessarily present in the reference. *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,* 491 F.3d 1342, 1371-1372 (Fed. Cir. 2007)(citations omitted).

Although anticipation under 35 U.S.C. § 102 is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact.  *Golden Bridge Technology, Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

**B.  Obviousness**

If the claimed invention is not disclosed in a single prior art reference, a patent may still be invalid obvious under § 103. In *Graham v. John Deere*, 383 U.S. 1 (1966), the Supreme Court set forth the test for obviousness.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs,

---

[1] The parties have essentially the same view of the level of ordinary skill in the art of the patents.  In short, they both suggest that such a person would have a B.S. in Electrical Engineering or other technical field and several years of experience or the equivalent. (Brody Decl. at ¶ 8, Prieve Decl. at ¶ 17.)  For the purposes of this decision, the Court adopts these conclusions.

failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Id.*, at 17-18.

This test is a question of law based on underlying factual inquiries. *See, e.g., Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

## III.    PLAINTIFF'S PATENTS

Plaintiff's interactive call processing patents generally describe technology that enables telephone callers to exchange information with computer systems through a telephone network. This decision addresses three of plaintiff's patents on the merits, the '762 patent entitled "Telephonic-Interface Statistical Analysis System," the '415 patent entitled "Telephonic-Interface Game Control System" and the '703 patent entitled "Telephonic-Interface Lottery System."

## IV. CLAIM BY CLAIM ANALYSIS

### A.  Claim 67 of the '762 Patent

Claim 67 of the '762 patent is dependent on claim 41 and describes a system with an interface structure that receives voice and touch-tone signals.  Among its notable features, claim 67 includes limitations related to receiving data indicative of the caller's telephone number, determining an individual caller's credit and providing acknowledgment numbers. Specifically, claim 67 (including claim 41) recites:

41. An analysis control system for use in a mail order facility or the like, said analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals comprises voice communication means and digital input means in the form of an array of buttons for providing data, comprising:

interface structure coupled to said communication facility to interface said remote

terminals for voice and digital communication and including means to provide answer data signals provided by said individual callers from said remote terminals including signals indicative of an individual caller's customer number;

credit verification structure to verify on-line said individual caller's customer number to determine said individual caller's credit;

record structure including memory and control means connected to said interface structure to receive and store data provided by said individual callers;

*acknowledgement generator structure for providing a computer generated acknowledgement number to said individual callers*;

switching structure for transferring certain of said individual callers to a live operator; and

central processing station coupled to said record structure to receive accumulated data on said individual callers.

67. An analysis control system according to claim 41, wherein said interface structure receives calling digital data provided automatically by said communication facility *indicative of said individual caller's telephone number*.

'762 patent, claims 41 and 67 (emphasis added).

The defendants argue that claim 67 is rendered obvious by a combination of three references: (1) U.S. Pat. No. 4,071,968 to Barger et al. entitled "Telephone System for Audio Demonstration and Marketing of Goods or Services," which was issued on January, 31, 1978 ("Barger"),(2) an article by Kanichiro Yoshizawa, et al.,"Voice Response System for Telephone Betting," Hitachi Review, Vol. 26, No. 6 (1977) ("Yoshizawa"), and (3) U.S. Pat. No. 3,920,908 to Kraus entitled "Buyer Credit Service for a Telephone System," issued on November, 18, 1975 ("Kraus").

In response, plaintiff points out that Barger, Yoshizawa and Kraus were all part of the file history.  (Martiniak Decl. Ex 11.)  However, there does not appear to be any discussion of these references.  Exhibit 11 only shows that the examiner checked the boxes associated with these references.  Therefore, this Court gives less deference to the United States Patent and Trademark's Office ("USPTO") decision to grant the patent over these references than it would

had these references been substantially considered. *Cf*, MPEP § 2258.01 (in determining whether to grant reexamination, the USPTO also grants less weight to references that are not substantively considered).

