1    VERNON M. WINTERS (Bar No. 130128)
     vern.winters@weil.com
2    CHRISTOPHER J. COX (Bar No. 151650)
     chris.cox@weil.com
3    JILL J. HO (Bar No. 236349)
     jill.ho@weil.com
4    STEFANI C. SMITH (Bar No. 251305)
     stefani.smith@weil.com
5    WEIL, GOTSHAL & MANGES LLP
     201 Redwood Shores Parkway
6    Redwood Shores, CA 94065-1175
     Telephone: (650) 802-3000
7    Facsimile: (650) 802-3100

8    MIKE McKOOL, JR.
     mmckool@mckoolsmith.com
9    MCKOOL SMITH P.C.
     300 Crescent Court, Suite 1500
10   Dallas, TX 75201
     Telephone: (214) 978-4000
11   Facsimile: (214) 978-4044

12   PETER J. AYERS
     payers@mckoolsmith.com
13   MCKOOL SMITH P.C.
     300 W. Sixth Street, #1700
14   Austin, TX 78701
     Telephone: (512) 692-8700
15   Facsimile: (512) 692-8744

16   Attorneys for Defendants
     AMERICAN AIRLINES, INC./AMERICAN BEACON ADVISORS, INC.
17

18            UNITED STATES DISTRICT COURT

             CENTRAL DISTRICT OF CALIFORNIA

19               WESTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>Katz Interactive Call Processing Patent Litigation<br><br>This document relates to:<br><br>Ronald A. Katz Technology Licensing L.P. v. American Airlines, Inc., *et. al.* CV 07-2196 RGK (FFMx) | Case No. 07-ML-1816-B-RGK (FFMx)<br><br>**AMERICAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**REDACTED VERSION**<br><br><br>The Honorable R. Gary Klausner |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   SUMMARY JUDGMENT STANDARDS ..................................................... 2

III.  THERE ARE GENUINE ISSUES OF FACT REGARDING
      WHETHER PATENTS-IN-SUIT ARE UNENFORCEABLE DUE TO
      PROSECUTION LACHES ............................................................................. 3

      A.   Prosecution Laches May Be Established Through A Pattern Of
           Conduct ................................................................................................ 3

      B.   Katz Unreasonably Delayed In Prosecuting His Claims ...................... 7

      C.   Katz's Behavior Was Inexcusable ..................................................... 10

      D.   Katz's Unreasonable and Unexplained Delays in Prosecution
           Prejudiced Others In The Field .......................................................... 11

IV.   THERE ARE GENUINE ISSUES OF FACT REGARDING
      WHETHER RAKTL SHOULD BE BARRED FROM ASSERTING
      ITS PATENTS UNDER THE DOCTRINE OF EQUITABLE
      ESTOPPEL ................................................................................................. 15

      A.   RAKTL Misled American By Failing To Identify The Asserted
           Claim, Failing To Identify The Accused Application, And
           Conducting Itself Differently Toward American Than Others .......... 15

      B.   American Was Lulled Into a Sense of Security .................................. 17

      C.   American Will Be Materially Prejudiced If RAKTL Is Allowed
           To Assert The '863 Patent ................................................................. 19

V.    CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.,*
52 F.3d 1062 (Fed. Cir. 1995)................................................................. 16, 19

*A.C. Aukerman v. R.I. Chaides Const. Co.,*
960 F.2d 1020 (Fed. Cir. 1992).................................................................passim

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986) ...................................................................................... 2, 3

*Chiron Corp. v. Genentech, Inc.,*
268 F. Supp. 2d 1139 (E.D. Cal. 2002)........................................................ 3, 4

*Digital Control, Inc. v. McLaughlin Manufacturing Co,*
248 F. Supp. 2d 1015 (W.D. Wash. 2003)...................................................... 14

*In re Bogese II,*
303 F.3d 1356 (Fed. Cir. 2002)........................................................................ 5

*Maxwell v. Baker, Inc.,*
86 F.3d 1098 (Fed. Cir. 1996)........................................................................... 4

*Reiffen v. Microsoft, Inc.,*
281 F. Supp. 2d 1149 (N.D. Cal. 2003) ..................................................... 1, 11

*Symbol Techs, Inc. v. Lemelson Medical, Education & Research Foundation,*
277 F.3d 1361 (Fed. Cir. 2002)......................................................................... 3

*Symbol Techs., Inc. v. Lemelson Medical, Education & Research Foundation,*
301 F. Supp. 2d 1147 (D. Nev. 2004) ...................................................passim

*Symbol Techs., Inc. v. Lemelson Medical, Education & Research Foundation,*
422 F.3d 1378 (Fed. Cir. 2005)................................................................passim

*Verizon California, Inc. v. Ronald A. Katz Tech. Licensing, L.P.,*
No. 01-CV-9871 (RGK).............................................................................. 5, 12

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

4

*Webster Electric Co. v. Splitdorf Electric Co.,*
    264 U.S. 463 (1924) ................................................................. 4, 7, 8

5

6

*Woodbridge v. United States,*
    263 U.S. at 56 (1923) ......................................................... 4, 7, 8, 12, 13

7

8

## STATUTES

9

35 U.S.C. § 120 ............................................................................. 7

10

35 U.S.C. § 252 ............................................................................. 14

11

12

Fed. R. Civ. P. 56(c) ...................................................................... 2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("RAKTL") fails to carry its burden of demonstrating that there remain no genuine issues of material fact such that it is entitled to summary judgment on the defenses of prosecution laches and equitable estoppel.

