1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>Katz Interactive Call Processing Patent Litigation<br><br>This document relates to:<br><br>Ronald A. Katz Technology Licensing, L.P., Plaintiff,<br>v.<br>American Airlines, Inc. et al., Defendants | Case No. MDL 2:07-ML-1816-B-RGK (FFMx)<br><br>Case No. MDL 2:07-CV-2196-B-RGK (FFMx)<br><br>ORDER DENYING IN PART AND GRANTING IN PART THE FEDEX DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>DOCKET ENTRY 7659/615 |

# I
# INTRODUCTION

After this Court issued rulings on both joint and individual summary judgment motions in this multidistrict patent litigation, the plaintiff, Ronald A. Katz Technology Licensing, L.P. ("Katz") appealed. The Federal Circuit's decision affirmed, vacated, and reversed various rulings. *In re Katz*, 639 F.3d 1303 (Fed. Cir. 2011). The decision resulted in the revival of several claims. Since the defendants never had an opportunity to raise their individual defenses to many of these claims, this Court issued a Case Management Order that permitted the Group B defendants to file a second round of individual summary judgment motions. (DE 7437).

Accordingly, defendants Federal Express Corporation, FedEx Corporation, FedEx Corporate Services, Inc., and FedEx Customer Information Services, Inc. ("FedEx") filed the current motion for summary judgment. The motion asks this Court for findings of non-infringement with respect to all three remaining claims asserted by Katz. Those claims are claim 18 of U.S. Patent No. 6,292,547 ("the '547 patent"), claim 19 of U.S. Patent No. 5,815,551 ("the '551 patent"), and claim 34 of U.S. Patent No. 5,974,120 ("the '120 patent"). FedEx's motion also asks this Court for a finding of invalidity with respect to claim 19 of the '551 patent based on collateral estoppel.

## II
## LEGAL STANDARD

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); s*ee also Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 970 (Fed. Cir. 1999). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250 (citations omitted).

## III
## DECISION

**A.  Divided Infringement**

   **1.  The Accused Systems**

Each accused system in this case included a front end interactive voice response platform ("IVR")—accessible through a toll-free number—that allows callers to use their telephones to interact with computers. The front end IVR platform received calls over the public-switched telephone network ("PSTN"). It then prompted the caller to enter information through touch-tone input. Based on the information received directly from the caller's input, as well as information received automatically from the PSTN (which can include dialed-number ("DNIS") and calling number ("ANI") information), the frontend IVR platform generated queries and forwarded those

queries to backend equipment. The backend equipment, which included Intelligent Contact Management ("ICM") servers and databases, received and processed the queries from the IVR and provided responses to those queries back to the frontend IVR platform—which then developed further prompts or information for transmission to the caller.

### 2. Divided Infringement

FedEx argues that it cannot be liable for direct infringement because different third party vendors owned and operated the IVRs. Those parties are AT&T, Tellme and XO Communications ("XO"). The IVR is one of several components used to allegedly infringe each of the three asserted claims. Relying on *Centillion Data Sys., LLC v. Qwest Comm's Int'l, Inc.*, 631 F.3d 1279, (Fed. Cir. 2011), FedEx says that the only actor that can be liable for an infringing "use" of the system is the actor that "put[s] the invention into service, *i.e.*, control[s] the system as a whole and obtain[s] benefit from it." *Id*. at 1284. FedEx argues that it is the telecommunications companies, not FedEx, that initiate the service. Therefore, FedEx concludes that it cannot be liable for direct infringement.

Here, both FedEx and the vendors physically operated (*i.e.* used) different components of the overall accused system. The Federal Circuit had held that for a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously." *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1311(Fed.Cir.2005)*; Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1568 (Fed.Cir.1983).* Vicarious liability can be shown in two ways – by establishing an agency relationship or a contractual relationship. *See Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 2013 WL 950711, *1363 (Fed. Cir. Mar. 13, 2013) ("One party's direction or control over another in a principal-agent relationship or like contractual relationship operates as an exception to this general rule, but absent that agency

3

relationship or joint enterprise, we have declined to find one party vicariously liable for another's actions."); *see also*, *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (*en banc*) ("Absent an agency relationship between the actors or some equivalent, however, a party that does not commit all the acts necessary to constitute infringement has not been held liable for direct infringement even if the parties have arranged to 'divide' their acts of infringing conduct for the specific purpose of avoiding infringement liability.")