**1. Description of Prior Art**

**a. Barger**

Barger discloses a system for marketing merchandise or services capable of being demonstrated by telephone. For example, a customer might want to hear a portion of a recording before purchasing the same. The Barger system enables the customer to request that a demonstration of the desired recording be played over the telephone. Afterwards, if the customer decides to purchase the recording, the customer can do so during the same telephone call.

In one embodiment, the customer is automatically connected to an operator, who elicits the customer's name, address, and account number, along with any desired demonstrations. If the customer desires a demonstration, the operator enters a demonstration call number into the data processing system, and causes the demonstration to be played. Once the demonstration has been played, the data processor returns the customer to an operator. The operator's display shows the data associated with the call, including historical data and credit verification data. The operator can enter an order desired by the customer into the data processor. The order entry, which includes the customer's name, address and account data or credit card data, is made through the operator's terminal to the data processor, which in turn causes the order to be transferred to a magnetic storage means for processing. Before the order is accepted, the operator may request credit verification through the data processor or other device using the customer's credit card or account number.

In another embodiment of the system, the customer and data processor interact directly, with the customer entering all required information through his touch-tone telephone, and the

data processor communicating with the customer through prerecorded messages.  To enter this mode of communication, the customer can either request that the operator connect him directly to the data processor, or can call a distinct telephone number that connects the caller to the data processor.

### b.  Yoshizawa

Yoshizawa discloses a telephone betting system using voice response. The system is designed to enable horse race fans to purchase parimutuel tickets by using a push-button telephone.  A subscriber calls the telephone betting center and inputs his account number, password number and the desired tickets.  The voice response unit transmits these inputs to the central processing unit through data communication lines.  The system provides the customer with an acknowledgment number which Yoshizawa calls a registration number.  (Yoshizawa at p. 217.)

### c.  Kraus

Kraus is a patent entitled "Buyer Credit Service for a Telephone System."  It discloses a credit center that can verify a caller's credit and provide that information to the called telephone set.  The caller initiates a call by using a prefix number and another number identifying the called set.  The caller is initially connected to the credit service.  The caller's telephone number is automatically provided and the credit center uses the number to verify the caller's credit.  The credit center automatically is connected to the called number so that it can provide the credit information.  The called set evaluates the caller's credit and can accept or reject the caller.  If the called set accepts the caller, the call is completed by connecting the caller and called telephones sets.

According to Defendants, Barger discloses all the limitations of claim 67 except generating an "acknowledgment number" and an interface structure that automatically receives

the "individual caller's telephone number."  They say that Yoshizawa and Kraus fill in those missing limitations.  Thus, defendants conclude that together, these three references disclose all the limitations of claim 67.  In response, the plaintiff argues that: 1) there is no motivation to combine these references, and 2) even such a motivation existed, specific limitations are not disclosed by the combination of these three references.

### 2.  Motivation to Combine Barger, Yoshizawa and Kraus

In an attempt to demonstrate a motivation to combine Barger, Yoshizawa and Kraus, defendants' expert, Walter Nicholes, merely states that the combination of elements from these references would lead to predictable results.  (Nicholes Decl. at ¶ 778.)  His declaration repeatedly makes substantially the same generalized statement with regard to other combinations of prior art as related to other claims.  However, he fails to explain why there is a motivation to combine these specific references.

In response, plaintiff argues that there is no motivation to combine these references because: 1) these references were "fundamentally dissimilar;" 2) Barger would not use ANI credit verification; and 3) Barger would not use an acknowledgment number.  (Brody Decl. at ¶¶ 362-368.)

The Court finds that Barger and Yoshizawa are very similar.  They are both call processing systems that allow a caller to use a telephone to purchase a good or service.  Both systems include a voice response system where the system prompts the caller by playing predefined messages over the telephone and the caller responds by inputting information into the caller's telephone.  The details of the prompts and requested information differ based on the individual needs of the application – purchasing services that can be demonstrated over the telephone and betting.