Prosecution laches may be applied to bar enforcement of a patent where the patentee unreasonably delayed prosecution of his patents in a manner that cannot reasonably be explained.   Reiffen v. Microsoft, Inc., 281 F. Supp. 2d 1149, 1153 (N.D. Cal. 2003); Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., 422 F.3d 1378, 1385 (Fed. Cir. 2005) ("prosecution laches may render a patent unenforceable when it has issued only after unreasonable and unexplained delay in prosecution").

Defendants American Airlines, Inc. and American Beacon Advisors, Inc. (collectively "American") have proffered *unrebutted* evidence that the vast majority of the asserted patents in the Katz portfolio took longer to prosecute than over 99% of comparable patents and that the delays in prosecution were unreasonable and unexplainable.   The record also establishes that, during the time Ronald Katz ("Katz") was filing his patent applications, he monitored the advancements in the field by others and incorporated claims to those advancements in his pending patent applications. Moreover, ample evidence suggests that this pattern of delay prejudiced other inventors, developers and adopters—including American—who invested time and resources in new call processing technologies not knowing that those technologies would subsequently be claimed by Katz to be his inventions. Thus, by dragging out his patent filings for almost 20 years, Katz manipulated the patent system to the detriment of American and the public at large.   This type of behavior is exactly what the doctrine of prosecution laches is designed to address.

1    In response to this persuasive evidence, RAKTL only proffers

2    conclusory statements that Katz was "diligent" in his prosecution or that his

3    behavior was not "egregious."   Plaintiff's Mot. at 11.   This is insufficient to

4    obtain summary judgment.   Anderson v. Liberty Lobby, 477 U.S. 242, 248

5    (1986).   Because the summary judgment record must be viewed in the light

6    most favorable to American, id. at 255, RAKTL's motion should be denied.

7    RAKTL's motion regarding equitable estoppel fares no better.

8    The record shows that RAKTL first introduced its patent portfolio to

9    American in 1997.   Throughout the ensuing nine years of communications,

10   however, RAKTL never once identified the only call-processing feature now

11   at issue—American's Non-Revenue Periphonics ("Non-Rev") application—as

12   potentially infringing.

13   The record shows that RAKTL's communications were

14   reasonably viewed as a series of empty threats regarding non-infringing

15   technologies, especially when contrasted with its aggressive conduct toward

16   other parties during the same time period.   American reasonably inferred that

17   RAKTL had no intention of suing, especially over an application only used

18   internally by American's current and former employees.   Thus, American

19   was lulled into a false security by RAKTL's conduct and continued to operate,

20   purchase, and invest in call-processing systems during that time.   This

21   evidence is sufficient to allow the trier of fact to find equitable estoppel

22   because all inferences must be drawn in favor of American at this juncture.

23   Id.   Accordingly, RAKTL's motion must be denied.

24   **II.   SUMMARY JUDGMENT STANDARDS**

25   Summary judgment is proper only if "there is no genuine issue as

26   to any material fact and . . . the moving party is entitled to judgment as a

27   matter of law."   Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248.

28   At this stage of litigation, the judge's role is "to determine whether there is a

1    genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.   To defeat a motion for

2    partial summary judgment, the non-movant "need only present evidence from

3    which a [fact finder] *might* return a verdict in [its] favor."   <u>Id.</u> at 257

4    (emphasis added).

5            RAKTL's motion for summary judgment on prosecution laches

6    must be denied if American presents *any* evidence that RAKTL engaged in

7    unreasonable delay in prosecuting its patents such that a fact finder might

8    return a verdict in its favor.   <u>See</u> <u>Chiron Corp. v. Genentech, Inc.</u>, 268 F.

9    Supp. 2d 1139, 1148 (E.D. Cal. 2002) (denying plaintiff's motion for

10   summary judgment of no prosecution laches).   Likewise, RAKTL's motion

11   on equitable estoppel must be denied if there is a genuine dispute about

12   whether American was materially prejudiced by relying on RAKTL's

13   misleading conduct.   <u>See</u> <u>A.C. Aukerman v. R.I. Chaides Const. Co.</u>, 960

14   F.2d 1020, 1043 (Fed. Cir. 1992) (reversing the district court's grant of

15   summary judgment on equitable estoppel because the elements supporting the

16   movant's claims "were in genuine dispute, that the evidence was not

17   perceived in the light most favorable to [the nonmovant], that inferences of

18   fact were drawn against [the nonmovant].").

19   **III.   THERE ARE GENUINE ISSUES OF FACT REGARDING**
     **WHETHER PATENTS-IN-SUIT ARE UNENFORCEABLE DUE**
20   **TO PROSECUTION LACHES**

21   **A.    Prosecution Laches May Be Established Through A**
     **Pattern Of Conduct**
22
23           Prosecution laches bars enforcement of patent claims issuing

     after unreasonable delays in prosecution.   <u>Symbol Techs, Inc. v. Lemelson</u>
24
     <u>Med., Educ. & Research Found.</u>, 277 F.3d 1361, 1368 (Fed. Cir. 2002)
25
     ("<u>Symbol II</u>").[1]   The "gist" of the rationale for the doctrine is that the
26

27   ─────────────────────────

28   [1]  In lieu of the naming convention used by RAKTL in its motion, American
     adopts the naming convention for the four <u>Symbol</u> cases used by the Federal

1   conduct of the inventor postpones the time when the public can enjoy the free

2   use of the invention.   Reiffin 281 F. Supp. 3d at 1150 (citing Woodbridge v.