Katz argues that FedEx is liable for direct infringement because it exercised control over the entire accused systems. Indeed, the evidence shows that FedEx determined how customers would interact with the overall system. For example, there is evidence that FedEx wrote the scripts and determined how calls should be routed. More importantly, Katz points out that AT&T and XO were contractually bound by FedEx to provide services that used these components. (Leventhal Decl. Ex. 9 (Emerson Rep.) ¶¶ 69-71, 73-77, 81, 83.)  This is precisely the type of relationship that can show direct infringement by a single party like FedEx.

FedEx's reply brief provides three responses. First, FedEx argues that the concept of vicarious liability does not apply because there is a single user here, the telecommunications company. Second, FedEx argues that Katz's analysis applies only to method claims, which are not at issue here. Third, FedEx argues that AT&T and XO are already authorized under a license from Katz.

This Court addresses each of these arguments. First, Katz's allegations involve use of both the front end equipment operated by the third party telecommunications companies and the back end equipment operated by FedEx. This shows that at least two parties are involved and that the Federal Circuit jurisprudence on vicarious liability is applicable. Second, FedEx provides no justification for distinguishing between divided infringement allegations that involve a

4

method claim as opposed to use of a system claim. The question for both situations is whether responsibility can be attributed to a single party. The evidence of contractual relationships suggests that FedEx may be such a party. Third, this Court has previously denied a summary judgment motion regarding the AT&T and XO licenses. Thus, the jury still needs to determine whether any of the accused activity falls within the scope of these third party licenses.

Accordingly, this Court DENIES FedEx's motion for summary judgment with respect to the issue of direct infringement of claim 18 of the '547 patent, claim 19 of the '551 patent, and claim 34 of the '120 patent.

### 3. Indirect Infringement

FedEx also seeks summary judgment of indirect infringement. FedEx says that where there is no direct infringement by a single party, there can be no indirect infringement. This was the law when the parties briefed this motion. However, the Federal Circuit decided *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*) soon after the parties finished briefing this motion. *Akamai* overruled earlier cases that "held that in order for a party to be liable for induced infringement, some other single entity must be liable for direct infringement." *Id*. at 1306. Since the law has changed, this Court DENIES FedEx's summary judgment as it relates to the issue of inducement.

## B. Non-Infringement

FedEx also argues that it does not infringe claim 34 of the '120 patent and claim 18 of the '547 patent because the accused systems did not satisfy specific limitations from those claims.

### 1. Legal Standard – Non-Infringement

In determining whether an allegedly infringing device falls within the scope of the claims, a two-step process is used: first, the court must determine as a matter of law the meaning of the particular claim or claims at issue; and second, it must consider whether the accused

product infringes one or more of the properly construed claims. *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed. Cir. 2002). The second inquiry is a question of fact, although summary judgment of infringement or non-infringement may nonetheless be appropriate when no genuine dispute of material fact exists. *Irdeto Access, Inc. v. Echostar Satellite Corp.,* 383 F.3d 1295, 1299 (Fed. Cir. 2004) (quoting *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

The patentee bears the burden of proving infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991). This burden can be met by showing that the patent is infringed either literally or under the doctrine of equivalents. *See Linear Tech. Corp. v. Impala Linear Corp.,* 379 F.3d 1311, 1318 (Fed. Cir. 2004). To support a finding of literal infringement, the patentee must establish that "every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.,* 205 F.3d 1377, 1382 (Fed. Cir. 2000) (citing *Amhil Enters. Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

**2. Claim 34 of the '120 patent**

Claim 34 of the '120 patent is dependent on independent claim 28. Together the claims recite:

> 28. A telephone call processing system for receiving calls through a telephonic communication facility from a multitude of terminals in a toll free call mode for processing data in accordance with an operating process format and involving digital signals including called number identification signals (DNIS) automatically provided by said telephonic communication facility, said system comprising:
>
> first response unit means for receiving calls in said toll free call mode wherein said called number identification signals (DNIS) indicative of at least one of a plurality of distinct called numbers identifies said operating process format;
>
> voice generator means for prompting callers to enter data in response to voice prompts wherein said data entered by said callers is used to update data for said callers in a database relating to said callers;

6

>    qualification means for qualifying at least said calls utilizing said one of said plurality of distinct called numbers in said toll free call mode received by said first response unit to provide qualified calls based upon a test of caller entered identification data including **caller pin-number data based upon limited use**;
>
>    second response unit means for receiving calls in said toll free call mode wherein called number identification signals (DNIS) indicative of one other of said plurality of distinct called numbers identifies said operating process format;
>
>    means for concurrently processing calls received by said first response unit means and said calls received by said second response unit for concurrent processing of data in accordance with common operations of said operating process format.
>
>    34. A telephone call processing system according to claim 28, wherein at least select digits of caller telephone numbers are automatically provided by digital signals from the telephonic communication facility.

(emphasis added)

Katz has asserted that the accused FedEx services satisfy the "caller pin-number data based upon limited use" limitation in two ways. First, Katz says that when callers entered an account number and a tracking number, those numbers qualified as caller pin-numbers. (*See* Katz's Statement Of Genuine Issue, No. 197.) Second, Katz said when callers entered a zip code, the zip code also qualified as a caller pin-number. (*See* Katz's Statement Of Genuine Issue, No. 200.) FedEx asks this Court to make a finding of non-infringement because both types of numbers are not "caller pin-numbers" as required by the patent.

With respect to the account and tracking numbers, FedEx argues that Katz's expert, Dr. Lucantoni, withdrew those assertions during his June 18, 2008, deposition when he said, "I don't consider either the account number or a tracking number a PIN number." (Lucantoni Dep. at 165:13-166:2, Ex 10 to Boyle Decl.) In response, Katz says that Lucantoni misunderstood the question and clarified his answer. Indeed, Lucantoni immediately said that "[a]ccount numbers are also used to limit caller access . . . Tracking numbers are used to limit caller -- limit caller access based on whether the tracking number is associated with multiple shipments." (Lucantoni

Dep. at 167:7-15.) Although Lucantoni's earlier statement certainly could suggest that he did not believe account numbers and tracking numbers are the required pin-numbers, it is also possible that Katz is correct and Dr. Lucantoni simply misspoke. In other words, FedEx has simply raised an issue of credibility that is more appropriate for the jury to decide.

With respect to zip codes, FedEx argues that a zip code cannot be the "pin-number" found in claim 34. Oddly, FedEx does not offer a definition for what a pin-number is. Rather, FedEx says that Katz has distinguished the term "PIN" from "personal identification data" and argues that the conventional understanding of the term pin-number does not encompass a zip code.

In response, Katz says that any distinction that this Court made between the term "PIN" and "personal identification data" is immaterial because this Court was interpreting a different term for a different patent. The meaning of "personal identification data" within the '707 patent should not limit what the term "pin-number data" means in the context of the '120 patent. This Court agrees. More importantly, Katz says that "pin-number data" is simply numerical data used by a person to access a system or a service. Under that definition, Katz says that zip codes in the FedEx system are a kind of pin-number data.

FedEx's argument turns on the meaning of "pin-number data." But FedEx has not offered a definition for this term, much less conducted a proper claim construction analysis. On the other hand, Katz has offered a definition. But its claim construction analysis is sparse. Given the current record, this Court is unwilling to adopt any definition.[1] However, it is clear that FedEx has failed to meet its burden of proof and show that a zip code cannot be "pin number data."

---

[1] FedEx may not file another motion seeking a claim construction ruling with this Court. FedEx has already used its opportunities. This order does not foreclose FedEx from seeking such a ruling from the trial court after this case is remanded.