In contrast, the Court does not find that the Kraus reference is similar to either Barger or Yoshizawa.  Kraus does not describe the type of two way interactive voice response system disclosed in both Barger and Yoshizawa.  Instead of disclosing a system where a caller directly interacts with a call processing system, Kraus discloses a three party system.  As shown in Figure 1, the caller 10 is not originally connected to the called party 36.  Rather, the caller is first connected to a TSPS office 16 (traffic servicing positioning system) that in turn connected to a credit center 60.  In response to the caller, the TSPS connects the credit center to the called station to display the credit intelligence relevant to the caller.  Kraus at 6:67-7:9.  After receiving the credit information, the called party may accept or reject the incoming call from the calling party.  *Id.* at 7:5-9.  Kraus describes interaction between the caller and the credit center as well as between the called telephone and the credit center.  However, these communications are not made up of the kind of interactive voice communications described by Barger and Yoshizawa.



In their reply papers, defendants accurately point out that these three references pertain to computer-telephony integration.  However, defendants rely on this single fact to find a motivation to combine.  (Supp. Nicholes Decl. at ¶ 176.)   Apparently, defendants believe that

1   any references that fall within the broad category of computer telephony integration can be

2   combined.  In *KSR Int'l Co. v. Teleflex Inc*., 127 S.Ct. 1727, 1741 (2007), the Supreme Court

3   cautioned against applying rigid rules to determine whether a patent is obvious.[2]  Here,

4   defendants appear to suggest a rigid rule that would allow a party challenging a patent to

5   combine any elements from references that are in the same field regardless of how broadly that

6   field is defined.

7   

8         Defendants rely on a passage in *KSR* that states that "[t]he combination of familiar

9   elements according to known methods is likely to be obvious when it does no more than yield

10   predictable results." *KSR*, 127 S.Ct. at 1739.  However, *KSR* also noted that the analysis of

11   whether there is an apparent reason to combine "should be made explicit." *Id.* at 1741.

12   Subsequent to *KSR*, the Federal Circuit has gone on to state that the challenging party must still

13   "show some articulated reasoning . . . to support the legal conclusion of obviousness . . .."

14   *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1301 (Fed. Cir. 2007)

15   (citations omitted); *see also*, *Takeda Chemical Indus., Ltd. v. Alphapharm Pty., Ltd,* 492 F.3d

16   1350, 1357 (Fed. Cir. 2007) ("in cases involving new chemical compounds, it remains necessary

17   to identify some reason that would have led a chemist to modify a known compound in a

18   particular manner to establish prima facie obviousness of a new claimed compound.")  Here,

19   defendants do not explain why a person of ordinary skill in the art would specifically combine

20   elements from Barger, Yoshizawa and Kraus as required by the law.  Kraus does not fall into the

21   same category as Barger and Yoshizawa.  Therefore, this is not a case of simply combining

22   different features from similar references.  Thus, the Court finds that the explicit analysis

23   required by *KSR* is simply absent.

24   

25   

26   _____

27   [2] Specifically, the Supreme Court rejected a rigid application of the "teaching, suggestion, or motivation" test (TSM test), under which a patent claim is only proved obvious if "some motivation or suggestion to combine the prior art teachings" can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art.  *KSR*, 127 S. Ct. at 1741.

28

Since defendants have presented insufficient evidence to suggest that Kraus should be combined with Barger and Yoshizawa, they have failed to show that this combination can serve as a basis for invalidating claim 56.  The Court does not need to decide whether plaintiff's other arguments against combining these references have merit or whether these three references disclose all of claim 67's limitations.  Accordingly, the Court denies defendants' motion for summary judgment with respect to claim 67.  Defendants have failed to carry their burden to prove by clear and convincing evidence that claim 67 is obvious in view of the Barger/Yoshizawa/Kraus combination.[3]