3   United States, 263 U.S. 50 (1923)).   More specifically, the doctrine of

4   prosecution laches addresses the concern that an inventor will file narrow

5   claims, await intervening developments, and then file broader claims to cover

6   those developments.   Webster Elec. Co. v. Splitdorf Elec. Co., 264 U.S. 463,

7   465-66 (1924); Chiron Corp., 268 F. Supp. 2d at 1142.   Such behavior

8   undermines the "well-established rule" that subject matter disclosed in a

9   patent application but not claimed is dedicated to the public.   Maxwell v.

10  Baker, Inc., 86 F.3d 1098, 1106 (Fed. Cir. 1996).   Thus, not only does

11  prosecution laches prevent an applicant from unfairly extending his patent

12  monopoly, it also protects companies and others who have "invested in the

13  technology described in the delayed patents."   Symbol Techs., Inc. v.

14  Lemelson Med., Educ. & Research Found., 422 F.3d 1378, 1386 (Fed. Cir.

15  2005) ("Symbol IV"); Woodbridge, 263 U.S. at 56 (observing that prejudice is

16  imposed on "other inventors [who] had been at work in the same field").

17  Prosecution laches may render an entire patent unenforceable, even if the

18  delay only applied to a subset of claims.   See Symbol IV, 422F.3d at 1386

19  (rendering all claims of the asserted patents unenforceable due to prosecution

20  laches).

21          The Federal Circuit has expressly avoided setting forth "any firm

22  guidelines" because prosecution laches "is to be decided as a matter of equity,

23  subject to the discretion of a district court before which the issue is raised."

24  Id. at 1385.   Accordingly, rather than applying a static list of factors, the

25  Federal Circuit held that prosecution laches requires an "examination of the

26

27

28

Circuit in Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.,
LP, 422 F.3d 1378 (Fed. Cir. 2005) ("Symbol IV").

1  totality of the circumstances."[2] Id. at 1386.   Moreover, although an

2  applicant's delay in prosecuting a single patent application would not, by

3  itself, be enough to justify applying prosecution laches, a *pattern* of delay

4  across a family of patents may trigger prosecution laches:

> Taken singly, the delay in the prosecution on any one particular application will surely not appear to merit relief by the courts in equity.   On the other hand, an examination of the **totality of the circumstances**, including the prosecution history of all of a **series of related patents** and overall delay in issuing claims, may trigger laches.

Id. at 1385-86 (emphasis added).

10      Although intervening private or public rights **could** be factors

11  considered by the Court in evaluating the totality of circumstances,[3] the

12  Federal Circuit has never *required* the presence of public or private

13  intervening rights as an element of prosecution laches.   See Symbol IV, 422

14  F.3d at 1382 (citing intervening rights as *additional* factual considerations);

15  and In re Bogese II, 303 F.3d 1356, 1367 (Fed. Cir. 2002) (affirming Board of

16  Patent Appeals' forfeiture of patent based upon prosecution laches without

17  requirement of intervening rights).   Moreover, a particular defendant

18  asserting a defense of prosecution laches need not demonstrate harm to itself.

19  Reiffin 281 F. Supp. 3d at 1154 ("A defendant seeking to raise a prosecution

---

[2] This Court's earlier decision in Verizon California, Inc. v. Ronald A. Katz Tech. Licensing, L.P., No. 01-CV-9871 (RGK) (RCx), 2003 U.S. Dist. LEXIS 23553 (C.D. Cal. Dec. 2, 2003) was issued before the Federal Circuit's clarification of the doctrine in Symbol IV.

[3] In Symbol IV, the Federal Circuit affirmed the lower Court's application of prosecution laches based upon the "totality of the circumstances," including the patentee's culpable neglect, statistical information about the length of the patentee's prosecution relative to other patent prosecutions, and the presence of intervening rights.   422 F.3d at 1386.   However, contrary to RAKTL's suggestions in its brief (see Mot. at 7), the Court did *not* hold that these factors, taken individually or as a whole, were necessary elements of the defense.   Symbol IV, 422 F.3d at 1386.

1    laches defense need not prove specific harm or prejudice to itself successfully

2    to make the case for prosecution laches.")   The focus on public, rather than

3    private, interests derives from the rationale for the doctrine of prosecution

4    laches itself:

5    > Prosecution laches is not a doctrine, like traditional laches, aimed

6    > to protect specific competitors.   It rather serves the broader
     > public interests in the timely issuance of patents.   Because

7    > prosecution laches applies to the conduct of a patent applicant
     > prior to the issuance of a patent, **the doctrine cannot be aimed**

8    > **at protecting specific infringers or potential infringers from**
     > **prosecutorial delay**, because there can be no infringement until a

9    > patent has issued.

10   Id. (emphasis added). Therefore, to show prosecution laches, a defendant must

11   prove only that the patent holder unreasonably delayed in the prosecution of

12   the patents and in a manner that is not reasonably explained:

13

14   > Based on a review of the cases just discussed, the court concludes
     > that **there is but one element of the defense of prosecution**

15   > **laches that defendant must prove** to prevail on this issue:   that
     > plaintiff unreasonably delayed the prosecution of his patents in a

16   > manner that cannot be reasonably explained.