Based on the foregoing, this Court DENIES FedEx's motion for summary judgment as it relates to the "pin-number data" limitation.

### 3. Claim 18 of the '547 patent

Claim 18 of the '547 patent is dependent on independent claim 11. Together the claims recite:

> 11. An analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals comprises a telephonic instrument including a voice communication device and digital input device in the form of an array of alphabetic numeric buttons for providing data and wherein said communication facility has a capability to automatically provide terminal digital data, indicating a calling telephone number, said analysis control system comprising:
>
> interface structure coupled to said communication facility to interface said remote terminals for voice and digital communication and including means to provide caller data signals representative of data relating to said individual callers provided from said remote terminals or automatically provided by the communication facility with respect to the remote terminals prior to the close of communication with the caller including caller personal identification data entered by the caller via the digital input device and said terminal digital data indicative of a calling telephone number;
>
> record testing structure connected to receive and test said caller data signals indicative of said terminal digital data representative of said calling telephone number and said caller personal identification data against previously stored terminal digital data and caller personal identification data;
>
> storage structure for storing certain of said data provided by said individual callers including **item data for ordering particular items**; and
>
> analysis structure for receiving and processing said caller data signals under control of said record testing structure.
>
> 18. A control system according to claim 11, wherein the **data identifying the order is number data.**

(emphasis added).

Katz has accused five different FedEx services of infringing claim 18 of the '547 patent. They are the so called Tracking, Supplies, Pickup, Revenue, and Network Prompter Services. FedEx raises four primary non-infringement arguments. First, FedEx argues that the Pickup

9

Service did not infringe claim 18 of the '547 patent because the term "item data" does not encompass the provision of services. Second FedEx argues that Katz has failed to provide sufficient evidence to show that the Tracking Services satisfy the same limitation. Third, FedEx argues that Katz has failed to provide sufficient evidence to show that the Supplies Services satisfy "the data identifying the order is number data" limitation. Finally, because Katz's allegations against the Network Prompter and Revenue Services rely upon infringement by the Supplies and Pickup Service, FedEx asks that this Court to declare that these latter two services do not infringe claim 18 either. We address each of these arguments in turn.

### a. Pickup Service

Using the Pickup Service, callers could input purchase orders. An order included a certain quantity of packages to be picked up by FedEx. This value was received and stored in the FedEx system. According to Katz, the number of packages satisfies the "item data for ordering particular items." FedEx argues that the term "item data" does not cover data related to a service. In other words, FedEx says that "ordering particular items" is different than requesting a service to be performed.

This dispute revolves around a question of claim construction.[2] FedEx asks this Court to interpret "item data for ordering particular items" to refer to "an object for purchase." Katz disagrees with FedEx's claim construction and argues that the claim refers to any article or unit. Under this interpretation, the accused system satisfies the "item data for ordering particular items" limitation because the accused systems stored the number of packages (*i.e.* articles) that FedEx would pick up.

In support of its interpretation, FedEx points out that during the reexamination of the '547 patent Katz argued that the "'item data' must be interpreted as an object for purchase."

---

[2] The parties did not ask the Court to construe this term in the earlier claim construction proceedings.

(September 26, 2006 Response by Patent Owner After Second Office Action at 18, Ex. 19 to Boyle Decl.) Relying on this evidence, FedEx asks this Court to limit the items covered by claim 18 to those items for purchase. In response, Katz points out that the Patent Office actually rejected Katz's earlier position and held that "[t]here is nothing in the claim term 'item data' and nothing in the Specification that indicates that the item is restricted to an item to be purchased." (*See* March 31, 2010 Board of Patent Appeals and Interferences Decision on Appeal at 27-28, Ex. 20 to Boyle Decl.) Moreover, Katz argues that claims should not be limited to the embodiments disclosed by the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Accordingly, Katz asks the Court to adopt the broader claim construction that the Patent Office eventually took.