**B.  Claim 2 of the '415 Patent**

Claim 2 of the '415 patent is dependent on claim 1.  Claim 2 describes a method in which calls are received with calling number signals provided automatically by the telephone network, which signals the system tests against negative data to determine the acceptability of the call.  Once a call is accepted, the system provides a select format that cues the caller and receives touch-tone signals in response. Some of those touchtone signals are tested against stored positive data to determine whether to provide the caller with further cues.  Specifically, claim 2 (including claim 1) recites:

> 1. A process for determining the acceptability of calls and *executing formats* in association with a communication facility including remote terminal apparatus for individual callers, wherein said remote terminal apparatus includes a telephonic instrument with voice communication means and digital input means in the form of an array of alphabetic, numeric buttons for providing data, said process including the steps of:
>
> receiving associated telephone number signals upon the instance of a call from one of said remote terminal apparatus;

---

[3] The Court does not address plaintiff's other arguments against combining Barger, Yoshizawa and Kraus because they are not necessary to the Court's analysis.

testing said associated telephone number signals with respect to stored negative data to determine the acceptability of said call from said one of said remote terminal apparatus as indicated by an acceptability signal;

accepting said call from said one of said remote terminal apparatus conditioned on said acceptability signal;

*interfacing via said communication facility to accepted calls to provide voice signals for cueing callers and receiving responsive digital data in accordance with a select format*; and

*testing at least certain of the responsive digital data against stored positive data to determine if further voice signals for cueing callers should be provided*.

2. A process according to claim 1 wherein said step of receiving associated telephone number signals includes receiving data represented by number identification signals provided automatically by said communication facility to indicate called or calling numbers.

'415 patent, claims 1 and 2 (emphasis added).

Defendants' memorandum and their expert, Rex Stringham, argue that claim 2 of the '415 patent is rendered obvious by U.S. Patent No. 4,799,255.  This patent is entitled "Communications Facilities Access Control Arrangement" by Billinger, et al., and was filed on January 30, 1987 and issued on January 17, 1989 ("Billinger").

Billinger discloses a method to regulate access to long distance transmission facilities. The system prompts the caller to enter an authorization code before allowing access to the long distance facilities.  If the authorization code is valid, the call is connected.  If not, the call access is denied and the improper attempt is stored in a security database.  The security database stores the number of times a specific calling telephone number attempts to access the long distance facilities without providing the correct authorization code.  When the number of invalid attempts exceeds a predetermined limit, the system restricts that telephone number from all further attempts to access the long distance transmission facility.

Plaintiff argues that Billinger does not disclose: 1) the preamble, 2) the interfacing step or 3) the second testing step (the last step in the claim).  Since the Court finds that Billinger does

1   not disclose either the interfacing step or the testing step, the Court does not address whether the

2   Billinger discloses the preamble.[4]

3       **1.   "interfacing . . . accepted calls to provide voice signals for cueing callers and**
4       **receiving responsive digital data in accordance with a select format"**

5       The interfacing step of claim 2 interfaces "accepted calls," that is, calls that have already

6   passed a first test that requires testing telephone numbers against "stored negative data."  If the

7   telephone number is acceptable, the accepting step accepts the call, and the interface step

8   provides an interface for the "accepted calls" that provides voices signals for cuing callers and

9
10  receiving responsive data.

11      Defendants' expert argues that Billinger discloses the interfacing step because it discloses

12  "a particular format where the system prompted the caller to enter an authorization code in order

13  to connect the call."  (Stringham Decl. at ¶ 382 (citing Billinger at 6:59-65).)  In response,

14  plaintiff argues that the "select format" requires a selection from among multiple formats.  By

15  itself, the language of the interfacing step does not require multiple formats.[5]  However, the

16  "format" defendants identified relates to calls before they have been accepted.  It does not

17  describe cuing callers and receiving responsive information for accepted callers.  Therefore,

18  defendants have failed to show that Billinger discloses the interfacing step.  Nor, does

19
20  defendants' expert explain why this step is an obvious variation of what Billinger describes.[6]

21
22      **2.   "testing at least certain of the responsive digital data against stored positive data**
        **to determine if further voice signals for cueing callers should be provided"**

23
24      The second testing step must occur after the interfacing step.  "[A]lthough a method

25  claim necessarily recites the steps of the method in a particular order, as a general rule the claim

---

26  [4] Moreover, the parties provided inadequate briefing on: 1) whether the preamble is limiting, or 2) the proper interpretation of "executing formats" in the preamble.