17   Reiffin, 281 F. Supp. 3d at 1151 (emphasis added).   See also Symbol Techs.,

18   Inc. v. Lemelson Med., Educ. & Research Found., 301 F. Supp. 2d 1147, 1156

19   (D. Nev. 2004) ("Symbol III") ("unreasonable delay alone is sufficient to

20   apply prosecution laches").

21          The totality of the circumstances test for prosecution laches is

22   objective, i.e. "whether any delay in plaintiff's prosecution or explanation for

23   such a delay is reasonable."   Reiffin, 281 F. Supp. 3d at 1151-52.   In

24   Symbol III, the district court applied prosecution laches after finding an

25   unreasonable delay between the filing of the original application and the

26

27

28

issuance of the claims"[4] as well as "delay in presenting the claims to the patent office for the first time."[5]   301 F. Supp. 2d at 1156.   The Federal Circuit has expressly commented that "there are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions."   Symbol IV, 422 F.3d at 1385.   In the two Supreme Court cases establishing the defense of prosecution laches—Woodbridge, 263 U.S. 50 (1923) and Webster, 264 U.S. 463 (1924)—the Court found delays of nine-and-a-half years and eight years, respectively, to be unreasonable.[6]   As discussed below, Katz's delays in prosecution are similarly unreasonable.   At a minimum, American raises a genuine issue of fact that precludes summary judgment.

### B.   Katz Unreasonably Delayed In Prosecuting His Claims

The application date of the '863 patent—the lone patent now asserted against American—was June 7, 1995.   Leventhal Decl. Ex. 1 at 19. However, RAKTL asserts that claim 43 of the '863 patent is entitled to a priority date of May 16, 1988.   Smith Decl. Ex. 1 at 9.   Claim 43 is entitled to the earlier priority date only if it is fully supported in RAKTL's patent specification filed on May 16, 1988.   35 U.S.C. § 120.   Therefore, according to RAKTL's own asserted priority date, the delay between when it *could* have filed claim 43 and when it *actually* filed the claim was longer than

---

[4] This time period corresponds to Professor Wagner's calculation of "Overall Pendency," i.e., the number of days between a patent or claim's priority date and its issue date.   See Wagner Decl. Ex. A at 6.

[5] This time period corresponds to Professor Wagner's definition of "Priority Pendency," i.e., the number of days between a patent or claim's priority date and the date the applicant applied for that claim.   See Wagner Decl. Ex. A at 6.

[6] RAKTL asserts in its Motion that "[c]ourts have uniformly refused to find prosecution pendencies spanning a decade or more to be unreasonable."   Mot. at 10.   This wholly ignores the Supreme Court findings in Woodbridge and Webster.

1   7 years—on par with the length of delay found to be unreasonable in

2   Woodbridge and Webster.

3        In Symbol IV, the Federal Circuit found that the district court had

4   "exercised its discretion reasonably" when considering the extreme length of

5   Lemelson's patent delays relative to the universe of patent applications

6   prosecuted around the same time.   422 F.3d at 1386.   Here, like the

7   Lemelson patents at issue in Symbol IV, the unreasonableness of Katz's

8   pattern of delay is apparent when the pendency periods for the prosecution of

9   Katz's patents are compared to other patents prosecuted during the same time

10  period.[7]   As shown by Professor R. Polk Wagner, Katz's patent pendencies

11  are extreme outliers when compared to other patent prosecutions, both for all

12  patents and for patents in the same field.   Comparing Katz's delays in

13  prosecuting the patents-in-suit to comparable other patents raises material

14  questions about whether Katz's delays were unreasonable, and egregiously so.

15       RAKTL's 7-year delay in prosecution of claim 43 took longer

16  than 99% of all patent applications in the same time period, and longer than

17  99% of the patent applications in the same class as the '863 patent.   See

18  Wagner Decl. Ex. A at 23-28.[8]   The prosecution of the '863 patent is

19  consistent with Katz's prosecution of his entire family of patents, which

20  reveals a pattern of prosecution delays.   Indeed, when using Katz's asserted

21  priority dates for each of the patents-in-suit, most of the patents-in-suit had

---

22  [7] Professor Wagner compares the RAKTL portfolio to all patents pending at

23  the same time, and calls this the "overlapping dataset."   Professor Wagner also compares the RAKTL portfolio to patents with priority dates within a two

24  year period of RAKTL's priority dates, and calls this the "cohort dataset."

25  See Wagner Decl. Ex. A at 7.

26  [8] The priority pendency in the "All Records" column shows that claim 43 of the '863 patent has a priority pendency in the 99.26th percentile.   The priority

27  pendency in the "Same-Class Only" column shows that claim 43 of the '863 patent has a priority pendency in the 99.34th percentile.   See Wagner Decl.

28  Ex. A at 20.   Similar results hold within the Cohort Dataset.   Id. at 23.

1   pendencies above the 99th percentile, and almost all were above the 95th
2   percentile.   See Wagner Decl. Ex. A at 20-21, 23-24.   Such delays are "not
3   what is contemplated by the patent statute when it provides for continuation
4   and continuation-in-part applications."   Symbol IV, 422 F.3d at 1386.   The
5   pattern of repeatedly maintaining patent applications for such extraordinary
6   periods is evidence which, viewed in the light most favorable to American,
7   supports the inference that the delays were unreasonable.