In this case, this Court sides with Katz. The language of claim 18 does not limit the items to those items that are for purchase. Moreover, there is nothing in the specification that suggests that the invention was intended onlyfor these kinds of items. Accordingly, this Court will use the same claim construction that the Patent Office did and interpret "item data" to mean "information related to the article or unit." Given this interpretation, a reasonable jury could conclude the limitation encompasses a service like FedEx's Pickup Service. Accordingly, this Court DENIES FedEx's motion for summary judgment for non-infringement as it relates to FedEx's Pickup Services and claim 18 of the '547 patent.

### b. Tracking Service

FedEx also argues that Katz failed to provide any evidence that the Tracking Service satisfied the "data identifying the order is number data" limitation of claim 18. Oddly, Katz's opposition brief did not address this point. Moreover, Katz's Statement of Genuine Issues also

11

1  failed to identify any evidence suggesting that this limitation was present in the accused Tracking
2  Service. Instead, Katz only says that FedEx does not cite to the "remaining record." Paragraphs
3  221 and 222 are reproduced to demonstrate the problem with Katz's response.

| Defendants' Assertions | Plaintiff's Response |
|---|---|
| (221) RAKTL has not provided any evidence indicating how element 547_11[d] reads on any use of the accused "Tracking" service. Boyle Ex. 8 (Lucantoni Rpt. ¶ 352). | Disputed. FedEx cites only the expert report, not the remaining record. |
| (222) RAKTL has not provided any evidence indicating how element 547_18 reads on any use of the accused "Tracking" service. Boyle Ex. 8 (Lucantoni Rpt. ¶ 362). | Disputed. FedEx cites only the expert report, not the remaining record. |

Katz has the obligation of identifying any evidence that would suggest infringement. Having failed to do so, this Court has no choice but to GRANT FedEx's summary judgment as it relates to the accused Tracking Service.

### c. Supplies Service

The Supplies Service permitted callers to order supplies such as envelopes and labels. The caller entered the particular number of supply items the caller desired to purchase. The FedEx system received this number and stored it in the customer's file. According to Katz, the number of supply items satisfied the item data limitation. But FedEx's summary judgment motion argues that Katz has failed to provide sufficient evidence to show that the number of items also satisfied the additional language of claim 18. Claim 18 requires that "the data identifying the order is number data." FedEx says that Katz has offered no evidence suggesting that the number of supply items *identified* the order as required by claim 18.

This Court agrees with FedEx. Katz's opposition did not address this particular point. Instead, it mechanically pointed to Dr. Lucantoni's Expert Report (Ex. 7 to Leventhal Decl.). Unfortunately, Lucantoni's report is equally unhelpful. Paragraph 362 merely says that "FedEx's accused system(s) used number data to identify the order. See, for example, Scenario Steps 1.15-

12

1.16, 2.13-2.16, 4.5, 4.6, and 5.4." But only Scenario Steps 1.15 and 1.16 relate to the Supplies Service. Those steps only discuss whether the customer has ordered an acceptable quantity of supplies. There is nothing in those passages that discusses how the Supplies Service might satisfy the "data identifying the order is number data" limitation. Given Katz's failure to identify any relevant evidence to support its infringement allegations, this Court GRANTS FedEx's summary judgment as it relates to the accused Supplies Service.

### d. Network Prompter and Revenue Services

Both parties agree that Katz's accusations against the Network Prompter and Revenue Services rely on its infringement allegations against the Supplies and Pickup Services. Since this Court DENIED FedEx's motion with respect to the Pickup Services, FedEx's motion for summary judgment against the Network Prompter and Revenue Services is also DENIED.

## C. Invalidity, Claim 19 of the '551 Patent

FedEx asks this Court to apply collateral estoppel to claim 19 of the '551 patent and find that Katz is estopped from challenging the obviousness of this claim. However, claim 19 has not previously been found invalid. Instead, FedEx relies on the invalidity findings of several related claims. Specifically, FedEx points to (1) a final determination that independent claim 14 of the '551 patent has been cancelled as anticipated by the Yoshizawa reference;[3] (2) a final determination that claim 170 of the U.S. Patent No. 5,561,707 ("the '707 patent") was obvious in view of the Yoshizawa and Moosemiller reference;[4] and (3) this Court's earlier finding that claim 31 of the U.S. Patent No. 6,335,965 ("the '965 patent") was obvious in view of Yoshizawa and the Szlam patent.[5]

---

[3] This determination was made by the United States Patent and Trademark Office ("USPTO") during a reexamination proceeding.