27  [5] Again, this decision does not address whether the preamble contains such a requirement.

28  [6] Defendants' experts conclude the discussion of each limitation with a stock phrase that suggests that the reference "including obvious and inherent variations thereof" disclose the limitation.

is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order." *Baldwin Graphic Systems, Inc. v. Siebert Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008).   Here, there are two passages in the testing step that demonstrate that it must occur after the interfacing step.   First, the testing operates on "the responsive digital signals."   These responsive digital signals were provided in the interfacing step.   Second, the testing determines if "further voice signals" should be provided.   The original voice signals were provided in the interfacing step.   By using the term "further," the testing step is clearly testing to determine if further voice signals should be provided after the voice signals provided in the interfacing step.

Defendants' expert argues that Billinger satisfies this limitation because Billinger discloses authorization codes that are tested "to determine if the code that was entered by the caller matched what was stored in the database.   If the code did not match, further prompting was obvious."  (Stringham Decl. at ¶ 385 citing to Billinger at 7:1-5.)  This test does not describe calls that have already been accepted and interfaced.   Rather it describes steps that occur prior to the acceptance of the call.   Therefore, defendants have failed to show that Billinger discloses the second testing step required by claim 2.   Nor, does defendants' expert explain why this step is an obvious variation of what Billinger describes.[7]

Accordingly, this Court denies defendants' motion for summary judgment with respect to claim 2.   Defendants have failed to carry their burden to prove by clear and convincing evidence that claim 2 is obvious in view of Billinger.

---

[7] In defendants' expert rebuttal declaration, defendants argue that a person of ordinary skill in the art would understand that an obvious variation of Billinger is to allow the caller to re-enter the authorization code if the caller was initially rejected. (Stringham Reb. Decl. at ¶¶ 105-106.)  Even if true, this does not disclose testing that occurs after interfacing an accepted call.

## C.  Claim 72 of the '703 Patent

Claim 72 of the '703 patent describes a system that interfaces with callers.  Some of its notable limitations include both dialed number identification signals (DNIS) and calling number identification signals.  The system uses the calling number to control certain operations of the interface.  It also selects a subset of callers and qualifies callers.  In full, Claim 72 of the '703 patent recites:

> 72. A telephonic-interface control system for use with a communication facility including remote terminal apparatus for individual callers to call, including voice communication means, and digital input means in the form of an array of alphabetic numeric buttons for providing identification data, said telephonic-interface control system comprising:
>
> *interface means* coupled to said communication facility to interface said remote terminal apparatus for voice and digital communication with said individual callers *based upon dialed number identification signals (DNIS)* indicative of a called number provided automatically from said communication facility,
>
> said interface means also receiving calling number identification signals provided automatically by the communication facility to identify a calling number,
>
> said interface means using said calling number identification signals for controlling certain operations of the telephonic-interface control system;
>
> *voice generator means coupled through said interface means for providing vocal instructions* to an individual caller to enter data and identification data;
>
> processing means for processing said data supplied by said individual callers, said processing means coupled to said interface means and selecting at least one subset of at least one caller from said individual callers;
>
> *qualification means* coupled to said interface means for *limiting access during at least an interval of time to said processing means* based upon comparing *said identification data with previously stored identification data* and wherein if a particular individual caller is not qualified, communication with that caller is either terminated or that caller is transferred to an interface terminal for communication with an operator; and
>
> *means for storing coupled to said interface means for storing said data in association with said previously stored identification data.*

'703 patent, claim 72 (emphasis added).