8          Expert testimony further supports this view.   Defendants'
9   expert, the Honorable Gerald Mossinghoff, former commissioner of the
10  United States Patent and Trademark Office, opined that Katz unreasonably
11  delayed prosecution of his patents.   See Plaintiff's Statement of
12  Uncontroverted Facts and Conclusions of Law ("Plaintiff's Statement") at
13  ¶ 43.   See generally Mossinghoff Decl. Ex. A at ¶¶ 180-195; see also id. at
14  ¶ 195

15                              REDACTED

16          Moreover, Mr. Mossinghoff opines that the
17  total duration of Katz's patent prosecution is evidence that the delays were
18  unreasonable.[9]   See Plaintiff's Statement at ¶ 44; Mossinghoff Decl. Ex. A at
19  ¶195.

20          Nowhere in its Motion or Statement of Uncontroverted Facts
21  does RAKTL even attempt to rebut—by offering opinion testimony,
22  affidavits, or other evidence admissible at summary judgment—the evidence

23  _____

24  [9] RAKTL complains that Professor Wagner uses "priority pendency" in his
    analysis.   See Mot. at 9.   However, the priority date for a claim is considered
25  the *effective filing date* by the U.S.P.T.O.   MPEP 706.02, Sect. VI.   To
    disregard a claim's effective filing date would allow a patentee to assert one
26  filing date for purposes of defeating an invalidity challenge while relying on a
    second, later date for purposes of showing diligence in prosecution.   RAKTL
27  cites no legal authority for the notion that it can ignore the priority date for
    prosecution laches, and such an argument makes little sense.
28

1  offered by defendants' experts.   Indeed, RAKTL points to no delays in

2  prosecution of the Katz patents that are attributable to the Patent Office or are

3  otherwise a result of circumstances beyond Katz's control.   Even Mr.

4  Goffney, RAKTL's rebuttal expert on prosecution laches, limited his opinion

5  to how the United States Patent and Trademark Office measures the pendency

6  of individual patent applications.   Wagner Decl. Ex. A at ¶¶ 153-155.   Mr.

7  Goffney testified that he had no opinion on what the Court in this case would

8  find relevant to a determination of whether prosecution laches applies.   See

9  Smith Decl. Ex. 2 at 230:16-231:11.   Accordingly, Katz's delay in

10 prosecution has not and cannot reasonably be explained.   Consequently, Mr.

11 Mossinghoff's expert opinion that Katz unreasonably delayed prosecution of

12 his patents stands unchallenged and, in and of itself, creates a genuine issue of

13 fact that precludes summary judgment.

14      **C.    Katz's Behavior Was Inexcusable**

15      RAKTL argues that Katz was diligent in prosecuting its patents,

16 e.g., Katz sought to obtain patents and that patents issued each year.[10]   See

17 Mot. at 11.   RAKTL further argues that American cannot show that this is an

18 egregious case sufficient to warrant application of prosecution laches.   Id.

19 As an initial matter, whether Katz desired additional patents or whether he

20 intentionally delayed prosecution is immaterial.   Symbol IV, 422 F.3d at

21

22 [10]   RAKTL also attempts to excuse prosecution delays by conclusory
23 references to terminal disclaimers.   See Mot. at 11.   Although in certain
   circumstances the prejudice caused by prosecution delays can be mitigated
24 somewhat by terminal disclaimers, the mere presence of a terminal disclaimer
   does not end the inquiry into whether a delay in prosecution was
25 unreasonable.   Indeed, many of RAKTL's patents-in-suit are terminally
   disclaimed over patents which were themselves filed after an unreasonable
26 delay.   For example, the '065 patent was terminally disclaimed over the '551
27 patent.   Leventhal Decl. Ex. 1 at 55-56.   But both the priority pendency and
   the overall pendency of the '551 were above the 99th percentile.   Wagner
28 Decl. Ex. A at 20.

1382.   Regardless, contrary to RAKTL's current assertion of good faith and diligence, the record establishes that Katz intentionally and willfully delayed filing claims in order to learn what advances were being made in the field and then incorporated the new "information" into newly filed claims.

For example, Katz has admitted that, beginning in 1984 and continuing through the 1990s, he continued to learn about interactive voice systems that were being implemented by others in the field.   See Smith Decl, Ex. 3 at 56:14-57:2.   Further, Katz's patent prosecutors admitted that it was their *modus operandi* to file new claims using such newly-gained knowledge. See Smith Decl. Ex. 4 at 338:13-20

REDACTED

341:24-342:2

The record establishes that Katz purposely manipulated the system to keep his patent applications alive and claim advances in the industry as his own.   That is exactly what prosecution laches is intended to prevent. Reiffen, 281 F. Supp. 2d at 1153 (The "correspondence between the invention(s) plaintiff claimed with the evolution of the field . . . is highly suspicious and suggestive of opportunism.").

### D.   Katz's Unreasonable and Unexplained Delays in Prosecution Prejudiced Others In The Field

As discussed above, a court may choose to consider evidence of intervening rights, which "are evidenced by the use of products developed, manufactured and sold by [the accused infringers], as well as by third-party

1  products, patents and articles."   Symbol III, 301 F. Supp. 2d at 1157; see also

2  Verizon California, Inc. v. RAKTL, L.P., No. 01-CV-9871 (RGK) (RCx),

3  2003 U.S. Dist. LEXIS 23553, at *66 (C.D. Cal. Dec. 2, 2003) (observing that

4  an intervening right is "evidenced by a public use, sale, intervening

5  publication or intervening patent").   The goal of avoiding prejudice to rights

6  arising from prosecution delays protects companies and other members of the

7  public who have "invested in the technology described in the delayed

8  patents."   Symbol IV, 422 F.3d at 1386; see also Woodbridge, 263 U.S. at 56

9  (observing that prejudice is imposed on "other inventors [who] had been at

10  work in the same field").