[4] This determination was also made by the USPTO during a different reexamination proceeding.

[5] This finding was affirmed by the Federal Circuit on appeal.

13

FedEx argues that if collateral estoppel is applied to these three determinations, Katz has no room to challenge a finding of obviousness for claim 19. To illustrate this argument, the table below shows how these three determinations supposedly dispose of each limitation from claim 19.

| | |
|---|---|
| 14. [14a] An analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of the remote terminals comprises a telephonic capability including voice communication means and digital input means in the form of an array of alphabetic numeric buttons for providing data, the analysis control system comprising: | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| [14b] interface structure coupled to the communication facility to interface the terminals for voice and digital communication and including structure to provide signals representative of data developed by the terminals; | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| [14c] voice generator structure selectively coupled through the interface structure to the terminals for providing vocal operating instructions to individual callers; | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| [14d] record memory connected to the interface structure for updating a file and storing data relating to certain individual callers; | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| [14e] qualification structure to access the record memory to test key number data provided by the individual callers to ensure that the key number data is valid; | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| [14f] generator structure selectively coupled to the interface structure and the record memory for providing computer generated numbers to the individual callers and storing the computer generated numbers in the record memory; and | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| [14g] analysis structure connected to the record memory for processing at least certain of the data relating to certain individual callers subject to qualification by the qualification structure. | Patent Office finds that claim 14 was anticipated by Yoshizawa. |
| 18. A control system according to claim 14, further including means to control processing | Patent Office finds that claim 170 of the '707 patent is obvious in view of a combination of |

| | |
|---|---|
| formats of the analysis structure in accordance with signals automatically provided by the communication facility indicative of one of a plurality of called numbers (DNIS). | Yoshizawa and Moosemiller. Claim 170 contains similar language to claim 18. |
| 19. A control system according to claim 18, wherein the data relating to certain individual callers includes calling number identification data for certain individual callers automatically provided by the communication facility. | This Court finds that claim 31 of the '965 patent is obvious in view of a combination of Szlam and Yoshizawa. Claim 31 contains similar language to claim 19. |

Katz argues that collateral estoppel does not apply because the issues decided in these three prior determinations are not the same as those present now. Indeed, to establish collateral estoppel, FedEx must show: "(1) the *same* issue of fact or law; (2) was actually litigated and determined in the former proceeding; (3) the issue was actually decided by a valid and final judgment; (4) the determination of the issue was necessary to the judgment; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue." *Security People, Inc. v. Medeco Security Locks, Inc.*, 59 F. Supp 2d 1040, 1044 (N.D. Cal. 1999) (citing *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995)) (emphasis added).

Katz argues that the issues decided in these earlier determinations are different than those at stake here. Consequently, Katz concludes that collateral estoppel does not apply. Although this Court is not convinced that all the distinctions Katz makes are correct, one of them clearly disposes of FedEx's collateral estoppel argument. Katz points out that FedEx's current argument relies on a different combination of prior art than any of the earlier determinations. FedEx is asking that this Court find that claim 19 is obvious in view of a combination of three different prior art references, Yoshizawa, Szlam and Moosemiller. Although the prior determinations combined two of these references in different combinations, none of the prior determinations found that there was a motivation to combine all three references. Accordingly, the issues present here are different from the earlier proceedings. Therefore, collateral estoppel does not apply.

Based on the foregoing, this Court DENIES FedEx's summary judgment as relates to the invalidity of claim 19 of the '551 patent.

**IT IS SO ORDERED**.

DATED: June 12, 2013

_____
Honorable R. Gary Klausner
United States District Judge