Defendants argue that claim 72 of the '703 patent is rendered obvious by U.S. Patent No. 4,757,267 entitled "Telephone System for Connecting to a Supplier of Goods" by Riskin, which was filed on June 17, 1987 and issued on July 12, 1988 ("Riskin").   Plaintiff notes that Riskin was identified during the file prosecution of the '703 patent, but there does not appear to be any evidence that the USPTO had any substantive discussion regarding Riskin.  (Ex. 9 to Martiniak Decl.)

Riskin described an interactive telephone system that automatically connected a caller with a nearby dealer based on certain criteria including the calling and called numbers, which were received from the telephone network.  The Riskin system associated the dialed number received from the telephone network with an advertisement and a set of call processing instructions.  Particular dealers were then selected to receive the call, in part by cross-referencing the calling and called telephone numbers with a database file listing each dealer by their product or service, as well as the location of each dealer using a longitude and latitude reference. The Riskin system also determined whether the dealer was open before connecting the call. The Riskin system created call record journals that stored call statistics and billing information.

Plaintiff argues that Riskin does not disclose: 1) a system that interfaces callers based on DNIS; 2) a voice generator that is coupled through the interface "means;" 3) limiting access to the process means "during at least an interval of time;" 4) a caller entering identification data; 5) terminating calls or transfer to an operator based on qualification; and 6) storing identification data with previously stored identification data.  Finally, plaintiff also points out that defendants' moving papers failed to perform the required means plus function analysis for claim 72's "processing means," "qualification means" and "means for storing."

### 1.  "to interface . . .  dialed number identification signals (DNIS)"

A careful review of plaintiff's expert declaration shows that plaintiff does not argue that Riskin fails to disclose interfacing based on DNIS.  Instead, plaintiff merely states that the portions of Riskin that defendants identify do not disclose this limitation.

> The cited portion of Riskin does not discuss if or how the CDSC 20 computer interfaces callers *based on* DNIS. Therefore, Mr. Stringham has not shown that Riskin discloses or renders obvious this claim.

(Brody Decl. at ¶ 228.)

In their reply brief, defendants correct any omission they made in their moving papers by explaining that Riskin uses DNIS information and a caller entered extension number to identify different advertisers, products and advertisements and associated handling instructions. (Rebuttal Stringham Decl. at ¶ 136 citing to Riskin at 20:33-36.)  As a result, the Court rejects plaintiff's argument and finds that Riskin does disclose interfacing based on DNIS.

### 2.  "voice generator means"

Claim 72 requires a voice generator means "coupled" through the interface means for providing vocal instructions to callers.  Defendants' opening papers showed that Riskin prompts callers with a computer that speaks.  (Stringham Decl. at ¶ 521 citing to Riskin at  16:5-10, 19:57-64.)   Thus, Riskin clearly shows some form of voice generator.  Again, plaintiff does not argue that the voice generator in Riskin is not coupled to an interface means.  It merely points out that the defendants did not demonstrate this connection. (Brody Decl. at ¶ 229.)   Defendants identified Riskin's CDSC (customer dealer service company) 20 as corresponding to the claimed interface means.  However, they identified a different CDSC "40" with regard to the voice generator.  (Def. Ex. 57.)   In their reply, defendants explain that this confusion was due to a typographical error and the "40" should have been a "20."  (Rebuttal Stringham Decl. at ¶138.) A review of Riskin shows that this error was apparent.  Moreover, it is also clear that CDSC 20

contains a computer.  Therefore, the Court finds that Riskin discloses a voice generator "coupled" through the interface.[8]