11         Defendants have presented unrebutted evidence suggesting that

12  Katz's pattern of delay in prosecuting claims was prejudicial to developers of

13  interactive call processing technology.[11]   In one illustrative case, AT&T

14  developed and publicly deployed interactive voice system technology during

15  the time between Katz's first disclosures and his filing of claims including

16  those features.   For example, starting in the mid-1980s, AT&T developed the

17  Conversant 1 Voice System, a multi-mode voice system using DNIS.   See

18  Smith Decl. Ex. 8 at REF_000728-35.

19

REDACTED

20

21         See Smith Decl. Ex. 3 at 78:5-25; 82:13-17; 82:24-83:15;

22  86:1-19.   Yet, DNIS first appeared in a RAKTL claim limitation in 1993 in

23

---

24  [11]   RAKTL complains that American failed to provide enough detail in its
   interrogatory responses to support its prosecution laches defense.   Mot. at 8-9
25  & 12-13.   However, RAKTL was placed on sufficient notice of American's
   claims through its interrogatory responses and the other fact and expert
26  discovery referenced in this brief.   In any event, if RAKTL believed
   American's interrogatory responses were deficient, it could have met and
27  conferred (and filed a motion to compel further responses, if necessary), but it
   did not.   RAKTL therefore has no basis to complain now.
28

1    the '285 patent.   See, e.g., Smith Decl. Ex. 9 at claim 19.   However,

2    RAKTL now asserts an October 20, 1988 priority date for this feature.[12]

3    Because Katz later reclaimed a portion of the subject matter disclosed on

4    October 20, 1988 that otherwise would have been dedicated to the public, the

5    Conversant 1 Voice System is evidence that both the public and AT&T were

6    prejudiced by Katz's delay in filing the claims that use DNIS.

7           In another illustrative case, the Periphonics Student Registration

8    system was an automated telephone customer service device in developmental

9    stages starting in the mid-1980s.   See Smith Decl. Ex. 10 at REF_000891-

10    932.   American's Non-Rev application, which is a Nortel/Periphonics

11    system, is now accused of infringement.   See generally Smith Decl. Ex. 11 at

12    63-71; see also id. at ¶ 123.   Moreover, the Non-Rev application is accused

13    of infringing claim 43 of the '863, for which RAKTL's is claiming a priority

14    date of May 16, 1988.   See id.; see also Smith Decl. Ex. 1 at 9.   Evidence of

15    on-going development expenditures by Nortel through the relevant period is

16    readily adduced from the development agreements that Nortel/Periphonics and

17    American entered.   See Smith Decl. Ex. 12.   From this evidence, a

18    reasonable inference can be drawn that during the relevant time period

19    Nortel/Periphonics was further developing its products.   Put another way, it

20    would be unreasonable to assume that there was no investment of resources to

21    develop the mid-1980s version of the Nortel/Periphonics system into the

22    version now accused of infringing.

23           Unrebutted evidence presented by American also suggests that

24    Katz's pattern of delay in claiming his purported inventions prejudiced other

25    inventors working in the same field during those periods of delay who filed

26    "intervening" patents.   For example, RAKTL now asserts that the cue

27

28    [12] See, e.g., Smith Decl. Ex. 1 at 7 (priority date for Claim 19).

1   suppression feature in claim 67 of the '120 patent was entitled to an October
2   23, 1989 priority date. [13]   See Smith Decl. Ex. 1 at 7.   But cue suppression
3   was not *publicly* claimed by RAKTL until May 17, 1999, when the '120
4   patent issued.   See Smith Decl. Ex. 6 at claim 56.   In the intervening period,
5   United States Patent No. 5,018,736 ("Pearson '736 patent") claiming a
6   telephonic interactive game system and method was filed on October 27, 1989
7   and issued on May 28, 1991.   See Smith Decl. Ex. 7.   The Pearson patent
8   discloses and claims the use of cue suppression.   See id. at 15:39-50 and
9   13:68-14:3.   Thus, the Pearson '736 patent was an intervening patent.

10         Similarly, United States Patent No. 4,797,911 ("Szlam patent")
11   was filed on June 16, 1987 and issued on January 10, 1989.   See Smith Decl.
12   Ex. 14.   The Szlam patent discloses and claims both DNIS and cue
13   suppression.   See id. at 12:29-37; 14:19-22.   But those features were not
14   claimed by RAKTL until 1993 and 1999, respectively.[14]   The Szlam patent
15   was therefore an intervening patent.   As further evidence of the prejudice
16   RAKTL caused other inventors, RAKTL brought an interference action
17   against the Szlam patent requesting that the Board of Patent Appeals and

18   _____

19   [13] RAKTL cites Digital Control, Inc. v. McLaughlin Mfg. Co, 248 F. Supp. 2d
20   1015, 1019 (W.D. Wash. 2003) for the proposition that prosecution laches
     requires a showing that "intervening activity" was not covered by a claim in a
21   parent patent.   See Mot. at 11-12.   However, Digital Control establishes the
     opposite.   In the sentence immediately preceding the quote proffered by
22   RAKTL, the Court states:   "the Court *does not consider* that an examination
     of intervening adverse rights is a useful concept in prosecution laches when
23   addressing continuation applications."   Digital Control, 248 F. Supp. 2d at
     1019 (emphasis added).   Therefore, taken in its full context, the sentence
24   cited by RAKTL merely says that—in the context of a patent reissue—
     prosecution laches requires a showing that the intervening activity and the
25   asserted claim were not covered by the original application.   See 35 U.S.C.
26   § 252.   That is not applicable here.