### 3.  "limiting access during at least an interval of time to said processing means"

Claim 72 requires a qualification means that limits access to the processing means during at least an interval of time.  Defendants point out that Riskin keeps track of both the current time and time zone where dealers are located.  If a dealer is closed, Riskin will connect the caller with a different dealer.  Riskin at 15:30-44.  Although this feature clearly relates to time intervals, plaintiff argues that Riskin does not disclose the type of limit required by claim 72.  Specifically, claim 72 requires limiting access to the "processing means."  Defendants identified Riskin's FEC (front end computer), FS and database as corresponding to claim 72's processing means. (Rebuttal Stringham Decl. at ¶ 134.)  The FEC receives touchtone signals from callers via the telephone network and when the FEC senses that the transaction is complete, it relays the signals to the file server. Riskin at 12:18-26.  After receiving the transaction from the FEC, the file server searches it database and retrieves records representing dealers of the specified product which are convenient to the caller.  Thus, to satisfy the "limiting access" limitation, defendants must show that Riskin limits a caller's access to the FEC, FS and database during some interval of time.  In its reply, defendants merely show that callers cannot access specific operations during some intervals of time (when dealers are closed).  That is not the same as limiting access to a processing means.  Therefore, this Court finds that Riskin fails to disclose "limiting access during at least an interval of time to said processing means."

### 4.  " individual caller to enter data and identification data"

The voice generator means requires a voice generator for providing vocal instructions to an "individual caller to enter data and identification data . . .."  Subsequently, the qualification

---

[8] For the purposes of the analysis in this subsection (2), no means plus function analysis was performed.

means uses that identification data by "comparing said identification data with previously stored identification."  Although defendants point out that Riskin's computer prompts callers "for many types of identification data, including their name and address," (Stringham Decl. at ¶ 521) that information is only used for "later transcription to a mailing list for follow up."  Riskin at 19:57-64.  Thus, the identification information defendants identify is not compared with previously stored identification as required by claim 72.

Defendants also point out Riskin's computer prompts callers to provide an extension number and indicate whether the caller is inquiring about a product or service.  (Stringham Decl. at ¶ 521.)  Plaintiff argues that this information is not the claimed "identification data" because that term "must mean data relating to the particular individual *caller* in some way."  (Brody Decl. at ¶ 239, emphasis in original.)  In its reply, defendants argue that they are only using the definition provided by plaintiff's expert, Dr. Kelly, and that definition is "data that identifies."  (Rebuttal Stringham Decl. at ¶ 144 (citing Kelly Common Report at p. 14).)  Moreover, defendants point out that the identification number described in the '703 patent relates to a lottery ticket not to the caller.  Therefore, defendants argue plaintiff's definition is not consistent with the specification.

The Court disagrees.  When the term identification data is used by itself, defendants' definition of "data that identifies" is entirely sensible.  However, claim 72 recites a caller entering identification data.  In this context, plaintiff's definition of "data relating to the particular individual caller in some way" is appropriate and is consistent with the lottery ticket description.  Therefore, the Court finds that selecting an extension number or indicating whether the inquiry is about a particular product or service does not disclose a caller entering "identification data."

**5.   "if a particular individual caller is not qualified"**

The qualification means states that "if a particular individual caller is not qualified, communication with that caller is either terminated or that caller is transferred to an interface terminal for communication with an operator."  To satisfy this limitation, defendants point out that Riskin checks the time-of-day and takes "one of several actions: (i) calling the closest dealer; (ii) calling another dealer in the same geographical area; or (iii) asking the caller to call back at some other time and terminating the call." (Stringham Decl. at ¶ 530.)   Plaintiff argues that Riskin is using the time of day to "decide how to handle the call, not to qualify the call." (Brody Decl. at ¶ 251.)  In reply, defendants argue plaintiff is merely asserting that "the intended purpose of the test in Riskin is different from the intended purpose of the test in [the limitation]" and the intent is irrelevant.  (Rebuttal Stringham Decl. at ¶ 153.)