27   [14] For the DNIS feature, see, e.g., Smith Decl. Ex. 9 at col. 18 (claim 19).
     For the cue suppression feature, see, e.g., Smith Decl. Ex. 6 at col. 16 (claim
28   56).

1   Interferences award Szlam's patent rights to RAKTL.   <u>See</u> Smith Decl. Ex.

2   15 at KTL0568304-307.   Thus, despite waiting for many years after Szlam

3   filed his patent application to introduce claims covering similar subject matter,

4   RAKTL used his strategy of delaying filings in an attempt to take Szlam's

5   patent rights away.

6           Because the record establishes that genuine issues of material fact

7   exist regarding whether prosecution laches should apply, RAKTL's motion

8   for partial summary judgment as to this issue should be denied.

9   **IV.   THERE ARE GENUINE ISSUES OF FACT REGARDING**
    **WHETHER RAKTL SHOULD BE BARRED FROM ASSERTING**
10  **ITS PATENTS UNDER THE DOCTRINE OF EQUITABLE**
    **ESTOPPEL**

11          Equitable estoppel is a defense to patent infringement comprising three

12  elements: (1) the patentee, through misleading conduct, leads the alleged

13  infringer to reasonably infer that the patentee does not intend to enforce its

14  patent against the alleged infringer; (2) the accused infringer's reliance on the

15  patentee's misleading conduct; and (3) due to its reliance, the alleged infringer

16  will be materially prejudiced if the patentee is allowed to proceed with its

17  claim.   <u>A.C. Aukerman v. R.I. Chaides Const. Co.</u>, 960 F.2d 1020, 1028 (Fed.

18  Cir. 1992).   Like other doctrines rooted in equity, equitable estoppel is "not

19  limited to a particular factual situation nor subject to resolution by simple or

20  hard and fast rules."   <u>Id.</u> at 1041.

21  **A.   RAKTL Misled American By Failing To Identify The**
        **Asserted Claim, Failing To Identify The Accused Application,**
22      **And Conducting Itself Differently Toward American Than**
23      **Others**

24          The communications between RAKTL and American from 1997

25  to 2006—Leventhal Decl. Ex. H—suggest that RAKTL led American to

26  believe that the RAKTL would not seek to enforce claim 43 of the '863 patent

27  against American's Non-Rev application.   Misleading conduct may take the

28  form of "specific statements, action, inaction, or silence where there was an

1    obligation to speak." ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52

2    F.3d 1062, 1063 (Fed. Cir. 1995).   Although "an immediate threat of

3    enforcement followed by silence may be the most common scenario does not

4    mean that it is the *only* set of facts which can support a finding of misleading

5    silence." Id. at 1064.   Indeed, in this case, when viewed in the light most

6    favorable to American, the substance of the communications suggests that

7    American could infer from RAKTL's conduct that the now-accused Non-Rev

8    application was not at issue.

9            As an initial matter, RAKTL's communications failed to identify

10   claim 43 of the '863 patent.   In its first communication with American, in

11   August 1997, the '863 patent had not yet issued.   Leventhal Decl. Ex. H at

12   253-56.   American was informed on May 22, 1998 that the '863 patent had

13   issued, but the letter identified a different system as potentially infringing

14   application for which American should consider taking a license.   Id. at 260-

15   61.   On August 20, 1998, American requested additional information.   Id. at

16   262-63.   On January 20, 1999, RAKTL informed American that it had

17   successfully enforced its patents in litigation, and that lawsuits against new

18   entities were underway, but failed to address American's request for further

19   information.   Id. at 264-65.   On February 8, 1999, American again

20   requested specific information relating to American's systems.   Id. at 266.

21   On July 16, 1999, RAKTL identified 7 claims and 4 patents as relevant to

22   American, but again pointed to another American system.   Id. at 267-68.

23   RAKTL did not identify claim 43 of the '863 patent or the Non-Rev

24   application.   Id.

25           On November 16, 2000, RAKTL brought to American's attention

26   that its lawsuit against AT&T had settled.   See id. at 272-74.   All further

27   communications through 2004 reflect that American continued to express its

28   belief that it did not need to take a license because the system identified by

1  RAKTL did not infringe.   See id. at 350.   On December 9, 2003, RAKTL

2  identified new claims, but still did not identify claim 43 of the '863 patent.

3  Id. at 334.   The Non-Rev application was never mentioned as a potentially

4  infringing application.   See generally, Leventhal Decl. Ex. H.

5        This nearly decade long chain of communication supports at least

6  two inferences.   First, an alleged-infringer facing this history of business

7  dealings could reasonably believe that claim 43 was not at issue and the Non-

8  Rev application was not a potential litigation target.   Second, the

9  communications about its success in bringing some parties to settlement could

10  suggest that, when RAKTL believed it had a solid case against a party, it

11  chose to litigate or quickly negotiate a settlement.   In contrast, RAKTL was

12  unwilling to push American to litigation, even when American appeared

13  unwilling to further discuss licensing.   Viewing this chain of communication

14  over such a long period of time in a light most favorable to American, a

15  reasonable inference could be drawn that American believed RAKTL would

16  not file suit, let alone assert infringement of the never-mentioned claim 43 of

17  the '863 patent that is currently asserted against American's Non-Rev

18  application.