The Court rejects defendants' argument because the intended purpose, "qualifying" callers, is specified in the claim language.  The limitation in dispute is the "*qualification* means" and that limitation discusses what happens "if a particular individual caller is not *qualified*." Although Riskin performs a test that results in transferring a call or terminating the call, the test still must relate to qualifying a caller.  Since the test does not relate to caller qualification, Riskin fails to disclose "if a particular individual caller is not qualified, communication with that caller is either terminated or that caller is transferred to an interface terminal for communication with an operator."

**6.   "storing said data in association with said previously stored identification data"**

The means for storing requires "storing said data in association with said previously stored identification data."  The "qualification means" limitation also operated on both "said data" and "said previously stored identification data."  When the "means for storing" limitation

is read in light of the "qualification means" limitation, it becomes clear that the identification data entered by the caller must be stored in association with previously stored identification data.

To satisfy this limitation, defendants identified Riskin's "Call Record Journal." (Stringham Decl. at ¶¶ 533-534.)  Riskin stored a Call Record Journal that contained several metrics regarding each call.  These metrics included the advertiser, product, dealer's telephone number, caller's telephone number, time connected, time hung up, etc.  Riskin at 17:52-18-14. In reply, defendants appear to concede that Riskin does not literally disclose this limitation. Instead, defendants now argue that it would have been obvious for a person of ordinary skill in the art to modify Riskin to conform with the "means for storing" limitation. (Rebuttal Stringham Decl. at ¶ 156.)

There are two problems with defendants' analysis.  First, it assumes that the Court accepted defendants' interpretation of caller entered identification data.  As discussed in subsection (4) above, the Court rejected that interpretation.  Second, Mr. Stringham's declaration merely contains a conclusory statement indicating that it would have been "common sense" to make the suggested modification.  That is certainly not sufficient to allow this Court to grant summary judgment of obviousness.

In sum, the Court finds that Riskin fails to disclose numerous limitation of claim 72. Accordingly, this Court denies defendants' motion for summary judgment with respect to claim 72 of the '703 patent.  Given the limitations missing from Riskin, this Court does not address plaintiff's attacks on the defendants' means plus function analysis.


## V.    SUMMARY

In sum, this Court denies defendants' request for summary judgment of invalidity with respect to claim 67 of the '762 patent, claim 2 of the '415 patent, and claim 72 of the '703 patent.

1      Based on the Court's previous ruling on the section 112 issues, this Court also denies as

2  moot defendants' request for summary judgment of invalidity with respect to claim 13 of the

3  '065 patent, claim 7 of the '223 patent, claims 86 and 106 of the '360 patent, claim 19 of the

4  '551 patent and claims 116 and 201 of the '707 patent.

5      Finally, the Court strikes the remainder of defendants' Collective Motion for Judgment of

6  Patent Invalidity as a Matter of Law on the grounds that it violates the Court's 35 page limit

7  order.  As discussed earlier, the Court was willing to provide defendants with relief from the

8  page limit provided that defendants could show that their oversized motion was likely to narrow

9  the issues for trial.  After reviewing a sample of defendants' "strongest" defenses, the Court has

10  determined that the remainder of defendants' weaker arguments have little hope of prevailing on

11  summary judgment.  The prior art identified with respect to the three claims examined by this

12  decision clearly failed to disclose several claimed limitations, and defendants did little to explain

13  why those missing limitations were obvious variations.  In many cases, defendants' obviousness

14  arguments appeared to contain boilerplate language.  Moreover, defendants did not even perform

15  the required means plus function analysis in their moving papers.  Although the Court does not

16  find that defendants' motion was frivolous, defendants have not shown that their filing would

17  substantially narrow issues for trial.  As a result, the Court is unwilling to consider the remainder

18  of the motion, which consists of over 1000 pages of substantive argument found in the statement

19  of uncontroverted facts and declarations.

20      **IT IS SO ORDERED**.

21

22  DATED: August  14, 2008

23  _____

24  Honorable R. Gary Klausner
   United Stated District Judge

25

26

27

28