19  **B.   American Was Lulled Into a Sense of Security**

20        Reliance "is not the same as prejudice or harm, although

21  frequently confused." Aukerman, 960 F.2d at 1043.   In the context of

22  equitable estoppel, the Federal Circuit has explained the difference between

23  the two:

24       An infringer can build a plant being entirely unaware of the

25       patent.   As a result of infringement, the infringer may be unable
     to use the facility.   Although harmed, the infringer could not

26       show reliance on the patentee's conduct.   To show reliance, the
     infringer must have had a relationship or communication with the

27       plaintiff which lulls the infringer into a sense of security in going
     ahead with building the plant.

28

1   Id. (emphasis added).   The Federal Circuit's articulation of reliance serves
2   perfectly in the instant case to illustrate that there is sufficient evidence that
3   American could have relied on the communications with RAKTL by going
4   ahead with its plans to develop and invest in IVR systems.

5         Had RAKTL filed suit earlier, American could have avoided its
6   expenditures on automated call processing systems.   For example, had
7   RAKTL brought suit prior to 2003, the evidence suggests that American could
8   have avoided making investments in its new speech recognition technology
9   which it believed did not fall within the scope of RAKTL's identified patents.
10  See Leventhal Decl. Ex. H at 355-56

11
12
13
14                              REDACTED
15
16
17
18
19

20        See Smith Decl. Ex. 12.   Drawing the reasonable inference in
21  American's favor that it would be unwilling to continue investing in IVR
22  systems if it had known those issues might be the subject of a lawsuit, a fact-
23  finder could conclude that American relied on its sense of security. That is, as
24  a consequence of its belief that it would not face an infringement suit
25  concerning its Non-Rev application, American continued its investment in and
26  development of the Periphonics system.

27
28

### C.   American Will Be Materially Prejudiced If RAKTL Is Allowed To Assert The '863 Patent

To show material prejudice, the "proper inquiry is whether there has been a change in the economic position of the alleged infringer during the period of delay." <u>ABB Robotics</u>, 52 F.3d at 1065 (internal citations omitted). In <u>ABB Robotics</u>, the Federal Circuit found that the trial court had properly found material prejudice "by showing that this suit would result in damages which likely would have been prevented by an earlier suit." <u>Id.</u> The trial court based its decision on the fact that the alleged infringer had modified its behavior to avoid infringement.    <u>Id.</u>

As explained above, had RAKTL brought suit when the '863 patent first issued, the evidence suggests that American could have avoided adopting the allegedly infringing Nortel/Periphonics Non-Rev application starting in 1998.   <u>See</u> Smith Decl. Ex. 12.   As that feature is now the only accused feature, American could have avoided any potential liability by continuing with its other pre-existing systems, such as the Intellivoice system, or by adopting alternative systems which predated the '863 patents.   <u>See</u> Smith Decl. Ex. 13 (showing American's expenditures on the Intellivoice call processing system prior to the issuance of the '863 patent).   Furthermore, the communications between American and RAKTL suggest that American was making decisions such as converting to speech recognition systems given its understanding that the Katz patents generally did not encompass speech recognition.   <u>See</u> Leventhal Decl. Ex. H at 355-56

REDACTED

In summary, the evidence demonstrates that American's economic position changed as a consequence of RAKTL's delay in bringing suit because it was not able to switch to non-infringing alternatives prior to the

1  damages period at issue now and was not able to avoid investments in now-
2  accused systems.   Viewed in the light most favorable to American, the
3  evidence shows that RAKTL's nine-year letter-writing campaign could have
4  reasonably been perceived as empty threats, that American went ahead with
5  its now-accused IVR development plans in reliance on its sense of security
6  that it would not be sued, and that American was economically harmed as a
7  result of those development plans.   There can be no doubt that there remain
8  genuine issues of material fact regarding whether the equitable estoppel
9  defense bars RAKTL's claim for patent infringement.   RAKTL's motion as
10 to this issue should also be denied.

11 **V.     CONCLUSION**

12             For the reasons described above, American requests that the
13 Court deny RAKTL's motion for partial summary judgment.

14

15 Dated:   August 29, 2008              Respectfully submitted,

16                                       Mike McKool, Jr.
17                                       Peter J. Ayers
18                                       McKOOL SMITH, P.C.

19                                       Vernon M. Winters
20                                       Christopher J. Cox
                                         Jill J. Ho
21                                       WEIL, GOTSHAL & MANGES LLP

22

23                           By: _____
24                                       Christopher J. Cox
                                         Attorneys for Defendants
25                                       AMERICAN AIRLINES, INC.
                                         AMERICAN BEACON ADVISORS,
26                                       INC.

27

28

1

## PROOF OF SERVICE

I declare that I am employed with the law firm of Weil, Gotshal & Manges LLP, whose address is 201 Redwood Shores Parkway, Redwood Shores, California 94065-1175 (hereinafter "WGM").   I am not a party to the within cause, and I am over the age of eighteen years.   I further declare that on August 29, 2008, I served a copy of:

## AMERICAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**BY ELECTRONIC SERVICE** by electronically mailing a true and correct copy through WGM's electronic mail system to the email address(es) set forth in the service list below.

Kent M. Walker, Esq.
Cooley Godward Kronish
4401 Eastgate Mall
San Diego, CA 92121
walkerkm@cooley.com
katz@cooley.com

Executed on August 29, 2008 at Redwood Shores, California.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Nettie Asiasi